UNITED STATES DISTRCIT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LOANSTREET INC. and IAN LAMPL,
Individually,

                Plaintiffs,

      v.

WYATT TROIA, Individually,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No.: 1:21-cv-06166 (NRB)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) and 12(b)(1)

---

Douglas B. Lipsky
Sara J. Isaacson
LIPSKY LOWE LLP
420 Lexington Avenue, Suite 1830
New York, New York 10170
*Attorneys for Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

PRELIMINARY STATEMENT ..................................................................... 1

STATEMENT OF RELEVANT FACTS ......................................................... 2

PROCEDURAL HISTORY............................................................................ 8

LEGAL STANDARD GOVERNING MOTIONS TO DISMISS.................... 8

LEGAL ARGUMENT.................................................................................... 9

I.  PLAINTIFFS' DEFAMATION AND DEFAMATION *PER SE* CLAIMS MUST BE DISMISSED .............................................................................. 9

  A.  The Statute of Limitations Limit Plaintiffs' Defamation and Defamation *Per Se* Claims............................................................. 9

  B.  Plaintiffs' Defamation and Defamation *Per Se* Claims Fail Because the Statements At Issue Are Non-Actionable Statements of Opinion And Are Substantially True. ................................................................. 9

    1.  The purported defamatory statements are statements of opinion.  10

      a.  The purported defamatory statements are statements of opinion accompanied by a recitation of the facts upon which they are based............................................................. 10

      b.  The statements at issue are not actionable because they are hyperbolic. ..................................................................... 13

      c.  The statements are further not actionable considering they were posted on certain online platforms. .......................... 14

    2.  The purported defamatory statements are substantially true. ....... 14

II.  PLAINTIFFS' INJURIOUS FALSEHOOD CLAIM SHOULD BE DISMISSED ......................................................................................... 16

  A.  The Statute of Limitations Limit Plaintiffs' Injurious Falsehood Claim.. 16

  B.  The Purported Defamatory Statements Do Not Denigrate LoanStreet's Goods and Services.................................................................... 16

i

III.    PLAINTIFFS' UNFAIR COMPETITION CLAIMS SHOULD BE
        DISMISSED ...................................................................................................... 17

IV.     PLAINTIFFS' FALSE DESIGNATION OF ORIGIN CLAIM MUST BE
        DISMISSED ...................................................................................................... 20

V.      BECAUSE DIVERSITY JURISDICTION DOES NOT EXIST, THIS COURT
        DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THIS CASE –
        ASSUMING THE COURT DISMISSES THE LANHAM ACT CLAIM........... 21

VI.     THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
        JURISDICTION OVER ANY REMAINING STATE LAW CLAIMS............... 23

VII.    PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND THE
        COMPLAINT ...................................................................................................... 24

CONCLUSION............................................................................................................. 25

TABLE OF AUTHORITIES

CASES

*1-800 Contacts, Inc. v. WhenU.com*,
414 F.3d 400 (2d Cir. 2005)................................................................. 13

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
08-cv-7508, 2009 U.S. Dist. LEXIS 96114 (S.D.N.Y. Oct. 15, 2009)........................... 17

*AGV Prods. v. MGM*,
115 F. Supp. 2d 238 (S.D.N.Y. 2000)........................................................ 17

*Armstrong v. Simon & Schuster, Inc.*,
85 N.Y.2d 373 (N.Y. 1995) ................................................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................... 7, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................... 7

*Best v. City of N.Y.*,
12-cv-7874, 2014 U.S. Dist. LEXIS 5491 (S.D.N.Y. Jan. 15, 2014) ............................ 17

*Biro v. Conde Nast*,
883 F. Supp. 2d 441 (S.D.N.Y. 2012)................................................... *passim*

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)..................................................................... 17

*Celle v. Filipino Reporter Enters. Inc.*,
209 F.3d 163 (2d Cir. 2000).............................................................. 8

*Chau v. Lewis*,
771 F.3d 118 (2d Cir. 2014)........................................................... 9, 10

*Emiabata v. Farmers Ins. Corp.*,
848 Fed. Appx. 27 (2d Cir. 2021)..................................................... 15, 16

*Fedak v Yimby, Inc.*,
17-cv-8825, 2018 U.S. Dist. LEXIS 214384 (S.D.N.Y. Dec. 20, 2018) ......................... 13

*Foley v. CBS Broadcasting, Inc.*,
2006 N.Y. Misc. Lexis 9327 (N.Y. Sup. N.Y. Cty. Sept. 13 2006)................................ 9

*FragranceNet.com, Inc. v. FrangranceX.com, Inc.*,
493 F. Supp. 2d 545 (E.D.N.Y. June 12, 2007) ............................................................ 13

*Galicia v. Tobiko Rest., Inc.*,
16-cv-4074, 2017 U.S. Dist. LEXIS 85856 (E.D.N.Y. June 3, 2017) ............................ 12

*Guccione v. Hustler Magazine, Inc.*,
800 F.2d 298 (2d Cir. 1986) ......................................................................................... 11

*Hectronic GmbH v. Hectronic USA Corp.*,
20-cv-2964, 2020 U.S. Dist. LEXIS 221617 (S.D.N.Y. Nov. 24, 2020) ........................ 13

*Hotchner v. Castillo-Puche*,
551 F.2d 910 (2d Cir. 1977) ....................................................................................... 8, 9

*Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*,
64 F. Supp. 3d 494 (S.D.N.Y. 2014) ............................................................................ 13

*Jewell v. NYP Holdings, Inc.*,
23 F. Supp. 2d 348 (S.D.N.Y. 1998) ............................................................................ 11

*Kamen v. Am. Tel. & Tel. Co.*,
791 F.2d 1006 (2d Cir. 1986) ...................................................................................... 16

