Christopher M. Gerson
Timothy K. Gilman
Ryan J. Singer
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: cgerson@stroock.com
Email: tgilman@stroock.com
Email: rsinger@stroock.com
*Attorneys for Plaintiffs LoanStreet Inc. and Ian Lampl.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LOANSTREET INC., and<br>IAN LAMPL, Individually,<br><br>             Plaintiffs,<br><br>   v.<br><br>WYATT TROIA, Individually,<br><br>             Defendant. | Civil Action No.  1:21-cv-06166-NRB |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
## <u>PLAINTIFFS' COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Preliminary Statement .................................................................................................1

II.   Statement of Facts .......................................................................................................1

III.  Procedural Background ................................................................................................4

IV.   Standard of Review ......................................................................................................4

V.    Argument .....................................................................................................................5

   A.   The Complaint Adequately Pleads Claims of Defamation *Per Se* And Defamation.......5

     1.   The Defamatory *Per Se* Statements Are Actionable ..................................................8

     2.   The Defamatory Statements Identified in the Complaint at Paragraph 93 Do Not Constitute Unactionable Opinion; Indeed, Defendant Admits They Are Factual in Nature. ..................................................................................................12

     3.   Defendant's Statements Are Not "Substantially True," When Taken Individually or As a Whole .......................................................................................14

     4.   Statements Published on the Internet, Including on Social Media, Are Not Immune From Accusations of Defamation and Courts Have Repeatedly Found Such Statements Actionable .............................................................................16

     5.   None of the Defamatory Statements Are Barred by the Statute of Limitations ........17

   B.   Plaintiffs' Injurious Falsehood Claims Are Grounded in Statements that Denigrate LoanStreet, Including Its Services ..............................................................18

   C.   Plaintiffs Have Adequately Pled Its Lanham Act And State Unfair Competition Claims .........................................................................................................18

     1.   The Purchase of Plaintiff LoanStreet's Trademark as a Google Adword is a "Use in Commerce" Under the Lanham Act ...........................................................19

     2.   By Driving Prospective Users of LoanStreet's Services Away From LoanStreet's Website, Defendant Has Used Plaintiff's Mark "In Connection With" the Distribution of Services ................................................................................20

     3.   Plaintiffs Have Adequately Pled a Likelihood of Confusion ...................................21

   D.   Diversity Jurisdiction Exists .........................................................................................24

Table of Contents
(continued)

**Page**

VI.    Conclusion ........................................................................................................................25

ii

NY 78815359

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullahi v. Pfizer, Inc.*,
562 F.3d 163 (2d Cir. 2009)...............................................................................6

*Albert v. Loksen*,
239 F.3d 256 (2d. Cir. 2001).........................................................................7, 9

*Aroch v. Yohai*,
No. 16 CIV. 8954 (LLS), 2017 WL 7512814 (S.D.N.Y. July 26, 2017)...............................24

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).......................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).......................................7

*Bevilaqua v. Bernstein*,
642 F. Supp. 1072 (S.D.N.Y. 1986)...............................................................24

*Biro v. Conde Nast*,
883 F.Supp.2d 441 (S.D.N.Y. 2012)............................................................9, 13

*Brash v. Richards*,
195 A.D.3d 582, 149 N.Y.S.3d 560 (2021)....................................................2, 17

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*,
850 F.3d 58 (2d Cir. 2017).......................................................................7

*Celle v. Filipino Reporter Enterprises Inc.*,
209 F.3d 163 (2d Cir. 2000)................................................................7, 8, 11

*Cortec Industries, Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)......................................................................18

*Davis v. Boeheim*,
24 N.Y.3d 262 (2014) ............................................................................8

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010).....................................................................13

*FragranceNet.com, Inc. v. FragranceX.com, Inc.*,
493 F. Supp. 2d 545 (E.D.N.Y. June 12, 2007)...................................................20

Table of Authorities
(continued)

**Page**

*Giffuni v. Feingold*,
   299 A.D.2d 265, 749 N.Y.S.2d 716 (2002) ...........................................................8

*Giuffre v. Dershowitz*,
   410 F. Supp. 3d 564 (S.D.N.Y. 2019) .................................................................18

*Gross v. New York Times Co.*,
   82 N.Y.2d 146, 623 N.E.2d 1163 (1993) ...................................................... *passim*

*Guthrie Healthcare System v. ContextMedia, Inc.*,
   826 F.3d 27 (2d Cir. 2016) ................................................................................22

*International Profit Associates, Inc. v. Paisola*,
   461 F. Supp. 2d 672 (N.D. Ill. 2006) ...................................................................21

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
   10 F.4th 422 (5th Cir. 2021) ..............................................................................23

*Katz v. Goodyear Tire & Rubber Co.*,
   737 F.2d 238 (2d Cir. 1984) ..........................................................................24, 25

*Kid Car NY, LLC v. Kidmoto Technologies LLC*,
   518 F. Supp. 3d 740 (S.D.N.Y. 2021) .................................................................20

*Krusen v. Moss*,
   174 A.D.3d 1180, 105 N.Y.S.3d 607 (2019) ........................................................17

*Lan Sang v. Ming Hai*,
   951 F. Supp. 2d 504 (S.D.N.Y. 2013) .................................................................17

*Lee v. Sony BMG Music Entertainment, Inc.*,
   557 F. Supp. 2d 418 (S.D.N.Y. 2008) ...................................................................7

*Levy v. Nissani*,
   179 A.D.3d 656, 115 N.Y.S.3d 418 (2020) ...........................................................8

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
   818 F. 2d 254 (2d Cir. 1987) ..............................................................................23

*OBH, Inc. v. Spotlight Magazine, Inc.*,
   86 F. Supp. 2d 176 (W.D.N.Y. 2000) ..................................................................20

*People for Ethical Treatment of Animals v. Doughney*,
   263 F.3d 359 (4th Cir. 2001) .............................................................................21

ii

Table of Authorities
(continued)

**Page**

*Planned Parenthood Federation of America, Inc. v. Bucci,*
No. 97 CIV. 0629 (KMW), 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997), *aff'd,*
152 F.3d 920 (2d Cir. 1998)........................................................................................................20

*Polaroid Corp. v. Polarad Electronics Corp.,*
287 F.2d 492 (2d Cir. 1961)............................................................................................21, 23, 24

*Rescuecom Corp. v. Google Inc.,*
562 F.3d 123 (2d Cir. 2009).................................................................................................19, 20

*Restis v. American Coalition Against Nuclear Iran, Inc.,*
53 F. Supp. 3d 705 (S.D.N.Y. 2014)....................................................................... *passim*

*Silsdorf v. Levine,*
59 N.Y.2d 8, 449 N.E.2d 716 (1983)...............................................................................................8

*Solstein v. Mirra,*
488 F. Supp. 3d 86 (S.D.N.Y. 2020)..........................................................................................17

*The Name LLC v. Arias,*
No. 10-cv-3212, 2010 WL 4642456 (S.D.N.Y. Nov. 16, 2010)......................................21, 24

