UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
LOANSTREET, INC., and IAN LAMPL,
Individually,

              Plaintiffs,

      - against –

WYATT TROIA, Individually,

              Defendant.
------------------------------X

**MEMORANDUM AND ORDER**

21 Civ. 6166 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    LoanStreet Inc. ("LoanStreet" or the "Company") operates an online platform that allows users to share, manage, and originate loans. Wyatt Troia was employed as a software engineer at LoanStreet from February 2019 until June 12, 2020, when he was fired from the Company, allegedly for cause. Throughout 2020 and 2021, Troia posted statements on several different websites disparaging LoanStreet and its CEO Ian Lampl, accusing them of unlawfully withholding stock options owed to Troia and other improper employment practices. LoanStreet discovered Troia's posts and attempted to resolve the matter consensually. When those attempts failed, LoanStreet and Lampl brought suit against Troia, asserting seven causes of action: breach of contract, defamation per se, defamation, injurious falsehood, unfair competition and false designation of origin under Lanham Act Section 43(a), common law unfair competition, and permanent injunctive relief. See

Complaint, ECF No. 3.   Presently before the Court is defendant's
motion to dismiss the Complaint for failure to state a claim under
Rule 12(b)(6) and lack of subject matter jurisdiction under Rule
12(b)(1).  For the foregoing reasons, defendant's motion is granted
in part and denied in part.

<u>**BACKGROUND**</u>

The following facts are drawn from the Complaint and are
accepted as true for the purposes of the Court's ruling on
defendant's motion to dismiss.   In 2013, Ian Lampl co-founded
LoanStreet Inc., an online platform that allows financial
institutions and other users to share, manage, and originate loans.
Compl. ¶¶ 11-12.   In February 2019, LoanStreet hired Wyatt Troia
as a software engineer.   <u>Id.</u> ¶ 17.   Troia's term of employment
officially commenced the following month.   <u>Id.</u> ¶¶ 17, 23.   In
addition to a six-figure salary and standard benefits, Troia was
granted options to purchase LoanStreet's common stock pursuant to
the Company's 2016 Equity Incentive Plan and stock option grant
agreement.   <u>Id.</u> ¶ 19.  Under the agreement, Troia's options would
vest on the first anniversary of his vesting commencement date, if
he was still employed by LoanStreet at that time.   <u>Id.</u>   Troia
received two option grants, the first on July 22, 2019 to purchase
885 shares of common stock, and the second on January 15, 2020 to

-2-

purchase 500 shares of common stock.  Id. ¶ 20.  Each grant had its own vesting schedule.  Id.  As a condition of his employment, Troia executed an Employee Non-Disclosure and Invention Assignment Agreement ("NDIAA").  Id. ¶ 22.  On June 12, 2020, LoanStreet terminated Troia's employment, allegedly for, among other things, "the poor quality of his engineering, his lack of engagement with his team, and his inability to cooperate with his peers or take direction from his superiors."  Id. ¶ 27.

Between April and June 2020 — while Troia was still employed by LoanStreet — and then again starting in June 2021, Troia posted disparaging statements about LoanStreet, Lampl, and other LoanStreet employees on various websites across the Internet, including on Glassdoor.com, Reddit.com, and Teamblind.com.  Id. ¶¶ 24-26, 33, 34-38, 42-44.  Troia's grievances centered on the accusation that LoanStreet and/or Lampl cheated Troia out of $100,000 in stock options.  For example, Troia wrote on Glassdoor.com — a job website that aggregates company reviews, salary information, and other employer intel — that "[b]ased on Lampl's valuation goal for the company, he defrauded me out of over $100k."  Id. ¶¶ 36-37.  In addition, on the day of Troia's firing, he sent a company-wide message via Slack, followed by an identical e-mail sent to Lampl with the entire Company copied,

"call[ing] the Company and its leadership into disrepute," and stating that he would "be doing [his] best to warn all potential future employees to avoid LoanStreet." Id. ¶¶ 27-28, 30.

Troia took various steps to magnify the reach of his posts. In the body of the posts, he asked users to "follow [his] link and mark it as helpful so that the message is amplified and as many people are warned as possible." Id. ¶ 42. Troia also tagged the personal LinkedIn profiles of LoanStreet employees on the posts, which spurred a flurry of hate messages sent directly to the employees. Id. ¶ 41. Finally, Troia took the additional and distinct step of purchasing advertisements on Google linked to the LoanStreet name, so that when users searched for LoanStreet in Google's search engine, they were shown advertisements displaying excerpts from Troia's statements and linking to Troia's disparaging posts. Id. ¶¶ 48-49.

On June 24, 2021, LoanStreet served Troia with a letter demanding that he retract all defamatory statements and cease publishing any others. Id. ¶¶ 57-58. Troia rebuffed LoanStreet's attempt to resolve the matter consensually. Id. ¶ 59. Thereafter, on July 19, 2021, LoanStreet and Lampl commenced this action. As of the date of the writing of this opinion, Troia's statements remain accessible online.

-4-

## LEGAL STANDARDS

Defendant moves to dismiss this action under Rule 12(b)(6) for failure to state a claim and Rule 12(b)(1) for lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1), (6).  "When presented with motions to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6), 'the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has the subject matter jurisdiction necessary to consider the merits of the action.'" Khodeir v. Sayyed, No. 15 Civ. 8763 (DAB), 2016 WL 5817003, at *3 (S.D.N.Y. Sept. 28, 2016) (quoting S.E.C. v. Rorech, 673 F. Supp. 2d 217, 220-21 (S.D.N.Y. 2009)); see Town of West Hartford v. Operation Rescue, 915 F.2d 92, 99 (2d Cir. 1990) ("The question of subject matter jurisdiction must be confronted at the threshold of the case.").

