# LOANSTREET®

June 12, 2020

Wyatt Troia
300 Albany Street
Apt 8G
New York, NY 10280
Via email

Dear Wyatt:

This letter agreement and general release of claims ("Release") contain, except as otherwise provided herein, all agreements and understandings relative to your separation from employment with LoanStreet Inc. (the "Company") on June 12, 2020 (the "Separation Date").

In order to effect the termination of your employment and to provide you with certain benefits that you would not otherwise be entitled to, you (or, the "Employee") and the Company agree as follows:

1.     **Separation & Severance.**

a.     In exchange for the promises contained in this Release as set forth below, and provided that you sign this Release and return it to the Company on or before June 26, 2020, and do not revoke this Release as described below, the Company will pay you a severance of $5,000 to be paid within 30 calendar days of the expiration of such revocation period. Such payment will be made subject to the Company's standard employee withholding for applicable taxes and benefits.

b.     Even if Employee does not sign this Release, the Company will pay you the compensation that you have earned through the Separation Date on the Company's regular payroll date. The benefits that Employee receives through the Company will cease on June 30, 2020.  Even if Employee does not sign this Release, Employee will be offered benefits to which Employee is entitled under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Employee expressly acknowledges that the Employee does not accrue vacation time under the Company's vacation policy and as such does not have, and consequently will not receive any payment for, unused vacation time. Unless delineated in this Release, your

137116932 v4

Separation Agreement
Page 2

rights, if any, under the Company's 2016 Equity Incentive Plan, as amended, will continue to be governed by the terms of such plan. Employee expressly acknowledges and agrees that the stock option granted to Employee (i) under paragraph 2.b. of the employment offer letter dated February 28, 2019, between Employee and the Company (the "Employment Agreement") and (ii) on January 15, 2020, each automatically cease to vest and any unvested portion with respect to such grant is forfeited in its entirety on the Separation Date.

c.      The parties agree that Employee will be entitled to claim unemployment benefits as permitted by law.

2.      **General Release of Claims.**

a.      THIS SECTION PROVIDES A COMPLETE RELEASE AND WAIVER OF ALL EXISTING AND POTENTIAL CLAIMS EMPLOYEE MAY HAVE AGAINST EVERY PERSON AND ENTITY INCLUDED WITHIN THE DESCRIPTION BELOW OF "RELEASEE." BEFORE EMPLOYEE SIGNS THIS RELEASE, EMPLOYEE MUST READ THIS SECTION CAREFULLY, AND MAKE SURE THAT EMPLOYEE UNDERSTANDS IT FULLY.

b.      In consideration of the offer in paragraph 1.a. above, the adequacy of which is herby expressly acknowledged, and on behalf of the Company and each Releasee (as defined below), Employee, on Employee's behalf and on behalf of Employee's heirs, executors, administrators, successors and assigns (collectively, "Releasor"), hereby irrevocably, unconditionally and generally releases the Company, its current and former officers, directors, shareholders, trustees, parents, members, managers, affiliates, subsidiaries, branches, divisions, benefit plans, agents, attorneys, advisors, counselors and employees, and the current and former officers, directors, shareholders, agents, attorneys, advisors, counselors and employees of any such parent, affiliate, subsidiary, branch or division of the Company and the heirs, executors, administrators, receivers, successors and assigns of all of the foregoing (each, a "Releasee"), from or in connection with, and hereby waives or settles, except as provided in paragraph 2.c., any and all actions, causes of action, suits, debts, dues, sums of money, accounts, controversies, agreements, promises, damages, judgments, executions, or any liability, claims or demands, known or unknown and of any nature whatsoever, whether or not related to employment, and which Releasor ever had, now has or hereafter can, shall or may have as of the date of this Release, including, without limitation, (i) any rights or claims arising under any contract, express or implied, written or oral, including, without limitation, the Employment Agreement and any stock option agreement covering shares of common stock of the Company; (ii) any rights or claims arising under any applicable foreign, Federal, state, local or other statutes, orders, laws, ordinances, regulations or the like, or case law, that relate to employment

Separation Agreement
Page 3

or employment practices, including, without limitation, family and medical, or, specifically, that prohibit discrimination based upon age, race, religion, sex, color, creed, national origin, sexual orientation, marital status, disability, medical condition, pregnancy, veteran status or any other unlawful bases, including, without limitation, the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, as amended, the Civil Rights Acts of 1866 and 1871, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Americans with Disabilities Act of 1990, as amended, the Family Medical Leave Act of 1993, as amended, the Employee Retirement Income Security Act of 1974, as amended, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, the Worker Adjustment and Retraining Notification Act of 1988, as amended, and any similar applicable statutes, orders, laws, ordinances, regulations or the like, or case law, of the State of New York and any State in which any Releasee is subject to jurisdiction, or any political subdivision thereof, including, without limitation, the New York State Human Rights Law, the New York State Labor Law and the New York City Human Rights Law, and all applicable rules and regulations promulgated pursuant to or concerning any of the foregoing statutes, orders, laws, ordinances, regulations or the like; (iii) any waivable rights or claims relating to wages and hours, including under state or local labor or wage payment laws; (iv) any rights or claims to compensation and benefits that Employee may have or become entitled to receive under any severance, termination, change of control, bonus or similar policy, plan, program, agreement or similar or related arrangements, including, without limitation, any offer letter, letter agreement and employment agreement between Employee and the Company; (v) any rights or claims that Employee may have to receive any equity in the Company (whether restricted or unrestricted) in the future; and (vi) any rights or claims for attorneys' fees. Employee agrees not to challenge or contest the reasonableness, validity or enforceability of this Release.

