Christopher M. Gerson
Timothy K. Gilman
Ryan J. Singer
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: cgerson@stroock.com
Email: tgilman@stroock.com
Email: rsinger@stroock.com
*Attorneys for Plaintiffs LoanStreet Inc. and Ian Lampl.*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOANSTREET INC., and<br>IAN LAMPL, Individually,<br><br>                Plaintiffs,<br><br>    v.<br><br>WYATT TROIA, Individually,<br><br>                Defendant. | Civil Action No.  1:21-cv-06166-NRB |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTIONS TO DISMISS
DEFENDANT'S COUNTERCLAIMS AND FOR JUDGMENT ON THE PLEADINGS
<u>AS TO PLAINTIFFS' DEFAMATION CLAIMS</u>**

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    PROCEDURAL BACKGROUND................................................................................1

III.   STATEMENT OF FACTS .........................................................................................2

IV.    STANDARD OF REVIEW ........................................................................................5

   A.   Motion to Dismiss ............................................................................................5

   B.   Judgment on the Pleadings ...............................................................................5

V.     ARGUMENT .............................................................................................................6

   A.   Defendant's Counterclaims Are Frivolous and Should be Dismissed ............................6

      1.   The Alleged Violation of New York's Anti-SLAPP (Counterclaim I) Should Be
           Dismissed as Futile..................................................................................................6

         a.   New York's Anti-SLAPP Statute Is Inapplicable in Federal Court ............................6

         b.   The Court's Denial of Defendant's Motion to Dismiss in Conjunction with
              Defendant's Admissions Confirms This Is Not a SLAPP Lawsuit .........................7

      2.   The Alleged Breach of the Implied Covenant of Good Faith and Fair Dealings
           (Second Counterclaim) Should be Dismissed for Failure to State a Claim ................8

         a.   Defendant's Implied Covenant Theory Fails Because the Option Agreement Set the
              Vesting Commencement Date ..................................................................................8

         b.   Defendant Fails to Allege that LoanStreet Acted in Bad Faith or Arbitrarily or
              Irrationally in Setting the Option Vesting Date .....................................................10

      3.   The Alleged Fraudulent Inducement Claim (Third Counterclaim) Fails as a Matter of
           Law and Should be Dismissed ...............................................................................14

         a.   The Fraudulent Inducement Counterclaim Should be Dismissed as Duplicative of the
              Implied Covenant Counterclaim............................................................................14

         b.   Defendant Fails to Plead a Misrepresentation of Material Fact and a Strong Inference
              of Fraudulent Intent ..............................................................................................16

**4.** The Alleged Securities Fraud Claim (Fourth Counterclaim) Should be Dismissed as Untimely and for Failing as a Matter of Law ........................................................... 19

a. The Securities Fraud Claim Is Barred by the Statute of Limitations ........................ 19

b. The Securities Fraud Claim Also Should Be Dismissed for Lack of a Purchase or Sale of Securities ................................................................................................ 20

c. The Securities Fraud Claim Is Deficient for the Same Substantive Reasons as the Fraudulent Inducement Claim ................................................................................ 21

**B.** On the Undisputed Facts, Plaintiffs are Entitled to Judgment as a Matter of Law as to their Defamation Claims ................................................................................................ 22

**1.** Defendant's Statements Alleging He Was "Cheated" or "Defrauded" Were False ... 22

**2.** The Statements Were Published to a Third Party ....................................................... 23

**3.** Defendant Had the Applicable Level of Fault ............................................................. 24

**4.** The Statements Constitute Defamation *Per Se* ......................................................... 25

**VI.** CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*,
537 F. Supp. 3d 533 (S.D.N.Y. 2021)......................................................................5, 6

*Arbeeny v. Kennedy Exec. Search, Inc.*,
893 N.Y.S.2d 39 (1st Dept. 2010) ........................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................5

*Baer v. Complete Off. Supply Warehouse Corp.*,
934 N.Y.S.2d 179 (2d Dept. 2011) .......................................................................18

*Barron Partners, LP v. LAB123, Inc.*,
593 F. Supp. 2d 667 (S.D.N.Y. 2009)....................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................5

*Berzin v. W.P. Carey & Co.*,
740 N.Y.S.2d 63 (1st Dept. 2002) ........................................................................13

*Bibeault v. Advanced Health Corp.*,
No. 97 Civ. 6026 (WHP), 2002 WL 24305 (S.D.N.Y. Jan. 8, 2002) .....................15

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)..................................................................................8

*Bus. Exposure Reduction Grp. Assocs., LLC v. Pershing Square Cap. Mgmt., L.P.*,
549 F. Supp. 3d 318 (S.D.N.Y. 2021).............................................................10, 11

*Butvin v. DoubleClick, Inc.*,
No. 99 CIV 4727 JFK, 2001 WL 228121 (S.D.N.Y. Mar. 7 2001)........................13

*Carroll v. Trump*,
590 F. Supp. 3d. 575 (S.D.N.Y. 2022)................................................................5, 6

*Chandok v. Klessig*,
632 F.3d 803 (2d Cir. 2011)................................................................................22

*Dreni v. PrinterOn Am. Corp.*,
No. 1:18-CV-12017-MKV, 2021 WL 4066635 (S.D.N.Y. 2021)..........................13

-iii-

*Dubin v. E.F. Hutton Grp., Inc.*,
    695 F. Supp 138 (S.D.N.Y. 1988) ...............................................................21

*E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*,
    133 F. Supp. 3d 430 (D. Conn. 2015) ....................................................18, 19

*Emps.' Ret. Sys. v. Blanford*,
    794 F.3d 297 (2d Cir. 2015) ......................................................................20

*End Line Investors, Ltd. v. Wells Fargo Bank, N.A.*,
    No. 16 Civ 7009, 2018 WL 3231649 (S.D.N.Y. Feb. 27, 2018). ..............7, 8, 9, 10

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
    194 F. Supp. 3d 263 (S.D.N.Y. 2016) .........................................................22

*Erie Group LLC v. Guayaba Cap., LLC*,
    110 F. Supp. 3d 501 (S.D.N.Y. 2015) .........................................................22

*Fesseha v. TD Waterhouse Inv. Servs., Inc.*,
    761 N.Y.S.2d 22 (2003) ...............................................................................9

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
    783 F.3d 395 (2d Cir. 2015) ......................................................................16

*First Bank of Ams. v. Motor Car Funding, Inc.*,
    690 N.Y.S.2d 17 (1999) .............................................................................14

*Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
    157 F.3d 933 (2d Cir. 1998) ......................................................................12

*Jelks v. Citibank N.A.*,
    No. 99 Civ. 2955 (JSM), 2001 WL 50891 (S.D.N.Y. Jan. 22, 2001) ...................16

*Kesner v. Buhl*,
    590 F. Supp. 3d 680 (S.D.N.Y. 2022) ...........................................................6

*Khodeir v. Sayyed*,
    323 F.R.D. 193 (S.D.N.Y. 2017) .................................................................20

*Konikoff v. Prudential Ins. Co. of Am.*,
    234 F.3d 92 (2d Cir. 2000) ........................................................................25

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ........................................................................6

*La Liberte v. Reid*,
    966 F.3d 79 (2d Cir. 2020) ..........................................................................5

