Christopher M. Gerson
Timothy K. Gilman
Ryan J. Singer
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: cgerson@stroock.com
Email: tgilman@stroock.com
Email: rsinger@stroock.com
*Attorneys for Plaintiffs LoanStreet Inc. and Ian Lampl.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LOANSTREET INC., and IAN LAMPL, Individually,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**WYATT TROIA, Individually,**<br><br>**Defendant.** | **Civil Action No. 1:21-cv-06166-NRB** |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS DEFENDANT'S COUNTERCLAIMS AND FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFFS' DEFAMATION CLAIMS**

# TABLE OF CONTENTS


**I.** Defendant's Counterclaims Are Frivolous and Should Be Dismissed ....... 1

**A.** The Alleged Violation of New York's Anti-SLAPP (First Counterclaim) Should Be Dismissed as Futile ....... 1

**B.** The Alleged Breach of the Implied Covenant of Good Faith and Fair Dealings (Second Counterclaim) Should be Dismissed for Failure to State a Claim ....... 2

**C.** The Alleged Fraudulent Inducement Claim (Third Counterclaim) Fails as a Matter of Law and Should Be Dismissed ....... 6

**II.** On the Undisputed Facts, Plaintiffs Are Entitled to Judgment as a Matter of Law as to Their Defamation *Per Se* Claims ....... 8

**III.** CONCLUSION ....... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baer v. Complete Off. Supply Warehouse Corp.*,
934 N.Y.S.2d 179 (2d Dept. 2011) ........................................................................8

*Barron Partners, LP v. LAB123, Inc.*,
593 F. Supp. 2d 667 (S.D.N.Y. 2009)........................................................................7

*Bus. Exposure Reduction Grp. Assocs. v. Pershing Square Cap. Mgmt., L.P.*,
549 F. Supp. 3d 318 (S.D.N.Y. 2021)........................................................................6

*Doehla v. Wathne Ltd., Inc.*,
No. 98 CIV. 6087 (CSH), 2000 WL 987280 (S.D.N.Y. July 17, 2000) ..................................7

*End Line Invs. Ltd. v. Wells Fargo Bank, N.A.*,
No. 16 Civ. 7009 (PGG), 2018 WL 3231649 (S.D.N.Y. Feb. 27, 2018) ................................4

*Gottwald v. Sebert*,
148 N.Y.S.3d 37 (2021) ........................................................................4

*Jana L. v. W. 129th St. Realty Corp.*,
802 N.Y.S.2d 132 (2005) ........................................................................7, 8

*Knutson v. G2 FMV, LLC*,
No. 14 CIV. 1694 (RWS), 2018 WL 286100 (S.D.N.Y. Jan. 3, 2018) ..................................7

*Lam v. Am. Exp. Co.*,
265 F. Supp. 2d 225 (S.D.N.Y. 2003)........................................................................5

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996) ........................................................................7

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
223 F. Supp. 2d 435 (S.D.N.Y. 2001)........................................................................5

*Luminant Energy Co. v. Koch Energy Servs., LLC*,
551 F. Supp. 3d 373 (S.D.N.Y. 2021)........................................................................4

*Palin v. N.Y. Times Co.*,
482 F. Supp. 3d 208 (S.D.N.Y.), *modified*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020) ........................................................................10

*Rozenzweig v. ClaimFox, Inc.*,
251 F. Supp. 3d 449 (E.D.N.Y. 2017) ........................................................................6

*Smith v. Railworks Corp.*,
No. 10 CIV. 3980 NRB, 2011 WL 2016293 (S.D.N.Y. May 17, 2011) ....................................5

*Sweigert v. Goodman*,
No. 18-cv-8653, 2022 WL 168080 (S.D.N.Y. Jan. 19, 2022) ..................................................2

*Non-Instruction Adm'rs, Sup'rs Retirees Ass'n ex rel. Tattersall v. Sch. Dist. of City of Niagara Falls*,
988 N.Y.S.2d 343 (2014) ...........................................................................................................4

