UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
LOANSTREET, INC., and IAN LAMPL,
Individually,

              Plaintiffs,

       - against –

WYATT TROIA, Individually,

             Defendant.

---------------------------------------X
WYATT TROIA, Individually,

          Counterclaim Plaintiff,

       - against –

LOANSTREET, INC., and IAN LAMPL,
Individually,

         Counterclaim Defendants.

---------------------------------------X

**MEMORANDUM AND ORDER**

21 Civ. 6166 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    LoanStreet Inc. ("LoanStreet") operates an online platform that allows users to share, manage, and originate loans. Wyatt Troia ("Troia" or "defendant") was employed as a software engineer at LoanStreet from March 2019 until June 12, 2020, when he was fired. See Complaint, ECF No. 3 ("Compl.") ¶ 27. Throughout 2020 and 2021, Troia posted statements on several different websites disparaging LoanStreet and its CEO, Ian Lampl ("Lampl," and together with LoanStreet, "plaintiffs"), accusing them of

unlawfully withholding stock options owed to Troia and other improper employment practices.[1]  LoanStreet and Lampl brought suit against Troia in July 2021, asserting, inter alia, that Troia's posts constituted defamation and defamation per se.  See id. ¶¶ 74-101.  Troia -- then represented by counsel -- filed a motion to dismiss those claims, which this Court granted with respect to some of Troia's statements and denied with respect to others.  See LoanStreet, Inc. v. Troia, No. 21-cv-6166 (NRB), 2022 WL 3544170 (S.D.N.Y. Aug. 17, 2022).

Thereafter, Troia's counsel withdrew, and proceeding pro se, defendant answered and asserted four counterclaims: (i) violation of New York's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") law; (ii) violation of the implied covenant of good faith and fair dealing; (iii) fraudulent inducement; and (iv) securities fraud.  See ECF Nos. 51 (the "Answer"), 55 (the "First Amended Answer" or "FAA").[2]  Before the Court are plaintiffs' motion to dismiss those counterclaims under Rule 12(b)(6) and motion for judgment on the pleadings under Rule 12(c) as to

---

[1] Although Troia has asserted counterclaims against LoanStreet and Lampl, for ease of reference we refer to LoanStreet and Lampl as "plaintiffs" and Troia as "defendant" in this Memorandum and Order unless otherwise specified.

[2] Citations to Troia's amended answer to plaintiffs' complaint will be designated "FAA ¶ __," and citations to Troia's counterclaims will be designated "FAA, Counterclaims ¶ __."

plaintiffs' remaining defamation claims.  See ECF No. 66 ("Pls. Br.").  For the reasons discussed herein, both motions are granted.

## BACKGROUND

The following facts are drawn from the Complaint, First Amended Answer, and any exhibits or documents incorporated therein by reference.[3]  Moreover, as detailed further below, the facts at issue are not seriously in dispute given Troia's admissions in his Answer, First Amended Answer, Counterclaims, and opposition brief.

In February 2019, LoanStreet sent Troia an offer letter to join LoanStreet as a software engineer (the "Offer Letter").  See Compl. ¶¶ 17, 23; FAA ¶¶ 17, 23.  The Offer Letter stated that Troia would be granted options to purchase LoanStreet's common stock, subject to the following conditions:

> [§2(b)]. Equity Grant. Subject to the approval of the Board of Directors of the Company (the "Board"), the Company will grant you an option (the "Option") to purchase 885 shares of common stock, $0.0001 par value per share, of the Company (the "Common Stock").  The exercise price per share of the Option will be equal to the fair market value per share of the Common Stock on the date of grant, as determined by the Board.  The Option will be subject to the terms and conditions of the Company's 2016 Equity Incentive Plan (the "Plan"), as the same may be amended from time to time, and a separate stock option grant agreement between the Company and you that sets forth the terms of the option

---

[3] In evaluating the sufficiency of a complaint, a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010), as well as "matters of which judicial notice may be taken," Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

grant (e.g., exercise price, expiration date, and
vesting schedule of the stock options).  Subject to the
terms of the Plan and the stock option grant agreement,
the Option will vest and become exercisable as to 25% of
the shares subject to the Option on the first anniversary
of the vesting commencement date and as to 1/36th of the
remaining shares subject to the Option at the end of
each full month thereafter.  Vesting will, of course,
depend on your continued employment with the Company.

ECF No. 55-2, Ex. B to the First Amended Answer, at 1-2 (emphasis

added).  The Offer Letter also included an integration clause.

See id. at 3.

Troia accepted his offer on or around March 4, 2019, and began

working at LoanStreet on March 18, 2019.  See FAA, Counterclaims

¶¶ 11-12.  As a condition of his employment, Troia also executed

an Employee Non-Disclosure and Invention Assignment Agreement

("NDIAA").  Compl. ¶ 22; FAA ¶¶ 22.

As contemplated by the Offer Letter, the Board approved

Troia's option grant four months later, see FAA, Counterclaims

¶ 27, and on January 20, 2020, Troia signed an option agreement

(the "Option Agreement") for 885 shares of LoanStreet common stock,

which stated that his "date of grant" was July 22, 2019 and

otherwise provided:

F. EXERCISE SCHEDULE. Except as otherwise provided in
this Grant Agreement, this Option (to the extent not
previously exercised) may be exercised in whole or in
part, with respect to the Shares in accordance with the
following vesting schedule: The Option will vest and
become exercisable as to 25% of the shares subject to
the Option on the first anniversary of the Date of Grant
above and as to 1/36th of the remaining shares subject

-4-

to the Option at the end of each full calendar month
thereafter.

G. EXERCISE OF OPTION FOLLOWING TERMINATION OF SERVICE.
This Option shall terminate and be cancelled to the
extent not exercised within ninety (90) days after the
Optionee ceases to be an employee. . . . In no event. .
. . shall this Option be exercised for more Shares than
the Shares which otherwise have become exercisable as of
the date of cessation of status as a[n employee].

ECF No. 55-4, Ex. D to the First Amended Answer, at 2 (emphasis

added). The Option Agreement also contained an integration clause.

Id. at 6.[4]

On June 12, 2020, LoanStreet terminated Troia's employment,

allegedly for, among other things, "the poor quality of his

engineering, his lack of engagement with his team, and his

inability to cooperate with his peers or take direction from his

superiors." Compl. ¶ 27. Troia acknowledges in his First Amended

Answer that, prior to his termination: he received critiques from

his coworkers that he had "overstepp[ed] his boundaries"; his team

was "dysfunctional"; a coworker was "complaining about [Troia]";

there had been "tensions" with coworkers; and Troia had to be

removed from the project on which he was working. FAA,

Counterclaims ¶¶ 34-41. It is also undisputed that Troia's stock

_____

[4] Plaintiffs allege that Troia actually received two separate grants of options,
the first on July 22, 2019 to purchase 885 shares of common stock, and the
second on January 15, 2020 to purchase 500 shares of common stock. Compl. ¶ 20.
According to plaintiffs, each option grant had its own vesting schedule, and
neither were exercisable at the time of termination. Id.

options had not vested when he was fired, and thus he was not entitled to any vested stock.  See id. ¶¶ 27, 49.

