UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOANSTREET, INC., and IAN LAMPL, Individually,

               Plaintiffs,

      -against-

WYATT TROIA, Individually,

              Defendant.

Case No. 1:21-cv-06166-NRB

# DEFENDANT'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Local Rules of Civil Procedure of the United States District Court for the Southern District of New York, Defendant Wyatt Troia ("Troia" or "Defendant"), by and through his undersigned counsel, respectfully submits the following statement of material and undisputed facts that support a grant of his motion for summary judgment. References to "Lin Dec." are to the Declaration of David D. Lin submitted in support of Troia's motion.

## I.     LOANSTREET AND THE LOANSTREET MARK

1. Plaintiff Ian Lampl ("Lampl") co-founded LoanStreet, Inc. ("LoanStreet"; collectively, "Plaintiffs") an online platform that allows financial institutions and other users to share, manage, and originate loans. (Lin Dec. Ex. 4, Complaint ("Compl."), ¶¶ 11-12.)

2. LoanStreet owns a valid trademark in its name "LoanStreet." Said trademark is registered with the United States Patent and Trademark Office, United States Registration No. 4,618,232 on the Principal Register. (Lin Dec. Ex. 5.)

3. LoanStreet's trademark was issued on October 7, 2020. (Lin Dec. Ex. 5.)

4. The mark is registered for "providing temporary use of non-downloadable software to facilitate and/or manage the buying or selling of any loan, including whole loans, a portion of any loan, loan assignment, loan participation or any economic interest in a loan." (Lin Dec. Ex. 5, LoanStreet Trademark/Service Mark Statement of Use; Ex. 4, Compl., ¶ 111.)

## II.    DEFENDANT TROIA AND HIS USE OF THE MARK

5. Troia was hired by LoanStreet to work as an engineer in February 2019. (Lin Dec. Ex. 4, Compl., ¶ 17.) In June 2020, Troia was terminated by LoanStreet. (Lin Dec. Ex. 4, Compl., 27.)

6. Troia does not provide any loan or adjacent services. As he testified under oath on June 7, 2024, Troia is a software engineer. (Lin Dec. Ex. 6, W. Troia Dep. June 7, 2024 (22:19-25; 23:8).

7. Defendant is and has at all relevant times been employed as an engineer, currently employed by Microsoft. (Lin Dec. Ex. 6, W. Troia Dep. June 7, 2024 (22:19-25; 28:10-16; 127:14-18.) LoanStreet provides services that helps their clients manage their portfolio loans, typically for others in the financial industry, and as Lampl testified, "the bulk of our clients are US credit unions." (Lin Dec. Ex. 7, I. Lampl Dep. June 4, 2024 (150:24-25; 151:10-12).

8. Defendant Wyatt Troia posted on Glassdoor a review of LoanStreet, stating, among other things, "Why not more bad reviews? LoanStreet only pays severance if you agree not to badmouth them – Software Engineer LoanStreet (NY) Employee Review." Lin Dec. Ex.9 (W. Troia Dep. June 7, 2024 Ex. 8).

9. The post went on to say: "Stay far, far away unless you're truly desperate. LoanStreet is a raging dumpster fire and you will get burned like many before. … Any promises made to you to entice you to sign an offer should be regarded with extreme skepticism. Get everything in writing and reviewed by a good lawyer. … Before I joined, Cofounder/COO Christopher Wu told me that the first quarter of my stock options would vest after a year. My offer letter said details on the equity compensation would be provided in a separate equity agreement. I wasn't provided that agreement for nearly a year after my start date, and you can imagine my surprise when I saw that I wouldn't begin to vest until nearly 16 months of employment. After 15 months of work, I was abruptly fired and didn't receive a single option. … Because the offer letter omitted the details of the equity compensation, labor lawyers told me I had no case. Keep in mind, LoanStreet is run by lawyers who used to worth at Cravath, a very

prestigious and lucrative NYC law firm. I suspect they knew exactly what they were doing when they wrote the offer letter. If it was just a good faith mistake, they could have done the right thing and granted me the options I earned. They chose not to. … Placing my trust in LoanStreet was a costly mistake. If you're reading this, please don't be fooled by the Series B funding or the impressive pedigrees of the leaders: this place is a fraudulent, exploitative mess and you have a good chance of being fired within a year….. You deserve to be treated with dignity. Work elsewhere." Lin. Dec. Ex.9 (W. Troia Dep. June 7, 2024 Ex. 8).

