May 21, 2025

**VIA ECF**
Hon. Naomi Reice Buchwald, U.S.D.J.
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

*Re: LoanStreet, Inc. et al., v. Troia,*
*21-cv-06166 (NRB)*

Dear Judge Buchwald,

      I respectfully request a pre-motion conference to discuss my anticipated motion under Fed. R. Civ. P. 37(c)(1) to supplement my pretrial disclosures with additional witnesses and documents not previously disclosed.

      The primary reason I transitioned to pro se representation was financial—the high cost of continuing with full legal representation had become prohibitive. However, attorney errors also significantly influenced my decision. Among other errors, my prior attorneys failed to adequately consult with me regarding initial disclosures, failed to disclose witnesses and documents critical to my defense, and did not communicate the critical implications of omitting such witnesses and documents. My prior attorneys did not provide me with my own initial disclosures until December 2024, and only then did I learn for the first time that omitting witnesses or documents in initial disclosures could preclude my use of that evidence at trial. Accordingly, I now respectfully seek to supplement my pretrial disclosures to remedy these oversights by my prior attorneys.

**<u>Supplemental Witnesses</u>**

      The supplemental witnesses fall into the following four categories:

      **First**, current and former LoanStreet employees with direct knowledge regarding LoanStreet's employment practices, internal management issues, company culture, and labor conditions. Their testimony is crucial to demonstrating independent sources of reputational harm—rebutting Plaintiffs' assertion that the defamatory statements alone damaged LoanStreet's reputation—as well as to establishing the full context for my decision to post online about LoanStreet. These witnesses can also provide testimony concerning my positive job performance, cooperation, and strong interpersonal relationships with coworkers, directly rebutting Plaintiffs' allegations about my conduct and work performance and thereby correcting Plaintiffs' distortions of the motivations behind my posts.

      **Second**, individuals previously identified by Plaintiffs—including alleged investors, past and present employees, and prospective employees—as allegedly having relationships with Plaintiffs harmed by my statements. I seek testimony from these individuals clarifying the actual impact of my statements on their perceptions of Plaintiffs, including whether they read or were

influenced by my defamatory or non-defamatory statements, unrelated third-party statements, or other independent concerns about Plaintiffs. This testimony directly addresses Plaintiffs' claims regarding reputational damages and helps identify alternative possible causes of any alleged harm. Such testimony is particularly critical given Plaintiffs' incorrect attribution to me of several disparaging online posts actually authored by third parties, which may have resulted in Plaintiffs inaccurately representing to these individuals that I was responsible for statements I never made. *See* DE 157 at 4 ("Plaintiffs alleged that three third-party Internet posts that they falsely attributed to Defendant were 'disparaging and defamatory' …").

**Third**, former coworkers, supervisors, and longtime personal acquaintances of mine from companies and contexts other than LoanStreet who will testify about my longstanding ethical concerns regarding corporate honesty and responsible business practices, as well as my strong character, positive job performance, cooperation, and interpersonal skills. This testimony is directly relevant to the jury's determination of punitive damages, as it rebuts Plaintiffs' false portrayal of my employment record and character, demonstrates that the defamatory statements were inconsistent with my general behavior, and provides crucial context regarding my actual motivations.

**Fourth**, third-party individuals who have interacted with or had business dealings with LoanStreet and possess knowledge regarding independent factors that negatively impacted LoanStreet's reputation, entirely separate from the defamatory statements.

