**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOANSTREET, INC. and IAN LAMPL,<br><br>          Plaintiffs,<br><br>     -against-<br><br>WYATT TROIA,<br><br>          Defendant. | Civil Action No. 1:21-cv-06166-NRB |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**HIS MOTION FOR RECONSIDERATION PURSUANT TO LOCAL CIVIL RULE 6.3**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL STANDARD ..................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

I.  THE COURT SHOULD RECONSIDER ITS DENIAL OF MY MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' UNFAIR COMPETITION CLAIMS ............................................................................................................................. 1

    A.  The Court Overlooked Controlling Authority Holding That Diversion and Persuasion Are Not Prohibited by the Lanham Act, and Overlooked the Absence of Any Evidence of Actual Confusion or Intent to Confuse .............. 1

    B.  The Court Overlooked Evidence and Controlling Authority Demonstrating the Absence of Confusion ............................................................... 3

    C.  The Court Overlooked Controlling Authority Holding That Speech Does Not Lose First Amendment Protection Because It Appears in a Paid Advertisement ................................................................................................... 4

    D.  The Court Overlooked Controlling Authority Holding That the Application of the *Polaroid* Factors is Not Mechanical, But Focused on Likelihood of Confusion ................................................................................... 5

    E.  The Court Overlooked Controlling Authority Holding That the Relevant Market for a *Polaroid* Analysis Is Not the Market for "Attention" ......................... 7

    F.  The Court Overlooked That My Ads Did Not Contain or Link to Defamatory Content, and Were Intended to Protect Workers, Not to Disparage Plaintiffs ........................................................................................... 7

    G.  Conclusion ........................................................................................................ 8

II. THE COURT SHOULD RECONSIDER ITS GRANTING OF PLAINTIFFS' MOTION TO EXCLUDE MY EXPERT, DR. LAMARCUS BOLTON .......................... 8

    A.  The Court Overlooked Its Own Prior Ruling That the Defamatory Statements "Charge Plaintiffs 'With the Commission of a Serious Crime'" ............................................................................................................. 8

    B.  The Court Overlooked the Absence of Any Authority or Evidence Holding That the First Portion of a Survey Is Not Severable from Later Portions ............................................................................................................ 9

| | C. | The Court Overlooked Authority Requiring that Defamation Damages Be "Proximately Linked" to the Defamation and Overlooked the Relevance of Dr. Bolton's Testing Non-Defamatory Statements as an Alternative Cause of Damages................................................................................... 9 |
|---|---|---|
| III. | | THE COURT SHOULD RECONSIDER ITS DENIAL OF MY MOTION TO EXCLUDE PLAINTIFFS' EXPERT, MR. ALLEN ADAMSON................................... 10 |
| | A. | The Court Overlooked Controlling Authority Requiring that Defamation Damages Be "Proximately Linked" to the Defamation, and Overlooked Mr. Adamson's Failure to Make That Link ............................................................ 10 |
| | B. | The Court Overlooked Controlling Authority Requiring Expert Qualification, Factual Basis, and Reliable Methodology ...................................... 10 |
| | C. | The Court Overlooked Authority Holding that New York Bars "Recovery for Injury Due to Republication of Defamatory Statements by Third Parties," and Mr. Adamson's Reliance on Precisely That ........................... 11 |
| | D. | The Court Overlooked Authority Holding That a Plaintiff Concedes Arguments Not Addressed .................................................................................. 11 |
| | E. | Conclusion ......................................................................................................... 11 |

CONCLUSION................................................................................................................................ 12

CERTIFICATE OF COMPLIANCE  PURSUANT TO LOCAL CIVIL RULE 7.1(C).............. 13

# TABLE OF AUTHORITIES

**Cases**

*1-800 Contacts, Inc. v. JAND, Inc.*,
  119 F.4th 234, 249 (2d Cir. 2024) ................................................................................. 2, 4, 5, 8

