UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LOANSTREET, INC., and IAN LAMPL,
Individually,

              Plaintiffs,

       - against -

WYATT TROIA, Individually,

             Defendant.

------------------------------------X

**MEMORANDUM AND ORDER**

21 Civ. 6166 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The Court presumes the parties' familiarity with the relevant facts, procedural history, and legal issues in this longstanding dispute between plaintiffs LoanStreet, Inc. ("LoanStreet") and LoanStreet CEO Ian Lampl (together with LoanStreet, "plaintiffs") and a former employee, defendant Wyatt Troia ("Troia"). Accordingly, the Court need only recite the facts relevant to Troia's pending motion for reconsideration, ECF No. 190.

Plaintiffs brought suit against Troia on July 21, 2021, asserting seven causes of action: breach of contract; defamation per se; defamation; injurious falsehood; unfair competition and false designation of origin under Section 43(a) of the Lanham Act; common law unfair competition; and permanent injunctive relief.

ECF No. 3 ("Compl.") ¶¶ 64-133.[1]  Troia's motion to dismiss was granted in part and denied in part by this Court.  See LoanStreet, Inc. v. Troia, No. 21 Civ. 6166 (NRB), 2022 WL 3544170 (S.D.N.Y. Aug. 17, 2022) ("Aug. 2022 Order").[2]  On October 6, 2022, Troia filed an Answer to plaintiffs' Complaint and asserted three counterclaims, alleging violations of New York's anti-SLAPP statute, a violation of the implied covenant of good faith and fair dealing, and fraud.  ECF No. 51 ¶¶ 69-96.  Plaintiffs filed a motion to dismiss Troia's counterclaims and a motion for judgment on the pleadings with respect to their remaining defamation claims, which the Court granted in full.  ECF Nos. 66, 68, 70; see also LoanStreet, Inc. v. Troia, No. 21 Civ. 6166 (NRB), 2023 WL 5836237 (S.D.N.Y. Sept. 8, 2023).

On September 27, 2024, plaintiffs requested a conference regarding a proposed motion to preclude the testimony of defendant's two proposed expert witnesses, Dr. Lamarcus Bolton and Mr. Deepak Sabiki, ECF No. 103.  In parallel, Troia requested

---

[1]   Plaintiffs identified fifteen allegedly defamatory statements in their complaint, seven of which plaintiffs argued constituted defamation per se.  See Compl. ¶¶ 76(a)-(g) (defamation per se), 93(a)-(h) (defamation).

[2]   The Court granted Troia's motion to dismiss plaintiffs' injurious falsehood claim, as well as plaintiffs' defamation claims with respect to the statements in paragraphs 93(c) through (h).  Aug. 2022 Order at *8-9.  The Court denied Troia's motion to dismiss plaintiffs' defamation claims with respect to the statements in paragraphs 76(a) through (g) and 93(a) through (b), as well as their unfair competition claims.  Id. at *8, *12.

conferences regarding a proposed motion for summary judgment with respect to plaintiffs' unfair competition claims, ECF No. 102, and a proposed motion to preclude the testimony of plaintiffs' proposed expert witness, Mr. Allen Adamson, ECF No. 101. Each party filed letters opposing the other party's proposed motion. ECF Nos. 104-06. The parties then filed supplemental letters regarding the proposed Daubert motions on December 19, 2024 and January 9, 2025. ECF Nos. 114-15, 122-23. After rejecting the Court's proposal to decide the Daubert motions on those letters, Troia requested formal briefing. ECF Nos. 130, 131. Troia filed his Daubert motion on March 7, 2025, ECF Nos. 155-58, and plaintiffs relied on their prior submissions as their moving papers, ECF No. 159, their opposition, ECF No. 161, and reply, ECF No. 167. Troia also filed an opposition to plaintiffs' motion to exclude the testimony of Dr. Bolton and Mr. Sabiki, ECF No. 162-64, and a reply brief in support of his motion to exclude Mr. Adamson, ECF Nos. 169-70.