*Kasada, Inc. v. Access Capital, Inc.*,
01-cv-8893, 2004 U.S. Dist. LEXIS 25257 (S.D.N.Y. Dec. 14, 2007) .......................... 13

*Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*,
11-cv-3327, 2013 U.S. Dist. LEXIS 14937 (S.D.N.Y. Feb. 4, 2013) ............................ 12

*Merck Eprova AG v. Gnosis S.p.A.*,
760 F.3d 247 (2d Cir. 2014) ........................................................................................ 15

*Milkovich v. Lorain Journal*,
297 U.S. 1, 20 (1990) ................................................................................................... 10

*Nat'l Artists Mgmt. Co. v. Weaving*,
769 F. Supp. 1224 (S.D.N.Y. 1991) ............................................................................. 16

*NCUA Bd. v. Morgan Stanley & Co.*,
13-cv-6705, 2014 U.S. Dist. LEXIS 7809 (S.D.N.Y. Jan. 22, 2014) ............................ 14

*Polaroid Corp. v. Polarad Electronics Corp.*,
287 F.2d 492 (2d Cir. 1961) ........................................................................................ 14

*Redner v. Sanders*,
2000 U.S. Dist. LEXIS 11877 (S.D.N.Y. 2000) ................................................................ 16

*Rosa v. Charitable Trucking Co.*,
2021 U.S. Dist. LEXIS 160232 (S.D.N.Y. Aug. 24, 2021) ............................................ 16

*Steinhilber v. Alphonse*,
68 N.Y.2d 283, 508 N.Y.S.2d 901, 501 N.E.2d 550 (1986) .......................................... 9

*Stoner v. Young Concert Artists, Inc.*,
13-cv-4168, 2014 U.S. Dist. LEXIS 23423 (S.D.N.Y. Feb. 7, 2014) ........................... 17

*Streetwise Maps v. VanDam, Inc.*,
159 F.3d 739 (2d Cir. 1998) ............................................................................................. 14

*Time, Inc. v. Petersen Publ'g Co.*,
173 F.3d 113 (2d Cir. 1999) ............................................................................................. 13

*Tsinberg v. City of New York*,
20-cv-749, 2021 U.S. Dist. LEXIS 56958 (S.D.N.Y. Mar. 25, 2021) ........................... 17

*Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*,
2016 U.S. Dist. LEXIS 116409 (S.D.N.Y. 2016) ........................................................... 16

*Waldman Publ. Corp. v. Landoll, Inc.*,
43 F.3d 775 (2d Cir. 1994) ............................................................................................... 15

*Yangtze Riv. Port & Logistics Ltd. v. Hidenburg Research*,
150721/2019, 2020 N.Y. Misc. LEXIS 877 (N.Y. Sup. Ct. N.Y. Cty. Feb. 25, 2020) .... 11

STATUTES

Fed. R. Civ P. 12(b)(1) ................................................................................................... 1, 16
28 U.S.C. § 1332 .......................................................................................................... 15, 16
C.P.L.R. § 215(3) ............................................................................................................. 8, 12
Fed. R. Civ P. 12(b)(6) ...................................................................................................... 1, 7

Defendant Wyatt Troia submits this memorandum of law in support of his motion to dismiss Plaintiffs LoanStreet Inc. and Ian Lampl's complaint under Fed. R. Civ P. 12(b)(6) and (12)(b)(1) (the "Motion").[1]

PRELIMINARY STATEMENT

This case is about a former employee exercising his protected rights to publish online statements about his experiences at his former employer. Plaintiffs employed Defendant as a software engineer for about 15 months and he received stock options as part of his compensation package. He, however, was abruptly fired before his options were scheduled to vest. Defendant then took to the internet to explain what happened: he posted on websites such as Glassdoor.com and Reddit.com where he referred to Plaintiffs as "dirtbags" and "spineless sycophants" and explained, in detail, why he holds these opinions; and he purchased Google ads that contain the term "LoanStreet" and contain a clearly identifiable link to his Reddit.com posts. None of this is unlawful.

Plaintiffs, however, assert Defendant defamed him. He did not. He, rather, asserts statements of opinion that are backed by every fact supporting his opinions; he uses hyperbolic terms such as "dirtbags;" the websites he posted on are well-known for being a place to express opinions; and the statements at issue are substantially true.

Plaintiffs next assert Defendant committed the tort of injurious falsehood. He did not. This claim requires a publication about another party's goods or services, but Defendant's statements do not discuss either.

---

[1] Defendant moves to dismiss every claim but the breach of contract claim. However, because Defendant moves to dismiss all of the federal claims and because diversity jurisdiction does not exist, granting the Motion would result in the entire Complaint being dismissed.

Importantly, both the defamation and injurious falsehood claims have a one-year statute of limitations. Yet the July 21, 2021 Complaint relies on conduct that pre-dates July 21, 2020. Those incidents are thus time barred.

Plaintiffs also assert Defendant improperly used their trademark with his Google ads violating the Lanham Act and engaging in unfair competition. He did not. Fundamentally, he did not "use" their trademark, as the law defines that term, since was he was not using it to promote any goods or services. And they cannot show another key element to these claims: that third parties were confused into believing that these were LoanStreet ads when the ads display a link to Reddit.com.

Procedurally, Plaintiffs assert this Court has subject matter jurisdiction over this case because diversity jurisdiction exists and they assert the federal Lanham Act claims. But diversity jurisdiction does not exist: every party is a resident of New York. If the Court dismisses the Lanham Act claims, this Court has no jurisdiction over this case and should, respectfully, decline to exercise supplemental jurisdiction.

Accordingly, these claims should be dismissed and the Court does not have jurisdiction over this matter.