*Tiffany & Co. v. Costco Wholesale Corp.,*
971 F.3d 74 (2d Cir. 2020)..........................................................................................................19

*Vantone Group Limited Liability Co. v. Yangpu NGT Industrial Co.,*
No. 13CV7639-LTS-MHD, 2015 WL 4040882 (S.D.N.Y. July 2, 2015) ............................19

*Watson v. N.Y. Doe 1,*
439 F. Supp. 3d 152 (S.D.N.Y. 2020)........................................................................................17

*Willis v. Westin Hotel Co.,*
651 F. Supp. 598 (S.D.N.Y.1986) ...........................................................................................25

*Yangtze Riv. Port & Logistics Ltd. v. Hindenburg Research,*
150721/2019, 2020 N.Y. Misc. LEXIS 877 (N.Y. Sup. Ct. N.Y. Cty. Feb. 25,
2020) .............................................................................................................................................17

**Statutes**

15 U.S.C. § 1125...........................................................................................................................19

Lanham Act............................................................................................................... *passim*

Table of Authorities
(continued)

**Page**

**Other Authorities**

Executive Order [A. Cuomo] Nos. 202.8, 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72 [9 NYCRR 8.202.8, 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.67, 8.202.72] ....................................18

Fed. R. Civ. P. 8(a)(2) ..................................................................................................6

Fed. R. Civ. P. 12(b)(1) ...........................................................................................6, 25

Fed. R. Civ. P. 12(b)(6) .............................................................................................6, 7

1 Moore's Federal Practice ¶ 0.74[3–3] .....................................................................24

iv

Plaintiffs LoanStreet Inc. and Ian Lampl respectfully submit this opposition to Defendant Wyatt Troia's motion to dismiss.

## I.  <u>Preliminary Statement</u>

After being terminated for, among other reasons, poor performance and an inability to take direction from his manager, Defendant Wyatt Troia waged an internet smear campaign, posting over and over that Plaintiffs LoanStreet, a financial technology startup company, and Ian Lampl, its CEO, committed "fraud" and "cheated" him out of stock options. Troia went so far as to purchase advertising space on Google, so that any searches for "LoanStreet"—Plaintiffs' protected trademark—would be redirected to his posts rather than to legitimate search results. Defendant's posts were not just hyperbolic insult—they were false factual allegations made with the professed intent to harm Plaintiffs' business and drive away employees. Moreover, Defendant's false factual allegations were the clear product of deliberation and planning. Defendant went so far as to brag that Plaintiffs could not seek relief from a Court without "drawing more attention" to his attacks and "deepening" the harm he caused.

After overtures to Defendant failed to stop this behavior, LoanStreet and Lampl brought this action for defamation, defamation *per se*, injurious falsehood, and federal and state unfair competition. Troia's attempts to avoid these claims fail as follows, and as set forth in detail below.

## II.  <u>Statement of Facts</u>

Ian Lampl co-founded LoanStreet, an innovative financial technology company, in 2013. (Dkt. 3, ¶ 12.) Lampl has devoted the past eight years to LoanStreet. LoanStreet has grown to employ several dozen people and it does business with over 1,000 financial institutions, mostly nonprofit credit unions. (*Id.*, ¶ 13). Although Lampl and his co-workers are proud of these successes, LoanStreet is still a small company—it most recently raised $5,000,000 of venture

1

capital in 2019 (*id.*, ¶ 15)—and, like any other company, its future success hinges on, among other things, its reputation and its ability to attract and retain top talent.

Wyatt Troia started working at LoanStreet as an entry level programmer in March of 2019. (*Id.*, ¶¶ 17-18.) During his employment Troia received two separate grants of stock options. The first option grant was on July 22, 2019 to purchase 885 shares of common stock of LoanStreet. The second option grant was on January 15, 2020 to purchase 500 shares of common stock of LoanStreet. (*Id.*, ¶¶ 20-21.) *None* of those options had vested at the time of Troia's dismissal.

Troia was terminated from LoanStreet for, among other reasons, poor performance and an inability to take direction from his manager on June 12, 2020. (*Id.*, ¶ 27.) Around that time, Troia posted disparaging and defamatory remarks about the Plaintiffs on various internet websites and similarly disparaged the Plaintiffs in a company-wide email.[1] (*Id.*, ¶¶ 26-30, 33.) Then, in June 2021, Troia began a campaign seeking to harm Plaintiffs' reputation by writing lengthy, defamatory posts on employment-related websites (e.g., Glassdoor, Teamblind, and the computer science careers Reddit community) and by paying for a Google Ad campaign that included Google Ads with their own defamatory statements as well as links to his other defamatory posts. In his defamatory posts, Troia repeatedly lied, accused LoanStreet of criminal activity, and posted with an intent to injure Plaintiffs' reputation, claiming that LoanStreet was "fraudulent," that LoanStreet "cheated" him out of $100,000 in equity, and that this money was instead "pocketed" by Lampl. Troia's posts are included or referenced in the Complaint. (*See, e.g.*, Dkt. 3, ¶¶ 36-45, 48-51.)

LoanStreet has properly pled and intends to show in this action that Defendant's factual assertions are false, including: that he was fired without warning, that he was promised "$100k"

---

[1] Troia's employment agreement included a non-disparagement clause. Plaintiffs allege that certain statements made by Defendant violate that clause and therefore he is in breach of his contract. Defendant is not challenging this breach of contract claim in his motion, and so the details regarding that allegation are not included in this recitation of facts.

in options and LoanStreet withheld those options from him, and that Ian Lampl "pocketed" his options instead. Since LoanStreet granted Troia's options but none of those options had vested at the time of his termination (*id.*, ¶¶ 20-21) the allegations that LoanStreet "cheated" Troia, committed "fraud," or "withheld options," let alone $100,000 in equity, are verifiably not true. Other statements alleging facts in Troia's posts are incorrect as well, including regarding LoanStreet's vacation (PTO) policy, whether LoanStreet fires people without warning, and the makeup of LoanStreet's engineering group. Included in the Defendant's posts were defamatory *per se* allegations that LoanStreet and Ian Lampl were engaged in crimes of moral turpitude by virtue of their fraud and have engaged in matters incompatible with the proper conduct of their business, trade, or office. These defamatory *per se* statements include the seven listed in paragraph 76 of the Complaint. (Dkt. 3, ¶ 76(a)-(g).) Also included in his posts were other defamatory statements, eight of which are listed in paragraph 93 of the Complaint. (Dkt. 3, ¶ 93(a)-(h).)

Troia has also engaged in a Google Ad campaign, where he purchased Google Ads that are presented in response to Google searches for the term "LoanStreet." LoanStreet is trademarked, and Troia has improperly used the trademark to drive consumers and others away from LoanStreet and to his posts instead. (Dkt. 3, ¶¶ 48-55.)