### A.   Rule 12(b)(1)

Plaintiffs maintain that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), and 1338 (trademark). Compl. ¶ 8.  Defendant's rebuttal has two components.  Defendant first argues that there is no federal question jurisdiction because plaintiffs have failed to state a viable Lanham Act claim, the only federal claim asserted in the Complaint.  Defendant then argues that in the absence of a valid federal claim, subject matter

jurisdiction is lacking because the parties are not diverse.[1]
Memorandum of Law in Support of Defendant's Motion to Dismiss
Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(6) and 12(b)(1)
("Mot.") at 2, ECF No. 27.

To determine whether federal question jurisdiction exists,
"it is not necessary to decide whether [the] alleged cause of
action . . . is in fact a cause of action 'on which [the plaintiff]
could actually recover.'" Operation Rescue, 915 F.2d at 100
(quoting Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438
U.S. 59, 70 (1978)); see Monroe v. Hyundai of Manhattan and
Westchester, No. 07 Civ. 8777 (GBD), 2008 WL 4891223, at *4
(S.D.N.Y. Nov. 12, 2008) ("Federal question jurisdiction is not
dependent on the existence of a valid federal claim."). Rather,
as the Second Circuit has explained:

> [I]n cases where the asserted basis for subject matter
> jurisdiction is also an element of the plaintiff's
> allegedly federal cause of action, we ask only whether—
> on its face—the complaint is drawn so as to seek recovery
> under federal law or the Constitution. If so, then we
> assume or find a sufficient basis for jurisdiction, and
> reserve further scrutiny for an inquiry on the merits.

---

[1] Defendant argues that the parties are not diverse because plaintiffs are
domiciled in New York and so is he. Mot. at 22-23. Plaintiffs assert that
defendant's true domicile is Nebraska. Plaintiffs' Opposition to Defendant's
Motion to Dismiss the Plaintiffs' Complaint ("Opp.") at 24-35, ECF No. 32. For
the reasons explained herein, the Court need not resolve this dispute. Still,
the Court notes that if, as plaintiffs maintain, defendant has refused to be
deposed on the issue of domicile or to produce any tax returns or utility bills,
it would be difficult if not impossible for the Court to resolve the issue of
diversity.

Nowak v. Ironworkers Loc. 6 Pension Fund, 81 F.3d 1182, 1189 (2d Cir. 1996).  "As long as the federal claim is colorable, a court properly assumes jurisdiction over the subject matter of the suit." Savoie v. Merchants Bank, 84 F.3d 52, 57 (2d Cir. 1996); see Duke Power, 438 U.S. at 70-71 (stating that in federal question cases, "the test is whether the cause of action alleged is so patently without merit as to justify . . . the court's dismissal for want of jurisdiction") (internal quotation marks and citation omitted).

Here, plaintiffs assert a cause of action for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), arising from defendant's use and public display of plaintiffs' trademark in several advertisements purchased via Google.  These allegations easily hurdle the low bar required for federal question jurisdiction.  As such, defendant's Rule 12(b)(1) arguments fail.[2]

## B.   Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The assessment of

---

[2] Because subject matter jurisdiction exists under 28 U.S.C. § 1131, the Court need not, and does not, address the disputed issue of diversity jurisdiction. For the same reason, the Court also does not address defendant's arguments regarding supplemental jurisdiction.

whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of'" unlawful conduct.  Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (quoting Twombly, 550 U.S. at 556); see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  In deciding a Rule 12(b)(6) motion to dismiss, courts must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." Arar v. Ashcroft, 585 F.3d 559, 567 (2d Cir. 2009) (en banc).

## DISCUSSION

Defendant argues that plaintiffs have failed to state a claim for defamation and defamation per se, injurious falsehood, and unfair competition under both federal and state law.[3]  The Court addresses each argument in turn.

### A.  Defamation

"To state a claim for defamation under New York law, a plaintiff must allege that the defendant made a statement that

---

[3] Defendant does not move to dismiss plaintiffs' breach of contract claim.

was: (1) false, defamatory, and of and concerning the plaintiff; (2) published to a third party; (3) made with the applicable level of fault; and (4) defamatory per se or caused the plaintiff special harm."  Enigma Software Grp. USA, LLC v. Bleeping Computer LLC, 194 F. Supp. 3d 263, 280 (S.D.N.Y. 2016) (citing Chandok v. Klessig, 632 F.3d 803, 814 (2d Cir. 2011)).  Plaintiffs identify fifteen allegedly defamatory statements, seven of which plaintiffs argue constitute defamation per se.  See Compl. ¶¶ 76(a)-(g) (defamation per se);[4] 93(a)-(h) (defamation).[5]  Defendant argues that none of these statements are actionable because they are either protected opinions or are substantially true, and that some of the statements are time-barred under the applicable statute of limitations.  Mot. at 1-2.  The Court first addresses defendant's

---

[4] The allegedly defamatory per se statements are: "[LoanStreet] withheld $100k in options that they promised me before I was hired"; "[Lampl] just pocketed the options he promised me"; "[Lampl] defrauded me out of over $100k"; "[Lampl] is a rich con man"; "[LoanStreet] is a fraudulent, exploitative mess"; "Look in the mirror and ask yourselves how your loved ones would feel if they knew you cheat people just to make your big piles of cash a little bigger"; and "LoanStreet (NY) cheated me out of equity."  Compl. ¶¶ 76(a)-(g).

[5] The allegedly defamatory statements are: "Based on Ian Lampl's valuation goal for the company, he defrauded me out of over $100k"; "They promised me substantial equity with a standard one-year vesting cliff, then abruptly fired me after 15 months of work and refused to grant me the options"; "After I started, they told me that they actually meant 12 months after the next quarterly board meeting, and I would only start to vest after 16 months. I asked them to change it. They dragged their feet for months, pretending to work on it"; "After 15 months of praising my work, they abruptly fired me . . ."; "LoanStreet fires people without warning . . ."; "The company has been operating with impunity because they fire people without warning"; "After hiring employees with a promise of unlimited PTO, management rolled out a PTO tracking tool that explicitly capped PTO at 15 days per year"; and "A large percentage of LoanStreet engineers when I was there were bootcamp grads."  Compl. ¶¶ 93(a)-(h).

statute of limitations argument, followed by defendant's arguments on the merits.  The Court then considers whether the statements constitute defamation per se or have caused plaintiffs special harm.