c.      Notwithstanding the foregoing, Employee does not release any Releasee from any of the following rights or claims: (i) any rights or claims Employee may have that arise after the date Employee signs this Release; (ii) any rights or claims that by law cannot be waived by private agreement; (iii) Employee's right to file a charge with or participate in any investigation or proceeding conducted by the U.S. Equal Employment Opportunity Commission ("EEOC") or similar government agency; provided that even though Employee can file a charge or participate in an investigation or proceeding conducted by the EEOC or similar government agency, by executing this Release, Employee is waiving his ability to obtain relief of any kind from any Releasee to the extent permitted by law; or (iv) Employee's non-forfeitable rights to accrued benefits (within the meaning of Sections 203 and 204 of ERISA).

Separation Agreement
Page 4

       d.      **Nothing in or about this Release prohibits Employee from: (i) filing and, as provided for under Section 21F of the Securities Exchange Act of 1934, maintaining the confidentiality of a claim with a government agency that is responsible for enforcing a law; (ii) providing Confidential Information (as defined in Section 2.1 of the Employee Non-Disclosure and Invention Assignment Agreement between Employee and the Company and executed by Employee on March 4, 2019 (the "NDIAA")) to the extent required by law or legal process or permitted by Section 21F of the Securities Exchange Act of 1934; (iii) cooperating, participating or assisting in any government or regulatory entity investigation or proceeding; or (iv) receiving an award for information provided to any government agency that is responsible for enforcing the law.**

       3.      **No Other Claims Filed.** Employee represents and warrants that Employee has not filed or commenced any complaints, claims, actions or proceedings of any kind against any Releasee with any Federal, state or local court or any administrative, regulatory or arbitration agency or body. Employee hereby waives any right to, and agrees not to, seek reinstatement or employment of any kind with any Releasee and, without waiver by any Releasee of the foregoing, the existence of this Release shall be a valid, nondiscriminatory basis for rejecting any such application or, in the event Employee obtains such employment, for terminating such employment. This Release is not intended to be, shall not be construed as, and is not, an admission or concession by any Releasee of any wrongdoing or illegal or actionable acts or omissions.

       4.      **References.** Following the Separation Date, Employee may direct all reference and employment verification inquiries to the Company's General Counsel. Employee acknowledges that any such references will be limited to confirmation of the dates of your employment and last position held.

       5.      **Confidentiality & Non-Disparagement.**

       a.      Employee is reminded of Employee's continuing responsibilities set forth in the NDIAA. Employee acknowledges and agrees that the validity of such agreement and the obligations therein are unaffected by the terms and conditions of this Release.

       b.      Employee hereby represents and agrees that Employee shall keep confidential and not disclose orally or in writing, to any person, except as may be required by law, any and all information concerning the existence or terms of this Release. Employee further agrees that, except as shall be required by law, Employee shall keep confidential and not disclose orally or in writing, directly or indirectly, to any

Separation Agreement
Page 5

person (except Employee's immediate family, attorneys and accountant), any and all information concerning any facts, claims or assertions relating or referring to any experiences of Employee or treatment Employee received by or on behalf of any Releasee through the date of this Release.

c.      If Employee is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose any information covered by paragraph 5.a., Employee shall promptly notify the Company of such request or requirement so that the Company may seek to avoid or minimize the required disclosure or to obtain an appropriate protective order or other appropriate relief to ensure that any information so disclosed is maintained in confidence to the maximum extent possible by the agency or other person receiving the disclosure, or, in the discretion of the Company, to waive compliance with the provisions of this Release. Employee shall use reasonable efforts, in cooperation with the Company or otherwise, to avoid or minimize the required disclosure or to obtain such protective order or other relief. If, in the absence of a protective order or the receipt of a waiver hereunder, Employee is compelled to disclose such information or else stand liable for contempt or suffer other sanction, censure or penalty, Employee shall disclose only so much of such information to the party compelling disclosure as he believes in good faith on the basis of advice of counsel is required by law, and Employee shall give the Company prior notice of such information he believes he is required to disclose. Notwithstanding the foregoing, pursuant to the Defend Trade Secrets Act of 2016, Employee understands that: An individual may not be held criminally or civilly liable under any Federal or state trade secret law for the disclosure of a trade secret that:  (i) is made (a) in confidence to a Federal, state, or local government official, either directly or indirectly, or to an attorney; and (b) solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding.  Further, Employee understands that an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the employer's trade secrets to the attorney and use the trade secret information in the court proceeding if the individual: (i) files any document containing the trade secret under seal; and (ii) does not disclose the trade secret, except pursuant to court order.

d.      Employee expressly agrees that Employee will not make any statement, written or oral, that is disparaging, derogatory or otherwise slanderous or defamatory of the Company, its employees, products or services.