NY 79329905

*Lam v. Am. Exp. Co.*,
   265 F. Supp. 2d 225 (S.D.N.Y. 2003)............................................................15, 17

*Lankau v. Luxoft Holding, Inc.*,
   266 F. Supp. 3d 666 (S.D.N.Y. 2017).......................................................15, 20, 21

*Lawrence v. Cohn*,
   325 F.3d 141 (2d Cir. 2003)..............................................................................21

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)..............................................................................17

*Marquez v. Hoffman*,
   No. 18-CV-7315 (ALC), 2021 WL 1226981 (S.D.N.Y. Mar. 31, 2021) ........................16, 17

*Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*,
   747 F. Supp. 2d 406 (S.D.N.Y. 2010).................................................................22

*Mitchill v. Lath*,
   247 N.Y. 377 (1928) .......................................................................................8

*Mo. Pac. R.R. Co. v. Nat'l Milling Co.*,
   409 F.2d 882 (3d Cir. 1969)...............................................................................5

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
   551 F. Supp. 3d 408 (S.D.N.Y. 2021)....................................................................5

*Northville Indus. v Fort Neck Oil Terminals*,
   474 N.Y.S.2d 122 (1984), aff'd, 64 N.Y.2d 930 (1985)..........................................14

*Nunez v. A-T Fin. Info. Inc.*,
   957 F. Supp. 438 (S.D.N.Y. 1997) .....................................................................12

*PetEdge, Inc. v. Garg*,
   234 F. Supp. 3d 477 (S.D.N.Y. 2017)..............................................................16, 17

*Prince v. Intercept*,
   No. 21-CV-10075 (LAP), 2022 WL 5243417 (S.D.N.Y. Oct. 6, 2022)..................................6

*S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*,
   84 F.3d 629 (2d Cir. 1996)................................................................................17

*Weir v. Holland & Knight, LLP*,
   No. 603204/07, 2011 WL 6973240 (N.Y. Sup. Ct. Dec. 9, 2011) ..............................14

NY 79329905

**Statutes**

15 U.S.C. § 78j(b) ................................................................................................19, 20

15 U.S.C. § 78u–4(b)(2) ...........................................................................................21-22

28 U.S.C. § 1658 ................................................................................................19, 20

N.Y. Civ. Rights Law § 70-a ....................................................................................5, 6

**Other Authorities**

Fed. R. Civ. P. 9(b) .............................................................................................16, 21

Fed. R. Civ. P. 12(b)(6)...............................................................................................5

Fed. R. Civ. P. 12(c) .................................................................................5, 6, 22, 25

Fed. R. Civ. P. 13(a) ...................................................................................................20

Fed. R. Civ. P. 13(f) ...................................................................................................20

Fed. R. Civ. P. 15 .......................................................................................................20

Fed. R. Civ. P. 15(c)(1)...............................................................................................20

Fed. R. Civ. P. 56 .....................................................................................................5, 6

Rule 10b-5..................................................................................................................22

NY 79329905

## I.      **PRELIMINARY STATEMENT**

Defendant and counterclaim-plaintiff Wyatt Troia ("Defendant" or "Troia") knowingly, repeatedly, and unabashedly spread lies about plaintiffs and counterclaim-defendants LoanStreet Inc. and Ian Lampl (collectively, "Plaintiffs") through his Internet posts and Google Ads campaign, wrongly accusing Plaintiffs of "fraud" and "cheating" Defendant out of equity to which he was never entitled. In his responsive pleadings, Defendant proudly and without remorse admits to his campaign against Plaintiffs. These admissions in his pleadings confirm that there are no material, factual disputes that Defendant's admitted conduct constitutes defamation.

In Defendant's continued effort to avoid taking responsibility for his actions and instead paint himself the victim, he filed an initial and then an amended response to Plaintiffs' complaint, in which he asserts four counterclaims. Each of these counterclaims is meritless and facially deficient. For the reasons discussed below, Plaintiffs respectfully request that the Court dismiss Defendant's counterclaims and find Defendant liable for defamation based on the undisputed facts in the pleadings.

## II.     **PROCEDURAL BACKGROUND**

Plaintiffs filed their complaint against Defendant on July 21, 2021 in response to Defendant posting defamatory statements about Plaintiffs on several different websites and improperly using LoanStreet's registered trademark as part of his Google Ads campaign. (Dkt. 3, "Complaint".) In its August 17, 2022 Memorandum and Order ("August 2022 Order"), the Court denied Defendant's motion to dismiss with respect to Plaintiffs' defamation *per se* and unfair competition claims and Plaintiffs' defamation claim in part. (Dkt. 39.)

Defendant filed an answer on October 6, 2022 with affirmative defenses and three counterclaims: (i) violation of New York's anti-SLAPP law, (ii) violation of the implied covenant of good faith and fair dealing, and (iii) fraud. (Dkt. 51, "Initial Answer & Counterclaims".) On

October 21, 2022, Plaintiffs requested a pre-motion conference regarding an anticipated motion to dismiss those counterclaims and a motion for a judgment on the pleadings as to Plaintiffs' defamation claim. (Dkt. 52.) On November 9, 2022, the Court determined that Plaintiffs may bring these motions. (Dkt. 54.)

Defendant filed a first amended answer and counterclaims (Dkt. 55, "First Amended Answer and Counterclaims" or "FAA") on November 14, 2022, modifying the third counterclaim from one of "fraud" to "fraudulent inducement" and adding a fourth counterclaim alleging securities fraud premised on the same facts "as those underlying the fraudulent inducement claim." (FAA, Counterclaims ¶ 107.)[1] Plaintiffs renewed their request to file the instant motions on December 5, 2022. (Dkt. 59.) Defendant responded on December 8, 2022 (Dkt. 60) and shortly thereafter, also on December 8, the Court gave Plaintiffs permission to file. (Dkt. 61.)

## III.  <u>STATEMENT OF FACTS</u>

On February 28, 2019, Defendant received an offer letter to join LoanStreet (Dkt. 55-2, "Offer Letter") as an "at will" employee. (Offer Letter, § 4; *see also* FAA, Counterclaims ¶ 8.) The Offer Letter states that:

> LoanStreet …. is pleased to offer you employment with the Company, beginning on or about March 18, 2019. The purpose of this letter is to describe the general terms of your employment with the Company.
>
> ….
>
> [§2(b)]. Equity Grant. Subject to the approval of the Board of Directors of the Company (the "Board"), the Company will grant you an option (the "Option") to purchase 885 shares of common stock, $0.0001 par value per share, of the Company (the "Common Stock"). The exercise price per share of the Option will be equal to the fair market value per share of the Common Stock on the date of grant, as determined by the Board. The Option will be subject to the terms and conditions of the Company's 2016 Equity Incentive Plan (the "Plan"), as the same may be amended from time to time, and a separate stock option grant agreement between

---

[1]   Troia's anti-SLAPP counterclaim is brought against both LoanStreet and Lampl. The other three counterclaims are against LoanStreet only.

the Company and you that sets forth the terms of the option grant (e.g., exercise price, expiration date, and vesting schedule of the stock options). Subject to the terms of the Plan and the stock option grant agreement, the Option will vest and become exercisable as to 25% of the shares subject to the Option on the first anniversary of the vesting commencement date and as to 1/36th of the remaining shares subject to the opinion at the end of each full month thereafter. Vesting will, of course, depend on your continued employment with the Company. Upon receipt of this countersigned offer letter and the Board's approval of the Option, we will prepare the option agreement with all the details. (*Id.* at. 1-2.)