*W.W.W. Assocs., Inc. v. Giancontieri*,
77 N.Y.2d 157 (1990) .................................................................................................................5

*Wakefield v. N. Telecom, Inc.*,
769 F.2d 109 (2d Cir. 1985).........................................................................................................6

**Statutes**

N.Y. Civ. Rights Law § 76-a(1)(a) ...........................................................................................10

**Other Authorities**

Rule 12(b)(6).................................................................................................................................1

Rule 12(c)..................................................................................................................................1, 9

Defendant[1] does not deny that, through Internet posts and Google Ads, he accused Plaintiffs of "fraud" and "cheating" Defendant out of equity to which he was never legally entitled. Rather, Defendant spends the bulk of his Opposition (Dkt. 68, "Opposition" or "Opp.") arguing points that were already decided against him in the Court's August 2022 Order. Yet, if anything, Defendant's points further confirm the falsity of his statements and underscore the harm he sought to impose on Plaintiffs, sufficient to warrant judgment as a matter of law under Rule 12(c) as to Plaintiffs' defamation claims. And despite various (and frivolous) attempts to salvage his counterclaims, Defendant's Opposition further confirms that any remaining counterclaims should be dismissed with prejudice pursuant to Rule 12(b)(6).

## I. Defendant's Counterclaims Are Frivolous and Should Be Dismissed

### A. The Alleged Violation of New York's Anti-SLAPP (First Counterclaim) Should Be Dismissed as Futile

Defendant does not dispute that four recent Southern District of New York cases all came to the same conclusion: a counterclaim or request for relief under New York's current anti-SLAPP statute cannot be brought or made in Federal Court. (*See* Mot. at 6-7 (citing *Nat'l Acad.*, *Carroll*, *Prince*, *Kesner*).) Nor does Defendant even attempt to distinguish his anti-SLAPP counterclaim from the ones dismissed in those cases. Instead, Defendant argues that in each of those four cases, Judges in this District "suffer[ed] from confusion" and "misread" the Second Circuit *Reid* opinion, and that Defendant's interpretation of *Reid* should control. (Opp. at 6-7.) As support for this assertion, Defendant does not cite to a single case in this District or from the Second Circuit that criticizes or even so much as distinguishes those opinions. Instead, Defendant relies on an article that advocates for a different result, but the authors admit that "strikingly," most cases have

[1] Terms not defined herein have the meaning in Plaintiffs' Motion (Dkt. 66, "Motion" or "Mot.").

"disagreed" with their own advocacy.[2] Defendant next cites *Sweigert v. Goodman*, No. 18-cv-8653, 2022 WL 168080 (S.D.N.Y. Jan. 19, 2022) to argue that Judge Caproni "clarified" her *National Academy* ruling. But she did nothing of the sort in *Sweigert* and Defendant misrepresents that decision. In *Sweigert*, Judge Caproni adopted Magistrate Judge Aaron's recommendation finding Defendant Goodman "ha[d] not demonstrated that he [was] entitled to [] relief" for costs and fees under an anti-SLAPP counterclaim. *Sweigert*, 2022 WL 168080, at *9. There, Goodman was not permitted to file an anti-SLAPP counterclaim, but filed one anyway. *Id.* At no point did Judge Caproni suggest anything about her ruling in *National Academy* was incorrect or in need of clarification. Accordingly, Defendant's anti-SLAPP counterclaim should be dismissed.[3]

**B. The Alleged Breach of the Implied Covenant of Good Faith and Fair Dealings (Second Counterclaim) Should be Dismissed for Failure to State a Claim**

The following facts are undisputed:

- Defendant signed the Offer Letter, which did not define the vesting commencement date, but instead made clear that the Option was subject to Option Conditions, including that the vesting schedule for the Option would be contained in the Option Agreement once the Board approved the grant. (Mot. at 9; Opp. at 8.)

- Defendant signed the Option Agreement, which set forth the Option grant date and vesting commencement date as July 22, 2019 (the exact date the Board approved the grant). (Mot. at 9; Opp. at 2.)