Between April and June 2020 -- while Troia was still employed by LoanStreet -- and then again starting in June 2021, Troia posted disparaging statements about LoanStreet, Lampl, and other LoanStreet employees on various websites, including Glassdoor.com, Reddit.com, and Teamblind.com.  Compl. ¶¶ 24-26, 33, 34-38, 42-44; FAA ¶¶ 35-36, 38, 42, 44.  Troia's grievances centered on the accusation that LoanStreet and/or Lampl cheated Troia out of his stock options.

In addition, Troia took calculated steps to magnify the reach of his statements.  For instance, in the body of the posts, he asked users to "follow [his] link and mark it as helpful so that the message is amplified and as many people are warned as possible."  Compl. ¶ 42; See Name and Shame: LoanStreet (NY) cheated me out of equity, https://www.reddit.com/r/cscareer questions/comments/o3jpfc/name_and_shame_loastreet_ny_cheated_me _out_of/ (last visited September 8, 2023) ("Reddit Post I").  Troia also tagged the personal LinkedIn profiles of LoanStreet employees, spurring a flurry of hate messages sent directly to his former coworkers.  Compl. ¶ 41; FAA ¶ 41.  Finally, Troia purchased advertisements on Google linked to the LoanStreet name, so that when users searched for LoanStreet in Google's search engine, they

were shown advertisements displaying excerpts from Troia's statements and linking to Troia's disparaging posts. Compl. ¶¶ 48-49; FAA ¶¶ 48-49.

On June 24, 2021, LoanStreet served Troia with a letter demanding that he retract all defamatory statements and cease publishing any others. Compl. ¶¶ 57-58; FAA ¶¶ 57-58. Troia rebuffed LoanStreet's attempt to resolve the dispute, FAA ¶ 59, after which LoanStreet and Lampl filed suit. See Compl. Plaintiffs asserted seven causes of action in their complaint: (i) breach of contract; (ii) defamation per se; (iii) defamation; (iv) injurious falsehood; (v) unfair competition and false designation of origin under Lanham Act Section 43(a); (vi) common law unfair competition; and (vii) permanent injunctive relief. Id. Relevant to the instant motion, LoanStreet and Lampl identified fifteen allegedly defamatory statements in their complaint, seven of which plaintiffs argued constituted defamation per se. See id. ¶¶ 76(a)-(g) (defamation per se); 93(a)-(h) (defamation).[5]

Troia moved to dismiss for failure to state a claim under Rule 12(b)(6) and lack of subject matter jurisdiction under Rule 12(b)(1). See ECF No. 25. On August 17, 2022, this Court issued

---

[5] The distinction between defamation and defamation per se turns on whether the statement is actionable on its face. Robert D. Sack, Sack on Defamation § 2:8.3(C) (5th ed. 2022).

a Memorandum and Order granting his motion in part and denying it
in part.  See LoanStreet, Inc., 2022 WL 3544170.  Specifically, we
denied Troia's 12(b)(1) motion and held that subject matter
jurisdiction existed under 28 U.S.C. § 1331.  Id. at *2-*3.  We
then granted Troia's motion to dismiss LoanStreet and Lampl's
defamation claims with respect to the statements listed in
paragraphs 93(c)-(h) of the Complaint without prejudice and with
leave to replead, and denied his motion with respect to the
statements in paragraphs 76(a)-(g) and 93(a)-(b) of the
Complaint.  Id. at *3-*8.[6]  Thus, the statements at issue in the
wake of our prior Memorandum and Order are as follows:

- "[LoanStreet] withheld $100k in options that they promised
  me before I was hired," Compl. ¶ 76(a);

- "[Lampl] just pocketed the options he promised me," id.
  ¶ 76(b);

- "[Lampl] defrauded me out of over $100k," id. ¶ 76(c);

- "[Lampl] is a rich con man," id. ¶ 76(d);

- "[LoanStreet] is a fraudulent, exploitative mess," id.
  ¶ 76(e);

- "Look in the mirror and ask yourselves how your loved ones
  would feel if they knew you cheat people just to make your
  big piles of cash a little bigger," id. ¶ 76(f);

- "LoanStreet (NY) cheated me out of equity," id. ¶ 76(g);

---

[6] The Court also granted Troia's motion to dismiss plaintiffs' claim for
injurious falsehood, id. at *8-*9, but denied his motion to dismiss their unfair
competition claims, id. at *9-*12.

-8-

- "Based on Ian Lampl's valuation goal for the company, he defrauded me out of over $100k," id. ¶ 93(a);

- "They promised me substantial equity with a standard one-year vesting cliff, then abruptly fired me after 15 months of work and refused to grant me the options," id. ¶ 93(b).

Relevant to the instant motions, we wrote that none of these statements were "pure opinion," because "[a]t worst, the allegedly defamatory statements include opinions and facts, both of which plaintiffs contest." LoanStreet, Inc., 2022 WL 3544170, at *5. We also found that plaintiffs "sufficiently alleged the falsity of defendant's statements related to his stock options." Id. at *6. Last, the Court found that all of the above-referenced statements constituted defamation per se. Id. at *7.

On September 16, 2022, Troia's counsel filed a motion to withdraw, citing Troia's "desire and intent" to proceed pro se. See ECF No. 44. We granted counsel's motion on September 21, 2022, see ECF No. 49, and since then, Troia has litigated this action pro se, including with respect to the instant motions.[7]

---

[7] Defendant's submissions since his counsel's withdrawal appear to have been aided by individual(s) with legal training. We note that "it is not appropriate to afford pro se litigants special solicitude where a licensed attorney assisted in drafting their briefs, motions or other court documents." Askins v. Metro. Transit Auth., No. 19-cv-4927 (GHW), 2020 WL 1082423, at *3 (S.D.N.Y. Mar. 5, 2020) (collecting cases).

On October 6, 2022, Troia filed an initial answer, asserting affirmative defenses and three counterclaims: (i) violation of New York's anti-SLAPP law; (ii) violation of the implied covenant of good faith and fair dealing; and (iii) fraud. See ECF No. 51. LoanStreet and Lampl thereafter requested a pre-motion conference in anticipation of filing a motion to dismiss Troia's counterclaims and a motion for a judgment on the pleadings as to their defamation claim. See ECF No. 52. On November 9, 2022, the Court determined that LoanStreet and Lampl could bring their motions without the necessity of a pre-motion conference. See ECF No. 54.

Troia then filed an amended answer and counterclaims on November 14, 2022, modifying the third counterclaim from "fraud" to "fraudulent inducement" and adding a fourth counterclaim alleging securities fraud. See FAA, Counterclaims ¶¶ 91-109.

LoanStreet and Lampl renewed their request to file the instant motions on December 5, 2022. See ECF No. 59. Troia responded on December 8, 2022, ECF No. 60, and later that day, we granted LoanStreet and Lampl permission to file their proposed motions. See ECF No. 61.