10. Troia additionally made a post on Reddit titled: "Name and Shame: LoanStreet (NY) cheated me out of equity." Lin Dec. Ex.10 (W. Troia Dep. June 7, 2024 Ex. 4). The body of the post began "I worked for LoanStreet in NYC." The post proceeded to describe Troia's perception of his interactions and experiences with LoanStreet. *Id.*

11. The post continued as follows: "Cofounder/COO Christopher Wu told me my equity would start vesting after 12 months. After I started, they told me that they actually meant 12 months after the next quarterly board meeting. … LoanStreet is run by fancy lawyers and were crafty with the offer letter language so I had no legal case." *Id.*

12. The posts use the term "LoanStreet" in reference to Plaintiff LoanStreet. *Id.*

13. Troia wrote his posts to try and warn people about what he viewed as unfair labor practices at LoanStreet. Troia wrote: "Copying my Glassdoor review below. Please follow the link and mark it as helpful so that the message is amplified and as many people are warned as possible……" Lin Dec. Ex.10 (W. Troia Dep. June 7, 2024 Ex. 4). And then he inserted the text of the Glassdoor post including the following: "Stay far, far away unless you're truly desperate. LoanStreet is a raging dumpster fire and you will get burned…. You deserve to be treated with dignity. Work elsewhere." *Id.*

14. LoanStreet contacted several of the platforms that hosted Troia's posts and requested that they delete the posts. I. Lampl Dep. June 4, 2024 (37:22-24; 52:18-21). By June 21, 2021, at least one of these platforms, Glassdoor, had deleted Troia's posts. *See* Lin. Dec. Ex. 26.

15. In the comments on a Reddit post of Troia's titled "Name & Shame: LoanStreet (NY) wants federal judge to force Reddit to de-anonymize every post and comment I've written in my entire life," Troia commented "I've been clear on this all along: what [LoanStreet] did was unethical, not illegal. My initial Reddit post and Glassdoor review explicitly said labor lawyers told me I had no legal case." (Lin Dec. Ex. 24). Another Reddit user named "DZ_tank" replied to this comment saying, "So why didn't you let it go instead of continuing to post your review *everywhere* and pay for google ads to promote it?" Id. Troia responded, "LoanStreet was working very hard to take down my posts/reviews and having success. A warning is useless if the people who need to see it can't." Id.

16. Starting June 21, 2021, Troia bought Google ads for the term "LoanStreet" linking to Troia's Reddit post referenced in paragraph 10, *supra*. W. Troia Dep. June 7, 2024 (109:16-19). Those ads were clearly labeled as ads and clearly linked to Reddit.com. Lin Dec. Ex. 12 (W. Troia Dep. June 7, 2024 Ex. 22); Lin Dec. Ex. 13 (W. Troia Dep. June 7, 2024 Ex. 23).

17. Troia also paid to display the same ads for other related keywords including: "LoanStreet Glassdoor", "LoanStreet Careers", and "What's it like to work at LoanStreet". Lin Dec. Ex.11 (W. Troia Dep. June 7, 2024 Ex. 19). Troia configured his ads to always start their titles with "LoanStreet horror story." (Lin Dec. Ex. 25) ("LoanStreet horror story" asset is "pinned" in "1st position"). The titles of Troia's ads would also include the phrases "'a terrible

place to work'", "'Hush money severance pay'", "'What's it like at LoanStreet'", "'abruptly fired me'", "LoanStreet software engineer," "LoanStreet engineering", "'super messed up'", "'Cheated me out of equity'", "'Fired me right before vesting'", "LoanStreet careers'", and "'red flags everywhere'". Lin Dec. Ex. 25. The descriptions of Troia's ads would include the phrases "'You deserve to be treated with dignity. Work elsewhere.", "They abruptly fired me & withheld the $100k in stock options they promised me'", and "'Placing my trust in LoanStreet was a costly mistake'". *Id.*

18. While the Google ads that Troia purchased were still running, at least one Google search result for "loanstreet" displayed the "LoanStreet horror story – LoanStreet engineering" as the top result, with the word "Ad" displayed in bold and a visible link to Reddit, with the following URL displayed: "https://www.reddit.com/csjobquestions/loanstreetshame". Lin Dec. Ex. 12 (W. Troia Dep. June 7, 2024 Ex. 22).