## Supplemental Documents

The supplemental documents fall into several discrete categories, each important to my defense:

1. Academic, government, and media reports demonstrating that comparative advertising and protest-related communications routinely reference trademarked company names, thereby educating consumers about their choices rather than causing confusion. This evidence directly rebuts Plaintiffs' claims regarding alleged consumer confusion resulting from my Google ads.
2. Salary information demonstrating LoanStreet's below-market compensation practices, supporting the argument that LoanStreet's negative reputation stemmed from hiring inexperienced or vulnerable employees and subjecting them to deceptive or unfair labor practices.
3. Third-party online commentary and media articles establishing that independent causes of reputational harm to Plaintiffs exist and also that LoanStreet continues to receive strongly positive online reviews from both customers and employees.
4. Press releases, media articles, and other documents demonstrating that LoanStreet has experienced substantial brand, customer, fundraising, and product success since the defamatory statements were posted, indicating that Plaintiffs have not suffered any reputational harm from the defamatory statements.
5. Documents providing context on my equity dispute and Plaintiffs' initiation and maintenance of this lawsuit, including the unlawful non-disparagement agreement LoanStreet required me to sign as a condition of my employment, the equity agreement,

      Plaintiffs' cease-and-desist letter, counsel emails demonstrating LoanStreet's retaliatory intent, and my NLRB charge. These documents are relevant to punitive damages because they establish the circumstances of my decision to make the online posts.
6. Securities and Exchange Commission-filed offer letters from a variety of technology companies demonstrating that LoanStreet's equity vesting schedule for me was highly unusual, contrary to LoanStreet's General Counsel's representation to me, highlighting further independent causes of reputational harm and providing crucial context to my concerns over my equity compensation.
7. Communications with my former supervisor and other coworkers at LoanStreet, clearly demonstrating their dissatisfaction with LoanStreet's employment practices, further evidencing LoanStreet's independently poor reputation. These text messages also directly rebut Plaintiffs' allegations regarding my employment performance and interpersonal relationships with coworkers, providing important context for my public statements following my termination.

      I also intend to use publicly available photographs of LoanStreet employees and myself as visual aids at trial to assist the jury in identifying speakers during audio recordings. These photographs, sourced primarily from publicly accessible websites (e.g., LinkedIn, LoanStreet's website), are intended exclusively as demonstrative aids to clarify trial testimony and evidence. I am prepared to provide copies of these demonstrative photographs in advance of trial if the Court so directs.

      Finally, I intend to rely on certain documents already explicitly filed as exhibits in prior motions, letters, or other docket entries, as well as materials publicly available on websites specifically referenced or linked to in my docket filings. I believe these previously filed or explicitly linked materials do not require additional disclosure, as they have been clearly identified, readily accessible, and within Plaintiffs' knowledge throughout the litigation.

**The *Softel* Factors Strongly Favor Supplementation**

      Under Rule 37(c)(1), courts assess supplemental disclosures using the four-factor test articulated by the Second Circuit in *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997). The four factors are: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

      Here, each of the four factors strongly favors supplementation: (1) attorney error and oversight clearly explain the omission; (2) the supplemental disclosures are critically important to my defense; (3) minimal prejudice exists because no trial date is set, allowing ample preparation time for Plaintiffs, and most of the supplemental witnesses have been known to Plaintiffs for years; and (4) limited additional discovery could readily mitigate any claimed prejudice.

**Conclusion**

       I fully acknowledge the Court's prior ruling finding liability for defamation with actual malice. These supplemental disclosures do not seek to challenge that ruling; rather, they aim solely to provide essential context for the jury's assessment of actual and punitive damages.[1] Specifically, these disclosures will demonstrate my longstanding ethical motivations, the factual circumstances surrounding my public statements, and independent causes of reputational harm unrelated to the defamatory statements—all directly relevant considerations in determining appropriate damages.

       Accordingly, I respectfully request that the Court schedule a pre-motion conference to discuss my proposed supplemental disclosures and anticipated motion. Thank you for your consideration.

       Respectfully submitted,

*/s/ Wyatt Troia*
Wyatt Troia
300 Albany Street, 8G
New York, NY 10280
Tel: (402) 990-3834

*Defendant*

---

[1] Unlike the supplemental witnesses and the other categories of supplemental documents, the first category of supplemental documents is specifically intended to support my defense against Plaintiffs' trademark claims, rather than the remaining defamation claims.