*1-800 Contacts, Inc. v. JAND, Inc.*,
  608 F. Supp. 3d 148, 157 (S.D.N.Y. 2022) ................................................................................. 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 249-250 (1986) ................................................................................. 4

*Bihari v. Gross*, 119 F. Supp.
  2d 309, 323 (S.D.N.Y. 2000) ................................................................................. 3, 8

*Carroll v. Trump,*
  2024 WL 55949, at 2 (S.D.N.Y. Jan. 4, 2024) ................................................................................. 11

*Champion v. Moda Operandi*, Inc.,
  561 F. Supp. 3d 419, 434 (S.D.N.Y. 2021) ................................................................................. 5

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579, 597 (1993) ................................................................................. 9

*Eisemann v. Greene*,
  204 F.3d 393, 395 n.2 (2d Cir. 2000) ................................................................................. 1

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48, 62 (2d Cir. 2002) ................................................................................. 9, 10, 11

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  75 F. Supp. 2d 235, 241 (S.D.N.Y. 1999) ................................................................................. 10

*Fizz Social Corp. v. Flower Ave, Inc.*,
  No. 23 Civ. 8840 (LAK) (BCM),
  2024 WL 4264842, at *6-7 (S.D.N.Y. Aug. 5, 2024) ................................................................................. 3, 6, 7

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137, 152 (1999) ................................................................................. 12

*Lopez Canas v. Whitaker,*
  2019 WL 2287789, at 5 (W.D.N.Y. May 29, 2019) ................................................................................. 11

*New York Times Co. v. Sullivan*,
  376 U.S. 254, 266 (1964) ................................................................................. 5

*Polaroid Corp. v. Polarad Electronics Corp.*,
   287 F.2d 492 (2d Cir. 1961) ....................................................................................... 1, 5, 7, 8

*Rogers v. Grimaldi*,
   875 F.2d 994, 998-1000 (2d Cir. 1989) ................................................................................ 4, 5

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*,
   391 F.3d 77, 83 (2d Cir. 2004) ................................................................................................. 4

*SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*,
   439 F. Supp. 2d 281, 294 (S.D.N.Y. 2006) ....................................................................... 2, 3, 7

*The Sports Auth., Inc. v. Prime Hospitality Corp.*,
   89 F.3d 955, 964 (2d Cir. 1996) ............................................................................................... 2

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
   403 F. Supp. 3d 361 (S.D.N.Y. 2019) ...................................................................................... 6

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
   571 F.3d 206, 214 (2d Cir. 2009) ........................................................................................... 12

**Statutes**

Fed. R. Evid. 702 ............................................................................................................... 10, 11

**PRELIMINARY STATEMENT**

I, Defendant Wyatt Troia, respectfully submit this memorandum of law in support of my motion for reconsideration of the Court's September 3, 2025 Order (ECF 182; the "Order") insofar as it denied my motion for summary judgment as to Plaintiffs' unfair competition claims; denied my motion to exclude Plaintiffs' expert, Mr. Allen Adamson; and granted Plaintiffs' motion to exclude my expert, Dr. LaMarcus Bolton.

**LEGAL STANDARD**

Reconsideration is warranted when a court overlooks controlling decisions or factual matters that might reasonably have changed the result. *See Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000).

**ARGUMENT**

**I.   THE COURT SHOULD RECONSIDER ITS DENIAL OF MY MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' UNFAIR COMPETITION CLAIMS**

   **A.   The Court Overlooked Controlling Authority Holding That Diversion and Persuasion Are Not Prohibited by the Lanham Act, and Overlooked the Absence of Any Evidence of Actual Confusion or Intent to Confuse**

The Court found that the "actual confusion" *Polaroid* factor favored Plaintiffs, citing evidence that internet users clicked on my Google ads and Plaintiffs' unsubstantiated allegation of hiring difficulties unrelated to confusion as to the ads' source. *See* Order at 41-42. The Court reasoned, "Taken together, such evidence indicates, at the very least, that Troia's advertisements attracted attention, causing internet users who had searched for LoanStreet and related terms to click on his posts and read their defamatory content." *Id.* at 42.