Separately, on January 9, 2025, Troia filed a motion for summary judgment with respect to plaintiffs' remaining claims for unfair competition and false designation of origin under Section 43(a) of the Lanham Act and common law unfair competition. ECF Nos. 124-27. Troia also filed a Rule 56.1 Statement. ECF No. 120. Plaintiffs filed an opposition to Troia's motion on January

31, 2025, ECF Nos. 138-41, as well as a Response to Troia's Rule 56.1 Statement and a Counterstatement of Material Facts. ECF No. 140. Troia's motion for summary judgment was fully briefed on February 11, 2025. ECF Nos. 147-49.[3]

After carefully reviewing the parties' numerous motions and memoranda, the Court issued a fifty-three-page Memorandum and Order (the "Decision") on September 3, 2025, ECF No. 182, denying Troia's motion for summary judgment on the remaining claims for unfair competition. With respect to the Daubert motions, the Decision: (i) denied Troia's motion to exclude Mr. Allen Adamson; (ii) denied plaintiffs' motion to exclude Mr. Sabiki; and (iii) granted plaintiffs' motion to exclude Dr. Bolton. Decision at 53. Five days later, Troia requested a pre-motion conference for a proposed motion for reconsideration. ECF No. 184. On October 3, 2025, the Court requested that Troia elect to either (i) submit a formal notice of motion for reconsideration with an accompanying memorandum in accordance with Local Civil Rule 6.3, or (ii) request that the Court treat his September 8 letter as a motion for

---

[3] On January 28, 2025, Troia's counsel, David D. Lin, filed a motion to withdraw, citing Troia's voluntary dismissal of his counsel, and requested that this Court permit Troia to proceed pro se with limited-scope representation by Lin. ECF Nos. 132-35. This Court denied Troia's request for limited-scope representation on February 4, 2025, ECF No. 142, and granted Lin's motion to withdraw on March 4, 2025. ECF No. 154. As a separate Order filed today reflects, the Court has concerns about whether its February 4, 2025 letter Order has been violated.

reconsideration.  ECF No. 188.  Troia confirmed his desire to submit formal briefing on the proposed motion for reconsideration and did so on October 17, 2025. ECF Nos. 189, 190, 191. Plaintiffs opposed the motion on October 31, ECF Nos. 192, 193, and Troia filed a reply on November 7, ECF No. 194.

Troia submits that the Court "overlooked controlling authority" with respect to its unfair competition analysis, including: (i) the application of <u>Polaroid</u> factors, generally; (ii) the application of the "actual confusion" <u>Polaroid</u> factor, specifically; and (iii) the applicability of the <u>Rogers</u> test to Troia's use of the LoanStreet mark.  ECF No. 191 at 1-8.  Troia also asserts that the Court "overlooked authority" in its <u>Daubert</u> analysis, claiming that the Court erred in excluding Dr. Bolton's survey evidence while declining to exclude Mr. Adamson's opinions. <u>Id.</u> at 8-12.  Upon review, we find no such oversight.  Accordingly, Troia's motion is denied.

<u>**LEGAL STANDARD**</u>

Reconsideration of a prior decision is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." <u>Jones v. Donnelly</u>, 487 F. Supp. 2d 418, 419 (S.D.N.Y. 2007) (citation and quotation marks omitted).  A motion for reconsideration "is not a vehicle

for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (citation omitted).  Put differently, a motion for reconsideration is not an occasion for "repeating old arguments previously rejected." Salveson v. JP Morgan Chase & Co., 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) (citation and quotation marks omitted).  The resulting standard is strict: motions for reconsideration are limited to, and "will generally be denied" unless the moving party can identify, "controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Troia's motion fails to meet that stringent standard and must be denied precisely because it identifies no such "controlling decisions or data." Shrader, 70 F.3d at 257.

## DISCUSSION

Troia argues that the Decision "overlooked authority" with respect to its unfair competition analysis and its Daubert motion analysis.  We address these categories of contentions in turn.

I.   **The Decision Did Not Overlook Controlling Decisions or Data Regarding Unfair Competition**

Troia first contends that the Court erred in its application of the "actual confusion" Polaroid factor by improperly conflating diversion and persuasion with source confusion.  ECF 191 at 1-4.  Specifically, Troia argues that because plaintiffs have not presented evidence that internet users were actually confused as to whether his posts were affiliated with LoanStreet, a finding of actual confusion is precluded.  Id.  Troia asserts that the evidence proffered by plaintiffs is suggestive only of diversion or persuasion, neither of which are prohibited under the Lanham Act.  Id. at 1-2.  Further, Troia claims that the Court erred in holding that he "wholly failed to present any admissible evidence demonstrating an actual lack of confusion."  Id. at 3-4; Decision at 42.  Troia argues that the Court overlooked key aspects of his paid advertisements, including that they included language critical of LoanStreet and did not resemble plaintiffs' organic search result.  Id. at 3-4.