STATEMENT OF RELEVANT FACTS[2]

A.    Factual Background

In 2013, Lampl cofounded LoanStreet – an online platform that allows users to share, manage and originate loans.[3] On March 18, 2019, Defendant commenced his employment with LoanStreet as a software engineer.[4] The terms of his employment were

---

[2] Defendant, for purposes of this Motion, accepts as true all allegations in the Complaint.
[3] July 21, 2021 Complaint (Dkt. No. 3) ("Compl.") ¶ 11.
[4] *Id.* ¶¶ 16, 23.

governed by a March 4 employment offer, which states he would receive options to purchase LoanStreet's common stock.[5] The options were, in turn, governed by LoanStreet's Equity Incentive Plan and stock option grant agreement, which provide that his initial option grant would vest and become exercisable on the first anniversary of his vesting commencement date, provided he was a current employee.[6]

Plaintiffs provided Defendant with two option grants: one on July 22, 2019 to purchase 885 common stock shares and the second on January 15, 2020 to purchase 500 shares. Each option grant has its own vesting schedule.[7]

B.    The Alleged Defamatory Statements

In April 2020, Defendant started posting certain statements of opinion about Plaintiffs on various internet platforms.[8] On June 12, 2020, LoanStreet terminated Defendant.[9]

He then continued posting statements of opinion online about Plaintiffs.[10] Less than two weeks after his termination, he posted on Glassdoor.com:

> Good people, worst career development:
>
> The company changed lot during mess hiring process, it reflected the very disorganized management at a software start-up. Also, zero product strategy, most of the decision making not based on the team and research, it just from the top management team with no explanation. The company have a valuation like a fintech, however, they on track to be just like the banks and credit unions they work with.[11]

---

[5] *Id.* ¶¶ 18, 19.
[6] *Id.* ¶ 19.
[7] *Id.* ¶ 20.
[8] *Id.* ¶ 25. The Complaint does not specify what platform.
[9] *Id.* ¶ 27.
[10] *Id.* ¶ 33.
[11] *Id.*

On June 13, 2021, he posted on Glassdoor.com:

> Cheated me out of equity compensation. Exploitative, fraudulent dumpster fire. Positive reviews are coerced or fake. TLDR: Stay far, far away unless you're truly desperate. LoanStreet is a raging dumpster fire and you will get burned like many before. After 15 months of praising my work and as COVID froze the hiring markets in 2020 – they abruptly fired me and withheld $100k in options that they promised me before I was hired.

> The annualized turnover rate in the small NYC office during my time there was around 50%. Every two months or so, someone was fired who said they weren't given any warning and the company would tell the same story that this person was given many warnings and opportunities to respond to feedback. I saw a lot of good workers blindsided, some leaving in tears. I thought it was fishy and eventually it happened to me, despite always having received glowing praise from leadership.

> Any promises made to you to entice you to sign an offer should be regarded with extreme skepticism. Get everything in writing and reviewed by a good lawyer.

> After hiring employees with a promise of unlimited PTO, management rolled out a PTO tracking tool that explicitly capped PTO at 15 days per year.

> Before I joined, Cofounder/COO Christopher Wu told me that the first quarter of my stock options would vest after a year. My offer letter said details on the equity compensation would be provided in a separate equity agreement. I wasn't provided the agreement for nearly a year after my start date, and you can imagine my surprise when I say that I wouldn't begin to vest until nearly 16 months of employment. After 15 months of work. I was abruptly fired and didn't receive a single option.

> CEO and Cofounder Ian Lampl refused to discuss the matter. He just pocketed the options he promised me. Based on Lampl's valuation goal for the company, he defrauded me out of over $100k.

> Because the offer letter omitted the details of the equity compensation, labor lawyers told me I had no case. Keep in

4

mind, LoanStreet is run by lawyers who used to work at Cravath, a very prestigious and lucrative NYC law firm. I suspect they knew exactly what they were doing when they wrote the offer letter. If it was just a good-faith mistake, they could have done the right thing and granted me the options I earned. They chose not to.

Ian Lampl is the lowest type of man: one whose word means nothing. He is a rich con man. His bland, polite, and nerdy demeanor is affected to disarm and distract you while he has his hands down your pockets.

Placing my trust in LoanStreet was a costly mistake. If you're reading this. please don't be fooled by the Series B funding or the impressive pedigrees of the leaders: this place is a fraudulent, exploitative mess and you have a good chance of being fired within a year.

CEO Ian Lampl is the ringleader of this racket. but Cofounder/COO Christopher Wu. CTO Larry Adams and the rest of leadership are his spineless sycophants. They either agree with Lampl's despicable abuses of his employees or are too cowardly to stand up for what's right.

This group will twist employees' arms to post positive reviews after they see this one, just like they have in the past. but this review is the real story and just the tip of the iceberg, given LoanStreet's practice of paying fired employees to sign permanent non-disparagement agreements.

You deserve to be treated with dignity. Work elsewhere.[12]

Defendant, then, put the June 13 post on other online platforms, including HackReactor.com, Reditt.com, Google Ads and Teamblind.com.[13]

On June 19, 2021, Defendant posted on Reddit.com:

I worked for LoanStreet in NYC. My equity was supposed to start vesting after 12 months. After I start, they tell me that they actually meant 12 months after the next quarterly board meeting, and I will not start to vest after 16 months. I ask

---

[12] *Id*. ¶ 37.
[13] *Id*. ¶ 38.

them to change it and they pretend like they're working on it. After 15 months of praising my work, they abruptly fire me Just as COVID is freezing hiring markets, refuse to vest any of the promised equity, and the head of HR (who is also the wife of the CEO and who had spoken to me warmly the night before) refuses to answer my phone calls asking for an explanation, LoanStreet is run by fancy lawyers and were crafty with the offer letter language so I had no legal case.