Defendant has continued to post about Plaintiffs. For example, in a comment to his Teamblind post, Troia bragged that Plaintiffs could not seek court relief without "drawing more attention" to his posted attacks and "deepening" the harm he caused, which shows he was deliberate and not only knew a lawsuit might be coming, but almost welcomed it. (Dkt. 3, p. 12.) Within the past few weeks, Defendant has gone so far as to post about this lawsuit. (Declaration of Ryan Singer ("Singer Decl."); Exhibits A, B).

3

## III.    Procedural Background

On July 21, 2021, Plaintiffs commenced this action against the Defendant, asserting causes of action for breach of contract, defamation *per se*, defamation, injurious falsehood, unfair competition and false designation of origin under the Lanham Act, and common law unfair competition, seeking monetary damages and permanent injunctive relief. (Dkt. 3, ¶ 63.) On September 8, 2021 Defendant filed to request a pre-motion conference regarding a partial motion to dismiss under Fed. R. Civ. P. 12(b)(6).

On November 1, Defendant filed his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendant does not challenge the breach of contract claim. Defendant seeks to dismiss the remaining claims under Rule 12(b)(6). Although Defendant made no mention of it in his pre-motion letter, Defendant also challenges this Court's subject matter jurisdiction in the event the Lanham Act allegations are dismissed, with a declaration to support a supposed lack of diversity jurisdiction.

The Complaint alleges diversity jurisdiction because Plaintiffs are New Yorkers[2] and the Defendant is a citizen of Nebraska. The Defendant now argues he is a citizen of New York. After Defendant submitted his motion, and only in response to a request from Plaintiffs, Defendant produced an additional 15 pages of documents aside from the attachments to his declaration allegedly related to domicile. Defendant has repeatedly refused to be deposed on the contents of those documents, on his domicile, or on the contents of his declaration. (Singer Decl.; Exhibit C).

## IV.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must provide the grounds upon which the claim rests. *Abdullahi v. Pfizer, Inc.*, 562

---

[2] Lampl is a citizen of New York State, and LoanStreet is a Delaware Corporation with its Headquarters in New York City.

F.3d 163, 172 (2d Cir. 2009); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017). The standard "is heavily weighted in favor of the plaintiff," and the Court must "read a complaint generously." *Lee v. Sony BMG Music En't., Inc.*, 557 F. Supp. 2d 418, 423 (S.D.N.Y. 2008).

## V.  Argument

### A.  The Complaint Adequately Pleads Claims of Defamation *Per Se* And Defamation.

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d. Cir. 2001) (quoting *Hogan v. Herald Co.*, 84 A.D.2d 470, 474, 446 N.Y.S.2d 836, 839 (4th Dep't), *aff'd*, 58 N.Y.2d 630, 444 N.E.2d 1002 (1982)). The elements of a cause of action sounding in defamation are "(1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). A statement is defamation *per se* if it "(1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her or

his trade, business or profession; (3) imputes to the plaintiff a loathsome disease; or (4) imputes unchastity to a woman." *Levy v. Nissani,* 179 A.D.3d 656, 658, 115 N.Y.S.3d 418 (2020) (citation omitted).

Since falsity is an element of a defamation claim, and only facts are capable of being proven false, only statements alleging facts can be the subject of a defamation action. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-153, 623 N.E.2d 1163, 1167 (1993) (citation omitted); *see Davis v. Boeheim*, 24 N.Y.3d 262, 268 (2014). Because context is important to the analysis, courts do not consider the words in isolation, but "consider the communication as a whole, as well as its immediate and broader social contexts, to determine whether the reasonable listener or reader is likely to understand the remark as an assertion of provable fact." *Gross*, 82 N.Y.2d at 155.

Certain categories of accusations, including accusations of criminal or unethical activity and allegations relating to one's professional integrity that are susceptible of proof have repeatedly been held to be "expressions of fact". *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 721 (S.D.N.Y. 2014) ("Defendants' accusations are grounded in assertions of fact about Plaintiffs' business activities and are not framed in hyperbole, but rather purport to rely on documents that establish the existence of Plaintiffs' 'scheme'"); *see also Silsdorf v. Levine*, 59 N.Y.2d 8, 16, 449 N.E.2d 716, 720 (1983) ("although expressions of opinion are constitutionally protected, accusations of criminal or illegal activity, even in the form of opinion, are not"); *Giffuni v. Feingold*, 299 A.D.2d 265, 266, 749 N.Y.S.2d 716 (2002) (finding that certain statements were not loose, figurative, or hyperbolic, ''especially since'' they alleged criminal conduct). "Where a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed." *Celle*, 209 F.3d at 180 (2d Cir. 2000) (quoting *Ruder & Finn Inc v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670, 422 N.E.2d 518, 522 (1981)).

A statement of "opinion" may be defamatory if it implies that is based upon facts which are not disclosed, *Gross*, 82 N.Y.2d at 153-154, or "if either the facts on which they rely are false or if the statements mischaracterized the facts." *Restis*, 53 F. Supp. 3d at 723; *Albert*, 239 F.3d at 268; *Biro v. Conde Nast*, 883 F.Supp.2d 441, 476 (S.D.N.Y. 2012) ("If this defamatory implication arose entirely from unchallenged facts, it would be protected as an expression of the author's opinion. But that is not the case. Biro challenges several of the underlying facts that give this section its defamatory sting.")

As described above, Plaintiffs identify seven defamatory *per se* statements in paragraph 76(a)-(g) of the Complaint and eight defamatory statements in paragraph 93(a)-(h). Defendant readily admits that all of the defamatory statements in paragraph 93 are statements of alleged fact. Defendant further admits that some of the defamatory *per se* statements in paragraph 76 are also statements of alleged fact. Since Plaintiffs aver in the Complaint that all of those statements are false, and in the case of the defamation *per se* statements either accuse Plaintiffs of a crime or are allegations relating to one's professional activity, all of those statements are therefore actionable. The remaining defamation *per se* statements are similarly not protected hyperbolic opinion since they are also verifiable, and are at a minimum grounded in facts alleged to be false. Moreover, Defendant does not dispute the remaining elements of defamation and defamation *per se* are met by his statements. Instead, Defendant merely alleges that the statements are true, protected hyperbolic opinion, and that two are barred by the statute of limitations. None of Defendant's arguments have merit and even then, questions as to the truth or falsity of Defendant's statements are not suitable for resolution in a motion to dismiss.