    1. <u>Statute of Limitations</u>

    Defamation claims are subject to a one-year statute of limitations under New York law.  <u>See</u> C.P.L.R. § 215(3).  Since the Complaint was filed on July 21, 2021, plaintiffs cannot recover for any statements made prior to July 21, 2020.  Defendant alleges that the statements set forth in paragraphs 76(f)[6] and 93(h)[7] of the Complaint are time-barred.  Mot. at 9 n.27.  To the contrary, the statement in 76(f) was published on Reddit.com on June 19, 2021 and the statement in 93(h) was posted to Teamblind.com on June 21, 2021.  <u>See</u> Declaration of Ryan Singer in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint, Exs. D-E, ECF No. 35.  To the extent defendant argues that these statements were originally published elsewhere outside the one-year lookback period, his republication of the statements on new websites restarts the clock.  <u>See</u> <u>Giuffre v. Dershowitz</u>, 410 F. Supp. 3d 564, 571 (S.D.N.Y. 2019) (rejecting argument that "once a defendant

---

[6] "Look in the mirror and ask yourselves how your loved ones would feel if they knew you cheat people just to make your big piles of cash a little bigger."
[7] "A large percentage of LoanStreet engineers when I was there were bootcamp grads."

makes a statement in a prominent place on the Internet, he can proactively repeat that claim in new places on the Internet ad infinitum and remain immune from suit") (emphasis in original). Accordingly, none of the allegedly defamatory statements are untimely.

    2. Opinion

    A threshold question in any defamation action is whether the statements at issue assert facts or opinions.  "Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, 'it follows that only statements alleging facts can properly be the subject of a defamation action.'"  Gross v. New York Times Co., 82 N.Y.2d 146, 152-153 (N.Y. 1993) (internal quotation marks and citation omitted).  As such, "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." Mann v. Abel, 10 N.Y.3d 271, 276 (N.Y. 2008).  "Whether a statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court."  Restis v. Am. Coal. Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 718 (S.D.N.Y. 2014) (quoting Mr. Chow v. Ste. Jour Azur S.A., 759 F.2d 219, 224 (2d Cir. 1985)).

To determine whether a given statement is actionable, courts consider three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

Wexler v. Dorsey & Whitney LLP, 815 F. App'x 618, 621 (2d Cir. 2020) (quoting Brian v. Richardson, 87 N.Y.2d 46, 51 (N.Y. 1995)). In conducting this analysis, the overarching "inquiry is whether a reasonable listener is likely to have understood the statements as conveying provable facts about the plaintiff." Torain v. Liu, 279 F. App'x 46, 46 (2d Cir. 2008).

Not all opinions are immune from liability, however. The law distinguishes between non-actionable "pure opinions" and other statements of opinion that are capable of defamatory meaning. A statement is a "pure opinion" if it is either "accompanied by a recitation of the facts upon which it is based" or "does not imply that it is based upon undisclosed facts." Biro v. Conde Naste, 883 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) (quoting Steinhilber v. Alphonse, 68 N.Y.2d 283, 289 (N.Y. 1986)). But a statement of opinion that "implies that it is based on facts that support the opinion, which are unknown to persons reading or hearing it, is an

-12-

actionable 'mixed opinion.'"   Restis, 53 F. Supp. 3d at 719
(internal quotation marks and citation omitted).  Likewise, if
"the facts upon which an opinion is based are set forth for the
reader, and the plaintiff alleges that both the opinion and the
facts upon which it is based are false, the opinion and facts may
form the basis of the defamation claim."   Id. (emphasis added).

The bulk of the statements at issue here center on defendant's
accusation that plaintiffs unlawfully withheld from defendant
$100,000 in stock options.   The other allegedly defamatory
statements relate to plaintiffs' hiring and firing practices.  None
of them are pure opinion.  To start, most of the statements are
likely to be understood by a reasonable listener as conveying
provable facts.  See, e.g., Compl. ¶¶ 76(a) ("[LoanStreet] withheld
$100k in options that they promised me before I was hired."); 76(c)
("Lampl] defrauded me out of over $100k."); 93(b) ("They promised
me substantial equity with a standard one-year vesting cliff, then
abruptly fired me after 15 months of work and refused to grant me
the options.").   Additionally, although defendant argues
otherwise, his purported statements of opinion are not accompanied
by a full recitation of the facts.  In telling his side of the
story, he omits key information, such as the precise terms of his
stock option agreement and the dates on which he was granted the

-13-

options.   In doing so, defendant implies that such facts support
his position when, according to the Complaint, they patently do
not.  Compl. ¶¶ 19-20.

Furthermore, when read in the full context of the posts, as
defendant urges the Court to do, it is clear that even the most
vitriolic of the bunch — remarks such as, "[Lampl] is a rich con
man" and "[LoanStreet] is a fraudulent, exploitative mess" — relate
to the specific accusation that LoanStreet and Lampl defrauded
defendant by unlawfully withholding $100,000 in stock options.
Compl. ¶¶ 76(d)-(e).   These are not the type of "[l]oose,
figurative or hyperbolic statements" entitled to protection as
expressions of pure opinion.  Dillon v. City of New York, 704
N.Y.S.2d 1, 5 (N.Y. App. Div. 1999).  Rather, they "are grounded
in assertions of fact about [p]laintiffs' business activities and
are not framed in hyperbole." Restis, 53 F. Supp. 3d at 721; see
Levy v. Nissani, 115 N.Y.S.3d 418, 421 (N.Y. App. Div. 2020)
(holding statements that individuals were "scammers," "con
artists," and "thieves," "can readily be proven true or false and,
given the tone and overall context in which the statements were
made, signaled to the average listener that the plaintiff was
conveying facts about [the individuals]").  Where, as here, "the
criticism takes the form of accusations of criminal or unethical

conduct, or derogation of professional integrity in terms subject to factual verification, the borderline between fact and opinion has been crossed." Trump v. Chi. Tribune Co., 616 F. Supp. 1434, 1435 (S.D.N.Y. 1985).