Separation Agreement
Page 6

6.    **Miscellaneous.**

a.    Employee agrees to cooperate with the Company and to provide all information and sign any documents that the Company may later reasonably request in connection with any matter involving Employee's present, future or former relationship with the Company or the work Employee may have performed at the Company. This may include appearance(s) or deposition(s) for which the Company will cover travel and reasonably daily expenses only.

b.    Employee agrees to return to all Company property in Employee's possession, including but not limited to any laptop, badge or other equipment or materials that were provided for use only during your employment.

c.    The validity, interpretation, construction and performance of this Release, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the state of New York, without giving effect to principles of conflicts of law. Each of the parties hereto irrevocably consents to the exclusive jurisdiction and venue of any federal or state court within New York County, State of New York, United States of America in connection with any matter based upon or arising out of this letter agreement, agrees that process may be served upon it in any manner authorized by the laws of the State of New York for such persons and waives and covenants not to assert or plead any objection that they might otherwise have to jurisdiction, venue and such process. Each party agrees not to commence any legal proceedings based upon or arising out of this letter agreement or the matters contemplated herein (whether based on breach of contract, tort, breach of duty or any other theory) except in such courts.

d.    The covenants, representations and acknowledgments made by Employee in this Release shall continue to have full force and effect after the execution and effectiveness of this Release, and this Release shall inure to the benefit of each party, and their respective successors and assigns, to the extent necessary to preserve the intended benefits of such provisions. If any section of this Release is determined to be void, voidable or unenforceable, it shall have no effect on the remainder of this Release, which shall remain in full force and effect, and the provisions so held invalid or unenforceable shall be deemed modified as to give such provisions the maximum effect permitted by applicable law.

e.    This Release, the Employment Agreement and the NDIAA constitute the sole and complete agreement between the parties with respect to the matters set forth therein and supersedes all prior agreements, understandings and arrangements, oral or written, between Employee and the Company with respect to the

Separation Agreement
Page 7

subject matter thereof. This Release may not be amended or modified except by an instrument or instruments in writing signed by the party against whom enforcement of any such modification or amendment is sought.  Either party may, by an instrument in writing, waive compliance by the other party with any term or provision of this Release to be performed or complied with by such other party.

f.      With respect to any claims or disputes under or in connection with this Release or any claims released under paragraph 2 of this Release, Employee and the Company hereby acknowledge and agree that Section 5.8 of the NDIAA shall govern. Employee acknowledges that a breach of the provisions of this Release may give rise to losses or damages for which the Company cannot be reasonably or adequately compensated in an action at law, and that such violation may result in irreparable and continuing harm to the Company. Accordingly, Employee agrees that, in addition to any other remedy that the Company may have at law or in equity, the Company may be entitled to seek equitable relief, including, without limitation, injunction and specific performance and Employee hereby waives any requirements for security or posting of any bond in connection with such relief. No specification in this Release of any particular remedy shall be construed as a waiver or prohibition of any other remedies (including claims for damages) in the event of a breach or threatened breach of this Release.

g.      This letter agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement. Execution of a facsimile copy will have the same force and effect as execution of an original, and a facsimile signature will be deemed an original and valid signature.

h.      The Company may, in its sole discretion, decide to deliver any documents or notices related to this Release or any other matter, including documents or notices required to be delivered to you by applicable law by email or any other electronic means. You hereby consent to (i) conduct business electronically, (ii) receive such documents and notices by such electronic delivery, and (iii) sign documents electronically and agree to participate through an on-line or electronic system established and maintained by the Company or a third party designated by the Company.

7.      **Acknowledgements.**

a.      Employee agrees and acknowledges that (a) Employee has had an adequate opportunity to review this Release and all of its terms, (b) Employee has seven days after signing this Release to revoke the Release and the payment provided

Separation Agreement
Page 8

in paragraph 1.a. above will not become due and payable until the revocation period has ended, (c) Employee understands all of the terms of this Release, which are fair, reasonable and are not the result of any fraud, duress, coercion, pressure or undue influence exercised by or on behalf of any Releasee and (d) Employee has agreed to and entered into this Release and all of the terms hereof, knowingly, freely and voluntarily.

        b.    **By executing this Release, Releasor acknowledges that (a) Employee has been advised by the Company to consult with an attorney before executing this Release; and (b) Employee was provided adequate time to review this Release and to consider whether to sign this Release.**

*[Signature Page Follows]*

Separation Agreement
Page 9

If the foregoing accurately sets forth our agreement, please sign and return one original of this letter to me. You may keep the other original for your files.

Very truly yours,

LOANSTREET INC.

By: _____
    (Signature)

Name:  Thad Pitney

Title:  General Counsel

ACCEPTED AND AGREED:

_____
(Print Employee Name)

_____
(Signature)

_____
Date