The Offer Letter included an integration clause:

[§7(c)] Entire Agreement. This letter agreement and Attachment A supersede and replace all prior or contemporaneous discussions, agreements, representations or understandings (whether written, oral, implied or otherwise) between you and the Company with respect to the subject matter thereof and, together with the agreements underlying your equity grant set forth in Section 2(b), constitute the entire agreement between you and the Company regarding the subject matter set forth herein. (*Id.* at 3.)

Defendant alleges that, after receiving the Offer Letter from Thad Pitney, LoanStreet's then General Counsel, Defendant had conversations with Alyssa Guttman, Head of Human Resources, and then Chris Wu, LoanStreet's Co-Founder, both on or around February 28, 2019. (FAA, Counterclaims ¶¶ 8-10.) According to Defendant: "In the call, regarding the vesting schedule, Mr. Wu said that the first quarter of the grant would vest after a year. Mr. Wu said nothing that indicated the timing of this initial vesting would or could be set by LoanStreet for a date substantially after the first anniversary of the beginning of [Defendant's] employment with LoanStreet." (*Id.* ¶ 10.) Defendant has not alleged that he asked Mr. Wu any questions regarding the Board approval process, how that process affected the timing of his vesting period, or the meaning of "vesting commencement date."

Defendant accepted his offer on or around March 4, 2019, and began to work at LoanStreet on March 18, 2019. (FAA, Counterclaims ¶¶ 11-12.) He has not alleged that he was employed elsewhere when he received his offer from LoanStreet. Although Defendant purportedly declined

an offer from another company called Fluz Fluz LLC at about the same time (*id.* ¶ 11), he has not pleaded that anyone at LoanStreet had knowledge of that offer or any other competing offer.

On January 20, 2020, Defendant signed an option agreement (Dkt. 55-4, "Option Agreement" at 7), which states:

> A. **DATE OF GRANT:**     July 22, 2019
>
> ….
>
> F. **EXERCISE SCHEDULE.** Except as otherwise provided in this Grant Agreement, this Option (to the extent not previously exercised) may be exercised in whole or in part, with respect to the Shares in accordance with the following vesting schedule: The Option will vest and become exercisable as to 25% of the shares subject to the Option on the first anniversary of the Date of Grant above and as to 1/36th of the remaining shares subject to the Option at the end of each full calendar month thereafter.
>
> G. **EXERCISE OF OPTION FOLLOWING TERMINATION OF SERVICE.** This Option shall terminate and be cancelled to the extent not exercised within ninety (90) days after the Optionee ceases to be an employee …. In no event …. shall this Option be exercised for more Shares than the Shares which otherwise have become exercisable as of the date of cessation of status as a[n employee]. (*Id.* at 1-2.)

And, likewise, contains an integration clause:

> Q. **ENTIRE AGREEMENT** . . . The [2016 Equity Incentive] Plan and this [option agreement] constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and agreements of the Company and the Optionee with respect to the subject matter hereof, and may not be modified adversely to the Optionee's interest except by means of a writing signed by the Company and Optionee. (*Id.* at 6.)

Defendant alleges he expressed concern to Mr. Wu about the grant date a month later on or about February 21, 2020. (FAA, Counterclaims ¶¶ 29-30.) On or around May 2020, Defendant alleges he had problems at work, including "upset[ting]" LoanStreet's VP of Engineering, being "chastised" for "overstep[ping] his boundaries," working on a project that was "dysfunctional," and being "distant." (*Id.* ¶¶ 33-36.) Defendant was terminated by LoanStreet on June 12, 2020, over a month before the first quarter of his Option was to vest. (*Id.* ¶ 42.)

-4-

After waiting a full year post termination "for his non-disparagement clause to expire," (FAA, Counterclaims ¶¶ 53-56), in June 2021, Defendant launched an online campaign against Plaintiffs, publicly posting on Reddit, Teamblind, Glass Door, Hack Reactor, and elsewhere that he was "cheated" out of equity by LoanStreet, that LoanStreet and Lampl committed "fraud," and that Lampl "pocketed" his options. (*See* FAA, Answer ¶¶ 35-38, 42, 45, 49; Counterclaims ¶¶ 54-55.) Defendant admits that he purchased Google Ads to draw attention to these defamatory statements and to undo and undermine any mitigation efforts undertaken by LoanStreet. (*See, e.g.*, FAA, Answer ¶ 52.)

## IV.   STANDARD OF REVIEW

### A.   Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal is warranted if a party fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a party's allegations do not bring his "claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B.   Judgment on the Pleadings

Judgment as a matter of law under Federal Rule of Civil Procedure 12(c) is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *See Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021). "When a plaintiff moves for judgment on the pleadings, 'the question for determination is whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law.'" *Id.* (quoting *Mo. Pac. R.R. Co. v. Nat'l Milling Co.*, 409 F.2d 882, 884-85 (3d Cir.

-5-

1969)). "[I]f a defendant's answer admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be granted." *Allstate*, 537 F. Supp. 3d at 545. On a 12(c) motion, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011) (quotations omitted).

## V.  ARGUMENT

### A.  Defendant's Counterclaims Are Frivolous and Should be Dismissed

#### 1.  The Alleged Violation of New York's Anti-SLAPP (Counterclaim I) Should Be Dismissed as Futile

Anti-SLAPP (strategic lawsuits against public participation) laws are intended to deter actions filed to punish or harass a defendant for participating in public life. Defendant alleges that this lawsuit qualifies as a SLAPP suit, and that he is therefore entitled to attorneys' fees and costs and other damages pursuant to Section 70-a of New York's anti-SLAPP statute. (FAA, Counterclaims ¶¶ 75-79.) Defendant's invocation of the anti-SLAPP statute is misplaced.

##### a.  New York's Anti-SLAPP Statute Is Inapplicable in Federal Court

As an initial matter, Defendant's anti-SLAPP counterclaim should be dismissed because, as courts in this District have consistently held, Section 70-a of the New York anti-SLAPP statute is inapplicable in Federal Court as it conflicts with the Federal Rules of Civil Procedure. *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 431- 32 (S.D.N.Y. 2021) ("[Section] 70-a … is inapplicable in federal court" because its "'substantial basis' standard conflicts with the pleading standard" under Federal Rules of Civil Procedure 12 and 56); *see also Carroll v. Trump*, 590 F. Supp. 3d 575, 585 (S.D.N.Y. 2022) (agreeing with the conclusion reached in *Nat'l Acad.*). *Carroll* and *Nat'l Acad.* rely on the Second Circuit decision

-6-

*La Liberte v. Reid*, where the Circuit Court found that California's anti-SLAPP statute, which permitted a "special motion to strike" and an additional provision that awarded attorneys' fees to defendants who prevail "on a special motion to strike," could not be applied in federal court because that statute conflicted with Federal Rules of Civil Procedure 12 and 56, 966 F.3d 79 (2d Cir. 2020). As the *Carroll* Court explained, the "decision in *La Liberte v. Reid* requires the conclusion that the defendant cannot here invoke any of the relevant New York anti-SLAPP law's provisions." 590 F. Supp. 3d 575 at 583. The Court in *Prince v. Intercept* recently confirmed this finding. No. 21-CV-10075 (LAP), 2022 WL 5243417, at \*15, \*18 (S.D.N.Y. Oct. 6, 2022) ("The Court agrees with its colleagues that § 70-a's standard conflicts with the standards under Federal Rules 12 and 56. Accordingly, Defendants' request for costs and attorneys' fees is denied.").