- The Option Agreement contained an integration clause. (Mot. at 9; Opp. at 11.)

Nevertheless, Defendant seeks to have the Court use the Implied Covenant to rewrite the express terms of these contracts and select a new vesting commencement date. Defendant's arguments fail as a matter of law. *First*, Defendant cannot refute that the Option Agreement (or as

---

[2] Schafer, *The Application of the New York Anti-SLAPP Scheme in Federal Court* (January 20, 2023) at 24 n.199 (collecting cases finding that 70-a does not apply in federal court) available for download at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4328771.

[3] The August 2022 Order's finding that Plaintiffs sufficiently pleaded defamation *per se* with respect to statements about the Option renders any argument that this case lacked a substantial basis in law unavailing. (Opp. at 7.)

Defendant labels it, "Option Agreement 2") supersedes the Offer Letter. Aside from the fact that Defendant makes not a single allegation in his pleadings regarding the Option Agreement's enforceability, any scattershot attempts to now invalidate the Option Agreement must be rejected. For example, Defendant takes issue with the Option Agreement lacking specific reference to the Offer Letter, stating there is insufficient information to "establish that the two contracts have the same subject matter." (Opp. at 11.) Not only is this claim implausible given that LoanStreet only ever offered Defendant two option grants and both grants align with the two option agreements he received (*id.*), but it also contradicts his pleadings, in which he explicitly attaches the Option Agreement to reflect the Option grant "promised in his Offer Letter." (FAA, Counterclaims ¶¶ 24-26.) Furthermore, that Defendant signed another stock option grant agreement (or as he labels it, "Option Agreement 1") regarding the second option grant, does not mean "dismissal would be premature" (Opp. at 11), as the counterclaim only concerns the vesting commencement date of his "on-hire equity grant."[4] (FAA, Counterclaims ¶ 81.)

*Second*, Defendant cannot rely on parol evidence to "*implicitly* set a vesting commencement date" (Opp. at 9), not only because Defendant signed the Option Agreement, which explicitly sets forth the vesting schedule and supersedes the Offer Letter concerning the Option,[5] but also because the Offer Letter unambiguously states that the Option is subject to Board

[4] Defendant's additional argument that the Option Agreement is "unenforceable because LoanStreet would have provided no new consideration to Mr. Troia in it" (Opp. at 12) also fails. The Option Agreement provided meaningful consideration to Defendant by granting him the Option, which had previously been conditioned upon Board approval. And, notably, the Option grant and any vesting thereof was premised upon Defendant's "continued employment with the Company." (Offer Letter § 2.b; *see also* Option Agreement at 6 ("THE OPTIONEE ACKNOWLEDGES AND AGREES THAT THE RIGHT TO EXERCISE SHARES PURSUANT TO THE EXERCISE SCHEDULE HEREOF IS ONLY BY CONTINUING EMPLOYMENT WITH THE COMPANY.").)

[5] Plaintiffs are not arguing that Defendant "waive[d] his right under the Offer Letter to a reasonable schedule" by signing the Option Agreement. (Opp. at 11.) Rather, the Option Agreement, which contains an integration clause, establishes the "intent that the [a]greement . . . is to be considered a completely integrated writing," thus, precluding the use of parol evidence to add to or vary the terms thereof. *End Line Invs. Ltd. v. Wells Fargo Bank, N.A.*, No. 16 Civ. 7009 (PGG), 2018 WL 3231649, at *3-*4 (S.D.N.Y. Feb. 27, 2018) (citation omitted)).