LoanStreet and Lampl filed both motions and an associated memorandum on February 10, 2023. See Pls. Br. Troia opposed on March 10, 2023, ECF No. 68 ("Troia Opp."), and also submitted a notice that he was voluntarily dismissing his securities fraud

counterclaim without prejudice, ECF No. 67.  LoanStreet and Troia
filed their reply on March 31, 2023.  ECF No. 70 ("Pls. Reply").

LEGAL STANDARDS

### I.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The assessment of
whether a complaint's factual allegations plausibly give rise to
an entitlement to relief 'does not impose a probability requirement
at the pleading stage; it simply calls for enough fact[s] to raise
a reasonable expectation that discovery will reveal evidence of'"
unlawful conduct.  Lynch v. City of New York, 952 F.3d 67, 75 (2d
Cir. 2020) (quoting Twombly, 550 U.S. at 556); see Iqbal, 556 U.S.
at 678 ("A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged.").  In deciding a Rule 12(b)(6) motion to dismiss, courts
must "construe all reasonable inferences that can be drawn from
the complaint in the light most favorable to the plaintiff." Arar
v. Ashcroft, 585 F.3d 559, 567 (2d Cir. 2009) (en banc).

## II.  Rule 12(c)

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).  "In evaluating a Rule 12(c) motion, the court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989).  However, "[t]he Court need not accord '[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness.'"  In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan, 865 F. Supp. 2d 469, 471-72 (S.D.N.Y. 2012), aff'd sub nom. Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan, 751 F.3d 71 (2d Cir. 2014) (quoting In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007)).

### DISCUSSION

## I.  Defendant's Counterclaims

Troia alleges that: (i) both plaintiffs violated New York's anti-SLAPP law in bringing their defamation action;

(ii) LoanStreet violated the implied covenant of good faith and fair dealing by unreasonably delaying the vesting of his stock option grant through an arbitrary exercise of discretion; and (iii) LoanStreet fraudulently induced Troia into accepting the Offer Letter based upon "misrepresented and omitted material facts" surrounding the vesting commencement date.  <u>See</u> FAA, Counterclaims ¶¶ 69-103.[8]  All of Troia's counterclaims fail.

### a. Anti-SLAPP Counterclaim

Troia's anti-SLAPP counterclaim cannot be brought in federal court as a matter of law and would be foreclosed even if Troia could seek costs and fees, because plaintiffs' complaint is, quite clearly, not a SLAPP.

Section 70-a of New York's anti-SLAPP law contains certain preconditions in order for a defendant to maintain an anti-SLAPP counterclaim:

> A defendant in an action involving <u>public petition and participation</u>, as defined in paragraph (a) of subdivision one of section seventy-six-a of this article, may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; <u>provided</u> that:
>
> (a) costs and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the

---

[8] As noted <u>supra</u>, Troia voluntarily dismissed his securities fraud counterclaim, ECF No. 67, so we need not address it.

civil practice law and rules, <u>that the action involving
public petition and participation was commenced or
continued without a substantial basis in fact and law</u>
and could not be supported by a substantial argument for
the extension, modification or reversal of existing law.

N.Y. Civ. Rights Law § 70-a(1)(a) (emphasis added).[9]

Multiple courts in this district have concluded that "§ 70-a
is inapplicable in federal court" because the "'substantial basis'
standard . . . conflicts with the standards under Federal Rules of
Civil Procedure 12 and 56." <u>Prince v. Intercept</u>, 634 F. Supp. 3d
114, 142 (S.D.N.Y. 2022) (quoting <u>Nat'l Acad. of Television Arts
& Scis., Inc.</u>, 551 F. Supp. 3d 408, 431-32 (S.D.N.Y. 2021)); <u>accord
Maron v. Legal Aid Soc'y</u>, 605 F. Supp. 3d 547, 567 n.11 (S.D.N.Y.
2022); <u>Carroll v. Trump</u>, 590 F. Supp. 3d 575, 582-85 (S.D.N.Y.
2022).

---

[9] Under Section 76-a, an "'action involving public petition and participation'
is a <u>claim</u> based upon":

> (1) any <u>communication</u> in a place open to the public or a public
> forum in connection with an issue of <u>public interest</u>; or
>
> (2) any other lawful conduct in furtherance of the exercise of the
> constitutional right of free speech in connection with an issue of
> public interest, or in furtherance of the exercise of the
> constitutional right of petition.

<u>Id.</u> § 76-a(1)(a)(1)-(2) (emphasis added).  A "claim" "includes any
lawsuit, cause of action, cross-claim, counterclaim, or other judicial
pleading or filing requesting relief." <u>Id.</u> § 76-a(1)(b). "Communication"
means "any statement, claim, allegation in a proceeding, decision,
protest, writing, argument, contention or other expression." <u>Id.</u> § 76-
a(1)(c). Last, the term "[p]ublic interest" "shall be construed broadly,
and shall mean any subject other than a purely private matter." <u>Id.</u> §
76-a(1)(d).

This Court agrees for the reasons stated in the above-referenced decisions. Briefly, as Judge Caproni wrote in <u>National Academy Of Television Arts & Sciences, Inc.</u>, applying the <u>Erie</u> doctrine, when a Federal Rule of Civil Procedure answers the same question as a state law, "the Federal Rule governs in federal court, unless the rule at issue violates the Rules Enabling Act." 605 F. Supp. 3d at 431 (citing <u>La Liberte v. Reid</u>, 966 F.3d 79, 87 (2d Cir. 2020)). Here, § 70-a's "substantial basis" standard imposes a higher burden than Federal Rule of Civil Procedure 12, pursuant to which a "plaintiff at the pleadings stage need only allege 'enough facts to state a claim to relief that is plausible on its face.'" <u>Id.</u> at 432 (quoting <u>Twombly</u>, 550 U.S. at 570).[10] By contrast, the anti-SLAPP law "reverses the burden and requires the plaintiff to prove 'a substantial basis in fact and law' for the claim." <u>Id.</u> at 432 n.18. Moreover, as noted by Judge Kaplan in <u>Carroll v. Trump</u>, the revised anti-SLAPP cause of action contradicts the Federal Rules because "CPLR 3211(g), . . . as amended by the anti-SLAPP law, provides that a motion to dismiss made under the anti-SLAPP law shall be decided on the basis not only of the pleadings, but also of 'supporting and opposing

---

[10] Similarly, Federal Rule 56(a) permits summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" and does not incorporate a substantial basis standard. <u>See</u> Fed. R. Civ. P. 56.