19. The same Google search result also displayed the LoanStreet website as the top organic result, right below the "LoanStreet horror story" result, with a title of "LoanStreet," a URL of https://www.loan-street.com, and a description of "LoanStreet is the first fully-integrated, online platform that streamlines the process of sharing, managing, and originating loans for credit unions, banks …" *Id.*

20. The same Google search result also displayed organic third-party results that included multiple results with the "LoanStreet" trademark in the name and descriptions that were more similar to the LoanStreet result's description than the Troia ad's description was. For example, the third result was titled "LoanStreet Inc. | LinkedIn," displayed a URL of "https://www.linkedin.com > company > loanstreet-llc," and had a description of "About LoanStreet Inc. LoanStreet is the first fully-integrated, online platform that streamlines the

6

process of sharing, managing, and originating loans for …" Another result titled "LoanStreet LLC Information | LoanStreet LLC Profile" was displayed with a URL of "https://rocketreach.co > loanstreet-llc-profile_b5f385b7" and a description of "About LoanStreet Inc. LoanStreet is the first fully-integrated, online platform that streamlines the process of sharing, managing, and originating loans for …". a result titled "Working at LoanStreet (NY) | Glassdoor" appeared with a description of "See what employees say it's like to work at LoanStreet (NY). Salaries, reviews, and more – all posted by employees working at LoanStreet (NY). *Id.*

21.     The same Google search result also displayed an organic third-party result with almost the exact same title as that of LoanStreet's top-ranked organic result. The result page displayed a result titled "Loanstreet" with a URL of "https://loanstreet.com.my" and a description of "LoanStreet is Malaysia's leading independent personal finance website. Compare personal loans, home loans, credit cards, and vehicle insurances with our tools …" *Id.*

22.     All of the ads Troia purchased started with the word "Ad" in bold font, displayed a link to Reddit (either "https://www.reddit.com/csjobquestions/LoanStreetShame", "https://www.reddit.com/csjobquestions/loanstreetshame", or "https://www.reddit.com/csjobquestions"), and had a title beginning with the phrase "LoanStreet horror story" and then another phrase such as "abruptly fired me," "cheated me out of equity" or "fired me right before vesting." W. Troia Dep. June 7, 2024 (115:16-17); Lin Dec. Ex.13 (W. Troia Dep. June 7, 2024 Ex. 23).

23.     Troia explained that he used the "LoanStreet" trademark as part of the "LoanStreet horror story" phrase in the titles of the ads because he felt that it was necessary to avoid reader confusion about who had placed the ad and what he was referring to and trying to warn other workers about: "I think that actually would have been more confusing. I felt

7

describing the topic of my post was the clearest way to clearly communicate what the ad was for." W. Troia Dep. June 7, 2024 (116: 6-9)

24. Under the "LoanStreet horror story" title the ad then displayed small excerpts from the post, such as "'Placing my trust in LoanStreet was a costly mistake' 'You deserve to be treated with dignity. Work elsewhere'" or "'They abruptly fired me & withheld the $100k in stock options they promised me' 'You deserve to be treated with dignity. Work elsewhere'". Lin Dec. Ex.13 (W. Troia Dep. June 7, 2024 Ex. 23).

25. On Troia's posts other people could and did comment in response. The responses discussed the "naming and shaming" and what the company did and what "you" did addressed to Troia. Lin Dec. Ex.14 (W. Troia Dep. June 7, 2024 Ex. 29).

26. Specifically, one commenter wrote: "If your story's accurate, the circumstances surrounding your firing suck mightily. You tried to do the right thing and got crapped on for it. For that, name and shame all you want." Troia. Lin Dec. Ex.14 (W. Troia Dep. June 7, 2024 Ex. 29).

27. One commenter with the screenname OBPSG, wrote "FWIW, you've accomplished your goal of convincing me that I will never want to work for LS on account of the risk of getting embroiled in a shitstorm like this one." Lin Dec. Ex. 15 (A. Guttman Dep. June 21, 2024 Ex. 7).