That holding overlooked controlling authority making clear that the Lanham Act prohibits using another's mark **to confuse consumers as to the source of goods or services, not**

1

**merely to attract attention or persuade**. *See 1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 249 (2d Cir. 2024) ("A defendant **must do more than use another's mark** in commerce to violate the Lanham Act. The statute requires a showing that the defendant's use **caused consumer confusion**.") (cleaned up; emphases added). *See also SMJ Grp., Inc. v. 417 Lafayette Rest. LLC,* 439 F. Supp. 2d 281, 294 (S.D.N.Y. 2006) (persuasively holding that "it is not [source] confusion that drives the customer away from plaintiffs' restaurant … [but] defendants' criticism"). The Court cited only evidence that my ads may have interested and persuaded people, not that they confused anyone as to LoanStreet's affiliation with them.

The Court cited *1-800 Contacts*, 119 F.4th at 253, which permits findings of actual confusion without surveys only if there is "other evidence of actual confusion" (citing *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996)). *See* Order at 41. But *Sports Auth*. involved "extensive" instances of customers mistakenly calling one business while seeking the other—paradigmatic evidence of source confusion. *Sports Auth*., 89 F.3d at 963-964. By contrast, Plaintiffs have presented **no** evidence that **anyone** was **actually confused** about whether LoanStreet was affiliated with my ads. Because there is neither survey evidence nor any "other evidence of actual confusion," *1-800 Contacts* forecloses a finding of actual confusion on this record.

Likewise, the Court overlooked the absence of evidence that I intended to confuse Google users as to the source of my ads. Since Plaintiffs invoke initial-interest confusion, they must prove intentional deception. *See 1-800 Contacts*, 119 F.4th at 247. Yet the Court cited only my intent to "attract" and "educate" searchers—conduct outside the Lanham Act's reach. *See* Order at 37, 44.

By conflating both diversion and persuasion with source confusion, the Court overlooked that "the First Amendment protects an individual's right to speak out against a markholder." *SMJ Grp.*, 439 F. Supp. 2d at 291. *See also Bihari v. Gross*, 119 F. Supp. 2d 309, 323 (S.D.N.Y. 2000) ("Courts must be particularly cautious of overextending the reach of the Lanham Act and intruding on First Amendment values").

**B.    The Court Overlooked Evidence and Controlling Authority Demonstrating the Absence of Confusion**

The Court stated that I "wholly failed to present any admissible evidence demonstrating a lack of actual confusion." Order at 42. This overlooked record evidence and controlling authority demonstrating precisely that.

Every ad was **openly critical** of Plaintiffs, using phrases like "LoanStreet horror story" and "Work elsewhere." *See* ECF 125 at 3. The Court overlooked persuasive decisions holding that a message's critical nature prevents any confusion as to its source. *See SMJ Grp.*, 439 F. Supp. 2d at 288 ("the individual will immediately realize, based on the critical nature of the message, that the leaflet is not in fact associated with plaintiffs"); *Fizz Social Corp. v. Flower Ave, Inc.*, No. 23 Civ. 8840 (LAK) (BCM), 2024 WL 4264842, at *6-7 (S.D.N.Y. Aug. 5, 2024) ("No reasonable college student could perceive the Promotion as somehow suggesting [affiliation with plaintiff]" because it "explicitly and directly disparages [plaintiff]"); *Bihari*, 119 F. Supp. 2d at 320. The record thus precludes the inference that users believed Plaintiffs sponsored ads criticizing themselves.