As Troia is aware, the "actual confusion" Polaroid factor was the subject of extensive briefing by the parties.  Indeed, actual confusion was first addressed by the August 2022 Order, in which the Court determined that the factor presented "a closer call" within the broader Polaroid analysis.  Aug. 2022 Order at *11-*12.

-7-

More than three years later, having considered the parties'
submissions and evidence revealed in discovery, the Decision's
conclusion regarding actual confusion was careful and deliberate:
acknowledging that plaintiffs' evidence that users searching for
LoanStreet-related search terms clicked on Troia's advertisements
was "not decisive," the Court noted that there was no contrary
evidence demonstrating a lack of confusion.  Decision at 39-42.
Troia does not, because he cannot, identify any "controlling
decisions or data" that the Court "overlooked."  Shrader, 70 F.3d
at 257.  To the contrary, Troia cites only to cases and evidence
previously considered by the Court.  Compare ECF No. 191 at 2-3
(citing 1-800 Contacts, Inc. v. JAND, Inc., 119 F. 4th 234 (2d
Cir. 2024), SMJ Grp., Inc. v. 417 Lafayette Rest. LLC, 439 F. Supp.
2d 281 (S.D.N.Y. 2006), The Sports Auth., Inc. v. Prime Hospitality
Corp., 89 F.3d 955, 963 (2d Cir. 1996)), with Decision at 41, 51
(same).  What Troia attempts to ascribe to oversight amounts to
nothing more than disagreement with the Court's conclusion.

Next, Troia devotes a section of his brief to argue that the
Court "overlooked controlling authority holding that the
application of the Polaroid factors is not mechanical."  ECF No.
191 at 5-7.  This argument is unjustifiable, given the Decision's
explicit acknowledgment that the "application of the Polaroid

factors is not mechanical." Decision at 30-31 (citations and internal quotation marks omitted). A cursory reading of the Decision confirms this point: the Court explained that "neither party has cited to a case that is precisely on point," and that "it remains unclear what the result would have been had LoanStreet cross-moved for summary judgment." Decision at 51-52. Troia nevertheless contends that the Court misapplied certain case law, namely, Weight Watchers Int'l, Inc. v. Noom, Inc., 403 F. Supp. 3d 261 (S.D.N.Y. 2019) and Fizz Social Corp. v. Flower Ave, Inc., No. 23 Civ. 8840 (LAK) (BCM), 2024 WL 4264842 (S.D.N.Y. Aug. 5, 2024). ECF No. 191 at 5-7. Troia again invokes purported oversights. Once again, there are no oversights. Rather, Troia simply disagrees with the Court's analysis. Rebranding such arguments as matters the Court "overlooked" does not convert them into cognizable grounds for reconsideration.

In a similar vein, Troia argues that the Court "erred in withholding Rogers protection" from his use of LoanStreet's mark because it appeared in a paid advertisement. ECF No. 191 at 4-5. Again, Troia fails to identify a single "controlling" decision or datapoint that the Court "overlooked." Shrader, 70 F.3d at 257. Indeed, Troia relies exclusively on materials already submitted to the Court, including his own summary judgment papers and the case

law contained therein.  ECF No. 191 at 5 (citing ECF Nos. 125, 147).  Those materials were considered by the Court, cited to in its fifty-three-page Decision (containing a section dedicated to the expressive use arguments that Troia now recycles), and served as the basis for its conclusion that the Rogers test did not apply where a "genuine issue of material fact" existed as to whether Troia "intentionally used the LoanStreet mark to confuse and re-direct internet users searching for LoanStreet's website[.]" Decision at 50-51.

Troia also contends that the Court "overlooked how this District analyzes" the "competitive proximity" Polaroid factor, improperly defining the market as the "attention of internet users." ECF No. 191 at 7.  Troia submits that the Court's analysis was overly broad, stating instead that he operated in the market of "criticism of plaintiffs," while plaintiffs were in the market of "financial services." Id.  This argument is identical to the one presented in Troia's summary judgment papers, ECF No. 125 at 7-8, 12, which has already been addressed and rejected by the Court.  Decision at 36-38.  The Court declines to revisit these recycled contentions.

Finally, Troia disputes the Decision's characterization of his ads as linking to "posts" containing "defamatory content."