The only problem I was aware of was that the CTO Larry Adams was upset with me because I discovered and fixed a critical error in code written by one of his favorite engineers. The engineer didn't remember why tests were failing. I privately spoke to him to ask him to be careful with the code in that area because it was tricky, to leave comments if he writes something that might be confusing to another reader, and to feel free to ask me for help in that area since it was my niche in the company. I was trying to do him a favor by not making a more public complaint about it. He ran crying to the CTO, who told me there was no error because we had tests that would have caught it and scolded me for going out of my lane. I wrote a failing test proving that the error existed and that our tests were incomplete. Then I fixed the error. He brusquely told me to fix anything I had broken by making that change. At the next retro "needs improvement" section I said I hoped we could affirm a team norm of being responsible for your code: being able to explain it and to help fix things if it breaks something. Larry got mad and shut down the conversation. For the next few weeks he worked behind my back to get me fired, as I understand it.

CEO Ian Lampl, his wife and head of HR Alyssa Guttman, COO Christopher Wu, General Counsel Thaddeus Pitney, and CTO Larry Adams are all dirtbags or dirtbag-accomplices. Copying my full Glassdoor review. Please follow the link and mark it as helpful so that the message is amplified and as many people are warned as possible.[14]

On June 21, 2021, Defendant posted statements on www.teamblind.com:[15]

Yes, they condition severance for fired employees on signing a permanent non-disparagement agreement, and they

---

[14] *Id*. ¶ 42.
[15] *Id*. ¶ 44.

are lawyers so have no legal fees and can cheaply sue, so
their reviews skew artificially positive.

                              ***

Here's why I'm resting easy: everything I've said is true.
I've been advised by lawyers that defending myself against
a libel lawsuit would cost an amount of money I am willing
to pay to ensure no one else has to go through what I went
through.

But most importantly, I think LoanStreet is likely aware of
the Streisand Effect, in which trying to conceal information
backfires and ends up drawing more attention to that
information than it otherwise would have garnered. Suing
me for describing factual events and ascribing a meaning to
them that the vast majority of people would agree with (that
they failed to fulfill their promise to me) would only deepen
the hole that LoanStreet dug themselves into when they
finally mistreated someone with enough savings to decline
their offer of money for silence.[16]

Defendant, after making this post, modified previous statements he made on
Reddit.com and other online platforms.[17] He also responded to certain third party
comments to explain that his posts were truthful.[18] He, for example, responded to a
comment by writing, "[w]hen I say Lampl 'pocketed' the options, I am speaking of him
operating in his role as the chief executive of the company, not saying that he personally
took possession of the options."[19]

      C.      <u>Defendant's Alleged Trademark Infringement</u>

Defendant purchased "Google Ads" using the name LoanStreet, which appear at
the top of Google searches for "LoanStreet."[20] They clearly show that readers will be

---

[16] *Id.*
[17] *Id.* ¶ 45.
[18] *Id.*
[19] *Id.*
[20] *Id.* ¶ 48.

directed to Reddit.com and not LoanStreet's website if they click on them.[21] When clicking on these ads, the reader is, in fact, directed to Defendant's June 2021 Reddit.com post.[22]

## PROCEDURAL HISTORY

Plaintiffs' July 21, 2021 Complaint asserts six claims against Defendant: (i) breach of contract, (ii) defamation *per se*, (iii) defamation, (iv) injurious falsehood, (v) unfair competition and false designation of origin under the Lanham Act, and (vi) common law unfair competition.[23] They also assert this Court has subject matter jurisdiction over this action because (1) it has federal question jurisdiction based on the federal Lanham Act claims, and (2) diversity jurisdiction exists.[24]

On September 15, the Court granted Defendant leave to file this motion and gave Plaintiffs two weeks to amend their complaint, reminding them that "they can assert additional allegations to cure any alleged deficiencies raised by defendant's letter, it would be in the best interest of both parties and the Court for plaintiffs to assert them now[.]"[25] Plaintiffs did not amend their complaint. No discovery has occurred.

## LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

A court must dismiss a complaint under Fed. R. Civ. P. 12(b)(6) if the allegations in the complaint are not "plausible on [their] face" or do not allege sufficient facts to satisfy the relevant legal standard. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-59, 570 (2007). "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

---

[21] *Id.* ¶ 49.
[22] *Id.* ¶ 51.
[23] *See generally id.*
[24] *Id.* ¶ 8.
[25] Dkt. No. 19. Defendant inadvertently omitted from his pre-motion conference request leave to dismiss the Complaint under Rule 12(b)(1) for lack of diversity jurisdiction.

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). In making this determination, the Court must "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## LEGAL ARGUMENT

I.  **PLAINTIFFS' DEFAMATION AND DEFAMATION *PER SE* CLAIMS MUST BE DISMISSED**

   A.  The Statute of Limitations Limit Plaintiffs' Defamation and Defamation *Per Se* Claims.

Plaintiffs' defamation and defamation *per se* claims are subject to a one-year statute of limitations. *See* C.P.L.R. § 215(3). With the Complaint being filed on July 21, 2021, every act that precedes July 21, 2020 is time barred: his April 14 and April 25, 2020 posts; his June 12, 2020 email to LoanStreet employees; and his June 2020 post on Glassdoor.com.[26][27]

   B.  Plaintiffs' Defamation and Defamation *Per Se* Claims Fail Because the Statements At Issue Are Non-Actionable Statements of Opinion And Are Substantially True.

A plaintiff must establish five elements to state a defamation claim: "(1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or *per se* actionability (defamatory on its face)." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). These claims fail because the statements are either non-actionable statements

---

[26] Compl. ¶¶ 25, 26, 28, 29, 30, 33.
[27] Paragraphs 76(f) and 93(h) of the Complaint contain statements that are time barred.

of opinion or are substantially true. They are ripe for dismissal. Courts, in fact, typically review alleged defamatory statements at the pleading stage to determine if they are actionable in order to avoid unnecessary litigation and protect freedom of speech. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 379 (N.Y. 1995)) ("[T]here is 'particular value' in resolving defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms.'"); *Celle v. Filipino Reporters Enters.*, 209 F.3d 163, 177 (2d Cir. 2000) ("whether particular words are defamatory presents a legal question to be resolved by the courts in the first instance.").