NY 78815359

1.      The Defamatory *Per Se* Statements Are Actionable

      a.      Defendant Admits That the First Two Defamatory *Per Se* Statements (Dkt. 3 ¶ 76(a)-(b)) Are Statements Alleging Facts

Defendant expressly admits that the first two defamatory *per se* statements identified in the Complaint (Dkt. 3, ¶ 76(a)-(b)) are statements alleging facts, and because Plaintiffs have properly pled them to be false, they are therefore actionable. *Gross*, 82 N.Y.2d at 152. The first pled defamatory *per se* statement is that "[LoanStreet] withheld $100k in options that they promised me before I was hired." (Dkt. 3, ¶ 76(a).) In his brief, Defendant admits that in his posts he "provides the **_facts_**" (Dkt. 27 at 11) (emphasis added) on which his opinions are based—that he "lays it all out there for the reader, letting the reader know how reached his opinion." (*Id.* at 13). He goes on to list those alleged facts to include the exact statement alleged to be defamatory *per se* in ¶ 76(a). (Dkt. 27 at 11 ("it [LoanStreet] withheld $100,000.00 worth of options that it promised to [Troia] in [Troia's] offer letter.").). Defendant also admits that the second defamatory *per se* statement ("[Lampl] just pocketed the options he promised me" (Dkt. 3, ¶ 76(b)) is a statement alleging facts. In his brief, Defendant admits that "[h]e also responded to certain third party comments **_to explain that his posts were truthful_**. He, for example, responded to a comment by writing, '**_[w]hen I say Lampl 'pocketed' the options_**, I am speaking of him operating in his role as the chief executive of the company, not saying that he personally took possession of the options." (Dkt. 27 at 7) (emphasis added, footnotes omitted).

LoanStreet properly pled and intends to show in this action that both of these alleged factual assertions are false. The Defendant was never "promised" $100,000 in stock options; Defendant's offer letter stated he would be granted "an option to purchase 885 shares" subject to approval of LoanStreet's Board of Directors. LoanStreet did not "withhold" any options from the Defendant. His options were granted but did not vest. As alleged in the Complaint, the Defendant

8

"purposefully and falsely equates the granting of his options with the vesting of his interest." (Dkt. 3, ¶ 21.) The Defendant *received* two separate grants of options (Dkt. 3, ¶ 20), each with its own vesting schedule (*id.*), but the Defendant was let go before any options vested. Plaintiffs also intend to show that Defendant intentionally over-inflated the value of his options to sensationalize his story and draw more attention to it. By his own admission, Defendant viewed the total value of all his options to be at most a few thousand dollars, magnitudes less than $100,000. Even under Defendant's false allegation of events, only some of his options would have vested at the time of his termination.

Defendant's statement that Lampl "pocketed" Troia's options is also demonstrably false. Lampl did not receive (or pocket) any of the options promised to Troia. Notably, Defendant attempted, and failed, to rationalize the statement, tacitly admitting that the statement is a statement of an alleged fact.  (*See* Dkt. 3, at 13 "When I say Lampl 'pocketed' the options, I am speaking of him operating in his role as the chief executive of the company, not saying that he personally took possession of the options." quoting Defendant's comment to his Reddit post.) Defendant's attempt to clarify his prior statement was not curative for multiple reasons: first, because he chose to make this as a comment, buried under his post, which an average reader would not be expected to see. Second, because the clarification is still false. The only way Lampl can receive stock options is "in his role as CEO" and he did not receive Troia's options in that capacity either. And third, because damage was already done. (Dkt. 3, ¶ 46.)

Defendant does not otherwise contest that the statements identified in ¶ 76(a)-(b) of the Complaint are defamatory. Since these statements tend to impugn the basic integrity or creditworthiness of a business, these statements are adequately pled to be defamation *per se*. *Celle*, 209 F.3d at 180.

> b.   The Remaining Defamatory *Per Se* Statements Are Also
> Verifiable, Not Hyperbolic Opinion, And at a Minimum Are
> Grounded in Challenged Facts.

The remaining defamatory *per se* statements ¶ 76(c)–(g) are similarly verifiable and not protected as hyperbolic opinion: "[Lampl] defrauded me out of over $100k" (Dkt. 3, ¶ 76(c)); "[Lampl] is a rich con man" (*id.*, ¶ 76(d)); "[LoanStreet] is a fraudulent, exploitative mess" (*id.*, ¶ 76(e)); "Look in the mirror and ask yourselves how your loved ones would feel if they knew you cheat people just to make your big piles of cash a little bigger" (*id.*, ¶ 76(f));[3] and "LoanStreet (NY) cheated me out of equity" (*id.*, ¶ 76(g)).

*First*, Defendant does not contest that these statements either accuse Plaintiffs of a crime and/or are allegations relating to one's professional activity. Such allegations have repeatedly been held to be actionable "expressions of fact."[4] *Restis*, 53 F. Supp. 3d at 721 (S.D.N.Y. 2014). This is especially the case within the broader context of Defendant's statements. The tone of the Defendant's posts was calculated to give the impression that they were "the product of some deliberation, not of the heat of [the] moment," and to "convey 'facts' that are capable of being proven true or false." *Gross*, 82 N.Y.2d at 155-156 (citation omitted). Notably, these posts came a year after Defendant was terminated meaning he planned this campaign for twelve months. Defendant repeatedly ***told the public*** that everything in his statements was "true" (Dkt. 3 at 12) and meant to warn others about LoanStreet (*see, e.g.*, *id.* at 10 ("Work elsewhere"); *id.* at 11 ("Please follow the link and mark it as helpful so that the message is amplified and as many people

---

[3] Defendant's only argument against defamatory *per se* statement ¶ 76(f) is that the claim is barred by the statute of limitations. As discussed below, that argument is meritless and the statement is otherwise unchallenged. Regardless, this statement is actionable for the same reasons as the other defamatory *per se* statements.

[4] Defendant further commented on his fraud allegations on Reddit, noting that by "fraud" he did not use a legal definition, but a colloquial definition instead: "intentional perversion of truth in order to induce another to part with something of value or to surrender a legal right." (Dkt. 3 at 13.) This supposedly clarifying definition is largely the substantive criminal definition of fraud, so it is unclear what the comment changes. Second, this statement came as a buried comment, not as an edit to his post, so it is unlikely an average reader would even see it. In the eyes of an ordinary reader, it is still a harmful comment. Third, the damage was already done.

are warned as possible."), confirming that they were intended to be taken as factual by the reader. *Gross*, 82 N.Y.2d at 153 (noting the importance of the "full context of the communication in which the statement appears," including any "signal[s]" to the reader).

*Second*, Defendant's decision to include a few personal insults directed at Plaintiffs and their employees does not transform his factual statements into hyperbolic opinion and absolve him of the charge. Defendant repeatedly notes in his brief that he referred to Plaintiffs as, for example, "dirtbags" and "spineless sycophants" (Dkt. 27 at 1) and goes on to argue that those statements are not defamatory. This is at best a misleading distraction since Plaintiffs have not identified those statements as constituting defamation and these few statements do not change Defendant's professed intent to "lay[] it all out there for the reader, letting the reader know how he reached his opinion." (Dkt. 27 at 13.)

*Third*, even if some statements could in a vacuum be characterized as opinion, within the context of the full posts, and in particular, because they are based on and derived from contested facts, they are still actionable. Defendant relies almost exclusively on *Biro v. Conde Nast* to argue that his posts are protected opinions. But, importantly, *Biro* found that implications (e.g., of a "fraudulent investment scheme") are not protected when the facts underlying that implication are challenged. *Biro*, 883 F. Supp. 2d at 475–77; *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113-14 (2d Cir. 2010) (holding opinions based on alleged false facts are actionable against a defendant who published them with malice and  knowledge of the falsity or a reckless disregard for the truth of the underlying facts) (quoting *Davis v. Ross*, 754 F.2d 80, 85 (2d Cir. 1985); *see also Restis*, 53 F. Supp. 3d at 723 (S.D.N.Y. 2014) (finding opinions actionable "if either the facts on which they rely are false or if the statements mischaracterized the facts.")