While it is possible that a reader could construe defendant's posts as the mere rantings of a disgruntled ex-employee who was not literally defrauded by his company, at the motion to dismiss stage, the Court need only consider "whether any reading of the complaint supports the defamation claim." Davis v. Boeheim, 24 N.Y.3d 262, 272 (N.Y. 2014) (emphasis added). "Thus, although it may well be that the challenged statements are subject to [defendant's] interpretation[,] the motion to dismiss must be denied if the communication at issue, taking the words in their ordinary meaning and in context, is also susceptible to a defamatory connotation." Id. (internal quotation marks, alterations, and citation omitted). At worst, the allegedly defamatory statements include opinions and facts, both of which plaintiffs contest. This is sufficient to survive a motion to dismiss. See Jewell v. NYP Holdings, Inc., 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) ("[W]here the plaintiff alleges that both the opinions and the facts are false, a motion to dismiss should not be granted, and the plaintiff may proceed against both the

-15-

statements of fact and opinion.") (citing <u>Silsdorf v. Levine</u>, 59 N.Y.2d 8, 10, 14-15 (N.Y. 1983)).

Finally, this analysis does not change simply because the statements at issue were posted on online platforms.  "Web content, like all content, must be assessed on a case by case basis." <u>Eros Intern. PLC v. Mangrove Partners</u>, No. 653096/2017, 2019 WL 1129196, at *9 (N.Y. Sup. Ct. Mar. 8, 2019), <u>aff'd</u>, 140 N.Y.S.3d 518 (N.Y. App. Div. 2021).  "Online commentary is just as capable as print or broadcast media of inflicting the kinds of harm the defamation laws are designed to protect against.  Indeed, online communications can spread more quickly, and to all corners of the world, than can print or broadcast media statements." <u>Id.</u>; <u>see</u> <u>Solstein v. Mirra</u>, 488 F. Supp. 3d 86, 103 (S.D.N.Y. 2020) (denying motion to dismiss allegedly defamatory statements posted on Facebook); <u>Zuckerbrot v. Lande</u>, 167 N.Y.S.3d 313, 339 (N.Y. Sup. Ct. 2022) (denying motion to dismiss allegedly defamatory statements posted on Instagram).  Here, defendant posted his statements on websites that seek to gather legitimate reviews about companies (Glassdoor.com and Teamblind.com), as well as on Reddit.com — the so-called "front page of the Internet" — which is frequented by hundreds of millions of active monthly users.[8]

---

[8] David Curry, <u>Reddit Revenue and Usage Statistics (2022)</u>, BUSINESS OF APPS, https://www.businessofapps.com/data/reddit-

Defendant then asked users to "follow [his] link and mark it as
helpful so that the message is amplified and as many people are
warned as possible." Compl. ¶ 42. Defendant deliberately and
strategically utilized the Internet to spread statements capable
of defamatory meaning. Defendant cannot now hide under the cloak
of cyberspace to escape liability. For the foregoing reasons, the
Court rejects defendant's attempt to characterize his statements
as non-actionable opinion.

   3. Truth

   Even if a statement is capable of defamatory meaning, a cause
of action for defamation will not lie if the statement is true or
"substantially true." See Jewell, 23 F. Supp. 2d at 366 ("[T]ruth
is an absolute, unqualified defense to a civil defamation action.")
(quoting Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d
Cir. 1986), cert. denied, 479 U.S. 1091 (1987)). "A statement is
substantially true if the statement would not 'have a different
effect on the mind of the reader from that which the pleaded truth
would have produced.'" Id. (quoting Fleckenstein v. Friedman, 266
N.Y. 19, 23 (N.Y. 1934)). "Despite truth often being framed as a
defense to [defamation], the burden of proving the falsity of a
statement rests with the plaintiff." Leidig v. BuzzFeed, Inc.,

statistics/#:~:text=TechCrunch%2C%20The%20Information-
,Reddit%20users,its%20ad%20package%20in%202021 (last updated July 13, 2022).

371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019).  To survive a motion to dismiss, a plaintiff must "plead facts that, if proven, would allow a reasonable person to consider the statement false."  Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC, 864 F.3d 236, 247 (2d Cir. 2017); see 1 Law of Defamation § 5:11 (2d ed.) ("In establishing falsehood, a plaintiff must do more than make broad unsupported assertions. A plaintiff must identify specific statements and plead, and be prepared to prove, their falsity.").

Plaintiffs have sufficiently alleged the falsity of defendant's statements related to his stock options.[9]  The Complaint alleges that under LoanStreet's stock option agreement, "the initial portion of [defendant's] stock options would vest and become exercisable on the first anniversary of his vesting commencement date, provided he continued to be employed by the company."  Compl. ¶ 19.  The Complaint further alleges that defendant received his first grant of options on July 22, 2019 and a second grant on January 15, 2020, and that "[e]ach option grant had its own vesting schedule."  Id. ¶ 20.  If defendant's termination on June 12, 2020 occurred before the first anniversary of his vesting commencement date, none of his stock options would

---

[9] Such statements are set forth in paragraphs 73(a)-(g) and 93(a)-(b) of the Complaint.

have vested, so he would not have been entitled to any equity compensation. Plaintiffs' allegations are thus sufficient to challenge the truth of defendant's statements set forth in paragraphs 73(a)-(g) and 93(a)-(b) of the Complaint.

However, with respect to defendant's statements regarding plaintiffs' hiring and firing practices, plaintiffs have failed to satisfy their burden.[10] Specifically, although plaintiffs allege that defendant was fired for cause, see Compl. ¶ 27, they make no mention of whether defendant received warnings before he was terminated, a recurring theme in defendant's posts. See, e.g., Compl. ¶¶ 93(d) ("After 15 months of praising my work, they abruptly fired me . . ."); 93(e) ("LoanStreet fires people without warning . . ."); 93(f) ("The company has been operating with impunity because they fire people without warning").