Invoking Section 70 at this juncture, as a counterclaim rather than a special motion to dismiss, likewise is unavailing. Courts in this District have dismissed anti-SLAPP counterclaims and denied motions to add them. *See, e.g.*, *Carroll*, and *Prince* (decisions discussed above); *see also Kesner v. Buhl*, 590 F. Supp. 3d 680, 701 (S.D.N.Y. 2022) ("The Court accordingly grants Kesner's motion to dismiss Buhl's counterclaim based on § 70-a, because, as in *Abbas*, *[La Liberte v. ] Reid*, and *Nat'l Academy*, granting relief under § 70-a would require the Court to apply a state procedural standard that conflicts with the Federal Rules of Civil Procedure."). Because there is a conflict between Section 70-a and the Federal Rules of Civil Procedure, Defendant's anti-SLAPP counterclaim should be dismissed.

> b. <u>The Court's Denial of Defendant's Motion to Dismiss in Conjunction with Defendant's Admissions Confirms This Is Not a SLAPP Lawsuit</u>

Even if costs and fees were available in Federal Court under Section 70-a of New York's anti-SLAPP statute, they are only appropriate "upon a demonstration … that the action … was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-

-7-

a(a). As the Court summarized in its August 2022 Order, "plaintiffs have sufficiently pleaded defamation per se with respect to the statements related to defendant's options." (Dkt. 39 at 23.) Those findings, in conjunction with the undisputed facts in the pleadings, entitle *Plaintiffs* to judgment as a matter of law (*see* Section V.B, *infra*)—there is thus indisputably a substantial basis in fact and law for this lawsuit, and Defendant's anti-SLAPP counterclaim is futile.

> **2.    The Alleged Breach of the Implied Covenant of Good Faith and Fair Dealings (Second Counterclaim) Should be Dismissed for Failure to State a Claim**

Defendant alleges that LoanStreet violated the implied covenant of good faith and fair dealings (the "Implied Covenant") in its "decision to begin vesting [Defendant's] on-hire equity grant only after [Defendant] had worked for LoanStreet for over 16 months," as "an arbitrary or irrational exercising of discretion that had the effect of destroying [Defendant's] right to receive the fruits of the contract that a reasonable promisee would have understood to have been included in his Offer Letter." (FAA, Counterclaims ¶ 81.)[2] For the reasons set forth below, the Implied Covenant counterclaim fails as a matter of law.

> a.    Defendant's Implied Covenant Theory Fails Because the Option Agreement Set the Vesting Commencement Date

The Implied Covenant "'can only impose an obligation consistent with other mutually agreed upon terms in the contract'" and "does not add … to the contract a substantive provision not included by the parties." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) (citations omitted); *see also End Line Invs., Ltd. v. Wells Fargo Bank, N.A.*, No. 16 Civ. 7009 (PGG), 2018 WL 3231649, at *8 (S.D.N.Y. Feb. 27, 2018) (The Implied Covenant "'cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create

---

[2] Despite Defendant's claims suggesting a 16-month discrepancy between his start date and his vesting commencement date, Defendant clarifies elsewhere that the vesting commencement date was July 22, 2019, approximately four months following his start date of March 18, 2019. (FAA, Counterclaim ¶ 27.)

independent contractual rights'" (quoting *Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 761 N.Y.S.2d 22, 23 (2003)). Here, Defendant first signed the Offer Letter on March 4, 2019, which did not define the vesting commencement date, but instead made clear that (1) LoanStreet would grant Defendant the Option if and when the Board of Directors approved the grant, (2) that the vesting schedule for the Option would be contained in the Option Agreement, and (3) that the Option Agreement would be prepared after Board approval was secured (together, the "Option Conditions".) (*See* Offer Letter at 1; FAA, Counterclaims ¶ 8.) Given the clarity in the Offer Letter that the Option Agreement would set the vesting commencement date, Defendant cannot now use the Implied Covenant to "shoehorn" a specific vesting commencement date into the Offer Letter. *End Line Invs.*, 2018 WL 3231649, at *8 (dismissing Implied Covenant claim where plaintiff attempted to "shoehorn" a requirement into an agreement and "create [an] independent contractual right[]").

On January 20, 2020, Defendant signed the Option Agreement, which did, in fact, indicate the grant date and corresponding vesting commencement date as July 22, 2019. (Option Agreement at 1-2.) The Option Agreement specified the terms of the Option (which is exactly what the Offer Letter stated would happen) and, thus, pursuant to the plain language of the Option Agreement's integration clause, the Option Agreement superseded the Offer Letter.

The "presence of an integration clause establishes 'the parties' intent that the [a]greement [in question] is to be considered a completely integrated writing,'" and "extrinsic proof to add to or vary [the] terms [of the option agreement] may not be considered." *End Line Invs.*, 2018 WL 3231649, at *3-*4 (citing *Primex Int'l Corp. v. Wal-Mart Stores*, 89 N.Y.2d 594, 600 (1997) (edits in original)). To be permitted to rely on parole evidence concerning the terms of an agreement containing an integration clause, Defendant must allege there was a "collateral agreement" that,

-9-

among other things, does not "contradict express or implied provisions of the written contract." *Id.* at *4 (citing *Mitchill v. Lath*, 247 N.Y. 377, 381 (1928)). Here, it is undisputed that the Option Agreement explicitly contained the vesting commencement date of July 22, 2019. Thus, regardless of what Defendant may have allegedly discussed about the vesting commencement date prior to his employment or his privately held beliefs as to his expectations thereof, Defendant cannot use the Implied Covenant to insert a term into the Offer Letter or rewrite the express provisions of the Option Agreement.

    b. <u>Defendant Fails to Allege that LoanStreet Acted in Bad Faith or Arbitrarily or Irrationally in Setting the Option Vesting Date</u>

Despite two mutually agreed-upon agreements that, taken together, unambiguously set a vesting schedule, Defendant nevertheless alleges that LoanStreet "violated Mr. Troia's reasonable expectation that his equity grant vesting commencement date would be on or reasonably soon after his first date of employment." (FAA, Counterclaims ¶¶ 84-85.) While a contract that involves the exercise of discretion includes a "promise 'not to act arbitrarily or irrationally in exercising that discretion,'" there is a presumption that parties act in good faith and therefore it is Defendant's burden to allege facts to overcome that presumption, which Defendant has not done here. *See Bus. Exposure Reduction Grp. Assocs., LLC v. Pershing Square Cap. Mgmt., L.P.*, 549 F. Supp. 3d 318, 332-34 (S.D.N.Y. 2021) (citations omitted) (dismissing breach of the implied covenant claim where plaintiff "has not plausibly alleged any more than a mistaken business decision, much less bad faith"). Defendant's allegations reinforce that LoanStreet acted within its contractual obligations.