approval and the vesting schedule for the Option would be contained in an option agreement (Offer Letter at 2). Conceding that the Offer Letter "omitted a vesting schedule" and "'all the details' would come in a separate option agreement…" (Opp. at 8 (quoting Offer Letter)), Defendant submits that the Court should rewrite the Offer Letter and the Option Agreement to include a different vesting commencement date based upon communications with LoanStreet executives that do not reflect a specific vesting schedule and vague statements regarding "industry custom." (Opp. at 9, 12.) However, any such parol evidence is inappropriate given the clarity of both the Offer Letter, which describes the process for selecting the vesting commencement date, and the Option Agreement, which explicitly sets forth the vesting commencement date. *See Non-Instruction Adm'rs, Sup'rs Retirees Ass'n ex rel. Tattersall v. Sch. Dist. of City of Niagara Falls*, 988 N.Y.S.2d 343, 345 (2014) (refusing to consider parol evidence on a motion to dismiss where agreement was not susceptible to more than one interpretation); *see also Luminant Energy Co. v. Koch Energy Servs., LLC*, 551 F. Supp. 3d 373, 379 (S.D.N.Y. 2021) (finding evidence outside the four corners of the contract, such as industry custom, admissible only if the court finds ambiguity in the contract).[6] Even worse, Defendant is imprecise (at best) in identifying his preferred vesting commencement date. (*Compare* Opp. at 8 ("Mr. Troia reasonably understood Mr. Wu to have told him that the vesting commencement date would be *on or shortly after his employment start date*" (emphasis added)), *with id.* at 14 (explaining "an industry custom of vesting commencement dates starting *no later than the calendar month following a grantee's employment start date*" (emphasis added)).) Indeed, "parol evidence is not admissible to create an ambiguity in a written agreement

[6] Beyond the fact that Defendant cannot rely on an "industry custom" to "impose . . . an obligation . . . not found in the contract," *Gottwald v. Sebert*, 148 N.Y.S.3d 37, 47 (2021), Defendant's purported "industry custom" is irrelevant insofar as it only concerns options vesting "no later than the calendar month following a grantee's employment start date," (Opp. at 14) and does not concern backdating options so they vest prior to the grants themselves (which is what Defendant is demanding).

which is complete and clear and unambiguous upon its face." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163 (1990).[7]

*Third*, Defendant fails to allege arbitrary or irrational conduct on LoanStreet's part, let alone "(1) fraud, (2) malice, (3) bad faith, (4) other intentional wrongdoing, or (5) reckless indifference to the rights of others such as gross negligence." *Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 451 (S.D.N.Y. 2001). Nor can he overcome the presumption that LoanStreet acted in good faith in selecting the vesting commencement date.[8] In the sequence of events that occurred—Defendant signed the Offer Letter (premised upon the Option Conditions), the Board convened for its quarterly meeting four months later, during which it approved the Option grant, then LoanStreet prepared an Option Agreement, which contained the vesting commencement date as the grant date—there is simply no room to find an irrational or arbitrary exercise of discretion. Not only does Defendant concede that this process applied to all employees (Opp. at 14), but he cannot articulate a single fact to overcome the presumption that LoanStreet acted in good faith in executing its process.[9] Likewise, Defendant's contention that LoanStreet's policy of "selecting a grant's approval date as its vesting commencement date" is "highly unusual" (*id.* at 12), is unsupported—Defendant makes no allegation based in fact or on any "industry custom" that supports backdating options such that they vest prior to their grant date. Defendant's allegations amount to him being unhappy with the vesting commencement date, but

---

[7] The *contra proferentem* principle remains inapplicable given the lack of any ambiguities with respect to setting the vesting schedule. (*See* Mot. at 13 n.4.)

[8] Defendant's cases seeking to challenge the Board's "absolute discretion" over the terms of the Option are irrelevant as they concern management's withholding of an employee's incentive compensation when other documents established a right to such compensation. *See Lam v. Am. Exp. Co.*, 265 F. Supp. 2d 225, 236-37 (S.D.N.Y. 2003); *Smith v. Railworks Corp.,* No. 10 CIV. 3980 NRB, 2011 WL 2016293, at *4 (S.D.N.Y. May 17, 2011). Here, there is no allegation that LoanStreet's exercise of discretion conflicts with any policy or document regarding the Option.