-15-

affidavits.'"  590 F. Supp. 3d at 584.  Rule 12, however, is clear in "permit[ting] consideration only of the pleadings and documents incorporated therein by reference unless affidavits are submitted to and not excluded by the court."  Id.[11]

However, even assuming that Troia could bring his proposed counterclaim and we were required to apply § 70-a, his claim would fail on the merits given the unique procedural posture of this case.  This Court has already evaluated plaintiffs' complaint in detail and upheld the remaining defamation claims as sufficiently

---

[11] Troia nonetheless characterizes National Academy of Television Arts & Sciences, Inc. and similar decisions as "aberrant," and claims that a subsequent decision by Judge Caproni, Sweigert v. Goodman, No. 18-cv-8653, 2022 WL 168080, at *9 (S.D.N.Y. Jan. 19, 2022), "clarified" National Academy of Television Arts & Sciences, Inc.  See Troia Opp. at 6.  Troia is incorrect, as the decisions holding that § 70-a is inapplicable in federal court are not "aberrant," but rather reflect the majority view -- and the more recent trend -- among district courts in this Circuit.  Compare Prince, 634 F. Supp. 3d at 142, and Maron, 2022 WL 1910247, at *12, and Friedman v. Bloomberg, L.P., No. 15-cv-443, 2022 WL 1004578, at *1 (D. Conn. Apr. 4, 2022), and Kesner v. Buhl, 590 F. Supp. 3d 680, 701 (S.D.N.Y. 2022), and Carroll, 2022 WL 748128, at *7, and Brady v. NYP Holdings, Inc., No. 21-cv-3482, 2022 WL 992631, at *11 (S.D.N.Y. Mar. 31, 2022), and Nat'l Acad. of Television Arts & Scis., Inc., 551 F. Supp. 3d at 431, with Harris v. Am. Acct. Ass'n, No. 20-cv-01057, 2021 WL 5505515, at *14 (N.D.N.Y. Nov. 24, 2021), aff'd in part, rev'd in part, No. 22-811, 2023 WL 2803770 (2d Cir. Apr. 6, 2023), and Goldman v. Reddington, No. 18-cv-3662, 2021 WL 4099462, at *4-*5 (E.D.N.Y. Sept. 9, 2021)); see also Sweigert v. Goodman, No. 18-cv-08653, ECF No. 321 (S.D.N.Y. Oct. 29, 2021) (Aaron, M.J.) (noting, without deciding, that "[i]t may be that Defendant can seek to obtain costs pursuant to § 70-a without invoking the special summary judgment procedures and, therefore, avoid a conflict with Rule 56"), report and recommendation adopted by 2022 WL 168080, at *9 (S.D.N.Y. Jan. 19, 2022).

In any event, we do not consider Judge Caproni to have reversed her views in Sweigert.  Rather, the Court there explicitly affirmed Judge Aaron's finding that "the special summary judgment procedures outlined in New York's anti-SLAPP statute do not apply in federal court because they conflict with Rule 56 of the Federal Rules of Civil Procedure."  2022 WL 168080, at *9.  Judge Caproni also made no reference to National Academy of Television Arts & Sciences, Inc. in Sweigert, nor, in this Court's view, did she state that she considered her prior ruling to be incorrect.

pled.  See LoanStreet, Inc., 2022 WL 3544170, at *4-*8.  Thus, the
action has already stated a "substantial basis in fact and law."
As a result, Troia's counterclaim premised on New York's anti-
SLAPP law must be dismissed.

### b. Covenant of Good Faith and Fair Dealing Counterclaim

Troia next alleges that LoanStreet violated the implied
covenant of good faith and fair dealing, because its decision "to
begin vesting [Troia's] on-hire equity grant only after [he] had
worked for LoanStreet for over 16 months" was "an arbitrary or
irrational exercising of discretion that had the effect of
destroying [his] right to receive the fruits of the contract that
a reasonable promisee would have understood to have been included
in his Offer Letter."  FAA, Counterclaims ¶ 81.[12]

Defendant's argument is foreclosed by the express terms of
the Offer Letter and the Option Agreement.  Under "[t]he duty of
good faith and fair dealing . . . no obligation can be implied
that 'would be inconsistent with other terms of the contractual

---

[12] "Implicit in every contract is a promise of good faith and fair dealing."
Polcom USA, LLC v. Affiliated FM Ins. Co., 551 F. Supp. 3d 290, 297 (S.D.N.Y.
2021) (quoting Skillgames, LLC v. Brody, 1 A.D.3d 247, 252 (1st Dep't 2003)).
The implied covenant of good faith and fair dealing obligates a promisor to
fulfill "any promises which a reasonable person in the position of the promisee
would be justified in understanding were included" in the contract.  Dalton v.
Educ. Testing Serv., 87 N.Y.2d 384, 389 (N.Y. 1995) (quoting Rowe v. Great Atl.
& Pac. Tea Co., 46 N.Y.2d 62, 69 (N.Y. 1978)).  "A Plaintiff claiming a breach
of the covenant of good faith and fair dealing must [generally] show: (1) fraud,
(2) malice, (3) bad faith, (4) other intentional wrongdoing, or (5) reckless
indifference to the rights of others such as gross negligence."  Log On Am.,
Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 451 (S.D.N.Y. 2001).

relationship.'" <u>Dalton</u>, 87 N.Y.2d at 389 (quoting <u>Murphy v. Am.</u> <u>Home Prods. Corp.</u>, 58 N.Y.2d 293, 304 (N.Y. 1983)). Here, as plaintiffs correctly write, it is undisputed that the two agreements Troia signed within approximately ten months of each other -- both of which included integration clauses -- contained unambiguous terms with respect to the vesting commencement date. Notably, the Offer Letter clearly stated that: (i) LoanStreet would give Troia an option to purchase a certain number of shares if and when the Board of Directors approved the grant; (ii) the vesting schedule for the option would be contained in a separate Option Agreement; and (iii) 25% of the shares would vest and become exercisable on the first anniversary of the vesting commencement date. Offer Letter at 1-3. The Option Agreement then set a grant date of July 22, 2019 and reiterated that 25% of his shares would vest and become exercisable one year later, <u>i.e.</u>, on July 22, 2020. Option Agreement at 1-2.[13]  Troia is thus simply asking the Court

---

[13] For this reason, Troia's assertion that the contracts at issue were ambiguous -- and thus the Court can look to extrinsic evidence -- is unavailing. <u>See,</u> <u>e.g.</u>, <u>Gershon v. CDC Ixis Cap. Markets, Inc.</u>, 1 A.D.3d 137, 138 (1st Dep't 2003) (noting that "clear and unambiguous" contract language "afford[s] no opportunity for the introduction of parol evidence"); <u>Luminant Energy Co. v. Koch Energy</u> <u>Servs., LLC</u>, 551 F. Supp. 3d 373, 379 (S.D.N.Y. 2021) (finding that evidence outside of the contract, such as industry custom, can only be considered if the court finds ambiguity in the contract).

Even assuming the Court could evaluate whether plaintiffs' actions were "arbitrary and irrational," Troia's claim would still fail. <u>See</u> <u>Bus. Exposure</u> <u>R Education Grp. Assocs., LLC v. Pershing Square Cap. Mgmt., L.P.</u>, 549 F. Supp. 3d 318, 330 (S.D.N.Y. 2021) (noting that where a "contract contemplates the exercise of discretion—as the vesting of the determination of any financial benefit . . . this pledge includes a promise not to act arbitrarily or

to rewrite his contracts by seeking a finding that LoanStreet should have selected a vesting date "on or close to his employment start date," Troia Opp. at 8.  See Ray Legal Consulting Grp. v. DiJoseph, 37 F. Supp. 3d 704, 726 (S.D.N.Y. 2014) (covenant of good faith and fair dealing claim is improper when it "seeks to impose an obligation . . . that is nowhere in, and was not contemplated by," a contract).  Indeed, accepting Troia's argument would be contrary to the implied covenant's purpose, which "does not operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express, explicitly bargained-for benefits." Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc., No. 08-cv-4341 (RJS), 2009 WL 1054830, at *5 (S.D.N.Y. Apr. 17, 2009) (internal quotation marks omitted).