28. Another wrote, "Loanstreet actually asked me if I want to join, then I remembered reading up on them. Compared the CEO/CTO/HR names and they were a match. If it makes you feel any better, op, I simply said not interested…" Lin Dec. Ex.15 (A. Guttman Dep. June 21, 2024 Ex. 7).

8

29. Additionally, after this case was filed commenters continued to comment on the posts. One wrote: "There is a screenshot in their complaint, they look like normal google ads and it's obvious they go to reddit." Another wrote: "here is a screenshot of the ads, as copied from the legal complaint. This is clearly a review, not an impersonation of LoanStreet." Lin. Dec. Ex. 24

30. Another user wrote: "It's not like he pretended to own the copyright / imitated the company." Another wrote: "The 'trademark' is literally the company name. What a BS claim by LoanStreet. Oops, I just used their trademark, Maybe they'll sue me too now. LoanStreet is a shady company. Does this mean I just defamed them? I'm with OP on this one". *Id.*

31. One individual, a software engineer, posted on Facebook, that he had posted about a story a few weeks earlier about a former employee posting about "a seemingly toxic and unethical company, LoanStreet Inc." and updated his followers that "now they are suing the former employee." Lin Dec. Ex. 16 (A. Guttman Dep. June 21, 2024 Ex. 2).

32. Troia discussed his satisfaction with the success of his ad campaign in achieving its intended purpose of warning others about what he perceived to be the unfair labor practices occurring at LoanStreet: "I was happy that the situation of LoanStreet being able to take advantage of people naïve to their deception was over." W. Troia Dep. June 7, 2024 (124:13-16).

33. When asked why he shared photos of his ads/posts with Sharmeen Malik, a former LoanStreet employee who was also fired, Troia stated: "just to show Sharmeen that my efforts to educate people were bearing fruit." W. Troia Dep. June 7, 2024 (125:10-11)

**THERE IS NO LIKELIHOOD OF CONFUSION**

A. Plaintiff has not put forth any evidence showing consumer confusion

34. In an interrogatory response, Plaintiff LoanStreet stated that: "Defendant's unauthorized use of the infringing mark was likely to confuse and deceive prospective employees and potential customers of LoanStreet services because Defendant's unauthorized use of the LoanStreet trademark in his Google ads, when combined with his purchase of LoanStreet-related search terms for his Google ads, was done with the purpose of diverting Internet users searching for LoanStreet……and likely confused or deceived some amount of them into choosing to view Defendant's desired webpage rather than LoanStreet's website." Lin Dec. Ex.17 (I. Lampl Dep. June 4, 2024 Ex. 19) (LoanStreet Response to interrogatory 4).

35. Plaintiff LoanStreet further stated: "Defendant's unauthorized use of the Infringing Mark served as direct competition for viewership of and access to LoanStreet's website by those prospective employees and potential customers, and likely confused or deceived some amount of them into choosing to view Defendant's desired webpage rather than LoanStreet's website." Lin Dec. Ex.17 (I. Lampl Dep. June 4, 2024 Ex. 19) (LoanStreet Response to interrogatory 4).

36. And Plaintiff LoanStreet stated "Defendant's unauthorized use of the LoanStreet trademark was likely to confuse and deceive LoanStreet's prospective employees and potential customers because, when they searched Google using a LoanStreet-related search term and were immediately presented with advertisements featuring the trademark "LoanStreet" as the very first word, it created confusion and/or deception as a consequence of the expectation that Google returns businesses related to the search term used, which because of LoanStreet's inherently distinctive trademark increases the likelihood of confusion Lin Dec. Ex.17 (I. Lampl Dep. June 4, 2024 Ex. 19) (LoanStreet Response to interrogatory 4). Plaintiffs have made clear that they

believe the placement of Defendant's ad would likely confuse people, however, Plaintiffs have offered no further evidence to support this proposition.

37. Plaintiff LoanStreet stated that the "bases for claiming that the alleged unauthorized use of the Infringing Mark, as defined in the Complaint, was likely to confuse and deceive LoanStreet's prospective employees and potential customers will be addressed by an expert witness versed in reputation and brand valuation." Lin. Dec. Ex.17 (I. Lampl Dep. June 4, 2024 Ex. 19) (LoanStreet Response to interrogatory 4).