The Court overlooked that my ads bore no resemblance to Plaintiffs' organic search result—key evidence against confusion. *See* ECF 125 at 9-10. Third-party organic search results likewise contained Plaintiffs' mark but resembled Plaintiff's own listing, confirming that users could readily distinguish between genuine from unaffiliated results. *See id.* at 10-11. The Court

3

deemed these third-party results irrelevant to its analysis because "none of them were paid advertisements employing the LoanStreet mark." Order at 40 n.23. That conclusion cannot be squared with *1-800 Contacts*, 119 F.4th at 251, which holds that "the **surrounding context** on the screen displaying the results page is a **critical factor** in assessing likelihood of confusion" and that "the proper comparison is between the resulting ads for [the parties'] advertisements or **other search results**." (emphases added).

The Court held that because of my supposed failure to present "evidence demonstrating a lack of actual confusion," and because it was "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," it could not hold "that no reasonable juror could find in LoanStreet's favor with respect to the existence of actual confusion." Order at 42. This overlooked that "[i]f the evidence [favoring the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986) (case cited by *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Id* at 252. The Court therefore overlooked that summary judgment turns not on the defendant's evidence (although I have presented substantial proof of non-confusion), but on the absence of sufficient evidence for the plaintiff to prevail. Here, with **no** evidence of confusion, no reasonable juror could find either actual or likelihood of confusion.

### C. The Court Overlooked Controlling Authority Holding That Speech Does Not Lose First Amendment Protection Because It Appears in a Paid Advertisement

The Court held the *Rogers* test did not apply to my use of LoanStreet's mark because it appeared in a "paid advertisement[]" rather than in a book, magazine, film, or video game. *See*

4

Order at 50-51. This overlooked binding precedent holding that statements "do not forfeit [First Amendment] protection because they were published in the form of a paid advertisement." *New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) (warning that any other rule would "shackle the First Amendment in its attempt to secure 'the widest possible dissemination of information from diverse and antagonistic sources'"). See ECF 147 at 10.

The Court also overlooked that "[t]he Second Circuit has expanded the *Rogers* test to apply **whenever** the 'unauthorized use of another's mark is part of a communicative message and not a source identifier,'" a functional definition focused on **purpose**, not medium. *Champion v. Moda Operandi*, Inc., 561 F. Supp. 3d 419, 434 (S.D.N.Y. 2021) (emphasis added). *Rogers* "applies specifically to commentary … or criticism – i.e., content that cannot be deemed purely commercial." *Id* (cleaned up). Because it governs expressive works **sold for profit**, *Rogers* necessarily covers noncommercial speech such as my ads criticizing a company rather than proposing a transaction. *See* Order at 50; ECF 125 at 24. The Court therefore erred in withholding *Rogers* protection because the speech appeared in a paid format.

  **D.**  **The Court Overlooked Controlling Authority Holding That the Application of the *Polaroid* Factors is Not Mechanical, But Focused on Likelihood of Confusion**

The Court's finding that "LoanStreet prevails with respect to five of the seven *Polaroid* factors" (Order at 51) overlooked controlling authority holding that "[t]he application of the *Polaroid* test is not mechanical"; "each factor must be evaluated in the context of how it bears on the *ultimate question* of likelihood of confusion as to the source of the product." *1-800 Contacts*, 119 F.4th at 248 (citation omitted; emphasis in original). All of my ads were openly critical of Plaintiffs, and precedent holds that such criticism prevents confusion about association. *See* Section I.B, *supra.*

5

In denying summary judgment based on nominative fair use, the Court's distinction from *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361 (S.D.N.Y. 2019)—based on whether my ads identified me by name or used LoanStreet's marks more than once—applied a mechanical checklist rather than contextual analysis and ignored the implausibility that consumers would believe LoanStreet sponsored ads criticizing itself. *See* Order at 49 n.28. Likewise, the Court's conclusion that my ads did not "clearly designate[] their source" (*id.*) overlooked that they **did** designate their source as **a critic of LoanStreet rather than LoanStreet itself**—by criticizing LoanStreet and displaying a URL of "https://www.reddit.com/csjobquestions/loanstreetshame", nothing like LoanStreet's own URL of "https://www.loan-street.com". *See* ECF 125 at 10.