ECF No. 191 at 7-8. Troia relatedly quarrels with the Decision's characterization of his ads as "designed solely to disparage" LoanStreet. ECF No. 191 at 8. Again, such contentions (which do not cite to any authority) represent mere disagreements with the Court's analysis. The failure to identify _any_ decision or datapoint that the Court overlooked, much less any that are "controlling," confirms Troia's inability to do so. Empty accusations that the Court "misapprehend[ed]" the record before it are not an appropriate basis for reconsideration.

## II. The Decision Did Not Overlook Controlling Decisions or Data Regarding the Parties' _Daubert_ Motions

Troia advances three arguments in support of his request that the Court reconsider its decision to exclude Dr. Bolton: (i) the Court improperly excluded Dr. Bolton's survey based on its use of the phrase "broke the law"; (ii) the Court improperly excluded the portion of Dr. Bolton's survey evidence preceding the phrase "broke the law"; and (iii) the Court improperly excluded Dr. Bolton's survey on grounds that it did not include all defamatory statements contained in the original post. ECF No. 191 at 8-10. All of these arguments were explicitly addressed in the Decision, and none identify "controlling" decisions or data that the Court overlooked. Dr. Bolton's survey's use of the phrase "broke the law" was briefed by the parties and cited by the Court as one of

several methodological flaws weighing in favor of exclusion.
Decision at 23-26.  Further, the Decision dedicated a footnote to
Troia's familiar argument that the portions of Dr. Bolton's survey
preceding the phrase "broke the law" should be admitted.  Decision
at 26 n.20 (concluding that Troia's request to admit "limited and
incomplete survey responses" was "puzzling" and "contrary to the
Court's gatekeeping obligation under Daubert").  Troia's argument
that the Court improperly excluded Dr. Bolton's Reddit survey
similarly fails.  Troia's contention that "no Reddit post has ever
been found defamatory" is blatantly contrary to the record.[4]
Furthermore, consistent with his pattern, Troia identifies only a
single case expressly distinguished by the Decision as involving
"significantly different facts from those at issue in this action."
See Decision at 15-16 n.13.

Troia similarly urges the Court to reconsider its denial of
his motion to exclude plaintiffs' expert, arguing that (i) Mr.
Adamson does not isolate the harm caused by Troia's defamation,

---

[4]    Troia's attempt to relitigate his oft-rejected contention that he did not
defame plaintiffs on Reddit is an inappropriate and insufficient predicate for
a motion for reconsideration.  It is also puzzling, given that the title of
Troia's Reddit post contained a defamatory statement.  Compare ECF 120 ¶ 10
(stating that Troia's Reddit post was titled "Name and Shame: LoanStreet (NY)
cheated me out of equity."), with Aug. 2022 Order at *7 ("All of these
statements, which either expressly or impliedly state that plaintiffs
'defrauded' and 'cheated' defendant, constitute defamation per se."), and
LoanStreet, Inc., 2023 WL 5836237, at *13 ("[W]e have already held that all of
defendants' statements are defamatory per se[.]")

(ii) Mr. Adamson is not a qualified witness and his opinions do not rest on sufficient facts or employ reliable methods, and (iii) Mr. Adamson's damages quantification is based on speculative republication by third parties. Again, Troia cites only to <u>Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.</u>, 75 F. Supp. 2d, 235, 241 (S.D.N.Y. 1999), which was distinguished by the Decision as "significantly different[.]"  Decision at 15 n.13.  The remainder of Troia's contentions cite exclusively to submissions already considered by the Court. <u>See</u> ECF No. 191 at 10-11 (citing ECF Nos. 157, 170).  As stated in the Decision, those same arguments advanced by Troia "go primarily to the weight of his testimony, rather than its admissibility, and are best addressed on cross examination."  Decision at 15-16.  While Troia may disagree with the Court's <u>Daubert</u> analysis, such dissatisfaction does not warrant reconsideration.

<u>**CONCLUSION**</u>

In sum, Troia's repeated use of the word "overlooked" is disingenuous.  Troia fails to identify any "controlling" decision or datapoint that the Court "overlooked" in its Decision.  Perhaps acknowledging this fact, Troia argues on reply that "overlooking" authority or facts "includes misconstruing their meaning, not merely failing to cite or consider them."  ECF No. 194 at 2.  This

is not, and has never been, the standard for reconsideration.  The

Court declines to reconsider recycled arguments, and Troia's

motion is denied.  The Clerk of the Court is respectfully directed

to terminate the motion pending at ECF No. 190.


Dated:   December 19, 2025
         New York, New York


                                 _____
                                    NAOMI REICE BUCHWALD
                                 UNITED STATES DISTRICT JUDGE