1. The purported defamatory statements are statements of opinion.

   a. The purported defamatory statements are statements of opinion accompanied by a recitation of the facts upon which they are based.

This first of the five elements for a defamation claim is not met where, like here, the statements are statements of opinion. *See Biro*, 883 F. Supp. 2d at 459 ("Under both New York and federal law, statements of pure opinion are not actionable as defamation."); *see also Hotchner v. Castillo-Puche*, 551 F.2d 910, 912 (2d Cir. 1977) ("A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be."). "As with defamation in general, courts make these assessments by looking at the full context of the communication in which the statement appears, while also considering the broader social context or setting surrounding the communication." *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014).

Two types of statements of opinion exist: one that is "accompanied by a recitation of the facts upon which it is based" or one that "does not imply that is based upon

undisclosed facts." *Biro*, 883 F. Supp. 2d at 461 (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 508 N.Y.S.2d 901, 501 N.E.2d 550, 552 (1986)). Neither is actionable regardless of how "unreasonable the opinion or vituperous the expressing of it may be." *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977). Putting this in context, a court held a news network did not defame a store owner by calling him a "con artist" because that statement was accompanied by customers complaining that the plaintiff had either failed to deliver goods or delivered defective goods. *Biro*, 883 F. Supp. 2d at 461 (citing *Foley v. CBS Broadcasting, Inc.*, 2006 N.Y. Misc. Lexis 9327 (N.Y. Sup. N.Y. Cty. Sept. 13 2006)).

In Defendant's June 13, 2021 post, he expresses his opinions on Plaintiffs' refusal to provide him with options and explains how he reached that opinion.[28] Specifically, he refers to LoanStreet as a "dumpster fire," and a "fraudulent, exploitative mess," its leadership as "spineless sycophants[,]" and Lampl as a "rich con man" and then provides the facts upon which these opinions are based: LoanStreet praised his work for 15 months and then abruptly fired him; it withheld $100,000.00 worth of options that it promised to him in his offer letter; its Co-founder and COO told him that the first quarter of his stock options would vest after a year, and then didn't begin to vest until after 16 months; it did not provide him with a separate equity agreement for nearly a year after his start date; Lampl refused to discuss LoanStreet's failure to provide him with options that were promised to him; LoanStreet promised prospective employees they would have unlimited PTO and then limited PTO to 15 days per year; and LoanStreet abruptly fired employees

---

[28] Compl. ¶ 37.

approximately every two months, while claiming it gave those employees warnings and opportunities to respond.[29]

In his June 19, 2021 post, Defendant expresses his opinions on their refusal to permit his options to start vesting after 12 months of employment and explains how he reaches that opinion.[30] Specifically, he refers to Lampl and LoanStreet employees as "dirtbags or dirtbag-accomplices," and provides the facts upon which these opinions are based: LoanStreet's Co-founder and COO told him his initial options grant would begin vesting after a year, but almost a year after he began his employment, LoanStreet told him the grant would actually start vesting 16 months after he began his employment; he asked LoanStreet to correct the vesting schedule to reflect what he understood from the COO; LoanStreet abruptly fired him after praising his work for 15 months; LoanStreet refused to vest any of his promised equity; the head of HR ignored his calls regarding the reasons for and circumstances of his firing and the status of the vesting of his equity; and the CTO worked behind his back to get him fired.[31]

In his June 21, 2021 posts on www.teamblind.com, he provides additional facts upon which his opinions expressed in his June 13 and 19 posts are based. He explains: Plaintiffs made severance conditional upon signing a permanent non-disparagement agreement; and they failed to fulfill their promise to him regarding the options.[32]

Ultimately, Defendant provides the detailed rationale for how he reaches the conclusions in every statement at issue. Nothing is left to the imagination. No assumed

---

[29] *Id.*
[30] *Id.* ¶ 42.
[31] *Id.*
[32] *Id.* ¶ 44.

facts exist. No information is withheld. He, rather, lays it all out there for the reader, letting the reader know how he reached his opinion. These statements are accordingly non-actionable statements of opinion. *Biro*, 883 F. Supp. 2d at 461.

          b.    The statements at issue are not actionable because they are hyperbolic.

The purported defamatory statements are expressions of opinion because they are excessive and hyperbolic. In *Biro*, the court explained that "statements of 'rhetorical hyperbole' or 'imaginative expression' are held not actionable, because they 'cannot reasonably be interpreted as stating actual facts' that could be proved false." 883 F. Supp. 2d at 460 (quoting *Milkovich v. Lorain Journal*, 297 U.S. 1, 20 (1990)). To illustrate, the Second Circuit held that statements on plaintiff's false predictions on the mortgage market were not defamatory because they contained hyperbolic terms of "fool" and "frontman[,]" in describing the plaintiff. *Chau*, 771 F.3d at 129 Defendant's statements contain similar non-actionable, hyperbolic language.

In his June 13 post, he refers to LoanStreet as a "dumpster fire," and a "fraudulent, exploitative mess," its leadership as "spineless sycophants[,]" and Lampl as a "rich con man."[33] He also states that LoanStreet "cheated [him] out of equity compensation."[34] In his June 19 post, he refers to Lampl and other LoanStreet employees as "dirtbags or dirtbag accomplices."[35] All of these terms are as, if not more, hyperbolic than the words the Second Circuit rejected in *Chau* and are therefore not actionable.[36] *See Biro*, 883 F. Supp. 2d at 460; *Chau*, 771 F.3d at 129.