Here, as described above, the underlying facts (as identified by Defendant in his brief "upon which the[] opinions are based") (Dkt. 27 at 11) are challenged as false. Defendant also imports his own facts from outside the Complaint to further justify his opinions, which is not only improper but further confirmation that the case should not be dismissed. For example, Defendant identifies as facts that "he asked LoanStreet to correct the vesting schedule to reflect what he understood from the COO," (Dkt. 27 at 12) and "the head of HR ignored his calls regarding the reasons for and circumstances of his firing and the status of the vesting of his equity." (*Id.*) Neither of these facts are alleged in the Complaint and at a minimum, discovery would be needed to learn whether they are true.

*Fourth*, Defendant also fails to address the Complaint's pled facts that at least some of his Google Ads are in-and-of-themselves defamatory by including statements like "They abruptly fired me & withheld the $100k in stock options they promised me" (Dkt. 3 at 14-15), especially because they were made in isolation without any supporting facts. *Gross*, 82 N.Y.2d at 153 (noting the importance of the "context of the communication in which the statement appears").

> 2. <u>The Defamatory Statements Identified in the Complaint at Paragraph 93 Do Not Constitute Unactionable Opinion; Indeed, Defendant Admits They Are Factual in Nature.</u>

Defendant makes the broad argument that his statements constitute unactionable opinion (Dkt. 27 at 9-13), but this argument does not plausibly apply to any of the statements alleged to be defamatory in Paragraph 93 of the Complaint. These statements assert provably false facts about the concrete steps involved in Defendant's hiring and firing, Plaintiffs' overall hiring practices, Plaintiffs' vacation policy, and the educational background of the LoanStreet workforce. (*See* Dkt.

3 at ¶ 93.) On pages 11 and 12 of his Memorandum, Defendant explicitly characterizes as factual every statement contained in Paragraph 93.[5] These statements are thus actionable.[6]

In particular, Paragraph 93(a) contains Defendant's very specific, harmful, and provably false claim that "[b]ased on Ian Lampl's valuation goal for the company, he defrauded me out of over $100k."  This statement by Defendant resembles a paragraph in an indictment much more closely than any casual, hyperbolic or colorful opinion. None of Defendant's arguments suffice to render this statement unactionable opinion.  *First*, this statement does not qualify as hyperbole. The statement is phrased as a cold-blooded accusation that Lampl deprived the Defendant of a specific sum of money—to wit, $100,000. Moreover, Defendant himself has confirmed that he meant this statement to be taken literally. In a follow-up post made several days later, Defendant interpreted his own previous statement while citing to the dictionary: "I use the word 'defraud'," he wrote, to mean the "intentional perversion of truth in order to induce another to part with something of value or to surrender a legal right." (Dkt. 3 at ¶ 45.) In his brief, Defendant describes this moment as one where he "responded to certain third party comments to explain that his posts were truthful." (Dkt. 27 at 7.) As described above, Defendant did not eliminate or even mitigate the defamatory quality of his statements through such post-facto clarifications. Nevertheless, this episode does reveal that Defendant clearly intended the accusation in Paragraph 93(a) to be taken as the literal truth, not as mere opinion.

---

[5] *See* Dkt. 27 at 11 ("[Defendant] provides the facts upon which these opinions are based: [listing facts]"); Dkt. 27 at 12 ("[Defendant] provides the facts upon which these opinions are based: [listing facts]"); Dkt. 27 at 12 ("[Defendant] explains: [listing facts]").

[6] The only statement not mentioned and characterized as factual on pages 11 and 12 of Defendant's brief is his statement that: "[a] large percentage of LoanStreet engineers when I was there were bootcamp grads."  Dkt. 3 at ¶ 93(h). Nonetheless, this statement, too, is factual in nature.  Although somewhat imprecise, this statement concerns the relative proportion of the workforce who attended a computer-engineering bootcamp and is thus objective and capable of disproof.  Defendant argues that this statement is time barred by the statute of limitations. As discussed below, that argument is meritless and the statement is otherwise unchallenged.

*Second*, to the extent that Defendant argues that the statement in Paragraph 93(a) is an opinion "accompanied by a recitation of the facts upon which it is based" (Dkt. 27 at 10-13), the facts upon which that statement is based have been alleged by Plaintiffs to be false.  It therefore constitutes actionable defamation.

In sum, the entirety of Paragraph 93 consists of factual statements that have been pled as false or opinions based upon factual statements pled as false.  Defendant was never "promised" $100,000 in stock options and LoanStreet did not "withhold" or "defraud" him out of any options. (Dkt. 3, ¶¶ 20-21.)  LoanStreet pled and intends to show that other statements about LoanStreet by Defendant are also false statements of fact (Dkt. 3, ¶ 93), including statements regarding LoanStreet's vacation (PTO) policy; statements that LoanStreet fires people, including Troia, without warning; and statements concerning the makeup of LoanStreet's engineering group.

3.    Defendant's Statements Are Not "Substantially True," When Taken Individually or As a Whole

Defendant attempts to raise the defense of substantial truth (Dkt. 27 at 14-16.), loosely arguing that the "narrative" contained in his posts "largely match[es] Plaintiffs' narrative."  *Id*. at 15.  This argument is meritless and, in the context of Defendant's extended campaign against Plaintiffs, is disingenuous as well.  Defendant's narrative of events does not "largely match" Plaintiffs' narrative; and where the two narratives diverge, Defendant makes blatant misrepresentations.  In particular, his misrepresentations concerning his options grant and Plaintiffs' motives are extremely injurious to Plaintiffs and have played a crucial role in his smear campaign against Plaintiffs.

The Complaint alleges that Defendant's posts "falsely equate[] the granting of his options with the vesting of his interest," (Dkt. 3 at ¶ 21) and the other allegations in the Complaint clearly support this.  As part of its employment offer, LoanStreet granted Defendant options to purchase

14

stock of the Company, subject to the approval of LoanStreet's Board of Directors and the terms of LoanStreet's equity plan.  (Dkt. 3 at ¶ 19.)  LoanStreet's Board of Directors approved the option grants, whereupon Defendant's options began to vest pursuant to their written terms.  (Dkt. 3 at ¶ 20.)  However, none of those options vested and became exercisable before Defendant was terminated for poor performance and an inability to take direction from his manager.  (Dkt. 3 at ¶.)

Defendant's posts flatly misrepresent these events.  Defendant wrote that:

- LoanStreet "withheld $100k in options that they promised me before I was hired" (Dkt. 3 at ¶ 76(a));

- LoanStreet "promised me substantial equity with a standard one-year vesting cliff, then abruptly fired me after 15 months of work and refused to grant me the options" (Dkt. 3 at ¶ 93(b)); and

- Lampl "pocketed the options he promised me and . . . defrauded me out of over $100k" (Dkt. 3 at ¶¶ 76(b), 76(c)).