Nor do plaintiffs refute defendant's statements regarding the calculation of the vesting period, id. ¶¶ 93(c), the change in PTO policy, id. ¶ 93(g), or the experience level of the Company's engineers, id. ¶ 93(h). In their opposition brief, plaintiffs state that they have "pled and intend[] to show" that defendant's statements regarding plaintiffs' employment practices are false, but cite only to the allegation in the Complaint that defendant's

---

[10] Such statements are set forth in paragraphs 93(c)-(h) of the Complaint.

-19-

"statements contain false assertions of fact."  Opp. at 13; see
Compl. ¶ 93.  The mere allegation that a statement is false,
without any supporting detail whatsoever, is insufficient to
establish falsity.  See Goldman v. Reddington, 417 F. Supp. 3d
163, 171 (E.D.N.Y. 2019) ("To survive a motion to dismiss,
plaintiffs must do more than 'perfunctorily state that a statement
is false.'") (quoting Cabello-Rondon v. Dow Jones & Co., Inc., No.
16 Civ. 3346 (KBF), 2017 WL 3531551, at *4 (S.D.N.Y. Aug. 16,
2017), aff'd, 720 F. App'x 87 (2d Cir. 2018)).  Accordingly,
defendant's motion to dismiss is granted without prejudice with
respect to the statements in paragraphs 93(c)-(h).  The Court
grants plaintiffs leave to file an amended complaint to replead
these claims.

   4. Special Damages and Defamation Per Se

   As the final step in this analysis, plaintiffs must show that
the allegedly defamatory statements caused "special damage" or
else constitute defamation per se, for which no showing of harm is
required.  See Celle v. Filipino Reporter Enters., Inc., 209 F.3d
163, 180 (2d Cir. 2000); Liberman v. Gelstein, 80 N.Y.2d 429, 434-
335 (N.Y. 1992).

   "Special damages consist of 'the loss of something having
economic or pecuniary value[,]' which 'must flow directly from the

injury to reputation caused by the defamation.'"  Matherson v. Marchello, 100 A.D.2d 233, 235 (N.Y. App. Div. 1984) (internal quotation marks and citations omitted), abrogated on other grounds by Laguerre v. Maurice, 192 A.D.3d 44 (N.Y. App. Div. 2020).  In the Complaint, plaintiffs allege that they have "suffered actual and special damages" as a result of defendant's statements, Compl. ¶ 94, such as the "loss of current and/or future clients and employees," id. ¶ 101; see also id. ¶ 62 ("As a direct and proximate result of the foregoing defamatory statements and tortious actions of [defendant], Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury, including, but not limited to, damage to reputation, loss of profits, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.").  These "nonspecific conclusory allegations," which do not quantify plaintiffs' harm "with sufficient particularity to identify actual losses," "do not meet the stringent requirements imposed for pleading special damages." Matherson, 100 A.D.2d at 235 (internal quotation marks and citations omitted). Accordingly, for plaintiffs' defamation claim to survive the motion to dismiss, the statements at issue must be defamatory per se.

Included among the limited categories of statements deemed to be defamation per se are those that charge the plaintiff with a "serious crime" or that "tend[] to injure the plaintiff in her or his trade, business or profession." Nissani, 115 N.Y.S.3d at 420 (citing Liberman v. Gelstein, 80 N.Y.2d 429, 435 (N.Y. 1992)). Here, of the nine allegedly defamatory statements that have passed muster thus far, seven are characterized in the Complaint as defamation per se. See n.4, infra. These statements all refer to plaintiffs' purported misconduct related to defendant's stock options. The two other statements, although listed under a separate "defamation" heading in the Complaint, are of the same ilk. See Compl. ¶¶ 93(a) ("Based on Ian Lampl's valuation goal for the company, he defrauded me out of over $100k."); 93(b) ("They promised me substantial equity with a standard one-year vesting cliff, then abruptly fired me after 15 months of work and refused to grant me the options."). All of these statements, which either expressly or impliedly state that plaintiffs "defrauded" and "cheated" defendant, constitute defamation per se.

Read in context, defendant's statements would lead an average reader to believe that LoanStreet and/or Lampl unlawfully withheld or otherwise swindled him out of compensation duly owed to him. Defendant's accusations thus charge plaintiffs "with the

-22-

commission of a serious crime and would tend to injure [them] in their business by imputing 'fraud, dishonesty, misconduct, or unfitness in conducting their profession.'" <u>Nissani</u>, 115 N.Y.S.3d at 422 (internal quotation marks and citation omitted); <u>see also</u> <u>Celle</u>, 209 F.3d at 180 ("[W]here a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed.") (quoting <u>Ruder & Finn Inc. v. Seaboard Surety Co.</u>, 52 N.Y.2d 663, 670 (N.Y. 1981)); <u>Yesner v. Spinner</u>, 765 F. Supp. 48, 52 (E.D.N.Y. 1991) ("It has long been the law in New York that a defamatory statement that is a direct attack upon the business, trade or profession of the plaintiff is considered defamation per se[.]"). Accordingly, plaintiffs have sufficiently pleaded defamation per se with respect to the statements related to defendant's options.

For the foregoing reasons, defendant's motion to dismiss plaintiffs' defamation claims is granted with respect to the statements in paragraphs 93(c)-(h) of the Complaint, and denied with respect to the statements in 76(a)-(g) and 93(a)-(b).

**B.   Injurious Falsehood**

Plaintiffs' next cause of action is for injurious falsehood, a close cousin to defamation. "The elements of an injurious falsehoods claim are: (1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special

damages." Grayson v. Ressler & Ressler, 271 F. Supp. 3d 501, 518 (S.D.N.Y. 2017). Injurious falsehood "differs from defamation in that a defamatory statement impugns the basic integrity or creditworthiness of a business while an injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services." Id.