*First*, Defendant fails to plead an arbitrary or irrational exercise of discretion on LoanStreet's part, much less that LoanStreet operated in bad faith, in selecting the vesting commencement date. Beyond the fact that nothing Defendant alleges supports a finding that he

should have expected or was entitled to an earlier vesting date, Defendant's contention would lead to the bizarre conclusion that LoanStreet was required by law to begin the vesting of Defendant's stock Option four months prior to its grant.

As Defendant himself acknowledges, his vesting commencement date was selected based on "the date of the LoanStreet's Board of Directors' approval of a grant, which only happened at the Board's quarterly meetings."[3] (*Id.*, Counterclaims ¶ 28.) Notably absent from his claim that his "reasonable expectation" was "violat[ed]," is any allegation that the process for Board approval or the cadence of quarterly Board meetings was unreasonable, that his Option was treated less favorably than any other option grant to similarly situated employees or that LoanStreet was under any legal obligation to set the vesting commencement date not to the grant date, but to his employment start date. Adhering to its process, which was consistent with the terms of the Offer Letter—even if that process did not yield a vesting commencement date that most favored Defendant—hardly rises to the level of exercising discretion in an arbitrary or irrational manner, much less operating in bad faith. *See Bus. Exposure Reduction*, 549 F. Supp. 3d at 330-31 (explaining that the obligation not to act arbitrarily or irrationally "cannot undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's expected benefit") (quotations and citations omitted).

*Second,* Defendant claims that "LoanStreet's most senior leaders disingenuously encouraged [him] in his expectation" that the "vesting commencement date coincide with the start of his employment." (Dkt. 55, Counterclaims ¶¶ 84, 86.) As an initial matter, all such

---

[3]  The Plan (which Defendant alleged to have received prior to signing the Option Agreement (FAA, Counterclaims ¶ 26, 55-5)) confirms the Board's discretion in setting the vesting schedule. (Plan at 7-8 ("The [Option Agreement] evidencing any Option will incorporate the following terms and conditions and will contain such additional terms and conditions, not inconsistent with the terms of the Plan, as the Board deems appropriate in its sole and absolute discretion. . . . "(iii) Exercisability. Options will vest and be exercisable at such time or times and subject to such terms and conditions as determined by the Board at the time of grant."))

communications are not applicable in an Implied Covenant claim. *See Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) (noting that "implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct") This is especially true where, as here, there was an integration clause in the Offer Letter. (Offer Letter at 3.)

However, even if these communications were applicable—and they are not—Defendant's allegations do not support his claim. Each communication (*i.e.*, those with Mr. Wu, Ms. Guttman, and Mr. Pitney that each predated the acceptance of the Offer Letter, FAA, Counterclaims ¶¶ 86, 93-95) reflects a position that was consistent with the terms of the Offer Letter. In fact, not one communication Defendant allegedly had with LoanStreet's "senior leaders" reflects that Defendant asked specifically what the vesting commencement date would be. To the extent this was important to Defendant, it would have been reasonable to ask this very question given that the vesting commencement date was not specified in the Offer Letter. Not even the purported conversation with Mr. Wu (upon which Defendant relies most heavily) conveys a different vesting commencement date than the one selected for his Option. (*Compare* FAA, Counterclaims ¶ 10 ("Mr. Wu said that the first quarter of the grant would vest after a year."), *with id.* Counterclaims ¶ 8 (the Offer Letter stated that the "Option will vest and become exercisable as to 25% of the shares subject to the Option on the first anniversary of the vesting commencement date.")) If anything, the communications demonstrate LoanStreet's good faith willingness to answer Defendant's questions about his Option—not a "disingenuous[]" attempt to create a false expectation for Defendant.

*Finally*, Defendant's claim that LoanStreet "compounded" his injury by firing him without warning or cause "shortly before the first anniversary of the selected vesting commencement date,"

which "resulted in LoanStreet retaining ownership of *all* the equity associated with Mr. Troia's option," (FAA, Counterclaims ¶ 88) fails as a matter of law. As Courts in this District "have repeatedly recognized, well-settled New York law holds that no implied covenant … attaches to at-will employment" relationships where the alleged breach concerns something forfeitable like options, "[because] an obligation to abide by an implied covenant of good faith and fair dealing would be inconsistent with the employer's unfettered right to terminate an at-will employee." *Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 443 (S.D.N.Y. 1997); *see Arbeeny v. Kennedy Exec. Search, Inc.*, 893 N.Y.S.2d 39, 44-45 (1st Dept. 2010) (clarifying that while the Implied Covenant may apply when termination occurred to avoid payment of "commissions that were coming due to the employee," the Implied Covenant is inapplicable to stock options because they can be "forfeited"). Given that Defendant had no ownership interest in the Option before it vested, while he "might feel ill-used," he "cannot argue that he had been deprived of anything to which he was entitled." *Butvin v. DoubleClick, Inc.*, No. 99 CIV 4727 JFK, 2001 WL 228121, at \*9 (S.D.N.Y. Mar. 7 2001); *see also Berzin v. W.P. Carey & Co.*, 740 N.Y.S.2d 63, 64 (1st Dept. 2002) (holding no breach of Implied Covenant where plaintiff alleged that "sole motivation in terminating [plaintiff] was to prevent the vesting of additional stock options").[4]

\*   \*   \*   \*   \*

For the reasons set forth above, the Implied Covenant claim has no legal basis to proceed and should be dismissed.

---

[4] Defendant's reliance on the *contra proferentem* doctrine is misplaced. (FAA, Counterclaims ¶ 84.) The *contra proferentem* doctrine is applied as a last resort to resolve ambiguities in an agreement if extrinsic evidence is inconclusive. *Dreni v. PrinterOn Am. Corp.*, No. 1:18-CV-12017-MKV, 2021 WL 4066635, at \*5 (S.D.N.Y. 2021). Defendant's claim is premised on LoanStreet's exercise of discretion (FAA, Counterclaims ¶ 81)—not that the Offer Letter contained ambiguities.

-13-

### 3.   The Alleged Fraudulent Inducement Claim (Third Counterclaim) Fails as a Matter of Law and Should be Dismissed

Premised on the same allegations as the Implied Covenant counterclaim, Defendant alleges that he was fraudulently induced into accepting the Offer Letter based upon "misrepresented and omitted material facts" surrounding the vesting commencement date. (FAA, Counterclaims ¶ 92.) For the reasons set forth below, Defendant's fraudulent inducement claim fails as a matter of law.