[9] While Defendant places heavy reliance on his impression of Mr. Wu's purported statement "that the first quarter of the grant would vest in one year," he concedes that Mr. Wu did not convey a vesting commencement date different from the one he ultimately received. (Opp. at 8.)

that is hardly sufficient to warrant a finding that his vesting commencement date is required by law to be earlier. *See Bus. Exposure Reduction Grp. Assocs. v. Pershing Square Cap. Mgmt., L.P.*, 549 F. Supp. 3d 318, 332-34 (S.D.N.Y. 2021) (dismissing breach of the implied covenant claim where, although plaintiff felt the exercise of discretion was "imprudent," plaintiff did not plead "facts suggesting that the decision was, at all, in bad faith or arbitrary, as opposed to being undertaken in [defendant's] own perceived self-interest").[10]

### C. The Alleged Fraudulent Inducement Claim (Third Counterclaim) Fails as a Matter of Law and Should Be Dismissed

Nothing Defendant argues in his Opposition can cure the defects of his fraudulent inducement claim. *First*, Defendant does not dispute that this claim is based on the same allegations as the Implied Covenant claim, nor that he is required to allege special damages to sustain fraudulent inducement as a separate claim, or that he was unemployed when he received the LoanStreet offer. Defendant insists, however, that he suffered special damages in the form of "loss of valuable career development, stock options, and other benefits he would have received had he not declined an alternative, formal offer of employment from Fluz Fluz." (Opp. at 15.) Aside from his concession that he never made LoanStreet aware of the Fluz Fluz offer (*id.* at 16), or the lack of any allegation to suggest he did not experience career development at LoanStreet, Defendant fails to address the fact that none of the potential Fluz Fluz incentives amount to a calculable right or benefit that he waived to accept the offer from LoanStreet. (*See* Pl.'s Mot. at 15

[10] Where, as here, the alleged breach of the Implied Covenant applies to an option grant that is forfeitable, the Court should dismiss the claim given the "at-will" nature of the relationship between Defendant and LoanStreet. (*See* Pls.' Mot. at 12-13.) The cases Defendant relies upon to challenge this premise address commission payments, which, unlike option grants, are not forfeitable. *See Rozenzweig v. ClaimFox, Inc.*, 251 F. Supp. 3d 449, 460 (E.D.N.Y. 2017); *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 112 (2d Cir. 1985).

(*citing* authority and FAA, Counterclaims ¶ 101).) Absent any alleged specific and measurable loss, his fraudulent inducement claim cannot survive as an independent claim.[11]

*Second*, Defendant fails to refute the lack of an actionable misrepresentation or omission. Conceding that there is no fiduciary relationship between Defendant and LoanStreet, Defendant proffers the "special facts doctrine" to establish a duty to disclose LoanStreet's "highly unusual grant policies." (Opp. at 16.) The "special facts doctrine," however, requires satisfying the following test: "that the material fact was information 'peculiarly within the knowledge' of [LoanStreet], and that the information was not such that could have been discovered [by Defendant] through 'the exercise of ordinary intelligence.'" *See Jana L. v. W. 129th St. Realty Corp.*, 802 N.Y.S.2d 132, 135 (2005) (citations omitted). Not only does Defendant fail to allege materiality—*i.e.*, that LoanStreet knew or had reason to know Defendant "regard[ed] or [wa]s likely to regard the [vesting commencement date] as important in determining his choice of action," *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 672 (S.D.N.Y. 2009) (citation omitted)—but he also fails to allege that Defendant even once asked about the vesting commencement date before accepting his LoanStreet offer, or sooner than nearly a year into his tenure at LoanStreet. In fact, all that Defendant ever requested was for Mr. Wu to "further explain the equity grant", which Mr. Wu undisputedly did. (FAA, Counterclaims ¶ 10.) This is particularly