---

irrationally in exercising that discretion") (internal quotation marks omitted).  Troia does not truly dispute that plaintiffs followed the terms of the Offer Letter, as he acknowledges that LoanStreet's Board convened for its quarterly meeting four months after the Offer Letter was signed and approved Troia's option grant, after which LoanStreet prepared the Option Agreement. FAA ¶ 20; FAA, Counterclaims ¶ 93.  Thus, Troia has not plausibly alleged any more than the failure to read or appreciate the words in his contracts.  See Sec. Plans, Inc. v. CUNA Mut. Ins. Soc., 769 F.3d 807, 817 (2d Cir. 2014) ("The implied covenant does not undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's expected benefit.") (internal quotation marks omitted).

### c. Fraudulent Inducement Counterclaim

Finally, Troia contends that he was fraudulently induced into accepting LoanStreet's Offer Letter based upon "misrepresented and omitted material facts" surrounding the vesting commencement date. FAA, Counterclaims ¶ 92.  This claim fares no better.

Under New York law, "[a] party has made out a claim of fraudulent inducement if it has pled '(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiff]; and (iv) resulting damages.'" Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 143 (2d Cir. 2011)); accord Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C., No. 11-cv-4416 (LAK), 2013 WL 628533, at *11 (S.D.N.Y. Feb. 15, 2013); New York Univ. v. Factory Mut. Ins. Co., No. 15-cv-8505 (NRB), 2018 WL 1737745, at *6 (S.D.N.Y. Mar. 27, 2018).

Troia's allegations fail, on their face, to establish any material misrepresentations or reasonable reliance thereon.  He identifies the following alleged "misrepresentations":

- LoanStreet omitted that it had an unwritten policy that it set each option grant's vesting commencement date to be the date of the LoanStreet Board of Directors meeting in which the grant was approved.

- LoanStreet omitted the material fact that the Board meeting at which Troia's grant would be approved was scheduled for more than four months after the start of his employment.

- LoanStreet omitted the material fact that its board was provided with "sole and absolute discretion" to set the terms and conditions of his option grant, including the vesting schedule.

- LoanStreet's COO, Christopher Wu, "actively misrepresented the grant's vesting schedule by simply telling Mr. Troia that the first quarter of his grant would vest after a year," which Troia "reasonably understood . . . to mean the first quarter would vest after a year of Mr. Troia's employment with LoanStreet because the alternative interpretation was far-fetched."

FAA, Counterclaims ¶¶ 93, 95.  None are actionable.

To start, all three "omissions" by LoanStreet are irrelevant. "[A]n omission can only serve as the basis of a fraudulent inducement claim where . . . there is a confidential or fiduciary relationship between the parties.'"  Marquez v. Hoffman, No. 18-cv-7315 (ALC), 2021 WL 1226981, at *33 (S.D.N.Y. Mar. 31, 2021), reconsideration denied, No. 18-cv-7315 (ALC), 2021 WL 6133972 (S.D.N.Y. Dec. 29, 2021) (quoting Barron Partners, LP v. LAB123, Inc., 593 F. Supp. 2d 667, 670 (S.D.N.Y. 2009)).  No such relationship existed between LoanStreet and Troia.  Regardless, none of the facts that LoanStreet allegedly omitted contradict the terms of the Offer Letter, nor was Troia prevented from obtaining more information about LoanStreet's options grant process prior to signing the Offer Letter.  See Stuart Silver Assocs., Inc. v. Baco

<u>Dev. Corp.</u>, 245 A.D.2d 96, 98–99 (1st Dep't 1997) ("Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations.").

Troia's argument with respect to Christopher Wu's "active[]" statement is foreclosed by the Offer Letter's integration clause and its plain language stating that the first quarter would vest "on the first anniversary of the <u>vesting commencement date</u>." Offer Letter, at 1-2 (emphasis added). Where, as here, "there is a meaningful conflict between an express provision in a written contract and a prior alleged oral representation, the conflict negates a claim of reasonable reliance upon the oral representation." <u>Urstadt Biddle Props., Inc. v. Excelsior Realty Corp.</u>, 65 A.D.3d 1135, 1137 (2d Dep't 2009) (internal quotation marks omitted).[14]

---

[14] In any event, Troia's fraudulent inducement claim fails for the independent reasons that (i) it is duplicative of his contract claim; and (ii) he has not suffered any special damages. First, a fraud claim must ordinarily be dismissed where, as here, the claims "aris[e] out of the same core events, relationship or transaction" of a breach of contract claim. <u>See Lam v. Am. Exp. Co.</u>, 265 F. Supp. 2d 225, 230 (S.D.N.Y. 2003).

Second, although Troia contends that a fraud claim based on inducement to enter a contract can proceed if a claimant seeks special damages, Troia does not allege any that are viable. Troia's claimed damages -- "the loss of the valuable career development, stock options, and other benefits he would have received had he not declined an alternative, formal offer of employment" at another company, Fluz Fluz LLC ("Fluz Fluz"), Troia Opp. at 15 (citing FAA, Counterclaims ¶¶ 100-01), are not "specific and measurable," as required under New York law. <u>See USA All., LLC v. All Nature, LLC</u>, No. 05-cv-5965 (RMB), 2006

Accordingly, Troia's fraudulent inducement claim is also dismissed, and LoanStreet and Lampl's motion to dismiss Troia's counterclaims is granted in its entirety.  We now turn to LoanStreet and Lampl's defamation claims.

## II. LoanStreet and Lampl's Motion for Judgment on the Pleadings

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." Henry v. Fox News Network LLC, No. 21-cv-7299 (RA), 2022 WL 4356730, at *4 (S.D.N.Y. Sept. 20, 2022) (quoting Ganske v. Mensch, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020)).  "To state a claim for defamation under New York law, a plaintiff must allege that the defendant made a statement that was: (1) false, defamatory, and of and concerning the plaintiff; (2) published to a third party; (3) made with the applicable level of fault; and (4) defamatory per se or caused the plaintiff special harm." Enigma Software Grp. USA, LLC v. Bleeping Computer LLC, 194 F. Supp. 3d 263, 280 (S.D.N.Y. 2016) (citing Chandok v. Klessig, 632 F.3d 803, 814 (2d Cir. 2011)).

---

WL 8461811, at *7 (S.D.N.Y. Jan. 4, 2006); see also Keystone Foods Holdings Ltd. v. Tyson Foods, Inc., No. 22-1113-cv, 2023 WL 3477157, at *2 (2d Cir. May 16, 2023) (summary order) (special damages "associated with a lost opportunity need not be proven with mathematical precision, [but] they must be capable of measurement based upon known reliable factors without undue speculation") (internal quotation marks omitted); Vigoda v. DCA Prods. Plus Inc., 293 A.D.2d 265, 266 (1st Dep't 2002) (noting that "lost future income, conjectural in identity and speculative in amount" does not qualify as viable special damages).