38. However, Plaintiffs have failed to produce any evidence showing any actual customer confusion. In the course of this action Plaintiffs served one expert report on Defendant. This one report was from Mr. Allen Adamson, who submitted an expert report and sat for a deposition. In neither did Mr. Adamson provide any actual evidence of any studies conducted to measure or report on consumer confusion.  (Lin. Dec. ¶ 4)

39. In fact, Adamson, testified during his deposition: "I did not do an analysis of trademark confusion."  (Lin Dec. Ex. 3, A. Adamson Dep. August 20, 2024 (72:3-10).

40. During his deposition, Adamson again specifically stated that he did not investigate whether any consumers were confused about the source of the Google ads. A. Adamson Dep. August 20, 2024 (244:7-24).

41. In Adamson's expert report there is one reference to confusion as follows: "indeed, anyone doing a search for LoanStreet's website would expect that website to appear as the first search result and would be confused by Defendant's ad appearing at the top of the page with the same branded, trademarked name as the company website. As a result, prospects considering doing business with LoanStreet and investors considering backing LoanStreet, in addition to potential employees, would likely encounter these negative messages before even

having the opportunity to visit the company's website and learn the truth about the company." Lin Dec. Ex. 2 (Declaration of Allen Adamson dated June 21, 2024, pg. 32). Adamson, however, provided no data to support his claim that such an expectation existed or that any such confusion occurred. Adamson also provided no discussion on these Google users' potential awareness of the practice of competitive search advertising and its effect on their ability to understand the origin of various search result items.

42. When discussing the alleged trademark infringement and potential confusion Plaintiffs only point to the use of LoanStreet in the title of Troia's ad and as a keyword for ads and not to any explicit claim that others supposed LoanStreet was the source or sponsor of the ads or in any way affiliated with the ads or linked post. Lin Dec. Ex.17 (I. Lampl Dep. June 4, 2024 Ex. 19) (LoanStreet Response to interrogatory 4); Lin Dec. Ex. 2 (Declaration of Allen Adamson dated June 21, 2024, pg. 32).

43. In promoting his posts, Troia never made any statements attributing said ads or post to LoanStreet or claiming any affiliation with LoanStreet. Rather, Defendant stated he used the term LoanStreet in order to *avoid* confusion about the ads among Google users searching for LoanStreet. W. Troia Dep. June 7, 2024 (116:6-9).

B. <u>When Discussing the Post Plaintiff has not referred to Any Confusion Caused</u>

44. In discussing the employees the company is looking for, Guttman stated "we are still always opportunistically looking for high quality candidates." Lin Dec. Ex. 8 (A. Guttman Dep. June 21, 2024 (51:18-22)). Lampl similarly stated: "we are always opportunistically looking to hire highly talented individuals." I. Lampl Dep. June 4, 2024 (149:4-6).

45. In general, when discussing hiring efforts and qualifications for candidates, Guttman described an engineer working at Amazon as looking "like they could be good targets

for our company." A. Guttman Dep. June 21, 2024 (134:13-25). And in describing a different individual, Guttman stated "being a software engineer at Facebook, he otherwise would have been a target for us… the type of candidate we would have liked to recruit" A. Guttman Dep. June 21, 2024 (66:1-7).

46. Ian Lampl emailed LinkedIn Customer Support and wrote: "how do we untag LoanStreet from the post…..it is this type of posts that we view squarely meets the criteria for removal as being maliciously defamatory…" Lin Dec. Ex.18 (I. Lampl Dep. June 4, 2024 Ex. 4).

47. Ian Lampl stated during his deposition: "the purpose of my contacting LinkedIn was to mitigate the harm being caused by defamatory content on LinkedIn." I. Lampl Dep. June 4, 2024 (53:8-10).

48. Ian Lampl stated: "so while I'm not able to provide an exhaustive list of all harms caused by Wyatt's defamatory campaign, Wyatt's defamatory campaign harms all of the business relationships LoanStreet can enter into covering employee relationships, client relationships, vendor relationships." I. Lampl Dep. June 4, 2024 (60:5-16).