The Court also distinguished *Fizz Social Corp.*, 2024 WL 4264842 on the ground that *Fizz* involved a "single-image promotional campaign" post published to defendant's Instagram followers, "not a paid advertisement … intended to divert internet users … searching for LoanStreet." Order at 43-44. This overlooked that *Fizz*—which expressly deemed the campaign an "advertisement"—turned not on medium or audience, but on the implausibility that a disparaging promotion could originate from its target.[1]

Finally, in relying on Plaintiffs' expert's assertion that "anyone doing a search for LoanStreet's website would expect that website to appear as the first search result and would be confused by [d]efendant's ad appearing at the top of the page with the same branded, trademarked name as the company website" (Order at 35-36), the Court overlooked that the

---

[1] The Court also overlooked that *Fizz* held that, despite defendant's exact reproduction of plaintiff's logo, the "similarity of marks" factor weighed **against** plaintiff because the logo was dissimilar to **defendant's** logo. *Fizz Social Corp.*, 2024 WL 4264842, at *6.

6

expert provided no foundation for this claim and has no expertise in consumer search psychology.

      E.    **The Court Overlooked Controlling Authority Holding That the Relevant Market for a *Polaroid* Analysis Is Not the Market for "Attention"**

By defining the market for the *Polaroid* "competitive proximity" factor as that for "attention of internet users," the Court overlooked how this District analyzes that factor—examining the concrete markets for the parties' goods or services, not a nebulous market for attention. *See* Order at 38; *1-800 Contacts, Inc. v. JAND, Inc.*, 608 F. Supp. 3d 148, 157 (S.D.N.Y. 2022) (holding that parties in a search-advertising suit competed in the online market for "contact lenses"); *Fizz Social Corp.*, 2024 WL 4264842, at *6 (holding that parties competed in the "social media platform market"). Here, my ads' market was criticism of Plaintiffs, while Plaintiffs' was financial services.

The Lanham Act does not protect markholders from "competition in the marketplace of ideas," *SMJ Grp.*, 439 F. Supp. 2d at 295, a realm inseparable from the "market" for attention. By expanding the *Polaroid* factor to encompass all speech vying for public notice, the Order effectively rendered the "competitive proximity" factor meaningless, as every speaker competes for attention to some degree.

      F.    **The Court Overlooked That My Ads Did Not Contain or Link to Defamatory Content, and Were Intended to Protect Workers, Not to Disparage Plaintiffs**

The Order stated that my ads linked to "posts" containing "defamatory content." Order at 42. But the ads only linked to one Reddit post that has never been adjudicated defamatory (*see* ECF 120 ¶ 22; ECF 138 at 4-5; ECF 170 at 3-9), and the linked content is irrelevant to initial-interest confusion—as the Court itself recognized (*see* Order at 40 n.23).

7

The Court also characterized my ads as "designed solely to disparage [LoanStreet]," apparently relying on my private text message stating, "I'm hoping I've made it so they can never hire another decent engineer again."[2] *Id.* at 51, 37, 44. That inference misapprehends both the relevant standard and the record. Persuasion is not source confusion, and I testified that my ads' purpose was to protect workers by warning them about LoanStreet's labor practices. *See* ECF 147 at 8-9 (quoting my testimony that "I wanted to protect potential employees" by warning them about LoanStreet's predatory behavior).

### G. Conclusion

"[D]istrict courts can and do properly dismiss [trademark infringement] claims when the allegation of consumer confusion is implausible." *1-800 Contacts*, 119 F.4th at 255. Under the controlling authority and record that was before the Court, it is implausible that any reasonable Google user would believe LoanStreet sponsored ads criticizing itself. The Court should therefore have dismissed Plaintiffs' unfair competition claims.