---

[33] Compl. ¶ 37.
[34] *Id*.
[35] *Id*. ¶ 42.
[36] *Id*. ¶¶ 37, 42.

      c.     The statements are further not actionable considering they were posted on certain online platforms.

The statements are further not actionable as statements of opinion because they were posted on the online platforms of Reddit.com, Teamblind.com and Glassdoor.com. "[C]ourts have consistently protected statements made in online forums as statements of opinion rather than fact." *Yangtze Riv. Port & Logistics Ltd. v. Hidenburg Research*, 150721/2019, 2020 N.Y. Misc. LEXIS 877 (N.Y. Sup. Ct. N.Y. Cty. Feb. 25, 2020). Indeed, where, like here, the statements were posted on similar websites, courts are more likely to find them to be statements of opinion because they are forums people use to post their opinions on various topics, including work and hobbies, and people expect to read opinions on those topics when visiting these sites. *See id.* (dismissing defamation and defamation *per se* claims where "the alleged defamatory statements were advanced on social media, including Yahoo Finance, Twitter, Hacker News and Reddit, which New York courts typically protect as statements of opinion, rather than fact."). Plaintiffs' defamation claims, accordingly, fail for this additional reason.

      2.     The purported defamatory statements are substantially true.

The defamation claims fail because the statements are substantially true. "If an allegedly defamatory statement is 'substantially true,' a claim of libel is 'legally insufficient and . . . should be dismissed.'" *Biro*, 883 F. Supp. 2d at 458 (quoting *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986)). "New York courts hold that 'a statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Id.* (quoting *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998)).

Plaintiffs assert that Defendant's posts are false and defamatory because he "falsely equates the granting of his options with the vesting of his interest."[37] This is wrong and his narrative on the relevant events largely match Plaintiffs' narrative.

His June 13 and June 19 posts detail the sequence of events: that before he began working for them, Plaintiffs told him that some of his options would vest after one year of employment; that his offer letter provides he would receive a separate equity agreement laying out the details of his equity compensation, including the vesting schedule; they granted him options during his employment; that he received the equity agreement almost a year after starting to work there, in which he learned the options would not vest until nearly 16 months of employment; and they fired him after 15 months of employment – less than one month before his options were scheduled to vest.[38]

Plaintiffs' narrative on this issue is largely consistent with his: that they promised him equity as part of his overall compensation package;[39] that the equity is subject to a stock option grant agreement that details the vesting schedule and that he must be employed on the vesting date to exercise the options;[40] that he received two option grants, each with its own vesting schedule;[41] that the details of the option grants were "the subject of further written communications after he received his offer letter";[42] and that he was fired 15 months after working for them.[43]

---

[37] *Id.* ¶ 21.
[38] *Id.* ¶¶ 37, 42.
[39] *Id.* ¶ 19.
[40] *Id.*
[41] *Id.* ¶ 20.
[42] *Id.* ¶ 21.
[43] *Id.* ¶ 27.

It makes sense their narratives line up, considering Plaintiffs do not dispute in their Complaint the chronology in Defendant's posts. They, for example, do not dispute that he was told one vesting schedule before he started working for them and was told another after commencing employment.

With no significant differences between their narratives, Defendants' June 13 and 19 posts are substantially true. They, therefore, cannot be the bases for a defamation claim. *Biro*, 883 F. Supp. 2d at 458.

II.     PLAINTIFFS' INJURIOUS FALSEHOOD CLAIM SHOULD BE DISMISSED

    A.     The Statute of Limitations Limit Plaintiffs' Injurious Falsehood Claim.

Plaintiffs' injurious falsehood claim is subject to a one-year statute of limitations. *See* C.P.L.R. § 215(3). With the Complaint being filed on July 21, 2021, every act that precedes July 21, 2020 is time barred.[44]

    B.     The Purported Defamatory Statements Do Not Denigrate LoanStreet's Goods and Services.

Plaintiffs fail to adequately plead an injurious falsehood claim because the purported defamatory statements do not denigrate LoanStreet's goods and services. "The tort of injurious falsehood 'consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment.'" *Galicia v. Tobiko Rest., Inc.*, 16-cv-4074, 2017 U.S. Dist. LEXIS 85856, at *4 (E.D.N.Y. June 3, 2017) (quoting *Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC,* 11-cv-3327, 2013 U.S. Dist. LEXIS 14937, at *53 (S.D.N.Y. Feb. 4, 2013)). It is not enough for a

---

[44] Compl. ¶¶ 25, 26, 28, 29, 30, 33.

statement to "impugn the basic integrity or creditworthiness of a business." *Id.* Rather, an "injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services." *Id.*; *Kasada, Inc. v. Access Capital, Inc.*, 01-cv-8893, 2004 U.S. Dist. LEXIS 25257, at *50 (S.D.N.Y. Dec. 14, 2007). To illustrate, a court dismissed an injurious falsehood claim because it was based on the statement "Dan George is a fraud," since that statement only "concerns integrity or business methods, not the quality of goods and services." *Fedak v Yimby, Inc.*, 17-cv-8825, 2018 U.S. Dist. LEXIS 214384, at *17 (S.D.N.Y. Dec. 20, 2018). The same is true here.

Defendant did not comment on or mention Plaintiffs' goods and services in the non-time barred comments.[45] His comments, rather, focus on them as his employer, their integrity, how they do business and his opinions on LoanStreet's leadership. This is fatal.

III.   PLAINTIFFS' UNFAIR COMPETITION CLAIMS SHOULD BE DISMISSED

Defendant did not "use" Plaintiffs' trademark and no confusion exists about including "LoanStreet" in his ads. This warrants dismissing Plaintiffs' unfair competition claim under the Lanham Act and under New York common law.