These statements are simply untrue.  LoanStreet granted Defendant his options; Defendant received his options; and those options began to vest pursuant to their terms.  But Defendant recklessly or maliciously phrased his statements in an untruthful way, stating that LoanStreet "withheld" his options, "refused to grant" him his options, and "defrauded" him out of his options.[7]

This opportunistic use of untruthful language in describing his option grant dovetails with the many other defamatory statements made in Defendant's posts, wherein he viciously defames Lampl's character, claiming that Lampl personally profited from Defendant's dismissal.  It is highly disingenuous for Defendant to claim that his statements "would not have a different effect

---

[7] Contrary to Defendant's brief (Dkt. 27 at 16), Plaintiffs do dispute Defendant's claim that "he was told one vesting schedule before he started working for them and was told another after commencing employment." (*See* Dkt. 3 at Paragraph 93(c) ("After I started, they told me that they actually meant 12 months after the next quarterly board meeting.").)

on the mind of the reader from that which the pleaded truth would have produced." (Dkt. 27 at 14.) The Defendant deliberately chose untruthful language exactly because it would have the effect of ascribing criminal and disreputable behavior to the Plaintiffs. Finally, Plaintiffs note that Defendant only argues that a small subset of his posted statements are "substantially true." The "substantial truth" defense does not apply to the remainder of the statements alleged by Plaintiffs to be defamatory.

4.      Statements Published on the Internet, Including on Social Media, Are Not Immune From Accusations of Defamation and Courts Have Repeatedly Found Such Statements Actionable

Importantly, and contrary to Defendant's motion, New York courts have repeatedly found statements made online, including on social media, to constitute defamation, as is the case here. *Watson v. N.Y. Doe 1*, 439 F. Supp. 3d 152, 162 (S.D.N.Y. 2020) (finding that a defendant's Facebook comments could "reasonably be read to suggest that [the defendant] intended to endorse the alleged defamatory statement that the plaintiff sexually assaulted women"); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 169, 173 (E.D.N.Y. 2019) (finding that plaintiff stated a defamation claim when defendant published "numerous statements, viewed by hundreds or thousands of people" on Facebook); *Krusen v. Moss*, 174 A.D.3d 1180, 1182, 105 N.Y.S.3d 607, 610 (2019) (finding that a statement on Facebook that the plaintiff was "pilfering free gas from taxpayers" was "susceptible to a defamatory meaning, in as much as it conveys, at a minimum, serious impropriety and, at worst, criminal behavior") (citations, alterations, and quotation marks omitted); *Solstein v. Mirra*, 488 F. Supp. 3d 86, 100–01 (S.D.N.Y. 2020) (citing *Watson*, *Goldman*, and *Krusen* and finding online statements based on facts that are challenged as untrue actionable).

Defendant's reliance on *Yangtze Riv. Port & Logistics Ltd. v. Hindenburg Research*, 2020 N.Y. Misc. LEXIS 7335 (N.Y. Sup. Ct. N.Y. Cty. Feb. 25, 2020) to argue otherwise is misplaced. There, what mattered was that the defendant made clear that the at-issue statements were opinions.

16

*See id*. at \*2-\*5 (quoting disclaimers identifying the at-issue statements as "**expressions of opinion**," and use of terms like "**_we think_**," and "**_lead us to believe_**." (emphasis in original)). As stated above, the broader context matters. Here, Defendant's statements are all declaratory statements. They do not include any qualifying disclaimers couching them as opinions. Instead, Defendant confirmed that they were to be taken as fact, noting that "everything [he has] said is true" and that he was "describing factual events." (Dkt. 3 at 12.). Moreover, the tone of Defendant's statements makes clear that these statements were not spur of the moment or heated, and were not made in the "freewheeling anything-goes" writing style that the *Yangtze* court noted has been found to be opinion, *id.* at \*15, or, e.g., in the course of a heated debate on Twitter. These numerous statements were made a year after Defendant's termination from LoanStreet in a deliberate and premeditated fashion.

5.     None of the Defamatory Statements Are Barred by the Statute of Limitations

There are two defamatory statements that Defendant argues are time barred: those listed in the Complaint at ¶ 76(f) ("Look in the mirror and ask yourselves how your loved ones would feel if they knew you cheat people just to make your big piles of cash a little bigger") and ¶ 93(h) ("A large percentage of LoanStreet engineers when I was there were bootcamp grads"). (*See* Dkt. at n.27.) Defendant's argument is meritless—those statements were part of posts that Defendant made to Reddit and Teamblind in June 2021, within about a month of the Complaint's filing and therefore are not time barred. (Singer Decl.; Exhibits D, E)[8]. To the extent Defendant argues they are nevertheless barred because he wrote them elsewhere more than a year before the Complaint, that is also incorrect because Defendant took an affirmative step to republish them both in 2021 to

---

[8] In deciding a motion to dismiss, a court can consider documents that are either attached to the complaint or incorporated into it by reference. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46–48 (2d Cir. 1991).

17

reach a new audience, triggering the start of a new statute of limitations. *Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 571 (S.D.N.Y. 2019) ("[r]epublication to a new audience or in a new forum does not come within the single publication rule.").[9]

### B. Plaintiffs' Injurious Falsehood Claims Are Grounded in Statements that Denigrate LoanStreet, Including Its Services

Defendant's challenge to the injurious falsehood claim once again ignores the contents of his own posts. Defendant is alleged to have denigrated LoanStreet and its reputation as a business. LoanStreet is a financial technology company—its products are implemented in software. In his defamatory posts, among other things, Defendant falsely criticizes LoanStreet's computer code (or software code), which goes to the heart of LoanStreet's services. For example, in his June 19, 2021 post to Reddit, Defendant falsely alleges a "critical error" with the code:

> The only problem I was aware of was that the CTO Larry Adams was upset with me because I discovered and fixed a critical error in code written by one of his favorite engineers. The engineer didn't remember why he had made the change and refused to help me investigate why tests were failing.

(Dkt. 3 at 11.) The code is part of LoanStreet's product and in this statement, Defendant has falsely denigrated its quality—accusing it of having a critical error. Defendant's assertion that none of his statements go to the quality of LoanStreet's goods or services is incorrect. (*See* Dkt. 27 at 16–17.)