Plaintiffs' injurious falsehood claim relates to the same set of statements and alleged harm giving rise to their defamation claims. See Compl. ¶ 103. As such, the injurious falsehood claim "must be dismissed as duplicative of" plaintiff's defamation claims. Enigma, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016) (collecting cases); see Perez v. Violence Intervention Program, 984 N.Y.S.2d 348, 349 (N.Y. App. Div. 2014) (stating injurious falsehood claim "should have been dismissed as duplicative of the defamation claim, as [it] allege[s] no new facts and seek[s] no distinct damages from the defamation claim").

Furthermore, the statements at issue patently impugn the reputation of plaintiffs' business, not the "condition, value or quality of [plaintiffs'] product or property." Angio-Medical Corp. v. Eli Lilly & Co., 720 F. Supp. 269, 274 (S.D.N.Y. 1989). In their opposition, plaintiffs attempt to avert this outcome by identifying one other excerpt from defendant's statements that

purportedly illustrates defendant's product disparagement.   In
defendant's June 19, 2021 post on Reddit.com, he wrote:

> The only problem I was aware of was that the CTO Larry
> Adams was upset with me because I discovered and fixed
> a critical error in code written by one of his favorite
> engineers. The engineer didn't remember why he had made
> the change and refused to help me investigate why tests
> were failing.

Compl. ¶ 42; see Opp. at 18.   Noting that at one point there had
been an error in plaintiffs' software, which error was then fixed,
is far too benign to sustain this cause of action.

Even if that issue were not dispositive, plaintiffs face
additional hurdles with respect to falsity and special damages.
Plaintiffs make no showing that defendant's statement regarding
the software error was false.   Nor do plaintiffs plead special
damages with sufficient particularity.   See Kasada, Inc. v. Access
Cap., Inc., No. 01 Civ. 8893 (GBD), 2004 WL 2903776, at *16
(S.D.N.Y. Dec. 14, 2004) (noting "the requirement of pleading and
proving special damages is applied strictly," so "a motion to
dismiss a claim of injurious falsehood may be granted for failure
to allege special damages with the requisite specificity"); Rall
v. Hellman, 726 N.Y.S.2d 629, 632 (N.Y. 2001) (concluding complaint
was deficient because it failed to identify special damages with
sufficient particularity).   As with their defamation claims,
plaintiffs baldly state that defendant's "misconduct has, at a

minimum, caused Plaintiffs to suffer pecuniary losses with respect to the loss of business with certain companies," as well as "pecuniary losses with respect to the money they have had to spend to counteract [defendant's] defamatory statements and damaging actions, including without limitation, the fees paid to their attorneys to prepare this complaint and litigate this action." Compl. ¶¶ 107-108.  This is insufficient.  See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 59 (2d Cir. 2002) ("Where loss of customers constitutes the alleged special damages, the individuals 'who ceased to be customers, or who refused to purchase, must be named' and the exact damages itemized.") (quoting Drug Research Corp. v. Curtis Publ'g Co., 7 N.Y.2d 435, 441-42 (N.Y. 1960)).

      For the foregoing reasons, the Complaint fails to state a claim for injurious falsehood and defendant's motion to dismiss this cause of action is granted.

**C.   Unfair Competition**

      Finally, the Complaint asserts causes of action for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and New York common law.  Section 43(a) of the Lanham Act prohibits the "use[] in commerce" of any term or false designation of origin "which is likely to cause confusion . . . as to the affiliation, connection,

-26-

or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."   15 U.S.C. § 1125(a)(1)(A).

A claim of unfair competition under the Lanham Act is governed by a "two-prong test."   Soter Techs., LLC v. IP Video Corp., 523 F. Supp. 3d 389, 397 (S.D.N.Y. 2021).   "The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods."   Yurman Studio, Inc. v. Castaneda, 591 F. Supp. 2d 471, 486 (S.D.N.Y. 2008) (quoting Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003).   In addition, a plaintiff must establish that the defendant made "use[] in commerce" of the protected mark.   15 U.S.C. § 1125(a)(1)(A).   These same standards apply to unfair competition claims under New York common law, "except that New York law requires an additional showing of bad faith."   Soter, 523 F. Supp. 3d at 397 (internal quotation marks, alteration, and citation omitted).

Plaintiffs' unfair competition claims arise from defendant's purchase of Google advertisements that displayed LoanStreet's registered trademark, and which would appear on users' screens

-27-

when they searched for "LoanStreet" in Google's search engine. Below is a sampling of the ads:

Ad · https://www.reddit.com/ ▾
LoanStreet horror story - LoanStreet careers
'They abruptly fired me & withheld the $100k in stock options they promised me' 'You deserve to be treated with dignity. Work elsewhere.'

Ad · https://www.reddit.com/csjobquestions/loanstreetshame
LoanStreet horror story - 'a terrible place to work'
'They abruptly fired me & withheld the $100k in stock options they promised me' 'You   See photos See outside deserve to be treated with dignity. Work elsewhere.'

Ad · https://www.reddit.com/csjobquestions/loanstreetshame
LoanStreet horror story - 'abruptly fired me'
'They abruptly fired me & withheld the $100k in stock options they promised me' 'You deserve to be treated with dignity. Work elsewhere.'

Ad · https://www.reddit.com/csjobquestions/loanstreetshame
LoanStreet horror story - LoanStreet engineering
'They abruptly fired me & withheld the $100k in stock options they promised me' 'You deserve to be treated with dignity. Work elsewhere.'

Compl. ¶ 49. Defendant does not dispute that the LoanStreet trademark is entitled to protection. Rather, defendant argues that his purchase of these advertisements did not constitute a "use in commerce" of the mark, and that any such use was not likely to cause confusion.