#### a.   The Fraudulent Inducement Counterclaim Should be Dismissed as Duplicative of the Implied Covenant Counterclaim

Pursuant to New York law, it is "well settled that '[a] fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract.'" *Weir v. Holland & Knight, LLP*, No. 603204/07, 2011 WL 6973240, at *9 (N.Y. Sup. Ct. Dec. 9, 2011) (citing *First Bank of Ams. v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 20-21 (1999)) (dismissing fraudulent inducement claim, premised upon alleged false representations made to induce plaintiff to join law firm, as redundant to contract claims). Both the Implied Covenant and the fraudulent inducement counterclaims are premised upon the same allegations surrounding the vesting commencement date (FAA, Counterclaims ¶¶ 86, 93), and, thus, the fraudulent inducement claim should be dismissed as duplicative.[5]

Defendant attempts to avoid dismissal of the fraudulent inducement claim as duplicative by alleging that he suffered "special damages" because he "declined a formal offer of employment

---

[5]   For the same reason the Option Agreement supersedes the vesting commencement date, it also vitiates any claim of fraudulent inducement regarding the Offer Letter on the subject matter thereof. See *Northville Indus. v Fort Neck Oil Terminals*, 474 N.Y.S.2d 122, 125 (1984), aff'd, 64 N.Y.2d 930 (1985) ("It is well settled that where the parties have clearly expressed or manifested their intention that a subsequent agreement supersede or substitute for an old agreement, the subsequent agreement extinguishes the old one and the remedy for any breach thereof is to sue on the superseding agreement") (quotations and citations omitted).

with specified terms from Fluz Fluz LLC … in order to instead accept LoanStreet's offer."[6] (FAA, Counterclaims ¶ 100.) Under New York law, the award of special damages is limited to recovery of "those injuries which the parties could reasonably have anticipated at the time the contract was entered into." *Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026 (WHP), 2002 WL 24305, *6 (S.D.N.Y. Jan. 8, 2002) (citations omitted) (dismissing fraudulent inducement claim as duplicative of contract claim because, *inter alia*, plaintiff fails to allege special damages). In other words, Defendant must show that he forewent something of specific measurable loss. *Id.*; *see also Lam*, 265 F. Supp. 2d at 231-32 (accepting claim for special damages where plaintiff employee waived specific, calculable benefit rights to former employer's severance plan as a condition to employment, based on misrepresentations of employer, and thus did not have recoverable rights under the plan); *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 676-77 (S.D.N.Y. 2017) (allowing fraudulent inducement claim to proceed on the basis of special damages where plaintiff had to forfeit unvested stock options at another company as a condition to employment with defendant, and plaintiff sufficiently plead facts that created a strong inference that defendants knew their material representations were inaccurate). Defendant makes no such showing here.

Defendant does not allege that he was currently employed (and would be leaving behind anything of value) at the time he accepted the Offer Letter, nor that the purported Fluz Fluz LLC offer (the existence and details of which he never alleged to have shared with LoanStreet) was anything other than an at-will offer with incentives he could earn "upon completion" of three years of employment. (FAA, Counterclaims ¶ 101.) Accordingly, Defendant has not alleged special

---

[6]   The Second Circuit has indicated that fraud-based claims can survive distinct from contract claims if a party can (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages. See *Lam v. Am. Exp. Co.*, 265 F. Supp. 2d 225, 230 (S.D.N.Y. 2003) (citation omitted). Defendant has made no allegations that the first or second exceptions apply.

damages and his fraudulent inducement claim cannot survive as an independent claim. *See Jelks v. Citibank N.A.*, No. 99 Civ. 2955 (JSM), 2001 WL 50891, at *3 (S.D.N.Y. Jan. 22, 2001) (dismissing fraudulent inducement claim as duplicative where plaintiff "alleges no damages that result from being induced away from her prior position").

        b.    <u>Defendant Fails to Plead a Misrepresentation of Material Fact and a Strong Inference of Fraudulent Intent</u>

Even if Defendant were permitted to separately pursue a fraudulent inducement claim, the claim fails as a matter of law. To state a claim for fraudulent inducement under New York law, Defendant must allege: "'a representation of fact, which is untrue and either known by [the party] to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury.'" *Marquez v. Hoffman*, No. 18-CV-7315 (ALC), 2021 WL 1226981, at *33 (S.D.N.Y. Mar. 31, 2021) (citing *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017)). Claims sounding in fraud also must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which "'requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Id.* at *33 (citing *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015)). Defendant fails to plead an actionable omission or misrepresentation or fraudulent intent.

Despite Defendant's claim that LoanStreet "omitted the material facts" regarding the process for selecting the vesting commencement date (FAA, Counterclaims ¶¶ 93-94), an omission can only serve as the basis of a fraudulent inducement claim where there exists a duty to disclose. *Marquez*, 2021 WL 1226981, at *33. Where, as here, no fiduciary relationship existed between LoanStreet and Defendant (particularly prior to employment when LoanStreet and Defendant were

in arms-length negotiations surrounding the Offer Letter), any such omission cannot form the basis of a fraudulent inducement claim. *See id.* (dismissing fraudulent inducement claim premised on omission for lack of fiduciary relationship); *Lam*, 265 F. Supp. 2d at 230 ("An at-will employee does not have any claim of maintaining a fiduciary relationship with his employer …").[7]

Regardless, Mr. Wu's statement—in which he allegedly said to Defendant that "the first quarter of his grant would vest after a year" (FAA, Counterclaims ¶ 95)—can hardly be an actionable misrepresentation of fact when Mr. Wu did not say anything inconsistent with the Offer Letter. (*Id.* Counterclaims ¶ 8 (Offer Letter stated that the "Option will vest and become exercisable as to 25% of the shares subject to the Option on the first anniversary of the vesting commencement date.").) Nor did Mr. Wu convey a specific vesting commencement date that was different from the date provided in the Option Agreement. Absent an actionable omission or misrepresentation, there is no basis in law for the fraudulent inducement claim to survive.

In addition, Defendant fails to allege facts giving rise to a "strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citations omitted). To satisfy this requirement, Defendant must "(1) alleg[e] facts to show that [Plaintiffs] had both motive and opportunity to commit fraud, or …(2) alleg[e] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *PetEdge*, 234 F. Supp. 3d at 491 (citing *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996)). Defendant does neither.

---

[7] Notwithstanding the lack of a duty to disclose, the alleged omissions are immaterial. An omission of fact is material if "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable [person] would not so regard it." *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 672 (S.D.N.Y. 2009) (citation omitted). Defendant's failure to allege facts that LoanStreet had any awareness of privately held impression that he was entitled to a different vesting commencement date renders any claim of materiality implausible.

Not only has Defendant admitted that LoanStreet lacked fraudulent intent upon his departure from LoanStreet (FAA, Counterclaims ¶ 46 ("I don't think you [Ian] intended for your company to treat people unfairly")), but Defendant fails to allege facts sufficient to show that LoanStreet "harbored a present intent to deceive him," (*Baer v. Complete Off. Supply Warehouse Corp.*, 934 N.Y.S.2d 179, 181 (2d Dept. 2011)), regarding the Option's vesting commencement date. Defendant's basis for an "intent to defraud" is that it was "unlikely that this critical information would, conveniently for LoanStreet and inconveniently for [Defendant], slip the minds of all the top executives of LoanStreet—Mr. Lampl, Mr. Wu, Mr. Pitney, and Ms. Guttman—when they each individually spoke with [Defendant] before he signed his Offer Letter and when they, with plenty of time to think and revise, drafted the Offer Letter language related to equity compensation." (FAA, Counterclaims ¶ 98.) However, "unlikely" to "slip the minds" of executives is hardly sufficient to allege that those executives were motivated to deceive Defendant—who at the time, was a junior engineer that potentially could work for those same executives for years to come. (*See* Dkt. 55-1 (demonstrating "excitement" for Defendant to "join the team").) Defendant's theory of deceit is especially implausible where, again, there is not a single allegation that Defendant communicated his privately held belief that the vesting commencement date should be his start date. If anything, Defendant's allegations establish a willingness of LoanStreet to field questions and provide any information or documents Defendant was seeking to help make his decision to join LoanStreet. (*Id.* (showing Mr. Pitney answering Defendant's questions and stating: "[w]e are available to answer questions as needed. Just give Ian, Chris, Alyssa or me a ring").)