[11] The cases Defendant relies upon do not establish a more "flexible" approach to alleging special damages (Opp. at 15); rather, they underscore the importance of alleging a loss of something measurable. *See Doehla v. Wathne Ltd., Inc.*, No. 98 CIV. 6087 (CSH), 2000 WL 987280, at *3 (S.D.N.Y. July 17, 2000) (allowing fraud claim to proceed where plaintiff employee alleged that defendant "induced [him] to resign from his job as CEO and President" and forewent a "lucrative long-term contract" to accept employment with defendant, not something speculative such as vague claims of loss of career development); *Knutson v. G2 FMV, LLC*, No. 14 CIV. 1694 (RWS), 2018 WL 286100, at *5 (S.D.N.Y. Jan. 3, 2018) (dismissing fraudulent inducement claim where any purported loss in "career development" was found to be "too speculative"). Similarly, to the extent Defendant argues his "lost stock options" are measurable or quantifiable, the Fluz Fluz offer makes clear that Defendant would have needed to complete a year of employment before receiving any such options (FAA, Counterclaims ¶ 101) and damages recoverable for fraudulent inducement are not intended to compensate for what might have been gained. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996).

problematic for Defendant when his own allegations establish LoanStreet's willingness to answer "any questions as needed." (Mot. at 18 (citing Dkt. 55-1).) *See Jana L.*, 802 N.Y.S.2d at 135 ("[I]f the other party has the means available to him of knowing . . . he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentation."). Furthermore, Defendant does not refute that his only purported actionable misrepresentation, *i.e.*, Mr. Wu's statement that "the first quarter of his grant would vest in one year," is entirely consistent with the Offer Letter and, thus, cannot serve as a basis for his fraudulent inducement claim. (*See* Opp. at 17.)

*Finally*, Defendant fails to allege facts giving rise to a strong inference of fraudulent intent. (*See* Opp. at 17.) Simply asserting that "LoanStreet's motive was to entice Mr. Troia to accept its offer by promising a vesting schedule more friendly to Mr. Troia than it really was" (Opp. at 17), is disingenuous insofar as he never alleges that LoanStreet promised a specific vesting schedule, that LoanStreet was aware of Defendant's belief that his vesting date should have been earlier or that accepting his LoanStreet offer was contingent thereon. Defendant fails to allege facts sufficient to show that LoanStreet "harbored a present intent to deceive him," *Baer v. Complete Off. Supply Warehouse Corp.*, 934 N.Y.S.2d 179, 181 (2d Dept. 2011), or refute his own allegations establishing a willingness of LoanStreet to field questions and provide any information or documents Defendant was seeking to help make his decision to join LoanStreet. (*See* Mot. at 18.) Accordingly, the fraudulent inducement claim fails as a matter of law.

## II. <u>On the Undisputed Facts, Plaintiffs Are Entitled to Judgment as a Matter of Law as to Their Defamation *Per Se* Claims</u>

Defendant does not refute he published the statements concerning his Option grant to a third party (*see* Mot. § V.B.2) or that the statements constitute defamation *per se* (*see* Mot.

§ V.B.4). Rather, any arguments in his Opposition confirm that Defendant defamed Plaintiffs, warranting judgment as a matter of law pursuant to Rule 12(c).

*First,* Defendant's arguments that his statements "were substantially true" disregard the Court's August 2022 Order, which held that Plaintiffs "sufficiently alleged the falsity of defendant's statements related to his stock options" and that "[i]f defendant's termination on June 12, 2020 occurred before the first anniversary of his vesting date, none of his stock options would have vested, so he would not have been entitled to equity compensation." (August 2022 Order at 18-19.) Defendant further ignores the now uncontested fact that his termination occurred prior to the first anniversary of his vesting commencement date (whereby only 25% of his options would have vested). (Opp. at 23 (*citing* FAA, Answer ¶¶ 19-20, 27; Counterclaims ¶ 42).) Instead, and rather remarkably, Defendant asserts that: "The gist of the Troia Statements is that LoanStreet legally stiffed Mr. Troia out of compensation he had morally earned." (Opp. at 19.) Whatever distinction Defendant seeks to create between "moral" or "legal" does not change the basic facts that his statements publicly conveyed that he was "defrauded" and "cheated" out of equity that he was not legally entitled to receive.