Plaintiffs contend that Troia's statements meet each necessary element and that no privileges are applicable. See Pls. Br. at 22–25. Troia responds that (i) his statements were not false; (ii) plaintiffs are required to show actual malice and cannot do so; (iii) his statements were pure opinion; and (iv) the moral duty and common interest qualified privileges protect his statements. See Troia Opp. at 17–25.

As an initial matter, we find that these issues are capable of resolution under Rule 12(c). Troia has admitted to the central allegations in plaintiffs' complaint throughout his Answer, First Amended Answer, Counterclaims, and opposition brief, such that the "material facts are undisputed and . . . a judgment on the merits is possible merely by considering the contents of the pleadings." Verragio, Ltd. v. AE Jewelers, Inc., No. 15-cv-6500 (CM), 2017 WL 4125368, at *4 (S.D.N.Y. Aug. 23, 2017) (quoting Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988)). Notably, Troia acknowledges that he made the statements at issue, see Troia Opp. at 17–25,[15] which were communicated to the "public at large," FAA ¶¶ 78, and Troia amplified those posts to the largest audience

---

[15] In his First Amended Answer, Troia implausibly "denies knowledge or information sufficient to form a belief as to whether the [remaining] alleged statements accurately reflect his posts, many of which [he claims] are no longer accessible on the Internet in their original forms." See FAA ¶¶ 76, 93. However, these denials do not create a dispute of fact, because Troia does not deny in his briefing to having made all nine of those statements, and in fact defends each statement on the merits. See Troia Opp. at 17–25.

possible, FAA ¶¶ 48-49.  In addition, as discussed both <u>supra</u> and <u>infra</u>, the essential facts underlying Troia's statements are not open to debate, <u>i.e.</u>, that the Offer Letter and the Option Agreement explicitly outlined Troia's rights with respect to any stock options, and that the conditions precedent to Troia's entitlement to any options had not vested when Troia was fired.  <u>See</u> FAA ¶¶ 19-20, 27; FAA, Counterclaims ¶ 42; Offer Letter; Option Agreement.

With the above foundation in mind, and after careful review, the Court agrees with plaintiffs that they are entitled to judgment as a matter of law and addresses each element in turn.

### a. False, Defamatory, and of and Concerning LoanStreet and Lampl

The first defamation element itself requires a three-part inquiry, as we must evaluate whether Troia's statements were (i) false; (ii) defamatory; and (iii) of and concerning LoanStreet and Lampl.  <u>See</u> <u>Small Bus. Bodyguard Inc. v. House of Moxie, Inc.</u>, 230 F. Supp. 3d 290, 307 (S.D.N.Y. 2017).

"'[F]alsity' refers to material not substantially true."  <u>See</u> <u>Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC</u>, 864 F.3d 236, 247 (2d Cir. 2017); <u>accord</u> <u>Cortes v. Twenty-First Century Fox Am., Inc.</u>, 285 F. Supp. 3d 629, 642 (S.D.N.Y. 2018).  A statement is "substantially true" if the overall "gist or substance of the challenged statement" is true.

<u>Printers II, Inc. v. Prof'ls Publ'g, Inc.</u>, 784 F.2d 141, 146–47
(2d Cir. 1986).  "Despite truth often being framed as a defense to
[defamation], the burden of proving the falsity of a statement
rests with the plaintiff."  <u>Leidig v. BuzzFeed, Inc.</u>, 371 F. Supp.
3d 134, 143 (S.D.N.Y. 2019).  In addition, "[c]ourts typically
compare the complained of language with the alleged truth to
determine whether the truth would have a different effect on the
mind of the average reader.  When the truth is so near to the facts
as published that fine and shaded distinctions must be drawn and
words pressed out of their ordinary usage to sustain a charge of
libel, no legal harm has been done."  <u>Nunes v. NBCUniversal Media,
LLC</u>, No. 22-cv-1633 (PKC), 2022 WL 17251981, at *4 (S.D.N.Y. Nov.
28, 2022) (internal citations and quotation marks omitted).

Troia's statements are not "substantially true."  As we wrote
in our August 2022 Memorandum and Order, plaintiffs' complaint
alleges that:

> under LoanStreet's stock option agreement, "the initial
> portion of [defendant's] stock options would vest and
> become exercisable on the first anniversary of his
> vesting commencement date, provided he continued to be
> employed by the company."  Compl. ¶ 19.  The Complaint
> further alleges that defendant received his first grant
> of options on July 22, 2019 and a second grant on January
> 15, 2020, and that "[e]ach option grant had its own
> vesting schedule."  <u>Id.</u> ¶ 20.  If defendant's termination
> on June 12, 2020 occurred before the first anniversary
> of his vesting commencement date . . . he would not have
> been entitled to any equity compensation.

LoanStreet, Inc., 2022 WL 3544170, at *6.  Instead of casting doubt on these allegations, Troia's amended answer -- and the exhibits attached thereto -- confirm plaintiffs' version of events, i.e., that: (i) Troia signed both the Offer Letter and Option Agreement; (ii) under both documents, Troia's options would only vest if certain conditions were met; and (iii) those conditions had not been met when Troia was terminated.  FAA ¶¶ 19-20, 27; FAA, Counterclaims ¶ 42; Offer Letter; Option Agreement.  As a consequence, Troia's allegations that Lampl "just pocketed the options he promised me" and "is a rich con man," or that LoanStreet "withheld $100k in options that they promised [Troia] before [he] was hired," "is a fraudulent, exploitative mess," "cheat[s] people just to make [their] big piles of cash a little bigger," "cheated [Troia] out of equity," and "defrauded [Troia] out of over $100k" are simply untrue.  See Compl. ¶¶ 76(a)-(g), 93(a)-(b).  More than that, his accusations have specific, obvious -- and in some cases legal -- meaning and are plainly refuted by the black-and-white terms of the Offer Letter and Option Agreement.  Because his statements necessarily "produce a different effect on the reader than would a report containing the precise truth," Nunes, 2022 WL 17251981, at *4 (quoting Franklin v. Daily Holdings, Inc., 135 A.D.3d 87, 94 (1st Dep't 2015)), they must be considered false.

Troia's accusations were also defamatory. "A defamatory statement is one that exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc., 575 F. Supp. 3d 445, 476 (S.D.N.Y. 2021) (quoting Idema v. Wager, 29 F. App'x 676, 678 (2d Cir. 2002)) (summary order); accord Celle v. Filipino Reporter Enters., 209 F.3d 163, 177 (2d Cir. 2000). "Courts should not 'strain to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous.'" Belya v. Hilarion, No. 20-cv-6597 (VM), 2021 WL 1997547, at *5 (S.D.N.Y. May 19, 2021), appeal dismissed sub nom. Belya v. Kapral, 45 F.4th 621 (2d Cir. 2022), and appeal dismissed sub nom. Belya v. Kapral, 45 F.4th 621 (2d Cir. 2022) (quoting November v. Time Inc., 13 N.Y.2d 175, 178 (N.Y. 1963)).