49. In discussing the harm allegedly incurred as a result of Troia's post Lampl said it harmed LoanStreet's ability to hire new people: "but for example in order to hire new employees, frequently they would want to meet with me specifically before joining LoanStreet, because they wanted to meet with me given all of the defamatory content that was said about me online and make a determination for themselves about whether they believed Wyatt and his defamatory content…." I. Lampl Dep. June 4, 2024 (118:25; 119:2-10).

50. Lampl also stated that when hiring people they began to "specifically ask me about the defamatory content and Wyatt's posts." I. Lampl Dep. June 4, 2024 (123:25; 124:2-3).

51. Alyssa Guttman, during her deposition, discussed similar alleged difficulties in hiring caused by Troia's posts: "I'm aware that prospective employees, were concerned about the defamation campaign…. there were concerns by candidates about relating to the lies that Wyatt had put online, you know, about the defamation campaign." A. Guttman Dep. June 21, 2024 (53:24-25; 54:1). Guttman further explained the difficulty LoanStreet allegedly faced when trying to make new hires: "when you're trying to recruit through a smear campaign, people are concerned – prospective candidates are concerned about the content of that –you know of that campaign." A. Guttman Dep. June 21, 2024 (88:16-21).

52. For example: a candidate for a position at LoanStreet emailed the company saying she has concerns about the position "after reading the reviews from the ex-employee." Lin Dec. Ex.19 (A. Guttman Dep. June 21, 2024 Ex. 8). Another person on the recruiting team received an email stating: "Hi Mackenzie, thank you for reaching out, but I am not interested at this time. Heard terrible things about loanstreet." Lin Dec. Ex. 20 (A. Guttman Dep. June 21, 2024 Ex. 13).

53. This was also seen by posters on Reddit stating that after seeing these posts they would never work for LoanStreet. Lin Dec. Ex.15 (A. Guttman Dep. June 21, 2024 Ex. 7).

54. Similarly LoanStreet, specifically Guttman received an email stating "Sorry I do not work for companies that sue their former employees." Lin Dec. Ex.21 (A. Guttman Dep. June 21, 2024 Ex. 1).

55. Lampl further worked with Google and was successful in getting Troia's ads removed: "I believe Google ultimately did confirm that LoanStreet, our company LoanStreet, owns the trademark LoanStreet, and stopped allowing the Ads with the name LoanStreet in the Ad." I. Lampl Dep. June 4, 2024 (130:8-12); Lin Dec. Ex. 22 and 23 (A. Guttman Dep. June 21, 2024 Ex. 9 and 10).

56. In discussing the company's concern about new hires, Guttman, stated that the company's priority was "getting high-qualified candidates in the door". A. Guttman Dep. June 21, 2024 (234:20-25).

57. In these discussions of the harms allegedly suffered by LoanStreet there is no mention of confusion or potential customers or employees thinking the ads or linked post came from LoanStreet when they read them or saw the ads.

58. No survey, consumer studies, or expert report was proffered stating that any confusion was caused by the ads or posts. (See Lin Dec. ¶ 6.)

59. There is no evidence that any confusion actually occurred.

60. In this litigation, Plaintiffs are asserting two claims for unfair competition—Count V is brought under the Lanham Act and Count VI is brought under New York common law (collectively, the "Unfair Competition Claims"). (Lin Dec. Ex. 4, Compl. Counts V and VI.)

61. In November 2021, Defendant filed a motion to dismiss (Dkt. # 26) that was directed at multiple claims in Plaintiffs' Complaint, including Counts V and VI. In August 2022, this Court ruled on Defendant's motion to dismiss. (See Lin Dec. Ex. 1, August 2022 Order). This Court granted that motion to dismiss in part but not as to Plaintiffs' Unfair Competition Claims. (*See id*.)

62. As the Court explained in the August 2022 Order, the Unfair Competition Claims "arise from defendant's purchase of Google advertisements that displayed LoanStreet's registered trademark." (Lin Dec. Ex. 1, August 2022 Order at 27.)

Dated: January 9, 2025
      Brooklyn, NY

                                      Respectfully submitted,

/s/ David D. Lin

David D. Lin

LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: David@iLawco.com

*Counsel for Defendant*