### II. THE COURT SHOULD RECONSIDER ITS GRANTING OF PLAINTIFFS' MOTION TO EXCLUDE MY EXPERT, DR. LAMARCUS BOLTON

#### A. The Court Overlooked Its Own Prior Ruling That the Defamatory Statements "Charge Plaintiffs 'With the Commission of a Serious Crime'"

In excluding Dr. Bolton's surveys, the Court identified as the "primary issue" their use of the phrase "broke the law" to gauge readers' perception of the defamatory meaning. *See* Order at 23. The Court found this wording "carries an indisputably criminal connotation, and its use is entirely inappropriate in a survey carried out to assist in the determination of damages owed in a

---

[2] The Court also relied on this irrelevant statement to hold the "bad faith" *Polaroid* factor favored Plaintiffs, overlooking persuasive authority rejecting that reasoning. *See Bihari*, 119 F. Supp. 2d at 320 ("Even if [defendant's websites] are mean-spirited and vindictive, bad faith cannot be imputed as well to [his] use of [plaintiff's] mark").

8

civil litigation." *Id*. But that finding overlooks **the Court's own prior ruling that the defamatory statements "charge plaintiffs 'with the commission of a serious crime.'"** ECF 39 at 22-23. *See also* ECF 74 at 37 ("we find no reason to reconsider our prior conclusion"). Having imposed liability on the basis of a criminal accusation, excluding survey evidence that used phrasing consistent with that interpretation deprived me of evidence relevant to rebutting Plaintiffs' damages theory.

### B. The Court Overlooked the Absence of Any Authority or Evidence Holding That the First Portion of a Survey Is Not Severable from Later Portions

The Court also held *Daubert* bars admission of the survey portions preceding the appearance of the phrase "broke the law", which showed that most readers did **not** interpret the posts as accusing LoanStreet of breaching a contract, reasoning that these were "limited and incomplete survey responses." Order at 26 n.20. But *Daubert* nowhere suggests that shorter or partial surveys are inherently unreliable. Because respondents could not revisit prior questions, the earlier survey portions stood independently and were methodologically sound. *See* ECF 163 at 19.

### C. The Court Overlooked Authority Requiring that Defamation Damages Be "Proximately Linked" to the Defamation and Overlooked the Relevance of Dr. Bolton's Testing Non-Defamatory Statements as an Alternative Cause of Damages

The Court also deemed Dr. Bolton's Reddit survey "unusable" because the tested post "did not include all the defamatory statements contained in the original post." Order at 25. That rationale overlooked that no Reddit post has ever been found defamatory and that defamation damages must be "proximately linked to the libel, not to other non-actionable acts by defendant." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 62 (2d Cir. 2002). *See* ECF 163 at 13-15. This survey was probative precisely **because** it measured the reputational

9

impact of my protected, non-defamatory speech—evidence that provides an alternative explanation for any alleged reputational harm.

### III. THE COURT SHOULD RECONSIDER ITS DENIAL OF MY MOTION TO EXCLUDE PLAINTIFFS' EXPERT, MR. ALLEN ADAMSON

#### A. The Court Overlooked Controlling Authority Requiring that Defamation Damages Be "Proximately Linked" to the Defamation, and Overlooked Mr. Adamson's Failure to Make That Link

The Court dismissed Mr. Adamson's failure to isolate harm caused by the defamation, reasoning that "broad general damages are permitted in cases involving defamation." Order at 15. **But even general damages must be "proximately linked to the libel."** *Fashion Boutique*, 314 F.3d at 62. Furthermore, "[t]he right to general damages for slander per se does not imply ... a right to substantial compensatory damages." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d 235, 241 (S.D.N.Y. 1999).