"To prevail on a trademark infringement claim . . . a plaintiff must demonstrate that it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999). "The elements of an unfair competition claim under New York law are identical to the elements of an unfair competition claim under the Lanham Act, except that plaintiff must show bad faith by the infringing party." *Hectronic GmbH v. Hectronic USA Corp.*, 20-cv-2964, 2020

---

[45] Compl. ¶¶ 37, 42, 44.

U.S. Dist. LEXIS 221617, at *1 (S.D.N.Y. Nov. 24, 2020); *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 514 (S.D.N.Y. 2014).

A.     Defendant Did Not "Use" Plaintiffs' Trademark.

Plaintiffs' unfair competition claims should be dismissed because Defendant did not "use" Plaintiffs' trademark LOANSTREET. "'[U]se must be decided as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the *use* of a trademark.'" *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp. 2d 545, 549 (E.D.N.Y. June 12, 2007) (quoting *1-800 Contacts, Inc. v. WhenU.com*, 414 F.3d 400 (2d Cir. 2005)) (emphasis added). "The Lanham Act provides that, in connection with goods, a trademark is 'used[]' when the trademark 'is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale.'" *Id*. (quoting 15 U.S.C. § 1127(1)). "In connection with services, a trademark is 'used in commerce' when the trademark 'is used or displayed in the sale or advertising of services and the services rendered in commerce.'" *Id*. (quoting 15 U.S.C. § 1127(2)). Critically, advertising can only be considered a "use" for purposes of the Lanham Act where the advertisement is for goods or services. *Id*.

In *FragranceNet.com, Inc.*, the court held the plaintiff did not assert a valid unfair competition claim because the defendant did not "use" plaintiff's trademark where there was only "a link to defendant's website [which] appear[ed] both within the search results screen and 'immediately proximate to the search results screen' upon a request for

plaintiff's website."  493 F. Supp. 2d at 550. The defendant, therefore, did not violate the Lanham Act because it did not use the trademark in the sale or advertising of services. *Id.*

Defendant did not "use" Plaintiffs' trademark. He did not place it on any goods or containers; and he did not use it in connection with any services or on any advertisements for services because he does not have, nor is he selling any goods or services. *Id.* at 549. In fact, his Google "ads" are not even ads, but a way to draw readership to his online posts where he is not selling anything. The unfair competition claims should, therefore, be dismissed. *Id.* at 550.

   B.   <u>No Confusion Exists About Defendant's Use of the Word LoanStreet.</u>

In *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), the Second Circuit listed a set of six factors to consider in determining whether there is a likelihood of confusion among consumers, most of which strongly favor Defendant: "[1] the strength of [the plaintiff's]mark, [2] the degree of similarity between the two marks, [3] the proximity of the products, [4] the likelihood that the prior owner will bridge the gap, [5] actual confusion, and [6] the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers."

Whether "actual confusion" exists is "particularly relevant" to the inquiry because the "Lanham Act seeks to prevent public confusion as to the origin of products, and to prevent a second user who chooses a confusingly similar mark from exploiting the goodwill a first user has created for its trademark." *Streetwise Maps v. VanDam, Inc.*, 159 F.3d 739, 745 (2d Cir. 1998). This factor strongly favors Defendant.

No confusion exists here. His "ads" clearly display a link to Reddit.com.[46] No confusion therefore exists on what happens if someone clicks on it: they will be directed to Reddit.com's website, not Loanstreet's. And no confusion exists on what the "ads" are about since they include a quote about Defendant's experience working for Plaintiffs. While this issue is sometimes inappropriate for the motion to dismiss stage, that is not the case here. It is plain from the alleged facts people know what happens if they click on the "ads." *See NCUA Bd. v. Morgan Stanley & Co.*, 13-cv-6705, 2014 U.S. Dist. LEXIS 7809, at *10 (S.D.N.Y. Jan. 22, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (noting that a court can "'draw on its judicial experience and common sense' in deciding motions to dismiss."). And if any confusion did exist on whether it was an ad from Loanstreet, that confusion would be swiftly erased when they click on the ad and are directed to Reddit.com, not Loanstreet's website.

As to the other factors, Defendant does not have any products or services nor does he have his own trademark. Factors 2, 3, 4 and 6 all, therefore, favor Defendant. *See Polaroid*, 287 F.2d at 496 (explaining no confusion exists where two businesses sell completely different products, such as microwave equipment and electronics.) At bottom, the *Polaroid* factors strongly favor these claims being dismissed as a matter of law.

IV.   PLAINTIFFS' FALSE DESIGNATION OF ORIGIN CLAIM MUST BE DISMISSED

Plaintiffs cannot establish a false designation of origin claim under the Lanham Act. The false designation of origin section of the Lanham Act prohibits "misrepresentations as to the source of a product in primarily two types of activities: (1) false advertising and (2)

---

[46] *Id.* ¶ 49.

'passing off' . . . in which 'A' sells its products under 'B's' name." *Waldman Publ. Corp. v. Landoll, Inc.*, 43 F.3d 775, 780 (2d Cir. 1994). False advertising occurs when "(1) the statement in the challenged advertisement is false; (2) the defendants misrepresented an inherent quality or characteristic of the product; (3) the defendant placed the false or misleading statement in interstate commerce, and (4) the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014)). Further, "[t]he false advertisement must concern the 'nature, characteristics, qualities, or geographic origin' of either the plaintiffs or another party's products." *Id*.

No doubt exists that Defendant did not misrepresent the source of Plaintiffs' products through false advertising or "passing off" their products. He, in fact, could not have "pass[ed] off" their products because he did not sell any products or services. Further, his Google ads are not false advertisements because they do not concern LoanStreet's goods or services, let alone the "nature, characteristics, qualities or geographic origin" of them. *Id*. The posts that are linked to the ads, instead, contain opinions about his employment with Plaintiffs and the company's leadership.[47] The false designation of origin claim under the Lanham Act, accordingly, fails.