### C. Plaintiffs Have Adequately Pled Its Lanham Act And State Unfair Competition Claims

"Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) it has a valid mark that is entitled to protection" and that (2) the defendant's actions are likely

---

[9] Furthermore, as a result of the COVID-19 pandemic, the former Governor of New York State issued a series of executive orders effectively tolling the statute-of-limitations from March 20, 2020 (before Defendant made his first posts) to November 3, 2020 (less than a year before the complaint was filed), and so the cause of action only began to accrue then. *Brash v. Richards*, 195 A.D.3d 582, 585, 149 N.Y.S.3d 560 (2021). *See also* Executive Order [A. Cuomo] Nos. 202.8, 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72 [9 NYCRR 8.202.8, 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.67, 8.202.72].

to cause confusion with that mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (internal quotations omitted); 15 U.S.C. § 1125. The requirements under New York common law and the Lanham Act are identical. *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13CV7639-LTS-MHD, 2015 WL 4040882, at *5 (S.D.N.Y. July 2, 2015). Defendant does not dispute that the Plaintiffs' trademark is valid and protected, but seeks to dismiss these claims by asserting that "Defendant did not 'use' Plaintiffs' trademark and no confusion exists about including 'LoanStreet' in his ads." (Dkt. 27 at 17.) Both arguments are misplaced.

1.  The Purchase of Plaintiff LoanStreet's Trademark as a Google Adword is a "Use in Commerce" Under the Lanham Act

Appellate courts, including the Second Circuit, have established that the buying and selling of a trademark as a keyword for a search engine advertisement, as Defendant did here (*see* Dkt. 3, ¶ 116), is a "use in commerce" under the Lanham Act. *See, e.g.*, *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127–31 (2d Cir. 2009) (holding that that the selling of a trademark as an adword constitutes a "use in commerce" because, unlike metatags, it is not strictly internal and rather is communicated to the public); 5 McCarthy on Trademarks and Unfair Competition § 25A:6 (5th ed.) ("By 2011, the issue was resolved and both the Second Circuit and the Ninth Circuit held that use of a trademark as a keyword to display an advertisement does qualify as a "use in commerce" under the Lanham Act."); *see also Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 759–60 (S.D.N.Y. 2021). The decision that Defendant relies on, *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp. 2d 545 (E.D.N.Y. June 12, 2007) relies heavily on the district court decision that was overturned in *Rescuecom*. *See, e.g.*, 493 F. Supp. 2d at 553.

NY 78815359

2.      By Driving Prospective Users of LoanStreet's Services Away From
        LoanStreet's Website, Defendant Has Used Plaintiff's Mark "In
        Connection With" the Distribution of Services

Defendant need not have a competing service in order to "use" and thereby infringe

Plaintiffs' trademark. Instead, Defendant's use of Plaintiffs' trademark is "in connection with the

distribution of services" because "it is likely to prevent some Internet users from reaching

plaintiff's own Internet web site." *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 CIV.

0629 (KMW), 1997 WL 133313, at *4 (S.D.N.Y. Mar. 24, 1997), *aff'd*, 152 F.3d 920 (2d Cir.

1998); *see also OBH, Inc. v. Spotlight Mag., Inc.*, 86 F. Supp. 2d 176, 186 (W.D.N.Y. 2000)

("[T]he 'in connection with' requirement is not only met by use of the mark in connection with

goods or services distributed or advertised by the alleged infringer; it may also be met by use in

connection with the goods or services distributed by the trademark holder . . . . Here, defendants'

use of the mark is 'in connection with' the distribution or advertising of services, because it is

likely to prevent or hinder Internet users from accessing plaintiffs' services on plaintiffs' own web

site") (internal citations omitted). Analogous facts to those in *Planned Parenthood* and *OBH* are

pled here: Defendant purchased Google Ads using the trademark "LoanStreet," with the express

purpose of diverting Internet users away from LoanStreet's website and to his own posts. (Dkt. 3,

¶¶ 51-54.) As in *Planned Parenthood* and *OBH*, this alone defeats Troia's argument that he did

not "use" the mark in connection with services.

Defendant's argument also fails because his posts are commercial in nature. The core

alleged harm in the Defendant's posts is that Plaintiffs "abruptly fired [him] and withheld $100k

in options that they promised" (Dkt. 3 at 8) and therefore the remedy of paying him is commercial

and supports a finding of trademark infringement. *See Int'l Profit Assocs., Inc. v. Paisola*, 461 F.

Supp. 2d 672, 674–75 (N.D. Ill. 2006) (finding that a temporary restraining order was appropriate

for the company's trademark infringement claims where Defendant "us[ed] terms trademarked by

[Plaintiff] as search terms in Google's Adwords program" to drive traffic to his website where he continuously published negative information about Plaintiff in order to get Plaintiff to settle a collection dispute with a former customer). And his posts are intended to drive consumers, employees, and investors away from LoanStreet.

3.      <u>Plaintiffs Have Adequately Pled a Likelihood of Confusion</u>

Courts in the Second Circuit apply an eight factor test to assess likelihood of confusion: (1) the strength of his mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) the likelihood that the prior owner will bridge the gap, (5) actual confusion, (6) the reciprocal of defendant's good faith in adopting its own mark, (7) the quality of defendant's product, and (8) the sophistication of the buyers. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Importantly, likelihood of confusion is a "fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." *The Name LLC v. Arias*, No. 10-cv-3212, 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010) (internal citations omitted).

Defendant heavily relies on the "actual confusion" *Polaroid* factor to assert that the unfair competition claims should be dismissed. As an initial matter, Plaintiff is not required to prove actual confusion to prove trademark infringement. 4 McCarthy on Trademarks and Unfair Competition § 23:12 (5th ed.); *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 45 (2d Cir. 2016) ("[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source") (citations omitted).

Defendant's arguments that there can be no actual confusion are without merit. Defendant argues that, when a consumer mistakenly clicks on Defendant's ads, no confusion exists because "they will be directed to Reddit.com's website, not Loanstreet's." (Dkt. 27 at 20). Defendant's statements prove the precise point; that consumers will click his ads and be directed away from

LoanStreet's website and instead to his own posts. Troia designed his ads to attract consumers that were searching for LoanStreet's website to his posts instead. Troia did not simply "purchase[] Google ads that contain the term 'LoanStreet.'" (Dkt. 27 at 1). He deliberately designed ads using LoanStreet's trademark to confuse consumers. Troia used LoanStreet's trademark as the first word in the title of his ads, capitalized the same letters (the L and S) as LoanStreet does in its own ads, and paid to have his ads appear first (where consumers would naturally expect to find LoanStreet's legitimate website) when consumers searched Google using the LOANSTREET trademark. Defendant additionally argues that "no confusion exists on what the 'ads' are about since they include a quote about Defendant's experience working for Plaintiffs." (Dkt. 27 at 20.) This is also misleading and at a minimum a disputed fact. Some of the ads prominently display phrases like "LoanStreet Careers" and "LoanStreet Engineering"—phrases that may draw attention to clients, potential employees, and investors. (Dkt. 3 at 14.) Defendant also argues there is no actual confusion because his ads "clearly display a link to Reddit.com." But the reference to reddit is small, and thus would easily be missed by a consumer searching for LoanStreet. (Dkt. 3 at 14.)