1. <u>Use in Commerce</u>

To state a claim for unfair competition, a plaintiff must show that the defendant made "use in commerce" of its mark. Section 1127 of the Lanham Act sets forth a definition of "use in commerce" that applies to unfair competition claims under Section

1125(a)(1)(A).[11]  15 U.S.C. § 1127(2); see <u>1-800 Contacts, Inc. v.</u> <u>WhenU.Com, Inc.</u>, 414 F.3d 400, 409 (2d Cir. 2005).  Section 1127 provides in relevant part that "a mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ."  15 U.S.C. § 1127(2).

It is undisputed that defendant purchased advertisements via Google's advertising platform that publicly displayed the LoanStreet name.[12]  Defendant nevertheless argues that because he did not use the LoanStreet trademark in connection with any paid services or on any advertisements for services that he himself was promoting, he did not use plaintiffs' trademark in commerce.

The narrow reading of "use in commerce" that defendant urges is inconsistent with the body of case law recognizing that the term is "broad and has a sweeping reach."  <u>Planned Parenthood Fed'n</u> <u>of Am., Inc. v. Bucci</u>, No. 97 Civ. 0629 (KMW), 1997 WL 133313, at

---

[11] In <u>1-800 Contacts</u>, the Second Circuit held that Section 1127 applied to unfair competition claims under the Lanham Act.  414 F.3d at 409.  Four years later, in <u>Rescuecom Corp. v. Google Inc.</u>, 562 F.3d 123, 131 (2d Cir. 2009), the Second Circuit cast doubt on that conclusion in a special appendix to its opinion, but stopped short of overruling <u>1-800 Contacts</u>.  Accordingly, <u>1-800-Contacts</u> remains binding precedent on this Court.  For a more in-depth analysis of the interplay between <u>1-800-Contacts</u> and <u>Rescuecom</u>, see <u>Can't Live Without It, LLC v. ETS</u> <u>Express, Inc.</u>, 287 F. Supp. 3d 400, 414-15 (S.D.N.Y. 2018).

[12] However, defendant disputes the characterization of these displays as "advertisements."  Mot. at 19.  Defendant's quibble is unconvincing.  He does not deny that he bought the displays from Google's advertising platform, and the word "Ad" appears in the top left corner of each example.  In any event, whether they are referred to as advertisements or something else makes no difference to the analysis.

*3 (S.D.N.Y. Mar. 24, 1997) (citing Steele v. Bulova Watch Co.,
344 U.S. 280, 283 (1952)), aff'd, 152 F.3d 920 (2d Cir. 1998); see
OBH, Inc. v. Spotlight Mag., Inc., 86 F. Supp. 2d 176, 185
(W.D.N.Y. 2000) ("[T]he scope of [the] term 'use in commerce' . .
. is broad."). Indeed, the courts in this Circuit have repeatedly
held that a plaintiff may state a claim under the Lanham Act where
the defendant (1) interfered with the plaintiff's ability to offer
its own commercial services, and/or (2) used the Internet. See,
e.g., Adecco USA, Inc. v. Staffworks, Inc., No. 620 Civ. 744 (MAD),
2021 WL 2593304, at *18 (N.D.N.Y. June 23, 2021) (holding
defendants' display of plaintiff's trademark on a Facebook page
constituted a use in commerce because, inter alia, it interfered
with plaintiff's ability to offer its own services); C=Holdings
B.V. v. Asiarim Corp., 992 F. Supp. 2d 223, 240 (S.D.N.Y. 2013)
("[C]ourts have found that the 'in commerce' requirement is
satisfied where the infringing act had an adverse effect on the
plaintiff's ability to participate in interstate commerce. Use of
the Internet also suffices.") (citation omitted); World Wrestling
Fed'n Entmt., Inc. v. Bozell, 142 F. Supp. 2d 514, 528 (S.D.N.Y.
2001) (holding statements posted online used plaintiff's trademark
in commerce because, inter alia, "defendants' conduct affects the
[plaintiff's] ability to attract and retain consumers, sponsors,

and advertisers of its products"); <u>Planned Parenthood</u>, 1997 WL 133313 at *3; <u>OBH</u>, 86 F. Supp. 2d at 185-86.

The Complaint implicates both of these circumstances. Plaintiffs allege that defendant's purchase of the LoanStreet trademark as a Google keyword was "willful with the deliberate intent to . . . divert potential sales of LoanStreet services, as well as potential new hires, away from LoanStreet." Compl. ¶ 117; <u>see also</u> Opp. at 20 (asserting defendant "purchased Google Ads using the trademark 'LoanStreet' with the express purpose of diverting Internet users away from LoanStreet's website and to his own posts") (citing Compl. ¶¶ 51-54). At the motion to dismiss stage, these allegations suffice to demonstrate that defendant's conduct interfered with plaintiffs' ability to attract and retain clients and employees, thus constituting a "use in commerce." Defendant's "use of the Internet also satisfie[s] the Lanham Act's 'in commerce' requirement." <u>Bozell</u>, 142 F. Supp. 2d at 529.

The primary case upon which defendant relies, <u>FragranceNet.com v. FragranceX.com, Inc.</u>, 493 F. Supp. 2d 545 (E.D.N.Y. June 12, 2007), is factually distinguishable. While in <u>FragranceNet</u>, as here, the defendant used the plaintiff's trademark as a keyword in search engines to trigger the display of the defendant's content when users searched for the plaintiff's

company, the advertisement that was then shown to users did not include the plaintiff's name.  Rather, it simply revealed a link to the defendant's own website.  Id. at 550.  In concluding that this did not constitute a "use in commerce," the FragranceNet Court emphasized that "the use of plaintiff's trademark is strictly internal" and "[p]laintiff has not alleged claims based on defendant's display of plaintiff's mark."  Id. at 550, 552; see Adecco, 2021 WL 2593304 at *17 ("The determinative factor in FragranceNet, was that the trademark was used only in internal data and metatags which were never displayed to consumers.").  By contrast, here, not only did defendant use plaintiffs' trademark as a keyword to trigger its advertisements, but he also incorporated plaintiffs' trademark into the text of the advertisement that was publicly displayed.  As such, plaintiffs' unfair competition claims arise directly from defendant's external display of plaintiffs' mark to potential consumers.  Defendant's conduct thus constitutes a "use in commerce."