Finally, Defendant fails to allege why a four-month difference in the Option's vesting schedule would benefit LoanStreet in such a way as to motivate fraud. *See E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*, 133 F. Supp. 3d 430, 436 (D. Conn. 2015) ("motive must be to benefit in

a concrete and personal way"). Likewise, Defendant's conclusory allegations that "LoanStreet's conduct was willful or wanton in that it made these misrepresentations with a conscious and deliberate disregard of the rights of [Defendant]" (FAA, Counterclaims ¶ 102) fail to sufficiently allege fraudulent intent "through strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (rejecting "conclusory" allegations to plead an intentional misrepresentation, or "[r]eckless conduct," which "is highly unreasonable and which represents an extreme departure from the standards of ordinary care …").

*      *      *      *      *

For failure to allege a misrepresentation or omission of material fact and a strong inference of fraudulent intent, and for the additional reasons stated above, the fraudulent inducement claim should be dismissed.

### 4.      The Alleged Securities Fraud Claim (Fourth Counterclaim) Should be Dismissed as Untimely and for Failing as a Matter of Law

Premised on the same allegations as the fraudulent inducement counterclaim (FAA, Counterclaims ¶ 107), Defendant alleges securities fraud against LoanStreet. This claim likewise fails as a matter of law.

#### a.      The Securities Fraud Claim Is Barred by the Statute of Limitations

Defendant's counterclaim alleging securities fraud under the Securities Exchange Act should be dismissed because it is untimely. A party must bring fraud claims under the Securities Exchange Act within two years after the discovery of facts constituting the fraud or five years after such violation, whichever is earlier. 28 U.S.C. § 1658. Defendant filed his amended counterclaim on November 14, 2022—more than two years after he is alleged to have discovered the purported fraud in January 2020 and when he was terminated on June 12, 2020. (FAA, Counterclaims ¶¶ 25-27 (alleging his "surprise[] to see the agreement included a vesting schedule that was dramatically

-19-

delayed relative to the one LoanStreet had represented to him when enticing him to accept its offer of employing"); *id.* Counterclaims ¶ 42.)

To the extent Defendant attempts to relate back to a prior pleading, at best he can relate back to **his** original pleading (*i.e.*, his October 6, 2022 Initial Answer & Counterclaims), which also was filed more than two years after his discovery of the purported fraud in January 2020. *Khodeir v. Sayyed*, 323 F.R.D. 193, 204-05 (S.D.N.Y. 2017) (explaining that Federal Rule of Civil Procedure 15(c)(1) applies when a defendant attempts to add a counterclaim via amendment to counterclaims, whereas Federal Rule of Civil Procedure 13(a) governs relation back of a defendant's initial filing of counterclaims).[8] Accordingly, Defendant's securities fraud claim is untimely.

> b. <u>The Securities Fraud Claim Also Should Be Dismissed for Lack of a Purchase or Sale of Securities</u>

Even if Defendant's securities fraud claim were timely (and it is not) the claim should be dismissed for failure to allege fraud "in connection with the purchase or sale of any security." Securities Exchange Act, 15 U.S.C. § 78j(b). To state a securities fraud claim, Defendant must allege that Plaintiffs (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the Defendant relied, and (5) that the Defendant's reliance was the proximate cause of his injury. *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 678 (S.D.N.Y. 2017) (citing *Emps.' Ret. Sys. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015)). In fact, "however deceitful and false the misrepresentations may have been,

---

[8]  Any attempt by Defendant to relate back to the Complaint's July 21, 2021 filing must be rejected. Federal Rule of Civil Procedure 13(a) is not applicable here because it only relates to the initial pleading of counterclaims, not amendments to counterclaims. *Khodeir*, 323 F.R.D. at 204-05, see also Fed. R. Civ. P. 13(f) Committee Note on Rules to 2009 amendment (stating that "[a]n amendment to add a counterclaim will be governed by Rule 15").

the plaintiff must be a purchaser or a seller … in a purchase or sale as to which there is a claim of fraud." *Id.* (citing *Lawrence v. Cohn*, 325 F.3d 141, 154 (2d Cir. 2003)).

Defendant alleges that he "purchase[d]" securities when LoanStreet offered him the Option as part of his Offer Letter, claiming he "accepted the offer, changing his way of life and foregoing a found alternative offer of employment with specified terms in return for the stock option." (FAA, Counterclaims ¶ 105.) Fatal to his claim, however, is that the alleged fraud relates not to the conditions of Defendant's equity ownership (or anything in the Option Agreement) (*id.* ¶¶ 27, 105), but rather to alleged communications with Defendant at the start of his employment in February 2019 regarding the timing of his Option grant and vesting schedule thereof. (*Id.* ¶¶ 93-96.) The Second Circuit has noted a "'distinction … between [i] misrepresentations with respect to the value of a security, and [ii] misrepresentations with respect to a party's intention to comply with a particular agreement,' finding the former to state a claim for securities fraud and the latter to not." *Lankou*, 266 F. Supp. 3d at 679 (quoting *Dubin v. E.F. Hutton Grp., Inc.*, 695 F. Supp 138, 144 (S.D.N.Y. 1988)). On this basis, Defendant cannot establish that he is a "purchaser" of a LoanStreet security. *See id.* (dismissing former employee's §10(b) claim where complaint alleges "not that Defendants failed to inform Plaintiff of the truthful conditions of equity ownership once possessed … but rather that Defendants failed to provide the shares in accordance with the contested Employment Agreement") (citations omitted); *see also Lawrence v. Cohn*, 325 F.3d 141, 154 (2d Cir. 2003) (citing cases rejecting securities fraud claims "where fraudulent harm [arose] not from [the] purchase of shares but from defendant's refusal to transfer promised shares").

c.   The Securities Fraud Claim Is Deficient for the Same Substantive Reasons as the Fraudulent Inducement Claim

Securities fraud claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) as well as the Private Securities Litigation Reform Act, which requires that

-21-

"each act or omission alleged … state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Erie Group LLC v. Guayaba Cap., LLC*, 110 F. Supp. 3d 501, 507 (S.D.N.Y. 2015) (citing 15 U.S.C. § 78u–4(b)(2)). As explained in Section V.3.b., *supra*, Defendant has failed to plead an actionable misrepresentation or omission or that LoanStreet acted with the requisite fraudulent intent. Accordingly, Defendant's securities fraud claim cannot survive on the same grounds that warrant dismissal of the fraudulent inducement claim. *See Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 413-14 (S.D.N.Y. 2010) ("Courts in the Second Circuit have found that the elements of common law fraud are 'essentially the same' as those that must be pleaded to establish a claim under Section 10(b) and Rule 10b-5.") (citation omitted).