*Second,* despite Defendant's claims (again) that his statements are opinion and "accompanied by a recitation of all the facts" (*see* Opp. at 21-22), the Court already held that the statements regarding Defendant's Option are "likely to be understood by a reasonable listener as conveying provable facts"[12] and that "he omits key information." (*See* August 2022 Order at 13-14.) Nor can Defendant escape the Court's conclusion that "it is clear that even the most vitriolic of the bunch—remarks such as, "[Lampl] is a rich con man" and "[LoanStreet] is a fraudulent,

[12] The Court explained that "[w]hether a statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court." (August 2022 Order at 11 (citing *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 718 (S.D.N.Y. 2014)).)

exploitative mess"—relate to the specific accusation that LoanStreet and Lampl defrauded defendant by unlawfully withholding $100,000 in stock options." (August 2022 Order at 13 (*citing* Compl. ¶¶ 76(d)-(e)).) That Defendant summarizes the "gist" of his statements to say that LoanStreet "stiffed" Defendant out of equity compensation only serves to reinforce the defamatory nature of the statements.

*Third,* Defendant cannot avoid liability by claiming that Plaintiffs did not use "the words" actual malice.[13] (Opp. at 23.) It is undisputed that Defendant took very deliberate steps (having waited the "requisite year" for his "non-disparagement clause to expire") (FAA, Counterclaims ¶ 55) to orchestrate his campaign against Plaintiffs, publicly claiming that he was "defrauded" and "cheated" out of the very equity he knew he was not entitled to receive. (*See* Mot. at 24.) He even went so far as to purchase Google Ads so "his warnings would be seen" by any "user" who searched for LoanStreet (*see* Mot. at 24). Defendant undisputedly made the statements "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *Palin v. N.Y. Times Co*., 482 F. Supp. 3d 208, 214 (S.D.N.Y. 2020) (quotes and citation omitted).[14]

## III. CONCLUSION

For the foregoing reasons, Defendant's counterclaims should be dismissed with prejudice and without leave to amend,[15] and Plaintiffs' motion for judgment on the pleadings as to defamation should be granted.

---

[13] The Court need not decide whether actual malice is required given that Defendant acted with knowledge of falsity. However, to the extent the Court finds that Defendant's statements are not "an issue of public interest" and that actual malice therefore is not required under N.Y. Civ. Rights Law § 76-a(1)(a)), *see Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208 (S.D.N.Y.), *modified*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020), at a minimum, Defendant has not disputed his negligence with respect to the falsity of his statements.

[14] For the same reasons that establish fault (i.e., Defendant knew his statements were false and took distinct steps to publish his statements as widely as possible), the moral duty and common interest privileges cannot shield him from liability. (*See* Mot. at 27 n.9.)

[15] Because Defendant already has amended his counterclaims, any further amendments would be futile. And although Defendant voluntarily dismissed the fourth counterclaim without prejudice (Dkt. 67), any further pursuit thereof would be futile for the additional reason that the fourth counter-claim is time-barred (*see* Mot. at 20-21). Thus, the fourth claim should also be dismissed with prejudice.

Dated: March 31, 2023
New York, New York

Respectfully submitted,

By: */s/ Christopher M. Gerson*

Christopher M. Gerson
Timothy K. Gilman
Ryan J. Singer
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, N.Y. 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: cgerson@stroock.com
Email: tgilman@stroock.com
Email: rsinger@stroock.com

*Attorneys for LoanStreet Inc. and Ian Lampl*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2023, I caused a true and correct copy of the foregoing **PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS DEFENDANT'S COUNTERCLAIMS AND FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFFS' DEFAMATION CLAIMS** to be filed and served electronically by means of the Court's CM/ECF system in accordance with Federal Rules of Civil Procedure and/or the Local Rules of this Court, upon the following individual of record:

Wyatt N. Troia
300 Albany St, 8G
New York, New York 10280
Tel: 402-990-3834
Email: mrwnt10@gmail.com
*Defendant proceeding pro se*

*/s/ Christopher M. Gerson*
Christopher M. Gerson