Here, all of Troia's statements were meant to expose LoanStreet and Lampl to public opprobrium and shame. Indeed, the stated goal in the headline of his Reddit posts was to "Name and Shame" LoanStreet. See Reddit Post I; Name and Shame: LoanStreet (NY) cheated me out of equity [UPDATE: Glassdoor removes review, in violation of their own policy], https://www.reddit.com/r/

-28-

cscareerquestions/comments/o4y6xa/name_and_shame_loanstreet_ny
_cheated_me_out_of/ (last visited September 8, 2023) ("Reddit Post
II"); see also Reddit Post I (stating that "we need to elevate the
negative views that [LoanStreet]" has on Glassdoor).

Last, there is no doubt that Troia's statements were "of and
concerning" LoanStreet and Lampl, as he specifically references
both plaintiffs as the target of his accusations.  See Church of
Scientology Int'l v. Time Warner, Inc., 806 F. Supp. 1157, 1160
(S.D.N.Y. 1992) (statements may be of and concerning plaintiff if
"those who know the plaintiff, upon reading the statements, would
understand that the plaintiff was the target of the allegedly
libelous statements").

Accordingly, Troia's statements satisfy the first defamation
element, and we next address publication.

### b. Published to a Third Party

Troia's statements were indisputably published to third
parties on various websites, including Glassdoor.com, Reddit.com,
and Teamblind.com.  See, e.g., Compl. ¶¶ 24-26, 33, 34-38, 42-44.
Indeed, Troia admits in his Amended Answer to having authored them.
See, e.g., FAA ¶ 35 ("Defendant admits making statements on various
Internet websites from on or around June 13, 2021 up until the
filing of this Complaint."); id. ¶ 36 (admitting to Glassdoor
post); id. ¶ 38 (admitting to posts on Reddit.com, HackReactor.com,

-29-

Google Ads and Teamblind.com); id. ¶ 41 (admitting to tagging
LoanStreet personnel to their profiles on LinkedIn); id. ¶ 42
(admitting posting on Reddit.com on or about June 19, 2021); id.
¶ 45 (admitting to posting on Reddit.com that "Lampl 'pocketed'
the options"); id. ¶ 49 (admitting to purchasing Google Ads with
headlines such as "[LoanStreet] . . . withheld the $100K in stock
options they promised me"); id. ¶ 52 (linking his Reddit.com post
with the headline: "LoanStreet (NY) cheated me out of equity" to
his Google marketing campaign).   As we wrote in 2022, Troia
"deliberately and strategically utilized the Internet to spread
statements capable of defamatory meaning." LoanStreet, Inc., 2022
WL 3544170, at *5.

### c. The Applicable Level of Fault

Troia next argues that the applicable level of fault is
"actual malice," rather than pure negligence.  See Troia Opp. at
7, 18, 23-24.  Plaintiffs respond that the Court "need not decide
whether actual malice is required given that [Troia]" meets that
standard.  Pls. Reply at 10 n.13.  We agree with plaintiffs.

As an initial matter, LoanStreet and Lampl are both private
figures, and "[i]n New York, the generally accepted standard for
private figures is negligence." Gottwald v. Sebert, No. 32, 2023
WL 3959051, at *2 (N.Y. June 13, 2023).  Troia does not argue to

the contrary, and we would therefore ordinarily evaluate his claim under the negligence framework.

Defendant nonetheless contends that we should apply the actual malice standard under § 76-a of New York's amended anti-SLAPP statute because this action "involves public petition and participation." See Troia Opp. at 7; N.Y. Civ. Rights Law § 76-a. It is true that the New York State Legislature broadened the types of disputes subject to the actual malice requirement in 2020, such that an "action involving public petition and participation" now includes, inter alia, "any communication in a place open to the public or a public forum in connection with an issue of public interest." Prince, 634 F. Supp. 3d at 138 (quoting N.Y. Civ. Rights Law § 76-a(1)(a)) (emphasis added). It is also true that social media and/or review websites like Reddit, Glassdoor, and Teamblind are public fora. See, e.g., Aristocrat Plastic Surgery, P.C. v. Silva, 206 A.D.3d 26, 30 (1st Dep't 2022) (Yelp is a public forum); Goldman v. Reddington, No. 18-cv-3662 (RPK) (ARL), 2021 WL 4099462, at *4 (E.D.N.Y. Sept. 9, 2021) (posts on Facebook and LinkedIn were communications made in a public forum).

However, we doubt that Troia's statements constitute "a matter of public interest." The Court is mindful of § 76-a's text stating that the term "public interest" "shall be construed broadly, and shall mean any subject other than a purely private

matter." N.Y. Civ. Rights Law § 76-a(1)(d). Here, though, Troia's statements involved "an internal complaint about the behavior of a fellow employee," Miller v. Appadurai, 214 A.D.3d 455, 456 (1st Dep't 2023) and Troia's former employer, which Troia admits in his posts is a "small company" of "[less than] 30 people." See Reddit Post I; cf. Time, Inc. v. Firestone, 424 U.S. 448, 457 (1976) ("The details of many, if not most, courtroom battles would add almost nothing toward advancing the uninhibited debate on public issues . . . ."). Whether and when a single employee was entitled to certain vested stock options under the terms of his unique contracts at a company of less than 30 employees is likely not a matter of public interest. Indeed, to the extent that Troia believed he was "cheated" and "defrauded" by LoanStreet and Lampl, he could have pursued that theory in a court of law. Instead, Troia amplified disparaging remarks to the largest audience he could in the hopes that LoanStreet and Lampl would face maximum opprobrium and scorn. The Court is concerned that it would be inappropriate -- and inconsistent with legislative intent -- to reward Troia for his behavior by finding that his calculated (and false) attacks on LoanStreet and Lampl can transform a purely

private gripe into a matter of public concern.  As such, we are skeptical that New York's anti-SLAPP law applies here.[16]

However, even assuming that the Court were required to apply actual malice, the unusual set of facts here meet that exacting standard.  To demonstrate actual malice, plaintiffs are required to show, by "clear and convincing proof," Celle, 209 F.3d at 183, that Troia must have "realized that his statement[s] w[ere] false or that he subjectively entertained serious doubt as to the truth of his statement[s]."  See Bose Corp. v. Consumers Union of United States, 466 U.S. 485, 511 n.30 (1984).  When assessing subjective doubts as to truth, a "court typically will infer actual malice from objective facts", which may include "the defendant's own actions or statements . . . [and] the inherent improbability of the story."  Celle, 209 F.3d at 183 (internal quotation marks omitted); accord Coleman v. Grand, 523 F. Supp. 3d 244, 260 (E.D.N.Y. 2021).  Recklessness may also be found "where there are obvious reasons to doubt the veracity of an informant or the accuracy" of defendant's publication.  St. Amant v. Thompson, 390 U.S. 727, 732 (1968); accord Church of Scientology Int'l v. Behar,

_____

[16] While we have not located any on-point authority, we think it is worth noting that the "actual malice" standard relied on by Troia is part of New York's anti-SLAPP law.  See N.Y. Civ. Rights Law § 76-a.  However, as we have found supra, this case does not come within the statute's aegis as a SLAPP.  That determination brings into serious question the applicability of the actual malice standard in this context.