#### B. The Court Overlooked Controlling Authority Requiring Expert Qualification, Factual Basis, and Reliable Methodology

The Court overlooked that Rule 702 requires that expert testimony come from a qualified witness, rest on sufficient facts, and employ reliable methods. Mr. Adamson meets none of these criteria. He lacks expertise in causation analysis and in estimating reputation-repair costs. *See* ECF 157 at 25. He admitted his opinion rests on speculation and unvalidated inputs from Plaintiffs. *See id.* at 18-22. He did not know what the defamatory statements were, their publication period, or how many people saw them. *See id.* at 18; ECF 170 at 9-10. He ignored data contradicting his opinions.[3] *See* ECF 157 at 20. He identified **no** principle or method for his

---

[3] To distinguish the instant case from *Fashion Boutique,* the Court said, "Defendant has not provided any evidence showing that LoanStreet was experiencing financial or other operational difficulties before his defamatory posts." Order at 15 n.13. This overlooked my citation to Plaintiffs' own document, LS-180, showing a sharp drop in LoanStreet's website traffic began two months **before** my posts began. *See* ECF 157 at 13.

10

multi-million-dollar estimate, unlike rigorous reputation-repair cost estimates previously admitted in this District. *See* ECF 157 at 22-24; *Carroll v. Trump,* 2024 WL 55949, at 2 (S.D.N.Y. Jan. 4, 2024).

### C. The Court Overlooked Authority Holding that New York Bars "Recovery for Injury Due to Republication of Defamatory Statements by Third Parties," and Mr. Adamson's Reliance on Precisely That

The Court overlooked that New York law prohibits "recovery for injury due to republication of defamatory statements by third parties." *Fashion Boutique*, 314 F.3d at 61. Mr. Adamson's damages quantification defies that rule, being based on **speculative republication by third parties**. He testified that "it doesn't matter if [only] one person saw" the defamation, because that person might tell others about it at a "cocktail party." *See* ECF 157 at 16-17. Mr. Adamson relied on that conjecture—untethered to data or principle—to justify a speculative $6-8 million reputation-repair campaign, violating both New York law and Rule 702.

### D. The Court Overlooked Authority Holding That a Plaintiff Concedes Arguments Not Addressed

The Court overlooked that "[i]t is well settled in this Circuit that '[a] plaintiff effectively concedes a defendant's arguments by his failure to respond to them,'" and that Plaintiffs failed to respond to multiple arguments for exclusion raised in my briefing. *See Lopez Canas v. Whitaker,* 2019 WL 2287789, at 5 (W.D.N.Y. May 29, 2019); ECF 170 at 1-3. Their silence amounts to concession, warranting exclusion of Mr. Adamson's testimony.

### E. Conclusion

The Court overlooked that Mr. Adamson's opinions are precisely the kind of "speculative or conjectural" testimony, lacking any of the "intellectual rigor that characterizes the practice of an expert in the relevant field," that Rule 702 bars. *Zerega Ave. Realty Corp. v. Hornbeck*

*Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). *See also* ECF 157 at 13-14.

## **CONCLUSION**

For the foregoing reasons, and because the Order overlooked controlling law and factual matters that should have required a different result, Defendant respectfully requests that the Court grant reconsideration under Local Civil Rule 6.3.

Dated: October 17, 2025
       New York, New York

                                        Respectfully submitted,

                                        */s/ Wyatt Troia*
                                        Wyatt Troia
                                        300 Albany Street, 8G
                                        New York, NY 10280
                                        Tel: (402) 990-3834

                                        *Defendant*

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO LOCAL CIVIL RULE 7.1(C)**

I, Wyatt Troia, pursuant to Local Civil Rule 7.1(c), certify that this memorandum of law was prepared using Microsoft Word and complies with the word-count limitation set forth in Local Civil Rule 6.3.

According to the word-count feature of Microsoft Word, this document contains 3,500 words. This count does not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but does include material contained in footnotes or endnotes.

Dated: October 17, 2025
       New York, New York

                      Respectfully submitted,

                      */s/ Wyatt Troia*
                      Wyatt Troia
                      300 Albany Street, 8G
                      New York, NY 10280
                      Tel: (402) 990-3834

                      *Defendant*