V.   BECAUSE DIVERSITY JURISDICTION DOES NOT EXIST, THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THIS CASE – ASSUMING THE COURT DISMISSES THE LANHAM ACT CLAIM

Complete diversity does not exist between the parties, despite what the Complaint alleges. This Court, therefore, does not have jurisdiction over this case on this basis.

---

[47] Compl. ¶¶ 37, 42, 49.

Complete diversity must exist between the parties for diversity jurisdiction to exist under 28 U.S.C. § 1332. *See Emiabata v. Farmers Ins. Corp.*, 848 Fed. Appx. 27, 28 (2d Cir. 2021) ("all plaintiffs must be citizens of states diverse from those of all defendants."). An individual's citizenship is determined by his domicile: "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Rosa v. Charitable Trucking Co.*, 2021 U.S. Dist. LEXIS 160232, at *10 (S.D.N.Y. Aug. 24, 2021). It is well-established that a party's domicile is determined "at the time the [c]omplaint [is] filed." *Emiabata*, 848 Fed. Appx. at 28. "[W]hen, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise." *Kamen v. Am. Tel. & Tel. Co*., 791 F.2d 1006, 1011 (2d Cir. 1986).

Courts in the Second Circuit have consistently dismissed cases for lack of subject matter jurisdiction when diversity, while pled, did not exist. *See Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, 2016 U.S. Dist. LEXIS 116409, at *7 (S.D.N.Y. 2016) (granting defendant's motion to dismiss for lack of diversity even when plaintiff's complaint alleged, she was a citizen of Haiti, but in fact "it appear[ed] evident that at the time of filing, and even now" plaintiff's New York residence was her true domicile.); *Redner v. Sanders*, 2000 U.S. Dist. LEXIS 11877, at *1-3 (S.D.N.Y. 2000) (dismissing plaintiff's complaint because even though plaintiff "asserted jurisdiction existed based on diversity of citizenship . . . there was no jurisdiction [] since plaintiff was only a resident of France, not a citizen); *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1229 (S.D.N.Y. 1991) (holding no diversity jurisdiction exits as shown in defendant's affidavit and testimony).

Diversity jurisdiction does not exist here. When Plaintiffs filed their complaint, Defendant was domiciled in New York.[48] In fact, for the past five years, he has lived in the same New York City apartment.[49]  Because of the COVID-19 pandemic, He temporarily live with his parents in Nebraska from March 2020 to August 2020.[50] It was always his intent, while there, to come home back to New York City.[51] And he did. In August 2020, he returned back to New York City and has continued to live in his New York City apartment up to the present day. This, critically, overlaps with when the July 21, 2021 Complaint was filed.[52]

Based on these facts, the State of New York was Defendant's domicile when the Complaint was filed. *Emiabata*, 848 Fed. Appx. at 28 (explaining a party's domicile is determined "at the time the [c]omplaint [is] filed."). This Court therefore does not have diversity jurisdiction over this matter under 28 U.S.C. § 1332 and should dismiss it for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), provided the Court also dismisses Plaintiffs' Lanham Act claims, which are the sole federal law claims.

## VI. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER ANY REMAINING STATE LAW CLAIMS

Plaintiffs assert only two claims under federal claw: the Lanham Act claims. If those are dismissed, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims because this case is in its infancy. *See AGV Prods. v. MGM*, 115 F. Supp. 2d 238, 392 (S.D.N.Y. 2000) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484

---

[48] Wyatt Troia's November 1, 2021, Declaration ¶ 3 ("Troia Dec.").
[49] *Id.* ¶ 2.
[50] *Id.* at ¶¶ 4-5.
[51] *Id.* ¶ 4.
[52] *Id.* ¶ 9; Dkt. No. 1.

U.S. 343, 350 n.7 (1988)) ("Where all federal claims have been dismissed before trial, and especially before discovery on the state claims, [it points] 'toward declining to exercise jurisdiction over the remaining state-law claims.'"); *Tsinberg v. City of New York*, 20-cv-749, 2021 U.S. Dist. LEXIS 56958, at *30 (S.D.N.Y. Mar. 25, 2021) ("Having dismissed all federal claims over which the Court had original jurisdiction before meaningful discovery has taken place, and far before trial, the Court dismissed [plaintiff's] state-law claims, too, without prejudice to his pursuit of those claims in state court).

## VII.   PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND THE COMPLAINT

If the Motion is granted, the Court should not give Plaintiffs leave to amend their Complaint because they declined to do so when the Court gave them that opportunity after Defendant's September 8, 2021 pre-motion letter. *See Stoner v. Young Concert Artists, Inc.*, 13-cv-4168, 2014 U.S. Dist. LEXIS 23423, at *26 (S.D.N.Y. Feb. 7, 2014) (quoting *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 08-cv-7508, 2009 U.S. Dist. LEXIS 96114, at *2 (S.D.N.Y. Oct. 15, 2009)) ("A court may decline to grant leave to amend where . . . plaintiff is on notice of a complaint's deficiencies and the plaintiff fails to correct those deficiencies[.]"); *Best v. City of N.Y.*, 12-cv-7874, 2014 U.S. Dist. LEXIS 5491, at *3 (S.D.N.Y. Jan. 15, 2014) (dismissing the plaintiff's claims with prejudice because the plaintiff "has been given ample opportunity to amend his pleadings and the Court can only afford him so many bites at the apple.").

<u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court grant the

Motion and award such other relief as it deems just.


Dated:  New York, New York
         November 1, 2021


                        LIPSKY LOWE LLP


                        <u>s/ Douglas B. Lipsky</u>
                        Douglas B. Lipsky
                        Sara Isaacson
                        420 Lexington Avenue, Suite 1830
                        New York, New York 10170-1830
                        212.392.4772
                        doug@lipskylowe.com
                        sara@lipskylowe.com
                        *Attorneys for Defendant*


25