At a minimum, Defendant's use of Plaintiff LoanStreet's trademark is thus likely to cause consumer confusion in the form of initial interest confusion. "Initial interest confusion is confusion that 'creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion.'" *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 427 (5th Cir. 2021) (internal quotations omitted); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F. 2d 254, 260 (2d Cir. 1987) ("[I]nitial confusion works a sufficient trademark injury."). In *Adler*, for example, the Defendant operated a lawyer referral website and used Plaintiff's trademarked law firm name to drive web traffic away from the Plaintiff's website and to a call center instead, so that consumers may ultimately choose a different lawyer instead of the Plaintiff. The Fifth Circuit

(synthesizing the law of several circuits) found that this constituted trademark infringement at least because of the initial interest confusion that caused confused consumers to go to the wrong website. *Adler*, 10 F.4th 427. The facts here are analogous. The Defendant uses "LoanStreet" as a Google keyword and in the Ad itself in an intentional manner to confuse consumers, investors, and potential employees and drive web-traffic away from LoanStreet's website and to his posts instead. His posts then advocate staying away from LoanStreet and instead advocate that the reader go elsewhere (i.e., the same result as in *Adler*).

Finally, Defendant asserts in conclusory fashion that the other *Polaroid* factors weigh in favor of dismissal because "Defendant does not have any products or services nor does he have his own trademark." (Dkt. 27 at 20.) That Defendant does not have his own mark makes confusion **more** likely, under *Polaroid* factor 2, since he uses LoanStreet's **exact trademark**. Further, as described above, Defendant need not have his own services for a finding of infringement. *See also* 4 McCarthy on Trademarks and Unfair Competition § 24:13 (5th ed.) ("Competition between the parties is not necessary for there to be a likelihood of confusion"). Moreover, Defendant ignores other pled facts that weigh in favor of an infringement finding. For example, the strength of the mark (*see* Dkt. 3, ¶¶ 113-15) (*Polaroid* factor 1), that Defendant did not act in good faith (*see* Dkt. 3, ¶¶ 117-20) (*Polaroid* factor 4), that the ads for Defendant's posts and the actual LoanStreet website confusingly appear directly next to each other in response to searches for "LoanStreet", and the target audience for these ads are web-browsers who are likely to be initially confused by Defendant's ads (Dkt. 3, ¶¶ 51-54) (*Polaroid* factor 8). The Federal and State unfair competition and false designation of origin[10] allegations are well pled and should not be dismissed, especially when, like here, the inquiry will be fact intensive. *The Name LLC*, 2010 WL 4642456, at *5.

---

[10] Contrary to Defendant's strawman arguments, Plaintiffs have not pled false advertising (Dkt. 27, 20-21) and the false designation of origin allegations are properly pled as analogous to traditional trademark infringement. *See Audi*

### D.  Diversity Jurisdiction Exists

In addition to subject matter jurisdiction, the Court also has diversity jurisdiction because, as pled, Troia was domiciled in Nebraska when the Complaint was filed. "Once domicile is established in one state, it is presumed to continue in existence, even if the party leaves that state, until the adoption of a new domicile is proven." *Bevilaqua v. Bernstein*, 642 F. Supp. 1072, 1073 (S.D.N.Y. 1986) (internal citations omitted). "Among the influential factors are the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment." 1 Moore's Federal Practice ¶ 0.74[3–3] at 707.64.

Here, there is no dispute that Troia is from Nebraska (Singer Decl.; Exhibit F) and that Nebraska was his domicile. *See Aroch v. Yohai*, No. 16 CIV. 8954 (LLS), 2017 WL 7512814, at *2 (S.D.N.Y. July 26, 2017). The presumption therefore is that Troia is a citizen of Nebraska and it is his burden by "clear and convincing evidence" to establish a change in domicile. *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243 (2d Cir. 1984). Defendant has not met this burden. To the contrary, evidence shows he still treats his "home" as being in Nebraska. He has a Nebraska driver's license that does not expire until 2023 and lists a Nebraska address. (Singer Decl.; Exhibit G, D_00009). At the time of the Complaint's filing, he was registered to vote in Nebraska. (Singer Decl.; Exhibit H, I). Indeed, an absentee ballot was sent to Troia in September 2021, well after the Complaint was filed. *Id*. He maintains a bank account in Nebraska. (Singer Decl.; Exhibit G, D_00011). He has a Nebraska cellphone. (Declaration of Michelle Bates ("Bates Decl."); Exhibit

---

*AG v. Shokan Coachworks, Inc.*, 592 F. Supp. 2d 246, 271 (N.D.N.Y. 2008) ("a false designation of origin claim … under 15 U.S.C. § 1125(a) may be analyzed under the same elements as a claim for trademark infringement under § 1114") (citing *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F.Supp.2d 455, 467 (E.D.N.Y.2008) *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 137 (2d Cir.1999)).

1). At the onset of the COVID-19 pandemic, he returned home to Nebraska, a fact he readily admits. (Declaration of Wyatt Troia; ¶¶ 4-5) (Singer Decl.; Exhibits K, L). Moreover, while Defendant last updated his contact information in the Company's records in December 2020, he continued to list home address as in Nebraska. (Bates Decl.; ¶¶ 3-5).

Troia submitted a declaration to allege he is domiciled in New York, and after Plaintiffs' request, served additional documents (Singer Decl.; Exhibit G), but these do not overcome the presumption that his true home remains in Nebraska. He has not identified any property he owns, or any leases he has signed in New York. To the contrary, the apartment he has stayed in is his parents'. He showed voter registration in New York, but it was effective October 29, 2021, just a few days before filing his motion to dismiss—well after the complaint was filed and well after his pre-motion letter. He has refused to show his tax returns. And Defendant has also refused to sit for a deposition regarding his declaration (Singer Decl.; Exhibit C), and consequently, Defendant's declaration should be given little or no weight. *Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y.1986) ("Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of intent to make it one's home, of course cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent.") Troia cannot show that he ever changed his domicile from Nebraska and therefore, his Rule 12(b)(1) challenge to this Court's jurisdiction should fail.

## VI.   <u>Conclusion</u>

For the foregoing reasons, Defendant's motion to dismiss should be denied as to every ground that it has raised in its motion

Dated: New York, New York
      November 23, 2021

Respectfully submitted,

*/s/ Christopher M. Gerson*

Timothy K. Gilman
Christopher M. Gerson
Ryan J. Singer
STROOCK & STROOCK &
LAVAN LLP
180 Maiden Lane
New York, N.Y. 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: tgilman@stroock.com
Email: cgerson@stroock.com
Email: rsinger@stroock.com

*Attorneys for LoanStreet Inc.*
*and Ian Lampl*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2021, I caused a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** to be filed and served electronically by means of the Court's CM/ECF system in accordance with Federal Rules of Civil Procedure and/or the Local Rules of this Court, upon the following counsel of record:

> Douglas Brian Lipsky
> Lipsky Lowe LLP
> 630 Third Avenue Fifth Floor
> New York, NY 10017
> Email: doug@lipskylowe.com
>
> Sara Jacqueline Isaacson
> Lipsky Lowe LLP
> 420 Lexington Avenue, Suite 1830
> New York, NY 10170
> Email: sara@lipskylowe.com
>
> *Attorneys for Defendant Wyatt Troia*

*/s/ SIGNATURE*