  2. Likelihood of Confusion

   Lastly, plaintiffs must allege that defendant's use of their mark was likely to cause confusion.  The likelihood of confusion test requires that a court evaluate the well-established Polaroid factors:

(1) strength of plaintiff's mark, (2) similarity of
competing marks, (3) competitive proximity of the
products, (4) likelihood that plaintiff will 'bridge the
gap' and offer a product like defendants' product, (5)
actual confusion, (6) defendants' good faith, (7)
quality of defendants' product, and (8) sophistication
of the buyers.

Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d
402, 411 (S.D.N.Y. 2006) (citing Polaroid Corp. v. Polarad Elecs.
Corp., 287 F.2d 492, 495 (2d Cir. 1961), cert. denied, 368 U.S.
820 (1961)). "Application of the Polaroid test is 'not mechanical,
but rather, focuses on the ultimate question of whether, looking
at the products in their totality, consumers are likely to be
confused.'" Soter, 523 F. Supp. 3d at 405 (quoting Star Indus.,
Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 384 (2d Cir. 2005)).

The first and second factors plainly favor plaintiffs, as
defendant does not dispute the strength of plaintiffs' mark and
defendant copied the trademark verbatim.  As to proximity and
competitiveness, it is true that defendant does not have his own
mark and is not offering a good or service.  See Mot. at 20.
However, the "plaintiff's web site and defendant's web site are
both on the Internet, [so] the parties are vying for users in the
same 'market,'" Planned Parenthood, 1997 WL 133313 at *8, using
the exact same mark.  Indeed, plaintiffs allege that by using
"LoanStreet" as the keyword that triggers defendant's

advertisements, defendant has attempted to divert the very users seeking out the real LoanStreet. <u>See</u> Compl. ¶ 117 ("[Defendant's] acts are willful with the deliberate intent to trade on the goodwill of the Mark, cause confusion and deception in the marketplace, and divert potential sales of LoanStreet services, as well potential new hires, away from LoanStreet."). This "degree of competitive proximity . . . increases the likelihood of confusion among Internet uses." <u>Planned Parenthood</u>, 1997 WL 133313 at *8. Where, as here, the parties are vying for users in the same "market," "there is no need to consider whether plaintiff will bridge the gap between the markets," the fourth <u>Polaroid</u> factor. <u>Id.</u> (citing <u>Paddington Corp. v. Attiki Importers & Distributors, Inc.</u>, 996 F.2d 577, 586 (2d Cir. 1993)).

The fifth factor, however, is a closer call. Plaintiffs allege that defendant's

> unauthorized use in commerce of the [LoanStreet] mark . . . is likely to deceive would-be consumers of LoanStreet's services as well as prospective employees, as to the origin, source, sponsorship, or affiliation, and is likely to cause these same individuals to believe, contrary to fact, that [defendant] is in some way affiliated, sponsored by, or otherwise endorsed by LoanStreet when he is not.

Compl. ¶ 118. The Court is not so sure.

The defendant's advertisements bear titles such as "LoanStreet horror story – LoanStreet careers," and "LoanStreet

-34-

horror story – 'a terrible place to work,'" show excerpts of defendant's disparaging posts, and display links to Reddit.com. Compl. ¶ 49.   These advertisements are similar to the content at issue in Bihari v. Gross, 119 F. Sup. 2d 309, 320 (S.D.N.Y. 2000), where the defendant's advertisements bore the heading "Manhattan Interior Design Scam—Bihari Interiors" with "the following description underneath the title: 'This site deals with the problems experienced when hiring a New York City (Manhattan) designer.'"   As the Bihari court concluded, it seems unlikely that an Internet user who reads defendant's advertisements would believe that they belong to or are endorsed by plaintiffs.

Still, there may be some credence to plaintiffs' argument that

> [w]hen a consumer searches for LoanStreet and is immediately presented with ads using the phrase 'LoanStreet,' under the search term 'LoanStreet,' it creates confusion as a consequence of the expectation that Google returns businesses related to the search term (which because of LoanStreet's inherently distinctive Mark increases the likelihood of association with the returned search results).

Compl. ¶ 54.   At a minimum, this allegation raises an issue of fact that would be premature to resolve at this stage, especially given that the remainder of the Polaroid factors favor plaintiffs

-35-

515286ed703f87cd

at least preliminarily.[13]   See Merck, 425 F. Supp. 2d at 412
(stating the likelihood of confusion test "is a fact-intensive
analysis that ordinarily does not lend itself to a motion to
dismiss") (citing Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir.
1998)).   Accordingly, defendant's motion to dismiss plaintiffs'
unfair competition claims is denied.

## CONCLUSION

    For the foregoing reasons, defendant's motion to dismiss is
granted in part and denied in part.   The Clerk of Court is
respectfully directed to terminate the motion pending at ECF No.
25.   If plaintiffs decide to replead as permitted herein,
plaintiffs should submit their amended complaint within 30 days.

    **SO ORDERED.**

Dated:    New York, New York
          August 17, 2022

                                    _____
                               NAOMI REICE BUCHWALD
                               UNITED STATES DISTRICT JUDGE

---

[13] In addition to the factors analyzed above, the defendant patently did not use
LoanStreet's trademark in good faith.  Upon his termination, defendant vowed
that he would "be doing [his] best to warn all potential future employees to
avoid LoanStreet," Compl. ¶ 30, and by his own admission, defendant sought to
"amplif[y]" his negative comments and warn "as many people . . . as possible"
about plaintiffs' purported misconduct, Compl. ¶ 42.  For the same reasons, the
Court concludes that plaintiffs also satisfied the showing of bad faith required
to state a claim for unfair competition under New York state law.