### B.      On the Undisputed Facts, Plaintiffs are Entitled to Judgment as a Matter of Law as to their Defamation Claims

Defendant's admissions in his First Amended Answer and Counterclaims render judgment on the pleadings appropriate as to Plaintiffs' defamation claims pursuant to Federal Rule Civil Procedure 12(c). "To state a claim for defamation under New York law, a plaintiff must allege that the defendant made a statement that was: (1) false, defamatory, and of and concerning the plaintiff; (2) published to a third party; (3) made with the applicable level of fault; and (4) defamatory per se or caused the plaintiff special harm." *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 280 (S.D.N.Y. 2016) (citing *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011)). Each of the above elements are met warranting judgment as a matter of law.

### 1.      Defendant's Statements Alleging He Was "Cheated" or "Defrauded" Were False

This Court held that Plaintiffs "sufficiently alleged the falsity of defendant's statements related to his stock options" and further noted that "[i]f defendant's termination on June 12, 2020 occurred before the first anniversary of his vesting commencement date, none of his stock options

would have vested, so he would not have been entitled to any equity compensation." (August 2022 Order at 18-19.) While Defendant may have preferred an earlier vesting commencement date, the facts are undisputed and clear: consistent with the Option Conditions laid out in his Offer Letter, Defendant received the Option grant pursuant to the Option Agreement (which he signed and which contained an integration clause, *see* § V.A.2.b., *supra*), but was terminated prior to the first anniversary of his vesting commencement date (whereby only 25% of his options would have vested). (FAA, Answer ¶¶ 19-20, 27; Counterclaims ¶ 42.) Thus, "even [his] most vitriolic" statements "relat[ing] to the specific accusation that LoanStreet and Lampl defrauded [D]efendant by unlawfully withholding $100K in stock options," are patently false. (August 2022 Order at 14.)

## 2.    The Statements Were Published to a Third Party

It is undisputed that Defendant "published" his false, defamatory statements regarding Plaintiffs on multiple third-party sites and within online advertisements, including through his Google Ads campaign. (*See, e.g.*, FAA, Answer ¶ 35 ("Defendant admits making statements on various Internet websites from on or around June 13, 2021 up until the filing of this Complaint."), ¶ 36 (admitting to Glassdoor post), ¶ 37 (only denying the substance of Glassdoor post as stated in the Complaint "because it is missing several required elements of such reviews, like the 'Pros' and 'Advice to Management' sections"), ¶ 38 (admitting to similar posts as in Glassdoor on Reddit.com, HackReactor.com, Google Ads and Teamblind.com), ¶ 41 (admitting to tagging LoanStreet personnel to their profiles on LinkedIn), ¶ 42 (admitting to post on Reddit.com on or about June 19, 2021), ¶ 45 (admitting to posting on Reddit.com that "Lampl 'pocketed' the options"), ¶ 49 (admitting to purchasing Google Ads with headlines such as "[LoanStreet] … withheld the $100K in stock options they promised me"); Counterclaims ¶ 54 (commending himself for the online statements, which garnered a "resoundingly positive response in the

-23-

technology career-oriented websites where they were posted"); ¶ 55 (linking his Reddit.com post with the headline: "LoanStreet (NY) cheated me out of equity").)

### 3.       Defendant Had the Applicable Level of Fault

There is no dispute that Defendant knew well prior to making his online posts that his statements were false. Even if he preferred an earlier vesting date, Defendant signed the Option Agreement on January 20, 2020, which reflects a grant date of July 22, 2019. (Option Agreement at 7; *see also* Dkt. 53 at 3 (submitting to the Court that LoanStreet's compliance with its contractual obligations in the Option Agreement is "easily prov[able]").) He further admits to his awareness of the vesting commencement date on February 20, 2020. (FAA, Counterclaims ¶ 29 (claiming to raise the timing of his vesting as reflected in the Option Agreement he had already signed).) It also is undisputed that LoanStreet terminated Defendant's employment on June 12, 2020. (FAA, Answer, ¶ 27; Counterclaims ¶ 42.) And there has never been a dispute that "the initial portion of his common stock options would vest and become exercisable on the first anniversary of his vesting commencement date" (FAA, Answer ¶ 19), but that termination of employment would result in cessation of vesting (Option Agreement at 2.)

Despite knowing these facts, Defendant proceeded to take very deliberate steps (having waited the "requisite year" for his "non-disparagement clause to expire" (FAA, Counterclaims ¶ 53)) to orchestrate an online campaign against LoanStreet, publicly claiming he was "defrauded" and "cheated" out of the very equity he knew he was not entitled to receive. And even after his posts were removed from certain websites as "harassing" and "containing false information," Defendant brags about "successfully" working with Reddit, Teamblind, and Glassdoor to "restore" his posts (or modified versions thereof) and purchasing Google Ads so "his warnings would be seen" by any "user" who searched for LoanStreet. (*Id.* ¶¶ 55-56. S*ee also* August 2022 Order at 4 ("Troia took the additional and distinct step of purchasing advertisements on Google linked to the

LoanStreet name, so that when users searched for LoanStreet in Google's search engine, they were shown advertisements displaying excerpts from Troia's statements and linking to Troia's disparaging posts."); *id.* at 17 ("Defendant deliberately and strategically utilized the Internet to spread statements capable of defamatory meaning"). Such a relentless online campaign is hardly mere rantings of an ex-employee, but rather a calculated effort to harm Plaintiffs by spreading lies.[9] (FAA, Counterclaims ¶¶ 52-53.)

### 4.    The Statements Constitute Defamation *Per Se*

Finally, it is undisputed that the statements at issue constitute defamation *per se*. *See* August 2022 Order at 22 ("All of these statements, which either expressly or impliedly state that plaintiffs 'defrauded' and 'cheated' defendant, constitute defamation per se.").)

Accordingly, judgment under Federal Rule of Civil Procedure 12(c) as to the defamation claims is appropriate.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to dismiss Defendant's counterclaims and motion for judgment on the pleadings should be granted in their entirety.

---

[9]   For the same reasons that establish fault (*i.e.*, Defendant knew his statements were false and took distinct steps to publish his statements as widely as possible), Defendant's affirmative defenses (*i.e.*, the Third (moral duty privilege) and Fourth (common interest privilege) (*see* FAA, pp. 51-53)) cannot shield him from liability. *See, e.g.*, *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000) (noting that privilege cannot shield liability when defamatory statements were "made to persons with an insufficient interest in [them] … to warrant protection").

Dated: February 10, 2023
New York, New York

Respectfully submitted,

_/s/ Christopher M. Gerson_
Christopher M. Gerson
Timothy K. Gilman
Ryan J. Singer
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, N.Y. 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: cgerson@stroock.com
Email: tgilman@stroock.com
Email: rsinger@stroock.com

_Attorneys for LoanStreet Inc. and Ian Lampl_

-26-

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2023, I caused a true and correct copy of the foregoing

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTIONS TO DISMISS**

**DEFENDANT'S COUNTERCLAIMS AND FOR JUDGMENT ON THE PLEADINGS AS**

**TO PLAINTIFFS' DEFAMATION CLAIMS** to be filed and served electronically by means of

the Court's CM/ECF system in accordance with Federal Rules of Civil Procedure and/or the Local

Rules of this Court, upon the following individual of record:

> Wyatt N. Troia
> 300 Albany St, 8G
> New York, New York 10280
> Tel: 402-990-3834
> Email: mrwnt10@gmail.com
>
> *Defendant proceeding pro se*

*/s/ Ryan J. Singer*
Ryan J. Singer