-33-

238 F.3d 168, 174 (2d Cir. 2001).   In addition, although "the actual malice standard does not measure malice in the sense of ill will or animosity," Behar, 238 F.3d at 174, "[e]vidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may . . . support a finding of actual malice." Celle, 209 F.3d at 183 (emphasis added).

Although Troia denies having made his statements with actual malice, see FAA ¶¶ 60, 75, 78-79, 95, 97-98, we infer Troia's reckless disregard for the truth from his obvious ill will towards LoanStreet and Lampl together with the indisputable facts which contradict his statements.   See Celle, 209 F.3d at 183.   First, Troia's ill will is evident from his calculated decision to wait the full "requisite year" for his "non-disparagement clause to expire," FAA, Counterclaims ¶ 53, before embarking on a multifaceted smear campaign to attack plaintiffs using charged -- and in some cases abusive -- language.   If that were not sufficient, Troia amplified his posts in the hopes that LoanStreet would face maximum ridicule, even paying for advertisements bearing titles such as "LoanStreet horror story – LoanStreet careers," and "LoanStreet horror story – 'a terrible place to work.'"   See FAA ¶¶ 48-49.   The Court thus has no doubt that Troia was motivated by personal animus towards plaintiffs such that

"malice was the one and only cause for the publication" of his statements.  Liberman v. Gelstein, 80 N.Y.2d 429, 434 (N.Y. 1992) (internal quotation marks omitted).

With respect to whether the indisputable facts contradict Troia's statements, it is dispositive that, as discussed supra, the explicit and specific terms of the Offer Letter and Option Agreement belie his accusations.  Those documents -- both signed by Troia -- plainly stated that Troia's options would only vest after specific steps had occurred, and it is equally clear that those steps had not occurred by the time he was fired.  The irreconcilable differences between the provisions that Troia agreed to and his statements provide an "obvious reason[] to doubt" their accuracy and render it "inherently improbable" that Troia believed his statements were true.  See St. Amant, 390 U.S. at 732; Celle, 209 F.3d at 183.

### d. Defamatory Per Se or Caused LoanStreet and Lampl Special Harm

Turning to the final element, we have already held that all of defendants' statements are defamatory per se because they charge plaintiffs with a serious crime or tend to injure plaintiffs in their trade, business, or profession.  See LoanStreet, Inc., 2022 WL 3544170, at *7.  While our prior Memorandum and Order was issued in the context of a motion to dismiss, defendant has not proffered

-35-

any argument here that would cause us to reconsider our earlier determination.

### e. Opinion

Although plaintiffs have met each necessary prong of our inquiry, Troia argues that his statements are non-actionable because he "expressed his subjective opinion that plaintiffs unjustly but legally broke their pre-hire promise that the first quarter of his option would vest after a year of employment," and "[a]t worst, [he] used imprecise words like 'defraud' and 'fraud' that have multiple dictionary definitions and can mean either lawful or unlawful deception." Troia Opp. at 21-22. Plaintiffs respond that this Court has already held that his statements are not pure opinion. Pls. Reply at 9-10.[17]

Our prior Memorandum and Order precludes Troia's argument, as we held there that "[t]he bulk of the statements at issue here center on defendant's accusation that plaintiffs unlawfully withheld from defendant $100,000 in stock options. . . . None of

---

[17] To determine whether a given statement is actionable, courts consider three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

LoanStreet, Inc., 2022 WL 3544170, at *4 (quoting Wexler v. Dorsey & Whitney LLP, 815 F. App'x 618, 621 (2d Cir. 2020)).

them are pure opinion." <u>LoanStreet, Inc.</u>, 2022 WL 3544170, at *5. We also specifically wrote that "[a]t worst, the allegedly defamatory statements include opinions and facts, both of which plaintiffs contest," and "when read in the full context of the posts, as defendant urges the Court to do, it is clear that even the most vitriolic of the bunch — remarks such as, '[Lampl] is a rich con man' and '[LoanStreet] is a fraudulent, exploitative mess' — relate to the specific accusation that LoanStreet and Lampl defrauded defendant by unlawfully withholding $100,000 in stock options." <u>Id.</u>  Again, we find no reason to reconsider our prior conclusion.

### f. No Qualified Privilege Applies

Last, the so-called "moral duty" and "common interest" qualified privileges do not protect Troia's statements. "New York law recognizes—in addition to the defense of truth—certain qualified privileges that may immunize a declarant from liability for a defamatory statement." <u>Moraes v. White</u>, 571 F. Supp. 3d 77, 99 (S.D.N.Y. 2021) (citing <u>Conti v. Doe</u>, No. 17-cv-9268 (VEC), 535 F. Supp. 3d 257, 275 (S.D.N.Y. Apr. 22, 2021)).  The "moral duty" and "common interest" privileges often "overlap," <u>Chandok</u>, 632 F.3d at 814, and cover "statements fairly made by a person in the discharge of some public or private duty, legal or moral and statements encompassing communication[s] made by one person to

another upon a subject in which both have an interest." Loughlin v. Goord, No. 21-2460-CV, 2022 WL 9575656, at *3 (2d Cir. Oct. 17, 2022) (summary order) (internal quotation marks omitted); accord Conti, 535 F. Supp. 3d at 275.

Even assuming that Troia was discharging a moral duty in making his statements or maintained a common interest with the viewers of his posts -- both highly dubious assumptions[18] -- his defenses would fail, as these two qualified privileges are defeated if the statements at issue were "published excessively, i.e., [they were] made to persons with an insufficient interest in it for it to warrant protection." Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 98 (2d Cir. 2000).[19] Here, Troia posted his statements on prominent, public social media and workplace review websites to an audience that had no obvious interest in LoanStreet and then amplified them further using paid Google advertisements. See Reddit Post I ("Please follow the link and mark it as helpful so that the message is amplified and as many people are warned as

---

[18] One might, for example, question the conviction with which Troia felt a "moral duty" when he waited the requisite year for his non-disparagement agreement to expire before launching his online campaign.

[19] The common interest privilege has particularly "limited application," and "applies only to communications that are published to . . . [a] clearly defined group of private persons with an immediate relationship to the speaker." Moraes, 571 F. Supp. 3d at 99-100 (internal quotation marks omitted); see also id. at 100 (posts to Facebook groups containing 2,300 members and 6,000 members respectively did not qualify under common interest privilege); Conti, 535 F. Supp. 3d at 276 n.18 (collecting cases noting that the privilege typically applies to intra-workplace communications).

possible."). Troia cannot simultaneously maximize the audience for his statements then hide behind qualified privileges which explicitly do not apply to such excessive publication.

**CONCLUSION**

Accordingly, LoanStreet and Lampl's motion to dismiss Troia's counterclaims is granted, as is their motion for judgment on the pleadings. The Clerk of Court is respectfully directed to terminate the motions pending at ECF No. 66.


**SO ORDERED.**


Dated:    New York, New York
          September 8, 2023

          _____
          NAOMI REICE BUCHWALD
          UNITED STATES DISTRICT JUDGE

-39-