UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOANSTREET, INC. and IAN LAMPL,

Plaintiffs,

-against-

WYATT TROIA,

Defendant.

Civil Action No. 1:21-cv-06166-NRB

**DEFENDANT'S OFFER OF PROOF ON DAMAGES-CAUSATION EVIDENCE PURSUANT TO SECTION V.3 OF THE NOVEMBER 12, 2026 ORDER**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ... 1

I. Causes Other Than the Nine Statements Affected LoanStreet's Reputation ... 1

A. What Readers and Reviewers Wrote, and How Other Readers Reacted (Schedule 1) ... 3

B. Plaintiffs' Own Candidate Communications (Schedule 2) ... 6

C. This Is the Same Kind of Evidence on Which Plaintiffs Rely ... 9

D. Two Statements at Page 40 of the Order ... 10

E. The Documents Defendant Asks the Court to Admit ... 11

II. What Readers Wrote About the Lawsuit, the Subpoena to Reddit, and Claims No Longer in the Case ... 13

A. The Statements and the Limited Purpose for Which They Are Offered ... 13

B. Plaintiffs' Own Candidate Messages About the Lawsuit ... 14

C. Claims No Longer in the Case, and Claims Still Pending ... 15

D. *Wachs v. Winter* ... 16

III. Proffer Under Rule 103(a)(2) ... 18

A. The Items of Evidence ... 18

B. The Schrider Communications ... 25

C. The 2020 Reviews ... 26

CONCLUSION ... 28

CERTIFICATION ... 29

SCHEDULE 1: Statements by Readers and Reviewers on Subjects Other Than the Nine Adjudicated Defamatory Statements ... 30

A. The head of HR is the CEO's wife ... 30

B. Firing practices and turnover ... 31

C. Layoffs ... 32

D. Diversity ... 32

E. Management, transparency, pay and engineering ... 32

F. Removal of reviews and the authenticity of positive reviews ... 34

G. The non-disparagement agreement and the condition on severance ... 35

H. The change in the vesting date ... 36

I. The subpoena to Reddit ... 37

J. The lawsuit ... 37

SCHEDULE 2: Candidate Communications Produced by Plaintiffs and Relied On for Damages ........................................................................................................................................43

SCHEDULE 3: Documents, by Item of Evidence........................................................................45

SCHEDULE 4: Excluded Witnesses on Causation and Damages...............................................60

# TABLE OF AUTHORITIES

## Cases

*Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*,
757 F.2d 523 (2d Cir. 1985)....26

*Celebrity Cruises Inc. v. Essef Corp.*,
478 F. Supp. 2d 440 (S.D.N.Y. 2007)....9

*Crane v. New York World Telegram Corp.*,
308 N.Y. 470 (1955)....24, 25, 26

*De Ronde v. Gaytime Shops, Inc.*,
239 F.2d 735 (2d Cir. 1956)....9

*Fantasia Distribution, Inc. v. Myle Vape, Inc.*,
766 F. Supp. 3d 373 (E.D.N.Y. 2024)....9

*Gatz v. Otis Ford, Inc.*,
274 A.D.2d 449 (2d Dep't 2000)....8, 24

*GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*,
769 F. Supp. 2d 630 (S.D.N.Y. 2011)....9

*Herman Schwabe, Inc. v. United Shoe Machinery Corp.*,
297 F.2d 906 (2d Cir. 1962)....9

*Huddleston v. United States*,
485 U.S. 681 (1988)....25

*Hydrolevel Corp. v. American Society of Mechanical Engineers, Inc.*,
635 F.2d 118 (2d Cir. 1980)....9

*Jackson v. Dempsey*,
2026 WL 205979 (E.D.N.Y. Jan. 27, 2026)....12

*Khokha v. Shahin*,
767 N.W.2d 159 (N.D. 2009)....25

*Luce v. United States*,
469 U.S. 38 (1984)....12

*Macy v. New York World-Telegram Corp.*,
2 N.Y.2d 416 (1957)....17

*Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003)....26

*Painter v. Suire*,
650 F. App'x 219 (5th Cir. 2016)....25

*Palin v. New York Times Co.*,
113 F.4th 245 (2d Cir. 2024)....25

*Patterson v. Balsamico*,
440 F.3d 104 (2d Cir. 2006)....................12

*Wachs v. Winter*,
569 F. Supp. 1438 (E.D.N.Y. 1983)....................16, 17

*Wilcox v. Newark Valley Cent. Sch. Dist.*,
129 A.D.3d 1230 (3d Dep't 2015)....................17

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
450 F.3d 1132 (10th Cir. 2006)....................15

**Statutes and Rules**

Fed. R. Civ. P. 37(c)(1)....................13
Fed. R. Evid. 103....................1, 18, 23, 26, 28
Fed. R. Evid. 408(b)....................22
Fed. R. Evid. 104(b)....................24
Fed. R. Evid. 401....................24
Fed. R. Evid. 801....................10, 20, 22
Fed. R. Evid. 803(3)....................9, 10
Fed. R. Evid. 901(b)(1)....................2
N.Y. Pattern Jury Instr.--Civil 3:29....................17

## PRELIMINARY STATEMENT

Defendant Wyatt Troia, proceeding pro se, submits this offer of proof in response to Section V.3 of the Court's Memorandum and Order dated November 12, 2026 (ECF No. 337) (the "Order"). Ruling on Defendant's motion concerning other causes of Plaintiffs' claimed reputational harm, the Order states that "this evidence must be excluded . . . unless Troia first submits a detailed offer of proof that explains the admissible evidence and potential witness testimony, as circumscribed by this opinion, he believes would establish any of his theories." Order at 41. This submission is the offer of proof the Order invited and a proffer under Federal Rule of Evidence 103(a)(2). Defendant submits it without waiving his objections to the Order.

Defendant asks the Court to do five things. First, admit the documents identified in Part I.E, which show what readers and reviewers wrote about LoanStreet on subjects other than the nine adjudicated defamatory statements, including those produced after the close of discovery, or state that it adheres to its ruling at page 26 of the Order as to the latter. Second, admit, for the limited purpose stated in Part II, what readers wrote about the lawsuit, the subpoena to Reddit, and claims that are no longer in the case (Groups I and J of Schedule 1). Third, accept Part III (the remaining evidence) and Schedules 3 and 4 for the record under Federal Rule of Evidence 103(a)(2). Fourth, rule on the first two requests before trial. Fifth, state whether its rulings excluding the evidence in Part III, and any evidence in Parts I and II that it does not admit, are definitive under Rule 103(b). Part I rests on two sources: what readers and reviewers wrote, with how other readers reacted (Schedule 1), and Plaintiffs' own candidate communications (Schedule 2).

## I. Causes Other Than the Nine Statements Affected LoanStreet's Reputation

The Order found that Defendant had "advanced no sufficient offer of proof that any of his 'alternative causes' have actually impacted LoanStreet's reputation," and it invited "a detailed

offer of proof that explains the admissible evidence and potential witness testimony, as circumscribed by this opinion." Order at 39, 41. Schedule 1 is that showing. It collects, by subject, what readers and reviewers wrote about LoanStreet on subjects other than the nine adjudicated defamatory statements, with the upvote score, likes or "Helpful" marks shown for each. For example, a Reddit comment stating "head of HR is the CEOs wife .. fantastic conflict of interest" is shown with an upvote score of 703 (DX-B at WT_000010). This is the same kind of evidence Plaintiffs say they will offer to prove harm: statements by third parties, offered because, in Plaintiffs' words, "[t]he fact that the statements were made -- and the effect they had -- is what matters." Order at 42 (quoting ECF No. 280 at 10-11). Defendant maintains his objections to Plaintiffs' exhibits. He offers the statements in Schedule 1 to show that they were made and the effect they had on other readers. Plaintiffs' own files also show reactions that do not rest on the nine statements. Of the fourteen candidate communications that Plaintiffs identified in their sworn interrogatory answer or that their expert quotes, seven give no reason, or a reason that does not refer to any publication (Schedule 2). One sender whom Plaintiffs' expert, Allen Adamson, quotes, Melissa Hougie, did not withdraw and listed concerns that are not among the statements the Court found defamatory: that the Head of Talent is married to the CEO, and a "joke about the CEO wishing he could chain people to their desks" (LS-0001439). That remark appears in none of Defendant's posts.

The request to admit the documents identified in Part I.E requires no witness beyond those who will already testify, and no inquiry into LoanStreet's practices. The excluded witnesses listed in Schedule 4 are a separate matter, addressed in Part III. Defendant would authenticate the pages he captured through his own testimony. Fed. R. Evid. 901(b)(1). Each page shows the forum, the words, and the score or count as captured. The documents from

Plaintiffs' production would be offered through Mr. Lampl and Alyssa Guttman, LoanStreet's Chief People Officer, and used with Mr. Adamson, on cross-examination. Because no statement is offered for its truth, on this request no witness would be asked whether what a writer said about LoanStreet is so, and there would be no "mini-trials" on any of these subjects. Order at 39. The proof is the page: the words, where they appeared, and the response shown.

### A. *What Readers and Reviewers Wrote, and How Other Readers Reacted (Schedule 1)*

For each entry, Schedule 1 gives the exhibit, the Bates page, the words, and the upvote score, likes or "Helpful" marks shown on the page. The complete threads and pages are the exhibits cited; the cited pages are attached as Exhibit K, and Schedule 1 states where the complete documents appear. The Schedule also places Plaintiffs' own candidate communications (Schedule 2) under the subject each sender named. On this request, Defendant offers none of these statements for its truth. None is a repetition by another person of any of the nine statements; each concerns a different subject.

The table below lists the ten subjects of Schedule 1, the number of entries for each, and one example. Some entries quote more than one statement. A Reddit upvote score is the net of the upvotes and downvotes that user accounts have given a comment.

| **Subject (Schedule 1, Group)** | **Entries** | **Example** |
|---|---|---|
| A. The head of HR is the CEO's wife | 6 | "head of HR is the CEOs wife .. fantastic conflict of interest." (DX-B at WT_000010, score of 703.) |
| B. Firing practices and turnover | 5 | "[S]enior management are both too eager to hire, and too eager to fire." (DX-DX at WT_001229, 53 "Helpful" marks.) |
| C. Layoffs | 1 | "lie about how the company was doing and then let go 50% of the company." (Title of a Glassdoor review labeled "Former employee," DX-DV at WT_001212 to 1213.) |

| Subject (Schedule 1, Group) | Entries | Example |
|---|---|---|
| D. Diversity | 2 | "[T]his company lacks diversity and everyone there is white and went to princeton." (DX-DY at WT_001236 to 1237, 18 "Helpful" marks.) |
| E. Management, transparency, pay and engineering | 9 | "I didn't like the mentioned joke about the CEO wishing he could chain people to their desks if this was true." (E-mail from Melissa Hougie, DX-RE at LS-0001439.) |
| F. Removal of reviews and the authenticity of positive reviews | 16 | "Promptly following the review being posted they put up a positive review that was so vague that I'm sure it's a fake used to take the first spot on the page and to pad their rating." (DX-C at WT_000032, score of 384.) |
| G. The non-disparagement agreement and the condition on severance | 9 | "The employee signed a contract saying that a condition of employment is to not make disparaging comments. Then they fired the employee, which basically removes the restriction. Then the company decides to file a lawsuit based on such restriction. Which is basically groundless. This is crazy stupid lol." (DX-WQ at WT_003295, 6 likes.) |
| H. The change in the vesting date | 6 | "If your vesting schedule isn't backdated to your hire date, run fast and far away from that joke of a company." (DX-J at WT_000104, score of 6.) |
| I. The subpoena to Reddit | 3 | "There is no reason for them to know every Reddit account OP has ever had. Simple as that." The writer added that the request "seems to be way too broad." (DX-J at WT_000128 to 129, score of 5.) |
| J. The lawsuit | 38 | "There are elements of this lawsuit that look pretty frivolous. The trademark claim, for instance." (DX-J at WT_000112, score of 47.) |

Several entries in Schedule 1 describe the writer's own dealings with LoanStreet: a Blind review labeled "Current Employee" and dated June 15, 2021 ("run by a lawyer with dated law firm mentality" and "[n]ot a lot of transparency," DX-CE at WT_000905); two commenters who wrote that they had interviewed there (DX-B at WT_000027); and Glassdoor reviews labeled "Former employee" and dated 2021, 2022 and 2024 (Schedule 1, Groups B through D).

Where an entry responds to something Defendant wrote, the Schedule identifies the subject. Those subjects include the marriage of the head of HR and the CEO (Schedule 1, Group

A), the condition placed on severance (Schedule 1, Group G), and statements the Court dismissed (ECF No. 39 at 19-20, 23), none of which is among the nine statements.

The Order found that comments on Defendant's posts were "the foreseeable -- and, indeed, intended -- reactions to Troia's posts." Order at 33. Defendant does not reargue that ruling here and preserves his objection to it. It does not apply to all of this evidence in the same way. Reviews by others that recount the writer's own experience (DX-DX, DX-DY), and comments relaying what other reviewers wrote (DX-C at WT_000035), are not reactions to Defendant's statements. Where a comment does respond to something Defendant wrote, the Order permits him "to explain to the jury which statements have been deemed defamatory and which have not." Order at 63. That LoanStreet's head of HR is married to its CEO is not among the statements found defamatory, and Ms. Guttman is Mr. Lampl's wife. A reaction to that fact is a reaction to a statement that is not part of Plaintiffs' claim. This point does not depend on how readers understood the adjudicated statements (Order at 28-31, 41). It concerns which statement a reader was responding to. The same is true of Defendant's account of his firing. The Court dismissed his statements that "[a]fter 15 months of praising my work, they abruptly fired me" and that "LoanStreet fires people without warning," and his statement about how the vesting period was calculated (ECF No. 39 at 9 n.5, 19-20). The statements it held to constitute defamation per se are those that "either expressly or impliedly state that plaintiffs 'defrauded' and 'cheated' defendant," statements that "would lead an average reader to believe that LoanStreet and/or Lampl unlawfully withheld or otherwise swindled him out of compensation duly owed to him." *Id.* at 22. A reader's reaction to a statement that was dismissed, or to the fact of the marriage, is not harm caused by the nine statements, and Plaintiffs may recover only for harm that the nine statements caused (Part II.C, below).

### B. *Plaintiffs' Own Candidate Communications (Schedule 2)*

This section addresses the evidence on which Plaintiffs themselves rely to prove reputational harm: fourteen communications from persons whom LoanStreet's recruiters contacted (Schedule 2). It is part of this offer for two reasons. First, it is a showing, from Plaintiffs' own production, that causes other than the nine statements affected the reactions Plaintiffs claim as injury. The Order found no sufficient showing that any other cause "actually impacted LoanStreet's reputation." Order at 39. In these documents the senders give their own reasons, and most give none, or one other than the nine statements. Second, if Plaintiffs put any of these documents before the jury, or their expert relies on them, Defendant offers all fourteen for the limited purpose stated at the end of this section, so that the jury sees the whole set and not only the documents Plaintiffs select. That is in addition to the cross-examination the Order permits, under which he "may attempt to show on cross-examination or to argue in summation, as circumscribed in this opinion, that the injury that plaintiffs allege was not caused by Troia's defamatory statements." Order at 66; *see id.* at 23, 39. Every document in this section was produced by Plaintiffs in discovery or served by Plaintiffs as a discovery response or expert disclosure.

Plaintiffs' proof of reputational harm among prospective employees consists principally of messages from individuals whom LoanStreet's recruiters contacted. Plaintiffs identified these documents by Bates number in their sworn answer to Interrogatory No. 3 as reflecting "prospective employees" whose "relationships with both Plaintiffs have been undermined and/or damaged." (DX-SP, Resp. No. 3.) Plaintiffs' expert, Mr. Adamson, quotes six of them as "negative feedback from prospective employees." (Adamson Report, ECF No. 164-20, at 20.) Four are on Plaintiffs' exhibit list (PX-15, PX-76, PX-77, PX-78). Schedule 2 to this offer lists each document, its Bates number, its date, and the words of the sender.

In summary, the fourteen documents fall into five groups. First, seven messages state no reason, or a reason that does not refer to any publication: for example, "I decided to move on with other opportunities" (LS-0001422) and "I don't think this opportunity would be a good fit for me" (LS-0001426).

Second, one sender wrote that she was "confident I could crush the job description for this role" and raised three concerns "after reading the reviews from the ex-employee": "Value of equity and vesting schedule"; that "your Head of Talent is married to your CEO," which she "view[ed] . . . as a conflict of interest"; and "LoanStreet's culture" (LS-0001439). On culture she added that she "didn't like the mentioned joke about the CEO wishing he could chain people to their desks if this was true." (*Id.*) No such statement appears in Defendant's Glassdoor review or Reddit post. In an October 11, 2021 e-mail to Glassdoor, Mr. Lampl wrote that "[s]ome of the fake reviews on Glassdoor make serious criminal allegations against LoanStreet such as denying sick leave, chaining people to their desks and hunting down and killing people" (LS-0000283 through LS-0000290, at LS-0000285; PX-18; Exhibit L). Defendant did not write any of the three allegations Mr. Lampl listed, in his Glassdoor review, in his Reddit post, or anywhere else. The words "They deny sick leave" appear in a June 21, 2021 Glassdoor review that Mr. Lampl told Glassdoor was written by a person who "has never worked at LoanStreet" (LS-0000263; Troia Dep. Ex. 10).

Third, one person wrote "Heard terrible things about loanstreet," without identifying a source (LS-0000191). Fourth, one document is a message containing the words "Oof not a way to run a startup" and a link to Defendant's June 19, 2021 Reddit post, "Name and Shame: LoanStreet (NY) cheated me out of equity" (LS-0000189); the document does not show that the

sender applied for, or was offered, a position. Fifth, three messages and one set of online comments refer to this lawsuit or to news coverage of it; those are addressed in Part II.B.

Each document in Schedule 2 is one that Plaintiffs themselves cite as evidence of injury. The Order states that “at trial, plaintiffs need only seek and prove general damages (e.g., reputational harm).” Order at 29. But Plaintiffs offer these documents as proof of the extent of that harm, specifically as “prospective employees” whose relationships with LoanStreet were damaged, and the documents bear on two questions about that proof. The first is whether a document shows what Plaintiffs cite it for: LS-0000189 does not show that the sender applied for or was offered a position; Ms. Hougie (LS-0001439) wrote that she was confident she could do the job and asked to discuss her concerns; and Mr. Dinh (LS-0001420) wrote that what he had found about “the engineer who left the bad glassdoor and social media reviews” was “a bit worrisome” and asked whether this case had been settled, without stating that he was withdrawing. The second is what the sender said about the reason for his or her sentiment or action.

These are documents Plaintiffs say they will offer as evidence of harm (ECF No. 363 at 1), and the Order permits cross-examination on what they say (Order at 23). Defendant maintains his hearsay and foundation objections to these documents when Plaintiffs offer them. Order at 43. If any of them is received, or if Mr. Adamson gives an opinion that rests on them, Defendant offers the others in Schedule 2 for the same limited purpose, so that the jury sees all fourteen and not only those Plaintiffs select. A party found liable for defamation per se “must be permitted to rebut that presumption and disprove the amount of damages sought to be recovered.” *Gatz v. Otis Ford, Inc.*, 274 A.D.2d 449, 450 (2d Dep’t 2000) (ordering a new trial where the trial court limited that party to cross-examination). He offers each message not for the truth of anything

asserted in it but to show the reason the sender gave, as evidence of that person's motive. *See De Ronde v. Gaytime Shops, Inc.*, 239 F.2d 735, 739 (2d Cir. 1956); *Herman Schwabe, Inc. v. United Shoe Machinery Corp.*, 297 F.2d 906, 914 (2d Cir. 1962); *Hydrolevel Corp. v. American Society of Mechanical Engineers, Inc.*, 635 F.2d 118, 128 (2d Cir. 1980); *Celebrity Cruises Inc. v. Essef Corp.*, 478 F. Supp. 2d 440, 447 (S.D.N.Y. 2007) (Fed. R. Evid. 803(3)). Plaintiffs' sworn answer and Mr. Adamson's opinion are the only bases for treating these senders as lost candidates. Defendant does not concede that any of them was one.

### C. *This Is the Same Kind of Evidence on Which Plaintiffs Rely*

The entries in Schedule 1 are evidence of the same kind as the evidence on which Plaintiffs rely to show that the statements harmed them: messages and online comments by third parties, which Plaintiffs offer "as circumstantial evidence of reputational harm" (ECF No. 363 at 1) and of which the Order states that "many of the statements appear to be plainly relevant to show, inter alia, marketplace dissemination and reaction" (Order at 42-43). Many come from the same forums and the same threads, and several come from Plaintiffs' own production. If evidence of that kind can show that the nine statements affected LoanStreet's reputation, evidence of the same kind is a showing that statements on other subjects "actually impacted LoanStreet's reputation." Order at 39. The Order states: "The Federal Rules of Evidence do not exclude out-of-court statements that are offered only to show that they were made and the effect they had on the listener." Order at 42.

Courts in this Circuit have accepted that theory for online reviews and forum posts, including when a defendant offers them. *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 647 (S.D.N.Y. 2011) (online reviews are "admissible non-hearsay only for the fact that the online comments were made"); *Fantasia Distribution, Inc. v. Myle Vape, Inc.*, 766 F. Supp. 3d 373, 388 (E.D.N.Y. 2024) ("the Reddit Posts are not offered by Defendants for

the truth of any matter asserted in the statements"). Defendant offers each statement to show that it was made and how other readers responded to it, not for its truth. Fed. R. Evid. 801(c). In the alternative, he offers each as a statement of the writer's then-existing state of mind. Fed. R. Evid. 803(3). He asks that each be judged on those theories of admission.

Plaintiffs offer statements by third parties to show that their reputation was harmed. Defendant offers statements of the same kind to show that reactions Plaintiffs count as harm had other sources: the third parties' own speech, or statements by Defendant that have not been found defamatory. The jury will be instructed that "any damages must have been caused by Troia's defamation" (Order at 35), and the Order states that the case Plaintiffs cited "does not stand for the proposition that the jury does not have to isolate the harm caused by the defamatory statements" (Order at 64). Evidence of another source of the same kind of harm bears directly on that question.

### D. *Two Statements at Page 40 of the Order*

Two statements at page 40 of the Order concern subjects that appear in Groups A through H of Schedule 1. Defendant takes them in turn. The Order's statements about the lawsuit and about claims no longer in the case, including the claim Plaintiffs brought on the non-disparagement agreement, are addressed in Part II.

First, the Order states that Defendant "cannot introduce evidence about LoanStreet's corporate and labor practices . . . by offering specific examples of supposed wrongdoing, including Troia's termination." Order at 40. The entries in Schedule 1 are not offered to prove that LoanStreet did what the writers describe. They are offered to show what Defendant and others said about LoanStreet as an employer on subjects other than the nine statements, and how other readers reacted. Defendant preserves his position that he may also prove the underlying facts (ECF No. 238 at 16-18), but this request does not depend on it. A sender whom Plaintiffs'

expert quotes wrote to LoanStreet that she "didn't like the mentioned joke about the CEO wishing he could chain people to their desks" (DX-RE at LS-0001439), a remark that appears in none of Defendant's posts. A June 27, 2021 Glassdoor review labeled "Former employee" states that "senior management are both too eager to hire, and too eager to fire," and the page shows 53 "Helpful" marks (DX-DX at WT_001229). As to Defendant's termination, a reader wrote that "the part that sounds bad to me is how he was treated before he was fired" (DX-J at WT_000128, score of 9). Defendant's account of his firing is the subject of statements the Court dismissed (ECF No. 39 at 19-20). He offers the comment to show what the reader was responding to. Statements of this kind could affect what readers thought of LoanStreet whether they were true or not.

Second, as to the non-disparagement agreement, the Order states that Defendant "has made no showing that this policy affected LoanStreet's reputation one way or the other." Order at 40. Group G of Schedule 1 is that showing. When Defendant wrote on Blind that LoanStreet conditions severance on signing a permanent non-disparagement agreement, a reader replied: "Wth… never thought about something like this" (DX-X at WT_000193). Another wrote of "the power of bullshit contracts, NDAs, etc. and how companies abuse them" (DX-J at WT_000138, score of 14). Defendant's Slack message to the same effect, which Plaintiffs produced, shows 13 reactions (DX-KM at LS-0000068).

**E. *The Documents Defendant Asks the Court to Admit***

Defendant asks the Court to admit, for the purposes stated above, the documents that contain the statements in Groups A through H of Schedule 1. DX-B, DX-C, DX-D, DX-F, DX-J and DX-X were produced in discovery. DX-KM, DX-MJ, DX-NR, DX-RE and DX-UN are from Plaintiffs' own production. Defendant also asks the Court to admit two third-party posts

that Plaintiffs produced (DX-KN and DX-KO; Schedule 3, Nos. 39 and 40). DX-UR, a third party's post that Plaintiffs also produced (Schedule 3, No. 41), is offered for the record.

The other documents in Groups A through H of Schedule 1 (DX-BZ, DX-CE, DX-CF, DX-DV, DX-DX, DX-DY and DX-WQ), and LoanStreet's Glassdoor reviews page (DX-RN to DX-RT; Schedule 3, No. 37), were produced after the close of discovery and are also subject to the Order's ruling on such documents, which addressed them as a category (Order at 26). Defendant asks the Court to admit those documents as well on this showing or, if the Court adheres to its ruling at page 26, to say so. *See Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling").

The Order states that documents produced after the close of discovery "appear to have limited relevance to the issues at trial." Order at 26. Schedules 1 and 3 state what each of these documents is and what it shows, so that the record reflects the importance of each. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (factors include "the importance of the testimony of the precluded witness[es]"). Each is a page on a public website: reviews of LoanStreet on Glassdoor and Blind labeled as written by current and former employees, LoanStreet's reviews pages on those sites, and threads on Blind. *See Jackson v. Dempsey*, 2026 WL 205979, at *14 (E.D.N.Y. Jan. 27, 2026) ("discovery need not be required of documents of public record which are equally accessible to all parties") (citation omitted). Defendant produced DX-BZ, DX-CE, DX-CF, DX-DV, DX-DX and DX-DY on June 20, 2025, DX-RN to DX-RT on March 10, 2026, and DX-WQ on July 26, 2026, with his First, Second and Eleventh Supplemental Disclosures. One of them, a Glassdoor review dated November 13, 2024 (DX-DV), was posted after fact

discovery closed on May 31, 2024 (Order at 9), and could not have been produced during discovery.

Late-disclosed material may be used where the failure to disclose "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see* Order at 20. Defendant preserves his position that the timing of his supplemental disclosures was substantially justified, for the reasons stated at ECF No. 174 and ECF No. 281 at 7-8, which apply to all of the documents he produced after the close of discovery. Independently, as to the documents addressed here, the timing of production was harmless. Each is a public page about Plaintiffs' own company, and Plaintiffs had the same access to it that Defendant did. Mr. Lampl corresponded with Glassdoor about reviews of LoanStreet in October 2021 (LS-0000283 through LS-0000290; PX-18). Plaintiffs have had six of these documents since June 2025 and all but one since March 2026. None is offered for its truth, so none calls for discovery into what its writer says. The proof is what the page shows.

## II. What Readers Wrote About the Lawsuit, the Subpoena to Reddit, and Claims No Longer in the Case

### A. *The Statements and the Limited Purpose for Which They Are Offered*

Groups I and J of Schedule 1 collect what third parties wrote about the subpoena to Reddit and the lawsuit. The Order states that Defendant "may not argue to the jury that plaintiffs have injured themselves by litigating his defamation" (Order at 40), and it grants Plaintiffs' motion to preclude "evidence or argument that plaintiffs' lawsuit should be held against plaintiffs as either a failure to mitigate or as an 'alternative cause' of reputational harm" (Order at 67). Defendant preserves his objection to those rulings. This Part asks for something narrower: that the jury be permitted to see what readers themselves gave as the reason for their reactions. What third parties wrote about the lawsuit is their speech; it is not an act by Plaintiffs. The Order

states that, "to the extent that press coverage of this lawsuit amplified Troia's false and defamatory statements, it did so only in the context that plaintiffs contended that those statements were defamatory," and that the Business Insider article "does not repeat the defamatory statements at face value." Order at 34 & n.9. A reader who wrote, in a comment shown with a score of 407, that "[t]he fact that LoanStreet sued their former employee for defamation is evidence enough that I would never work for them" (DX-CA at WT_000792) gave the lawsuit as the reason. Defendant offers the statements in Groups I and J of Schedule 1 to show what readers said they were reacting to: reports and discussion of the lawsuit, not the nine statements. He asks the Court to admit them for that limited purpose. Some of these statements are in documents produced after the close of discovery (DX-CA, DX-CB, DX-CF and DX-WQ), and the request in Part I.E applies to those documents as well.

This request is within the offer of proof the Order invited. Section V.3 of the Order states that Defendant had made "no showing" that the non-disparagement policy, or claims no longer in the case, affected Plaintiffs' reputation, and it closes by inviting an offer of proof on "any of his theories." Order at 40-41. The Order's later rulings on claims no longer in the case and on the lawsuit rest, in whole or in part, on "the reasons explained in" that Section. Order at 61-62, 67. This Part is Defendant's showing on those points.

**B. *Plaintiffs' Own Candidate Messages About the Lawsuit***

At least three of the messages on which Mr. Adamson relies concern the lawsuit or coverage of it: "Sorry I do not work for companies that sue their former employees" (LS-0000190, as quoted in the Adamson Report at 20); "after reading the story and the news articles about the former employee's story" (LS-0001417); and "Has this case been settled? What was the outcome?" (LS-0001420). He also quotes an online comment stating, "I simply said not interested because I don't want to risk getting entangled in a lawsuit" (LS-0000095,

quoted in the Adamson Report at 19-20). None of the four quotes any of the nine statements. LS-0001420 reads: "I did a quick search on the engineer who left the bad glassdoor and social media reviews, Wyatt Troia, and it's a bit worrisome. Has this case been settled? What was the outcome?" It does not say that the sender withdrew.

If Plaintiffs or Mr. Adamson present these messages to the jury, or rely on them, as evidence of harm caused by the defamatory statements, what each message says on its face is within the cross-examination and summation the Order permits (Order at 23, 66), and Defendant would accept an instruction limiting the evidence to that purpose. *See World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1137-39 (10th Cir. 2006) (third-party media about a business plaintiff admitted "for the limited purpose of demonstrating that World Wide's claims of damages in the form of lost profits could have been due to those sources rather than" the defendant's statements, with an instruction that it was "not to be considered for its truth").

### C. *Claims No Longer in the Case, and Claims Still Pending*

The Order states that Defendant "makes no showing that certain claims or allegations that were included in the complaint but are no longer part of this litigation have harmed plaintiffs' reputation . . . ." Order at 40-41. Groups G, I and J of Schedule 1 are that showing. The lawsuit that readers discussed was not limited to the claims on which Plaintiffs prevailed. As filed, it included a breach of contract claim, an injurious falsehood claim, and defamation claims on six other statements, none of which is still part of the case (Order at 5-6, 61), and readers commented on the breadth of the lawsuit and on those claims. One wrote: "[T]his looks like a throw everything at the wall to get them to settle/fold. At this point, have they even shown they've suffered any loss?" (DX-J at WT_000111 to 112, score of 57; Schedule 1, Group J.) Of the contract claim, another wrote: "It's more the penalty for the non disparagement. That's where I think the employer lacks a case" (DX-J at WT_000099, score of 20).

The lawsuit also includes Lanham Act and unfair competition claims, which remain pending, and those drew criticism as well. Readers wrote: "There are elements of this lawsuit that look pretty frivolous. The trademark claim, for instance." (DX-J at WT_000112, score of 47.) "This is not how trademark law works. In no possible way, shape or form is he violating trademark law by slagging them off." (DX-J at WT_000133, score of 36.) "There is no trademark infringement here. LoanStreet's complaint is simply that he used their name in his blog post." (*Id.*, score of 25.) "The 'trademark' is literally the company name. What a BS claim by LoanStreet. Oops, I just used their trademark. Maybe they'll sue me too now." (*Id.*, score of 2.) "Still, that's extremely excessive on LoanStreet's side. I can take out ads right now saying Reddit, Facebook, etc. suck and none of those companies are going to sue me." (DX-J at WT_000100, score of 6.) Each of these comments is in Schedule 1, Group J.

Eric Goldman, a law professor at Santa Clara University School of Law, also criticized Plaintiffs' trademark claims in his Technology & Marketing Law Blog after the Court's August 2022 and September 2025 rulings. He wrote: "If you're a trademark plaintiff and you're only alleging initial interest confusion, you should question your life choices." (DX-VX at WT_003260; *see* DX-VY; Schedule 3, Nos. 12 and 13.)

The Court expressed "serious concerns that permitting Troia to argue that plaintiffs' meritorious lawsuit should reduce or limit plaintiffs' damages would implicate troubling public policy considerations." Order at 41. That concern refers to "plaintiffs' meritorious lawsuit." *Id.* Many of the reactions collected in Groups G, I and J of Schedule 1 are to claims on which Plaintiffs did not prevail or that have not been decided, and to the request for a subpoena to Reddit. As to the claims on which Plaintiffs prevailed, Defendant relies on *Wachs v. Winter*, addressed in Part II.D. In each case his position is the same: damages for the nine statements

should not include reactions that readers themselves attributed to something else. A limiting instruction could state the purpose for which the jury may consider these statements.

The Order provides that "any damages must have been caused by Troia's defamation." Order at 35. New York law requires that a third person's adverse reaction, offered as proof of injury, be "the direct and well-connected result of the libel." *Macy v. New York World-Telegram Corp.*, 2 N.Y.2d 416, 422 (1957). In *Wilcox v. Newark Valley Cent. Sch. Dist.*, 129 A.D.3d 1230 (3d Dep't 2015), the Appellate Division ordered a new trial on damages "based upon proof of harms limited to those that can be linked by proximate cause to the two slanderous statements," because the trial court had not instructed the jury that the plaintiff bore "the burden of proving that the ostracism harms that plaintiff allegedly suffered were actually connected to" the defendants' statements. *Id.* at 1233-34. The Pattern Jury Instructions state the rule the same way: specific instances of ostracism and rejection may be shown "provided they are 'the proximate result of the defamation.'" N.Y. Pattern Jury Instr.--Civil 3:29, cmt. (Dec. 2025 update).

### D. *Wachs v. Winter*

Part II.C concerns claims on which Plaintiffs did not prevail or that have not been decided. As to the claims on which Plaintiffs did prevail, Defendant relies on *Wachs v. Winter*, 569 F. Supp. 1438 (E.D.N.Y. 1983) (adopting magistrate's report), which the Order addresses at pages 33-34. The plaintiff there prevailed: the defendant defaulted, the allegations of the complaint were "deemed true," and the only issue was the amount of damages. *Id.* at 1441-42. In fixing damages for injury to reputation, the court observed that "many of the persons who learned of the defendant's allegations obtained this knowledge as a result of plaintiff's perfectly proper efforts to prosecute this lawsuit," concluded that "[t]he injury to plaintiff's reputation, if any at all, was minimal," and awarded $2,500 for humiliation and injury to reputation. *Id.* at 1447. The court did not hold the lawsuit against the plaintiff. It called his efforts "perfectly

proper." *Id.* It declined to charge the defendant with what the lawsuit, rather than the libel, had made known. That is the limited use for which this evidence is offered.

## III. Proffer Under Rule 103(a)(2)

The remaining evidence is of two kinds: evidence the Order excluded, and evidence that Defendant would offer for a purpose that the Order precludes or may be read to preclude. Defendant offers both under Federal Rule of Evidence 103(a)(2) and maintains that the evidence is admissible. Some documents in this Part are not themselves excluded by the Order; as to those, this Part addresses only the use described. Nothing in this Part limits cross-examination on an exhibit that Plaintiffs offer. Schedule 3 lists each document separately, with what it is, what it shows, and where it appears in the record. Some documents in Schedule 3 are also among those Defendant asks the Court to admit; those are identified in Parts I.E and II.A and are not offered for the record only. Each group heading in Schedule 3, other than the last, names the witnesses through whom the documents in that group would be offered. The listing of a document in this Part does not concede that the document is inadmissible for any other purpose. Documents not previously filed are attached as Exhibits A through M.

### A. *The Items of Evidence*

1. *The lawsuit and its coverage as the stated cause of particular reactions, and whether a candidate was lost.* In addition to what is set out in Parts I.B and II.B, Defendant would offer the three messages and the comments in LS-0000095, together with the press coverage of this action that Plaintiffs produced (Schedule 3, Group B), to show that reactions Plaintiffs count as damage were, in the senders' own words, reactions to the litigation. Plaintiffs' expert himself states that "[m]ultiple media outlets ran stories based on Defendant's conflict with LoanStreet."

(Adamson Report at 23.) Defendant would also offer the signed declaration of another person Plaintiffs identified, Kylie Cannon (DX-RU), who states that she "did not read the Glassdoor review itself," "read reports from public news outlets about the lawsuit," and withdrew "based solely on the company's decision to pursue legal action against a former employee for posting a negative review." He would offer as well the signed declaration of Mindy Huynh, the sender of LS-0000189 (DX-RL), who states: "I was never a candidate or applicant for employment with LoanStreet. I did not apply for a position, did not interview, did not communicate with anyone at the company regarding employment, and did not participate in any stage of their hiring process." The Court excluded both declarations. Order at 52-54, 60.

2. *Public discussion of the lawsuit.* Defendant would offer the online threads in which members of the public discussed this lawsuit after it was filed (Schedule 3, Group C), not for their truth, to show that what circulated about LoanStreet after July 2021 was the fact of the lawsuit. Two such reactions are in documents on Plaintiffs' own exhibit list: a review that Mr. Lampl quoted to Google on September 15, 2021, "Good businesses don't need to sue former employees. This is not a good business" (DX-NR at LS-0000398; PX-29), and a message submitted through LoanStreet's website on October 8, 2021, "Now you're spending a bunch of money on this lawsuit that you could've saved by treating your employees well in the

first place" (DX-OD at LS-0000418; PX-34). Both are in Schedule 1, Group J.

3. *Claims that are no longer in the case.* In addition to what is set out in Part II.C, the press coverage reported on the action as it was filed, and the candidate messages refer to the lawsuit without distinguishing among its claims. Defendant would also offer the National Labor Relations Board charge and settlement concerning the non-disparagement agreement and the agreement itself (Schedule 3, Group D). The settlement required LoanStreet to post a notice at its office and on its company-wide Slack channels, and to e-mail it to its current and former employees. The notice, in LoanStreet's name, states: "**WE WILL NOT** file, maintain, and prosecute a lawsuit against you that is preempted by federal law, and which interferes with activity protected by the National Labor Relations Act." Defendant would offer the notice as LoanStreet's own statement to its workforce in 2022, Fed. R. Evid. 801(d)(2), to show another source of what LoanStreet's current and former employees learned about this dispute, which bears on the employee reactions that Plaintiffs attribute to Defendant's statements. Defendant would also show that nothing in Plaintiffs' evidence separates reactions to the claims on which Plaintiffs prevailed from reactions to the claims that are no longer in the case, or from reactions to the Lanham Act and unfair competition claims, which remain pending and have drawn published commentary critical of them

(DX-VY at WT_003251; DX-VX at WT_003260 to 3261; Schedule 3, Group B).

4. *Speech about LoanStreet by persons other than Defendant, as a cause of particular harm.* Defendant would offer the three 2020 Glassdoor reviews that Plaintiffs produced, other reviews of LoanStreet written by others, posts and comments about LoanStreet by third parties, and an unsolicited message to Defendant from a third party (Schedule 3, Group E; the 2020 reviews are Exhibit I). The theory is one of causation. Where a reader thought less of LoanStreet because of what someone other than Defendant wrote, that speech, and not the defamatory statements, is the cause of that reader's view, whether or not the speech was true. On this theory he does not offer it to prove that LoanStreet did what the speaker said, and he preserves his position that he may also prove the underlying facts (ECF No. 238 at 16-18). He offers it to show that it was published, that readers saw it and responded to it, and that it is a source other than the defamatory statements for reactions of the kind Plaintiffs count as injury. The basis for this item is set out in Part I. The 2020 reviews and the unsolicited message are addressed in Parts III.C and III.B.

5. *Former employees' own views.* Defendant would offer messages in which former LoanStreet employees stated their own views of the company (Schedule 3, Group F), not for their truth, to show that persons with their own experience of LoanStreet held and expressed negative views of it that did not come from the nine statements.

6. *Defendant's performance and termination.* Defendant would offer the documents described in his motion at ECF No. 238 at 17-18 (Schedule 3, Group G), for the purpose stated there as to readers, and for the same purpose as to LoanStreet employees and other individuals: to show that LoanStreet treated Defendant as a valued employee in the months before his termination, so that their views that LoanStreet mistreated him are a source of negative opinion about LoanStreet other than the nine statements. Statements by LoanStreet's managers are statements of a party opponent, Fed. R. Evid. 801(d)(2), and Defendant would testify to the conversations his notes record.

7. *Plaintiffs' response to Defendant's offer to modify the posts, and the use of the replacement review.* Defendant would offer the pre-suit correspondence (Schedule 3, Group H), on the theory stated in ECF No. 238 at 18: to show that before suit Defendant's counsel wrote that Defendant was willing to change or remove language in the posts and Plaintiffs' counsel demanded the removal of all of his posts. The correspondence is offered for the fact that those statements were made. Defendant maintains his position, stated in ECF No. 265 at 4-11, that Rule 408 does not apply to this correspondence; that the only claim in dispute in it was the contract claim, which is no longer in the case; and that it is in any event offered for another purpose. Fed. R. Evid. 408(b). Order at 46-47. The Order does not exclude the replacement Glassdoor review (DX-Y; Schedule 3, Group H), which shows what readers saw from June 22, 2021

on (ECF No. 238 at 18). Defendant includes it here so that this offer is complete on that subject.

8. *Compensation data.* Defendant would offer publicly posted compensation data (Schedule 3, Group I), not for its truth, to show another consideration available to anyone evaluating LoanStreet as an employer.

9. *The excluded witnesses, and prior submissions.* Defendant incorporates his offers of proof for the fourteen individuals identified by Plaintiffs as prospective employees (ECF No. 282-1, entries 1 through 14), each of whom would testify to his or her own reason for the communication Plaintiffs rely on. He incorporates as well his offers of proof for the twenty-three current and former LoanStreet employees (ECF No. 282-1, entries 15 through 37), including on the sources of each witness's own perception of LoanStreet and, for the employees listed on Plaintiffs' spreadsheet LS-0001451, on the hours each worked and the tasks each performed. Schedule 4 lists each of these thirty-seven witnesses, the evidence of Plaintiffs to which the testimony relates, what the witness would testify to, and the basis of the witness's knowledge. He also incorporates his memorandum and declaration on this subject (ECF Nos. 238 and 250) and the chart at ECF No. 282-2. To the extent the Order's limitation at 66 reaches the testimony described in paragraphs 10 and 11 of Mr. Sabiki's report (ECF No. 164-4), Defendant offers that testimony for the record under Rule 103(a)(2).

> As to the five persons listed on Plaintiffs' employee-time spreadsheet (Schedule 4, Group B), Ms. Guttman testified that LoanStreet "didn't keep, you know, time sheets" (Guttman Dep. 182:2-4); that the hours she supplied for the spreadsheet (LS-0001451; PX-87) rest on "mainly my recollections" (*id.* 200:13-15) and were for herself, Ms. Doohan and Ms. Napora and for no one else (*id.* 189:4-19); and that the 40 hours a week attributed to Ms. Napora is all of her working time, because "her sole purpose was to help us recruit more candidates" (*id.* 201:3-18). On that basis Defendant expects Ms. Napora to testify that her work was the ordinary work of a recruiter, that she kept no record of time spent responding to any statement, and that her work was not directed to the nine statements as distinct from anything else said about LoanStreet. He expects Ms. Regenbaum, Mr. Henson, Mr. Pitney and Mr. Rambler each to testify that he or she kept no record of time spent responding to Defendant's statements. His expectation rests on Ms. Guttman's testimony and on the face of the spreadsheet.

The evidence in this Part is offered to show what caused particular reactions that Plaintiffs claim as injury. Defendant preserves his position that the rule against proof of specific acts, discussed at page 40 of the Order, does not reach evidence offered for that purpose, *see Crane v. New York World Telegram Corp.*, 308 N.Y. 470, 478-79 (1955); *Gatz v. Otis Ford, Inc.*, 274 A.D.2d 449, 450 (2d Dep't 2000), and that the showing required for its admission is the one stated in Federal Rules of Evidence 401 and 104(b): that the evidence has "any tendency to make a fact more or less probable than it would be without the evidence" and, where its relevance

depends on whether a fact exists, that there be proof "sufficient to support a finding that the fact does exist," *see Huddleston v. United States*, 485 U.S. 681, 690 (1988); *Palin v. New York Times Co.*, 113 F.4th 245, 271-73 (2d Cir. 2024); *see also Khokha v. Shahin*, 767 N.W.2d 159, 164 (N.D. 2009) (no abuse of discretion in allowing limited evidence that the plaintiff's loss "could have been caused by something other than" the defendant's statements); *Painter v. Suire*, 650 F. App'x 219, 228 n.8 (5th Cir. 2016) ("The damages jury could have concluded that these actions, not the defamatory statements made by Suire, caused Painter's reputational injury."). He does not reargue those points here. What others publicly said about LoanStreet before the statements at issue, such as the 2020 reviews, is also offered as evidence of LoanStreet's reputation at that time, which a defendant may prove "to reduce the value of the injured interest." *Crane*, 308 N.Y. at 478; *see* Order at 41 (distinguishing "specific acts" from reputation evidence).

### B. *The Schrider Communications*

The Order excluded the Schrider communications (the last three entries in Schedule 3, Group E) on the ground that Defendant "cannot simultaneously claim that the substance of the accusations tends to prove an alternative cause of reputational damage while disclaiming that the communications are being offered for their truth." Order at 60. Defendant preserves his objection to that ruling and offers those documents for the record. They are a message addressed to Defendant and his notes of two calls with its sender, and they show that a third party was making accusations about LoanStreet's business that are not among the nine statements. They are offered to show that those accusations were made, not that they were true. Plaintiffs' expert testified that one person's word of mouth can be enough to affect a company's reputation: "it doesn't matter if one person saw it. If that one person goes out and tells ten other people especially in a targeted market at the next credit union convention . . . everyone in the credit union target market is going to know it even though one person saw it" (Adamson Dep. 99:19-100:5); and "if the only piece

of information that people heard about LoanStreet was one of the Defendant's posts or someone telling about that post at a cocktail party, that would be sufficient" (*id.* at 108:11-15).

### C. *The 2020 Reviews*

The Order states that the three 2020 Glassdoor reviews have no "relevance to whether plaintiffs were damaged by Troia's conduct," and, on Defendant's motion, it excludes Plaintiffs' allegation that he wrote them. Order at 45-46. Defendant offers the following for the record under Federal Rule of Evidence 103(a)(2). The evidence is three Glassdoor reviews of LoanStreet dated April 14, April 25 and June 25, 2020, produced by Plaintiffs (LS-0000113 through LS-0000115; DX-KP, DX-KQ, DX-KR; Exhibit I). Defendant did not write them, and he so testified. (Troia Dep. 37:17-19; 38:25-39:4.) They are offered not for their truth but to show what was publicly said about LoanStreet as an employer before any statement at issue. New York law permits this proof: a "defendant may offer proof of plaintiff's bad general reputation prior to the publication, to reduce the value of the injured interest." *Crane v. New York World Telegram Corp.*, 308 N.Y. 470, 478 (1955). The Order distinguishes "specific acts" from "reputation evidence." Order at 41. Reviews are what others said about LoanStreet; they are not acts by LoanStreet.

As to actual impact, Plaintiffs supply the showing. Their Complaint describes these reviews as "disparaging and defamatory statements on the Internet about LoanStreet." (Compl. ¶ 24.) Factual allegations in a party's own pleading are "judicial admission[s]" by which the party is "bound throughout the course of the proceeding." *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2d Cir. 1985)).

In discovery, Plaintiffs defined "Defamatory Comments" as "any statement made by Defendant regarding Plaintiffs to individuals and entities outside of LoanStreet," including "the

subject matters referred to in paragraphs 25-55, 76, and 93 of the Complaint." (DX-ZC, Definition 6; Exhibit L.) Paragraphs 25, 26 and 33 of the Complaint are the three 2020 reviews. Defendant's interrogatories adopted Plaintiffs' definition (DX-ZE, Definition 8; DX-ZD; Exhibit L) and asked about "each of the Troia Statements and/or Defamatory Comments." Each Plaintiff answered under oath, using the broader of those two terms, that "each harm individually and collectively was caused by each of the Defamatory Comments individually and collectively." (DX-ZA, Exhibit L, and DX-SP, ECF No. 164-19, Resp. No. 2.) Plaintiffs thus attributed their harm at least in part to the 2020 reviews.

Their expert testified that his analysis is of "the combined effect of all of the posts that were referenced in the complaint or that you saw through the documents." (Adamson Dep. 159:3-11.) He explained that posts by others would not change his opinion because "the instigator and the catalyst for that happening was his original content" (*id.* at 159:17-22); these reviews were posted in April and June 2020, before that content existed, so they cannot have been a response to it or caused by it.

## CONCLUSION

Defendant respectfully requests that the Court (1) admit the documents identified in Part I.E (other than DX-UR, which is offered for the record) for the purposes stated in Part I, including those produced after the close of discovery, or state that it adheres to its ruling at page 26 of the Order as to the latter; (2) admit the statements in Groups I and J of Schedule 1 for the limited purpose stated in Part II; (3) accept Part III and Schedules 3 and 4 for the record as Defendant's offer of proof under Federal Rule of Evidence 103(a)(2); (4) rule on requests (1) and (2) before trial; and (5) state whether its rulings in the Order that exclude the evidence in Part III, and any evidence in Parts I and II that it does not admit, are definitive for purposes of Federal Rule of Evidence 103(b). Defendant's conditional offer of the communications in Schedule 2 (Part I.B) is made for trial and requires no ruling now. This offer is made in addition to, and not in place of, any offer Defendant makes at trial.

Dated: November 26, 2026
Omaha, Nebraska

Respectfully submitted,

*<u>/s/ Wyatt Troia</u>*
Wyatt Troia
300 Albany Street, 8G
New York, NY 10280
Tel: (402) 990-3834

Defendant

## CERTIFICATION

Pursuant to the Court's letter of November 12, 2026 (ECF No. 338), Defendant certifies that he met and conferred with Plaintiffs' counsel before making this submission. On November 21 and 24, 2026, he e-mailed Plaintiffs' counsel and described this submission and the relief it requests. On November 25, 2026, he and Plaintiffs' counsel conferred by video conference, and Plaintiffs' counsel confirmed Plaintiffs' position by e-mail the same day. Plaintiffs oppose the requests to admit (requests (1) and (2) in the Conclusion). Their stated grounds are that "[t]he submission is not a 'detailed offer of proof' of admissible evidence that would establish an alternative cause," that "the lawsuit and subpoena items are foreclosed," and that "the late-produced documents remain excluded." Plaintiffs also stated: "However, we don't object to exhibits on our own list being used for purposes consistent with the Order." Plaintiffs have no objection to the Court's accepting the remainder for the record (request (3)), "as long as the offer is made in writing or outside the jury's presence," and they reserve the right to respond. Plaintiffs have no objection to Defendant's asking for rulings before trial and for a statement whether the Court's rulings are definitive (requests (4) and (5)).

Dated: November 26, 2026
Omaha, Nebraska

/s/ Wyatt Troia
Wyatt Troia

## SCHEDULE 1
## Statements by Readers and Reviewers on Subjects Other Than the Nine Adjudicated Defamatory Statements (Parts I and II)

The Schedule collects comments and reviews from the cited exhibits that criticize LoanStreet on each subject. It is limited to subjects other than the nine statements. Each cited page is attached in Exhibit K, in the order of the exhibits. Complete copies of the documents Defendant asks the Court to admit in Part I.E are in the record as follows: DX-B, DX-C, DX-D, DX-X, DX-MJ and DX-NR, in Exhibit M; DX-F and DX-J, at ECF Nos. 250-16 and 250-17; DX-KM, DX-RE and DX-UN, in Exhibit K; and the others, as stated in Schedule 3. On the requests in Parts I and II, no statement is offered for its truth. "Response shown" is the number the page displays next to the statement as captured: a score on Reddit (upvotes less downvotes), likes on Blind, "Helpful" marks on Glassdoor and Blind reviews, and reactions on Slack. Writers are identified by forum and date.

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| **A. The head of HR is the CEO's wife (not among the statements found defamatory)** | | | | |
| 1 | DX-B (WT_000010) | Reddit, June 2021 | "head of HR is the CEOs wife .. fantastic conflict of interest." A reply: "Humongous, neon sign red flag lol." | Scores of 703 and 185 |
| 2 | DX-B (WT_000010) | Reddit, June 2021 | Replying to a reader who wrote of HR and the company that "[t]he interests here are perfectly aligned": "It's not protecting the company from the CEO. Protecting the CEO from the company it seems." | Score of 50 (the first reader's comment: 117) |
| 3 | DX-B (WT_000027) | Reddit, June 2021 | "Yes, I specifically remember the CEO's wife. She scheduled me for an interview, never showed and then completely ignored my subsequent attempts to reschedule." | Score of 2 |
| 4 | DX-F (WT_000067) | Reddit, Oct. 2021 | "The indisputable facts that 1. the CEO's wife runs HR and 2. they'd go after an individual with heavy-handed lawsuits for what amounts to a Glassdoor review and a reddit post speaks volumes." | Score of 11 |
| 5 | DX-F (WT_000070) | Reddit, Oct. 2021 | After noting that the head of HR is the CEO's wife: "IDK whether OP is being fully truthful, but regardless, this doesn't seem like a good company to work for." | Score of 3 |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| 6 | DX-RE (LS-0001439 to 1440) | E-mail from Melissa Hougie, Feb. 2022 (Plaintiffs' production; Schedule 2, No. 13) | Among the sender's three concerns: "The fact that your Head of Talent is married to your CEO. I view this as a conflict of interest." | Not applicable |
| **B. Firing practices and turnover** | | | | |
| 7 | DX-DX (WT_001229) | Glassdoor review, June 27, 2021, "Former employee, less than 1 year" | "[S]enior management are both too eager to hire, and too eager to fire," and "(turn over rate is very high in 2020)." | Helpful: 53 |
| 8 | DX-B (WT_000022) | Reddit, June 2021 | On Defendant's account of his firing, a subject of the dismissed statements (ECF No. 39 at 19-20): "If your story's accurate, the circumstances surrounding your firing suck mightily. You tried to do the right thing and got crapped on for it." | Score of 32 |
| 9 | DX-C (WT_000035) | Reddit, June 2021 | A reader relaying another person's review: "One review said they were paying external recruiters to tell them if any current employees sent them a prospective resume ... such that the company would then promptly fire them. Sounded like a shitshow. I knew they were bad but not that bad." | Score of 20 |
| 10 | DX-J (WT_000128) | Reddit, Oct. 2021 | "If OP's story is 100% true, then the part that sounds bad to me is how he was treated before he was fired." | Score of 9 |
| 11 | DX-J (WT_000150) | Reddit, Oct. 2021 | "'We can't hire new staff! It's all his fault! Also we can't keep any. This abysmal 50% yearly turnover is his fault too!'" | Score of 1 |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| **C. Layoffs** | | | | |
| 12 | DX-DV (WT_001212 to 1213) | Glassdoor review, Nov. 13, 2024, "Former employee, more than 3 years" | Title: "lie about how the company was doing and then let go 50% of the company." Text: "Burn you out and then let you go." | None shown |
| **D. Diversity** | | | | |
| 13 | DX-DY (WT_001236 to 1237) | Glassdoor review, Feb. 6, 2022, "Former employee, more than 1 year" | "[T]his company lacks diversity and everyone there is white and went to princeton." | Helpful: 18 |
| 14 | DX-CE (WT_000904) | Blind review labeled "Current Employee," Aug. 3, 2021 (five stars) | "Like most software companies, it skews somewhat white and male, but not overwhelmingly so." | Helpful: 3 |
| **E. Management, transparency, pay and engineering** | | | | |
| 15 | DX-RE (LS-0001439 to 1440) | E-mail from Melissa Hougie, Feb. 2022 (Plaintiffs' production; Schedule 2, No. 13) | On "LoanStreet's culture": "I didn't like the mentioned joke about the CEO wishing he could chain people to their desks if this was true." That remark appears in none of Defendant's posts (Part I.B; LS-0000285). | Not applicable |
| 16 | DX-CE (WT_000905) | Blind review labeled "Current Employee," June 15, 2021 (five stars) | "Its also run by a lawyer with dated law firm mentality, rather than tech startup mentality (which also has an impact on comp). There are no C suite execs other than the CEO. Not a lot of transparency." | Helpful: 0 |
| 17 | DX-CE (WT_000901) | Blind review labeled "Current Employee," Apr. 20, 2022 (three stars) | Cons: "Drama Tech Debt Analysis Paralysis Low code quality." | Helpful: 1 |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| 18 | DX-CE (WT_000900) | Blind review labeled "Current Employee," July 25, 2023 (four stars) | Title: "Decent culture, day-to-day isn't bad, TC lacking." Cons: "Benefits aren't great (no 401k match + mediocre insurance)." | Helpful: 1 |
| 19 | DX-B (WT_000027) | Reddit, June 2021, a commenter who wrote of interviewing at LoanStreet | "[O]ne engineer openly insulted and put down the other engineers running my interview while I was interviewing. It was super uncomfortable." | Score of 2 |
| 20 | DX-MJ (LS-0000263); Troia Dep. Ex. 10 | Glassdoor review, June 21, 2021, "Current Employee, more than 3 years," quoted in Mr. Lampl's June 25, 2021 e-mail to Glassdoor | "Managers lie. Require long hours. My last review was removed. So have other negative reviews. They want you to live there. They deny sick leave. Do not work here." Mr. Lampl wrote to Glassdoor that the reviewer "has never worked at LoanStreet" (LS-0000263). | Not applicable |
| 21 | DX-MJ (LS-0000264 to 266); Troia Dep. Ex. 10 | Three other Glassdoor reviews dated June 21, 2021, quoted in the same e-mail | "Employment contracts written to allow them to break the terms with impunity." "Terrible Management, Conflict of Interest, Unorganized, Untimely, Rude." "They will hire desperate people because they prey on them," with cons listed as "Extremely toxic work environment," "Favouritism" and "Low salary." Mr. Lampl wrote to Glassdoor that "[m]any of the 'reviews' of LoanStreet are not being performed by employees" (LS-0000263). | Not applicable |
| 22 | DX-J (WT_000095) | Reddit, Oct. 2021 | "If their processes are so bad that it's possible check-in code without review, then that is a red flag by itself." | Score of 18 |
| 23 | DX-B (WT_000014) | Reddit, June 2021 | "[A]s of 6/20/2021 loanstreet software has shitty test cases and shitty CTO." | Score of 13 |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| **F. Removal of reviews and the authenticity of positive reviews** | | | | |
| 24 | DX-C (WT_000032) | Reddit, June 2021, thread on the removal of Defendant's Glassdoor review | "Promptly following the review being posted they put up a positive review that was so vague that I'm sure it's a fake used to take the first spot on the page and to pad their rating." A reply: "Yeah that was laughably bad." | Scores of 384 and 52 |
| 25 | DX-D (WT_000050) | Reddit, June 2021, thread on the removal of Defendant's post from Blind | "They're really working overtime today, aren't they? Geez. Other than Blind and Glassdoor -- and this forum, of course -- what other venues are left for airing these very valid warnings?" Another reader: "Seems like some people are going to have a real world lesson on the Streisand effect soon." | Scores of 110 and 35 |
| 26 | DX-F (WT_000069) | Reddit, Oct. 2021 | "Also lmao the Google reviews for LoanStreet are all 5 stars or 1 stars. The first 5 star review is by someone called Alyssa Lampl (same last name as the CEO, just a coincidence I'm sure)." | Score of 88 |
| 27 | DX-C (WT_000031) | Reddit, June 2021, thread on the removal of Defendant's Glassdoor review | "They really Barbara Streisand'd themselves. They wanted this to go away but in turn it's guaranteed this post will come on first page of google searches." Another reader: "Something doesn't sit right with the fact they took down the review rather than confront OP." | Scores of 25 and 17 |
| 28 | DX-X (WT_000193) | Blind, June 21, 2021 | "[H]as (probably fake) 'good' reviews in Glassdoor and Indeed." | 9 likes |
| 29 | DX-CF (WT_000913) | Blind, Aug. 7, 2021 | "No wonder they have 5.0 rating on blind." Another reader: "Did Blind remove the poster's review? They must have, because Loanstreet seems to have a 5.0 rating." | 5 likes and 3 likes |
| 30 | DX-C (WT_000033) | Reddit, June 2021 | "Speaking of their google maps reviews, they've clearly hired some people to post fake positive reviews." | Score of 5 |
| 31 | DX-NR (LS-0000398) | Google review quoted by Mr. Lampl to Google, Sept. 15, 2021 | "[T]here are number of fake five star reviews by people who are working for the company." | Not applicable |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| 32 | DX-UN (LS-0000061) | Slack, June 2021 (Plaintiffs' production) | "[L]ooks like they might have taken your review down." | None shown |
| 33 | DX-WQ (WT_003294) | Blind, Aug. 5, 2021 | "Blind probably got the 'fuck you I'm a lawyer' letter in the mail from LoanStreet and took it down." | 2 likes |
| 34 | DX-J (WT_000093) | Reddit, Oct. 2021 | "Dw lad this thread is being HARDDDD shilled. Check out the previous ones, they are waaaay more supportive of OP. It isnt a coincidence." | Score of 6 |
| 35 | DX-B (WT_000029) | Reddit, June 2021 | "[T]his subreddit automatically removes posts that get 3 or more reports (loanstreet execs maybe? lol)." | Score of 27 |
| 36 | DX-B (WT_000012) | Reddit, June 2021 | "Glassdoor will remove it because LoanStreet will pay them to." | Score of 21 |
| 37 | DX-J (WT_000147) | Reddit, Oct. 2021 | "[T]his reads like someone at loanstreet. virtually everyone who posted in previous threads were supportive." | Score of 18 |
| 38 | DX-J (WT_000097) | Reddit, Oct. 2021 | "Hi reputation management firm stooge #57." | Score of 12 |
| 39 | DX-C (WT_000046) | Reddit, June 2021 | "lmao, that head of HR Alyssa Gutman wrote a google review telling people to ignore the 1 star reviews." | Score of 2 |
| **G. The non-disparagement agreement and the condition on severance (Order at 40)** | | | | |
| 40 | DX-X (WT_000193) | Blind, June 21, 2021 | After Defendant wrote that "they condition severance for fired employees on signing a permanent non-disparagement agreement," a reader replied: "Wth… never thought about something like this." | 2 likes (Defendant's statement: 4 likes) |
| 41 | DX-X (WT_000194) | Blind, June 22, 2021 | "I hope OP did not sign a non-disparagement clause." | 0 likes |
| 42 | DX-WQ (WT_003295) | Blind, Aug. 5, 2021, thread linking the Complaint | "The employee signed a contract saying that a condition of employment is to not make disparaging comments. Then they fired the employee, which basically removes the restriction. Then the company decides to file a lawsuit based on such restriction. Which is basically groundless. This is crazy stupid lol." | 6 likes |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| 43 | DX-J (WT_000138) | Reddit, Oct. 2021 | "People in this sub know the power of bullshit contracts, NDAs, etc. and how companies abuse them." | Score of 14 |
| 44 | DX-J (WT_000099) | Reddit, Oct. 2021 | On Plaintiffs' contract claim: "It's more the penalty for the non disparagement. That's where I think the employer lacks a case." | Score of 20 |
| 45 | DX-J (WT_000131) | Reddit, Oct. 2021 | "I highly doubt that a contract that forbids someone from sharing true facts about a company that do not pertain to it's business itself is enforceable." | Score of 27 |
| 46 | DX-J (WT_000135) | Reddit, Oct. 2021 | "Talking shit about a company for being shitty cannot be made into a contract. Especially when you are coerced to sign or you don't have a job?" | Score of 1 |
| 47 | DX-BZ (WT_000778) | Blind, Oct. 2, 2023 | "Companies give severance as hush-money effectively." | 1 like |
| 48 | DX-KM (LS-0000068) | Slack, June 15, 2021 (Plaintiffs' production) | Defendant's message that LoanStreet "require[s] them to sign a permanent non-disparagement agreement in order to receive any severance," a statement not among those found defamatory. | 13 reactions (7 and 6) |
| **H. The change in the vesting date (statement dismissed, ECF No. 39 at 19-20, 23)** | | | | |
| 49 | DX-X (WT_000194) | Blind, June 21, 2021 | "Lately lot of startups do this practice. They offer you and delay the stock grant or change the terms." | 12 likes |
| 50 | DX-C (WT_000042) | Reddit, June 2021 | Replying to a reader who wrote that the vesting date Defendant described "[m]atches how it's been at literally every company I've ever worked at": "Not for me. Board approval happens later but vesting starts on hire date, not approval date." Another reader: "Even if it's common, it's good to call it out as bullshit. They could just as easily tie the vesting to your hire date." | Scores of 33 and 10 (the first reader's comment: 43) |
| 51 | DX-J (WT_000106) | Reddit, Oct. 2021 | "It's not normal; the vesting start date is almost always the date you were hired, even if the board meets later." | Score of 15 |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| 52 | DX-J (WT_000105 to 106) | Reddit, Oct. 2021 | "Which other companies keep you guessing for a year" about the date vesting begins? | Score of 17 |
| 53 | DX-J (WT_000106) | Reddit, Oct. 2021 | "Not knowing for a year and then waiting another half-year before vesting begins is ludicrous." | Score of 7 |
| 54 | DX-J (WT_000104) | Reddit, Oct. 2021 | "If your vesting schedule isn't backdated to your hire date, run fast and far away from that joke of a company." The same writer: "You simply claimed OP's vesting schedule was a normal schedule - it is not." | Scores of 6 and 3 |
| **I. The subpoena to Reddit (Order at 40-41, 67)** | | | | |
| 55 | DX-J (WT_000138) | Reddit, Oct. 2021 | "Using the full weight of your company to put legal pressure on an individual and subpoena reddit is highly immoral, full stop. That alone should be reputation damage enough to ruin this company." | Score of 14 |
| 56 | DX-J (WT_000128) | Reddit, Oct. 2021 | "I don't care if it's usual or not, it's disgusting to put this level of legal pressure on an individual." Another reader: "The 'reputation management' stuff feels a bit slimy." | Scores of 10 and 9 |
| 57 | DX-J (WT_000128 to 129) | Reddit, Oct. 2021 | "There is no reason for them to know every Reddit account OP has ever had. Simple as that." The writer added that the request "seems to be way too broad." | Score of 5 |
| **J. The lawsuit (Order at 40-41, 67)** | | | | |
| 58 | DX-CA (WT_000792) | Reddit, 2023, thread on the Court's ruling | "The fact that LoanStreet sued their former employee for defamation is evidence enough that I would never work for them." | Score of 407 |
| 59 | DX-J (WT_000093) | Reddit, Oct. 2021 | "But who wants to work somewhere that would go to these lengths to put this much legal pressure on a former employee? It's commonplace, but it's disgusting." Another reader: "I simply said not interested because I don't want to risk getting entangled in a lawsuit." | Scores of 293 and 208 |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| 60 | DX-F (WT_000069) | Reddit, Oct. 2021, comments on Defendant's post about the lawsuit | "Wow... assholes continue to be assholes. jfc, this is beyond business... they're bad people." | Score of 256 |
| 61 | DX-F (WT_000058) | Reddit, Oct. 2021, comments on Defendant's post about the lawsuit | "This. OP needs to talk to SLAPP lawyers." A later reply: "This is exactly what SLAPP is for." | Scores of 204 and 67 |
| 62 | DX-J (WT_000099) | Reddit, Oct. 2021 | "[A]ny company petty enough to try lawsuits like this for reputation management is probably not on the up and up." | Score of 76 |
| 63 | DX-J (WT_000112) | Reddit, Oct. 2021 | "There are elements of this lawsuit that look pretty frivolous. The trademark claim, for instance." | Score of 47 |
| 64 | DX-J (WT_000108) | Reddit, Oct. 2021 | On the advertisements reproduced in the Complaint: "Here is a screenshot of the ads, as copied from the legal complaint. This is clearly a review, not an impersonation of LoanStreet." | Score of 25 |
| 65 | DX-J (WT_000100) | Reddit, Oct. 2021 | "Still, that's extremely excessive on LoanStreet's side. I can take out ads right now saying Reddit, Facebook, etc. suck and none of those companies are going to sue me." | Score of 6 |
| 66 | DX-CA (WT_000794) | Reddit, 2023, thread on the Court's ruling | "LoanStreet is a shit show suing employees, that's a fact." Another reader: "If he said he won't work there because of the original post, that increases damages. But he is saying because they sued at all, that is a separate issue." | Scores of 32 and 19 |
| 67 | DX-CB (WT_000826) | Reddit, 2023, thread on the Court's ruling | "Him losing this lawsuit doesnt in any way confirm the company's innocence to me. It clearly wasnt a fair fight and I'm fairly convinced by these threads that the company is slimy AF." | Score of 26 |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| 68 | DX-CA (WT_000810) | Reddit, 2023, thread on the Court's ruling | "I mean yeah but I worked at exactly 1 shit show like this and later on I saw their Glassdoor absolutely roasted the owners. They're at like a 2.5/5 with a bunch of fake reviews from management. Just be aware that asshat founders like this exist and do want to take advantage of people. The fact that the guy sued means I ain't ever working with that clown." (The Glassdoor page described is that of the writer's former employer.) | Score of 7 |
| 69 | DX-CA (WT_000792) | Reddit, 2023, thread on the Court's ruling | "The fact that a corporation went after a single employee for what seemed like revenge for someone talking nasty about them just screams petty. No one should ever think of working for them or even doing business." | Score of 87 |
| 70 | DX-J (WT_000111 to 112) | Reddit, Oct. 2021 | "[T]his looks like a throw everything at the wall to get them to settle/fold. At this point, have they even shown they've suffered any loss?" | Score of 57 |
| 71 | DX-J (WT_000133) | Reddit, Oct. 2021 | On the trademark claim: "This is not how trademark law works." Another reader: "There is no trademark infringement here. LoanStreet's complaint is simply that he used their name in his blog post." A third: "What a BS claim by LoanStreet." | Scores of 36, 25 and 2 |
| 72 | DX-OE (LS-0000420) | E-mails, Mr. Lampl to Google, Oct. 8, 2021 | Mr. Lampl reported "two more one-star reviews," one reading "bad labor practices," and then wrote: "I figured out what is going on. Wyatt Troia posted again to Reddit," linking Defendant's post of that day about the lawsuit (DX-F). | Not applicable |
| 73 | DX-PM (LS-0000500) | E-mail, Mr. Lampl to Google, Oct. 11, 2023 | "[W]e recently received a final judgment in our favor from a federal court . . . . That judgement then made its way to Reddit which has stirred these new, fake reviews." | Not applicable |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| 74 | DX-NR (LS-0000398); PX-29 | Google review by "Andrew" (one star), quoted by Mr. Lampl to Google, Sept. 15, 2021 | "Good businesses don't need to sue former employees. This is not a good business." | Not applicable |
| 75 | DX-OD (LS-0000418); PX-34 | Message submitted through the contact form on LoanStreet's website, Oct. 8, 2021 (Plaintiffs' production) | "Now you're spending a bunch of money on this lawsuit that you could've saved by treating your employees well in the first place." | Not applicable |
| 76 | DX-WQ (WT_003293) | Blind, Aug. 5, 2021 | "The lawsuit now makes me think the company is just malicious as a whole." The writer added that "open lawsuits like this have really negative impacts on future funding rounds." | 28 likes |
| 77 | DX-UF (LS-0000049); DX-TQ | Blind, 2021 (Plaintiffs' production) | "Even if LoanStreet was right, this just makes it 10x worse for them. If they stayed silent, this would go away. Now they have to go through the negative cycle again. I'd hate to be an investor in this company." | 9 likes |
| 78 | DX-CF (WT_000912 to 913) | Blind, Aug. 7, 2021, thread on the Business Insider article | "Well I know where I'll never apply." | 6 likes |
| 79 | DX-UH (LS-0000053) | Reddit (Plaintiffs' production) | "[A]ny company that sues an individual for three million dollars is a dog shit company that deserves to be dragged through the mud." Another reader: "I would never work at this company because regardless of the validity of the claims, there are too many companies out there offering me employment without ongoing drama." | Score of 15 (first comment) |

| No. | Source | Forum and date | What was written | Response shown |
|---|---|---|---|---|
| 80 | DX-J (WT_000120) | Reddit, Oct. 2021 | "Conclusion after reading both sides of the story. I would never work for LS and I would never hire you as an employee." | Score of 103 |
| 81 | DX-CA (WT_000788) | Reddit, 2023, thread on the Court's ruling | "Any employer that sues employees for speaking out or working for a competitor should go on a NEVER WORK FOR THEM LIST." | Score of 21 |
| 82 | DX-BN (WT_000516, 519) | Slack, 2021 | "This is the kind of behavior that deserves to be fully exposed and that alone will cost them more than anything they could dream to win from you in court." Another member: "i love it when government money is used to oppress free speech," linking a page on LoanStreet's Paycheck Protection Program loan. | None shown |
| 83 | DX-F (WT_000071) | Reddit, Oct. 2021, comments on Defendant's post about the lawsuit | "[S]eems like some real assholes and I hope you get 'em good." | Score of 24 |
| 84 | DX-CA (WT_000811) | Reddit, 2023, thread on the Court's ruling | "LoanStreet can kiss my ass. Avoid companies that sue over a post like this." | Score of 23 |
| 85 | DX-CA (WT_000793) | Reddit, 2023, thread on the Court's ruling | "Yeah fuck them and the new company they come up with to avoid bad publicity." A reply: "They lost in the court of public opinion." Another reader on the same page: "If they are willing to do this to a prior employee, then how to they treat their current employees?" | Scores of 17, 23 and 2 |
| 86 | DX-CA (WT_000794 to 795) | Reddit, 2023, thread on the Court's ruling | "I am just saying I am not gonna work for a company who sues former employees over this, even if the guy took out ads and went beyond name and shaming." | Score of 12 |
| 87 | DX-J (WT_000140) | Reddit, Oct. 2021 | "Classic bullying. I hope you win this." | Score of 9 |
| 88 | DX-F (WT_000080) | Reddit, Oct. 2021 | "Hope you kick these scumbags into the sun." | Score of 7 |

| **No.** | **Source** | **Forum and date** | **What was written** | **Response shown** |
|---|---|---|---|---|
| 89 | DX-F (WT_000070) | Reddit, Oct. 2021 | "[T]heir butt hurt SLAPP lawsuits definitely speak for themselves. What a scumbag outfit." | Score of 4 |
| 90 | DX-F (WT_000064) | Reddit, Oct. 2021 | "[Y]ou can literally sue someone into settling because they cant afford legal fees. Or just threaten to sue someone into silence about a topic, because they cant afford the fees (kind of like OP)." | Score of 4 |
| 91 | DX-CA (WT_000817) | Reddit, 2023, thread on the Court's ruling | "How petty does a company have to be to sue a former employee. Now when I will read about Loanstreet, I will think about that company who sued a naive idiot. Big fish squashing ants." | Score of 3 |
| 92 | DX-LP (LS-0000190) | Message from Shan Batla to a LoanStreet recruiter (Plaintiffs' production; Schedule 2, No. 2) | "Sorry I do not work for companies that sue their former employees." | Not applicable |
| 93 | DX-QT (LS-0001417 to 1419); PX-77 | E-mail from Vin Shahrdar, Nov. 1, 2021 (Plaintiffs' production; Schedule 2, No. 5) | "[A]fter reading the story and the news articles about the former employee's story, I reduced to explore other opportunities." | Not applicable |
| 94 | DX-QU (LS-0001420 to 1421) | E-mail from James Dinh, May 2022 (Plaintiffs' production; Schedule 2, No. 6) | "Has this case been settled? What was the outcome?" | Not applicable |
| 95 | DX-AAG (LS-0000095) | Reddit comments produced by Plaintiffs (Schedule 2, No. 14) | "Loanstreet actually asked me if I want to join . . . . I simply said not interested because I don't want to risk getting entangled in a lawsuit." | Score of 145 as captured by Plaintiffs |

**SCHEDULE 2**
**Candidate Communications Produced by Plaintiffs and Relied On for Damages**

All documents are from Plaintiffs' production. "Resp. No. 3" means the document is cited in LoanStreet's sworn answer to Interrogatory No. 3 (DX-SP) as reflecting a prospective employee whose relationship with Plaintiffs was undermined or damaged. "Report" refers to the Adamson Report (ECF No. 164-20).

| No. | Bates No. and sender | Date | Plaintiffs' use | What the sender wrote |
|---|---|---|---|---|
| 1 | LS-0000189 (Mindy Huynh) | Undated | Resp. No. 3; Report at 20 | "Oof not a way to run a startup," with a link to Defendant's June 19, 2021 Reddit post ("Name and Shame: LoanStreet (NY) cheated me out of equity"). The document does not show that the sender applied for or was offered a position. |
| 2 | LS-0000190 (Shan Batla) | Undated | Resp. No. 3; Report at 20 | "Sorry I do not work for companies that sue their former employees" (as quoted in the Report). |
| 3 | LS-0000191 (Eric Svitok) | Undated | Resp. No. 3; PX-15; Report at 20 | "[T]hank you for reaching out, but I am not interested at this time. Heard terrible things about loanstreet." |
| 4 | LS-0001414 (Oluwatobi Adebiyi) | Nov. 9, 2021 | Resp. No. 3; PX-76 | "I would like to withdraw my application for this position." |
| 5 | LS-0001417 to 1419 (Vin Shahrdar) | Nov. 1, 2021 | Resp. No. 3; PX-77; Report at 20 | "[A]fter reading the story and the news articles about the former employee's story, I reduced to explore other opportunities." |
| 6 | LS-0001420 to 1421 (James Dinh) | May 2022 | Resp. No. 3; Report at 20 | "I did a quick search on the engineer who left the bad glassdoor and social media reviews, Wyatt Troia, and it's a bit worrisome. Has this case been settled? What was the outcome?" |
| 7 | LS-0001422 to 1423 (Gordon Ko) | Feb. 2022 | Resp. No. 3; PX-78 | "Unfortunately, I decided to move on with other opportunities." |
| 8 | LS-0001424 to 1425 (Aaron Krubiner) | June 1, 2022 | Resp. No. 3 | "I will not be available to interview and would like to withdraw my application for the position." |

| No. | Bates No. and sender | Date | Plaintiffs' use | What the sender wrote |
|---|---|---|---|---|
| 9 | LS-0001426 to 1428 (Olivia Wu) | Oct. 2021 | Resp. No. 3 | "After careful consideration, I don't think this opportunity would be a good fit for me." |
| 10 | LS-0001429 to 1430 (Kylie Cannon) | Feb. 16, 2022 | Resp. No. 3 | "Unfortunately, I will need to withdraw my application from consideration at this time." |
| 11 | LS-0001431 to 1434 (Zackery Ward) | Jan. 26, 2022 | Resp. No. 3 | "Unrelated to my conversation with Brad, I've decided that LoanStreet is not the right fit for me at this time." |
| 12 | LS-0001435 (Chelsea Alleyne-Parsons) | Jan. 19, 2022 | Resp. No. 3 | "I have decided to withdraw my application at this time." |
| 13 | LS-0001439 to 1440 (Melissa Hougie) | Feb. 2022 | Resp. No. 3; Report at 20 | "I . . . am confident I could crush the job description for this role. To be completely candid, however, I am concerned with three things after reading the reviews from the ex-employee": "Value of equity and vesting schedule"; "The fact that your Head of Talent is married to your CEO. I view this as a conflict of interest"; and "LoanStreet's culture." On culture: "I didn't like the mentioned joke about the CEO wishing he could chain people to their desks if this was true." |
| 14 | LS-0000095 | Undated | Report at 19-20 | Online comments, including: "I simply said not interested because I don't want to risk getting entangled in a lawsuit." |

## SCHEDULE 3
## Documents, by Item of Evidence (Part III.A)

This Schedule lists the documents offered in Part III.A under the item of evidence to which each belongs. Documents cited only in Schedule 1, 2 or 4 are identified there. Some documents in this Schedule are also among those Defendant asks the Court to admit (Parts I.E and II.A); the rest are offered for the record under Federal Rule of Evidence 103(a)(2). "Report" refers to the Adamson Report (ECF No. 164-20). Exhibits A through M are attached to this offer.

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| **A. The lawsuit as the stated reason for a reaction Plaintiffs claim as damage. Witnesses: Mr. Adamson, Ms. Guttman, Ms. Doohan and Mr. Lampl on cross-examination; the senders and declarants (ECF No. 282-1).** | | | | |
| 1 | DX-LP (LS-0000190) | Message from Shan Batla to a LoanStreet recruiter. | The sender declined because of the lawsuit: "Sorry I do not work for companies that sue their former employees." | ECF No. 282-46; ECF No. 250-8; quoted in Report at 20 |
| 2 | DX-QT (LS-0001417 to 1419); PX-77 | E-mail from Vin Shahrdar, Nov. 1, 2021. | The sender ended the process "after reading the story and the news articles about the former employee's story." | ECF No. 282-50; ECF No. 250-9; quoted in Report at 20 |
| 3 | DX-QU (LS-0001420 to 1421) | E-mail from James Dinh, May 2022. | The sender wrote that what he had found about "the engineer who left the bad glassdoor and social media reviews" was "a bit worrisome," and asked: "Has this case been settled? What was the outcome?" The e-mail does not state a withdrawal. | ECF No. 282-51; ECF No. 250-9; quoted in Report at 20 |
| 4 | DX-AAG (LS-0000095) | Reddit comments produced by Plaintiffs. | A commenter declined LoanStreet's approach because of the lawsuit: "I simply said not interested because I don't want to risk getting entangled in a lawsuit." | ECF No. 250-10; quoted in Report at 19-20 |
| 5 | DX-UE (LS-0000047) | Reddit comments produced by Plaintiffs. | A commenter's objection was to the lawsuit: "who wants to work somewhere that would go to these lengths to put this much legal pressure on a former employee?" | ECF No. 250-10 |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| 6 | DX-RU (WT_003184 ) | Signed declaration of Kylie Cannon, the sender of LS-0001429. | She did not read the review, and her reason was the lawsuit: she "did not read the Glassdoor review itself," "read reports from public news outlets about the lawsuit," and withdrew "based solely on the company's decision to pursue legal action against a former employee for posting a negative review." | ECF No. 282-33; ECF No. 264-2 |
| 7 | DX-RL (WT_003141 ) | Signed declaration of Mindy Huynh, the sender of LS-0000189. | The person Plaintiffs identify as a prospective employee was not one: "I was never a candidate or applicant for employment with LoanStreet. I did not apply for a position, did not interview, did not communicate with anyone at the company regarding employment." | ECF No. 282-32; ECF No. 264-1 |
| **B. Press coverage of the lawsuit. Witnesses: Mr. Adamson and Mr. Lampl on cross-examination; Defendant.** | | | | |
| 8 | DX-KS (LS-0000116 to 125); PX-8 | Business Insider, Aug. 3, 2021, "A Bad Glassdoor Review Led to a $1 Million Lawsuit." | The "news articles" candidates cited reported on the lawsuit: Defendant "has been hit with a million-dollar lawsuit over his posts criticizing the company." The article also reports LoanStreet's position that his account is false. | ECF No. 273-5 (Defendant's copy) |
| 9 | DX-KT (LS-0000126 to 132) | Ladders, Aug. 3, 2021, and The Hustle, Aug. 5, 2021. | Both articles report the lawsuit. Ladders: "According to Business Insider, LoanStreet is now suing Troia for defamation" (LS-0000127). The Hustle, under the headline "Could talking smack about your ex-job cost you millions?": "An employee went scorched earth when he reviewed the tech company that fired him. Now, they're suing for $1m." (LS-0000129.) | Exhibit A |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| 10 | DX-KU (LS-0000133 to 142) | India Today. | The headline is the lawsuit: "Software engineer leaves poor review for his company on Glassdoor, now the company is suing him." | Exhibit B |
| 11 | DX-VV (WT_003242 to 3245) | The Business Insider article as updated Jan. 28, 2026. | Coverage of the lawsuit continued into 2026, and the publisher corrected its report of Plaintiffs' allegations: "This story was updated to clarify that it was alleged, and not confirmed, that Troia made two posts on Glassdoor." | ECF No. 250-12 |
| 12 | DX-VY (WT_003249 to 3257) | Technology & Marketing Law Blog, Sept. 9, 2022, by Eric Goldman, "Griper's Keyword Ads May Constitute False Advertising (Huh?)," on the Court's August 2022 ruling in this case. | Published criticism, naming LoanStreet, of Plaintiffs' theory that the advertisements violate the Lanham Act. The author wrote that "there should not be a 'use in commerce' when the advertiser (here, Troia) doesn't actually offer any goods or services in the marketplace," and, of the claim that the advertisements diverted users: "None of this is diversion; it's consumer education." (WT_003251.) | ECF No. 250-13 |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| 13 | DX-VX (WT_003258 to 3264) | Technology & Marketing Law Blog, Nov. 15, 2025, by the same author, "The Initial Interest Confusion Doctrine Refuses to Die," on the Court's September 2025 ruling. | Published criticism of Plaintiffs' claims, of their expert, and of Plaintiffs continued through 2025: "If you're a trademark plaintiff and you're only alleging initial interest confusion, you should question your life choices"; of Plaintiffs' expert, "I question the expertise of that so-called 'expert'"; "Gripers and their targets are not commercially competing against each other"; and "the company plaintiff might be OK with the lawfare of grinding its griping former employee into a financial pulp." (WT_003260 to 3261.) The author writes that he teaches an Internet Law course (WT_003261). | ECF No. 250-14 |
| **C. Public discussion of the lawsuit. Witnesses: Defendant, who wrote or captured each item; Mr. Adamson on cross-examination.** | | | | |
| 14 | DX-E (WT_000052 to 053) | Reddit post by Defendant, July 27, 2021, announcing that LoanStreet had sued him. | Defendant's post told readers: "LoanStreet and its CEO Ian Lampl are suing me for at least three million dollars in U.S. federal court." Offered for the date on which readers of the forum were told of the lawsuit. | ECF No. 250-15 |
| 15 | DX-F (WT_000054 to 081); PX-97 | Reddit thread, Oct. 8, 2021, "LoanStreet (NY) is suing me for over $3M in federal court," with readers' comments. | Readers' comments address the lawsuit itself. For example, a comment shown with a score of 15: "This lawsuit is the only thing a lot of people are going to know about 'Loan Street', and even if you assume that OP is an asshole kid who's completely full of shit, the most generous interpretation of events in the company's favor STILL reflects really badly on them." (WT_000067.) | ECF No. 250-16 |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| 16 | DX-J (WT_000092 to 153) | Reddit thread, Oct. 27, 2021, about Plaintiffs' request for a subpoena to Reddit, with readers' comments. | Readers' comments respond to Plaintiffs' steps in the litigation. At WT_000093, comments shown with scores of 293 ("who wants to work somewhere that would go to these lengths to put this much legal pressure on a former employee?") and 208 ("I simply said not interested because I don't want to risk getting entangled in a lawsuit"). At WT_000120, a comment shown with a score of 103: "Conclusion after reading both sides of the story. I would never work for LS and I would never hire you as an employee." | ECF No. 250-17 |
| 17 | DX-K (WT_000154 to 156) | Reddit post by another user: "LoanStreet sues former employee for $3 million in federal court for sharing story of conditions for workers at company." | A user other than Defendant posted the lawsuit to the forum under the title quoted at left. The page shows that the moderators later removed the post (WT_000154). | ECF No. 250-18 |
| 18 | DX-BN (WT_000515 to 521) | Slack post about the lawsuit, with responses. | Members responded to the lawsuit: "This is the kind of behavior that deserves to be fully exposed and that alone will cost them more than anything they could dream to win from you in court" (WT_000516); "i love it when government money is used to oppress free speech" (WT_000519). | ECF No. 250-19 |

| **No.** | **Exhibit** | **Document** | **What it shows** | **Where it appears** |
|---|---|---|---|---|
| 19 | DX-CA (WT_000780 to 822) | Reddit thread by another user: "FYI: the guy who 'Name and Shamed' his employer on this subreddit lost the defamation lawsuit against him." | The Court's ruling, publicized by a third party, renewed public discussion of LoanStreet. At WT_000792, a comment shown with a score of 407: "The fact that LoanStreet sued their former employee for defamation is evidence enough that I would never work for them." | Exhibit H |
| 20 | DX-CB (WT_000823 to 890) | Readers' comments on the thread at No. 19. | The comments discuss the ruling and the lawsuit. For example, a comment shown with a score of 26: "Him losing this lawsuit doesnt in any way confirm the company's innocence to me. It clearly wasnt a fair fight and I'm fairly convinced by these threads that the company is slimy AF." (WT_000826.) | Exhibit H |
| 21 | DX-BZ (WT_000775 to 779) | Blind thread, Oct. 2, 2023, about the Court's ruling, with a reader poll (captured Jan. 20, 2025). | Reactions followed the ruling, and readers gave their own reasons: 85.3% (29 of 34) chose "Loanstreet bad"; one wrote, "That was a crappy move by the company. I got laid off last year 3 months before my 12 month cliff, but the company at least gave a prorated vest." | Exhibit G |
| 22 | DX-WO (WT_003284 to 3287) | The thread at No. 21 as captured July 18, 2026. | In the same reader poll, as captured on that date, 31 of 36 participants (86.1%) chose "Loanstreet bad" and 5 (13.9%) chose "Loanstreet good." | Exhibit G |
| 23 | DX-CC (WT_000891 to 893) | Blind thread, Oct. 9, 2022, "Loan Street Drama Update?" | A commenter attributed his view to the lawsuit: "They proved his point about toxicity by taking him to court." | Exhibit G |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| 24 | DX-CD (WT_000894 to 895) | Blind post, "Loanstreet (NY) is suing former employee for talking about mistreatment," linking the Business Insider article. | A user other than Defendant posted on Oct. 8, 2021, under the title quoted at left: "Business Insider has a news story on it. Its over a negative Glassdoor review." (WT_000894.) | Exhibit G |
| 25 | DX-CF (WT_000909 to 913) | Blind thread, Aug. 7, 2021, "Our fellow blinder who is getting sued by LoanStreet made media headlines." | Comments respond to the lawsuit: "Wow. What a shitty company. Please don't sue me for saying that" (28 likes, WT_000910); "LoanStreet will find out what the Streisand Effect is in 3, 2, 1…" (23 likes, WT_000911); "Absolutely insane, I hope that this lawsuit ends up being a massive waste of $" (15 likes, WT_000911). | Exhibit G |
| 26 | DX-WN (WT_003283 ) | Blind post, Apr. 12, 2023, "What's up with Loan Street INC in NYC?" | The post states: "There was a name and shame post about Loan Street LLC on r/cscareerquestions on Reddit. It was some shit drama. Today, I saw their job post again on LinkedIn. Anyone knows any particular reason what is going on inside?" | Exhibit G |
| 27 | DX-WQ (WT_003292 to 3298) | Blind thread, Aug. 5, 2021, "Employer suing Blind Poster for reviews," linking the Complaint. | Fifteen days after the Complaint was filed, a user posted a link to a file titled "Federal Court Complaint 19 Jul 21.pdf" and wrote: "Read about it this morning. That a blind poster is being sued for defamation by loan street for a bad review on Glassdoor and Blind!!!" (WT_003292.) | Exhibit G |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| **D. Claims that are no longer in the case. Witnesses: Defendant; Mr. Lampl and Ms. Guttman on cross-examination as to the notice.** | | | | |
| 28 | DX-CG (WT_000914 to 915) | Charge filed by Defendant with the National Labor Relations Board. | The charge concerned the provision the contract claim rested on: LoanStreet "requires employees to sign a non-disparagement agreement, which it is attempting to enforce against me, a former employee." | Exhibit C |
| 29 | DX-EF (WT_001316 to 1321) | Settlement agreement and Notice to Employees, NLRB Case 02-CA-280528 (2022). | LoanStreet's own notice to its workforce. The settlement required LoanStreet to post a signed notice at its office, to keep it on "all channels of its 'Slack App' used to transmit messages company-wide" for 60 days, and to e-mail it to "all current and former employees employed by the Charged Party from May 1, 2021." The notice states: "**WE WILL NOT** file, maintain, and prosecute a lawsuit against you that is preempted by federal law, and which interferes with activity protected by the National Labor Relations Act." It also shows how the contract claim left the case: LoanStreet agreed to "withdraw and, if necessary, otherwise seek to dismiss any pending lawsuit, or portions of any pending lawsuit that alleges breach of the 'Non-Disparagement' provision," and to "make any defendant whole for expenses incurred defending" it. | ECF No. 282-21; ECF No. 250-3 |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| 30 | DX-CL (WT_000961 to 971) | Employee Non-Disclosure and Invention Assignment Agreement. | Section 4, "Non-Solicitation; Non-Compete; Non-Disparagement": "I will not do or say (or omit to do or say) anything that is intended, or might reasonably be expected, to harm or disparage the Company . . . or to impair the reputation of any of the foregoing." The contract claim was based on this provision. | ECF No. 282-20 |
| **E. Statements about LoanStreet by persons other than Defendant (not offered for their truth). Witnesses: Defendant, who captured or received each item; Ms. Guttman and Mr. Lampl on cross-examination as to documents Plaintiffs produced.** | | | | |
| 31 | DX-DV (WT_001211 to 1218) | Glassdoor review labeled "Former employee," Nov. 13, 2024. | The review states the writer's own criticism: "lie about how the company was doing and then let go 50% of the company." | ECF No. 282-25 |
| 32 | DX-DX (WT_001227 to 1234) | Glassdoor review labeled "Former employee," June 27, 2021, "Placing my trust in LoanStreet was a costly mistake." | A reviewer identified as a "Former employee, less than 1 year" wrote that senior management was "too eager to hire, and too eager to fire." Marked helpful 53 times as captured Jan. 20, 2025 (WT_001229). | ECF No. 282-25 |
| 33 | DX-DY (WT_001235 to 1241) | Glassdoor review labeled "Former employee," Feb. 6, 2022, "Stay away." | A reviewer identified as a "Former employee, more than 1 year" wrote: "[T]his company lacks diversity and everyone there is white and went to princeton." (WT_001236 to 1237.) Marked helpful 18 times as captured Jan. 20, 2025 (WT_001237). | ECF No. 282-25 |

| **No.** | **Exhibit** | **Document** | **What it shows** | **Where it appears** |
|---|---|---|---|---|
| 34 | DX-B (WT_000010) | Readers' comments on Defendant's June 19, 2021 Reddit post. | A comment shown with a score of 703 responded to a statement not among those found defamatory: "head of HR is the CEOs wife .. fantastic conflict of interest." A reply shown with a score of 185: "Humongous, neon sign red flag lol." | Exhibit J |
| 35 | DX-C (WT_000035) | Readers' comments on Defendant's Reddit post about the removal of his Glassdoor review. | A reader relayed a review by someone else: "One review said they were paying external recruiters to tell them if any current employees sent them a prospective resume ... such that the company would then promptly fire them." Shown with a score of 20. | Exhibit J |
| 36 | DX-B (WT_000022 to 023) | Readers' comments on Defendant's June 19, 2021 Reddit post. | A reader responded to Defendant's account of his firing, a subject of the dismissed statements: "If your story's accurate, the circumstances surrounding your firing suck mightily." Shown with a score of 32. The full comment is included. | Exhibit J |
| 37 | DX-RN to DX-RT (WT_003143 to 3183) | LoanStreet's Glassdoor reviews page, captured Feb. 21, 2026 in seven parts. | LoanStreet's overall standing with reviewers remained high: a 4.1 rating and "80% would recommend to a friend (32 total reviews)." The page also carries the negative reviews of others. Offered to show how LoanStreet stood with reviewers on the site as of the capture, which bears on the extent of any harm. | Exhibit D |
| 38 | DX-CE (WT_000896 to 906) | LoanStreet's company reviews page on Blind, captured Jan. 20, 2025. | A rating of 4.6 from 7 reviews. Offered for the same purpose as No. 37. | Exhibit E |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| 39 | DX-KN (LS-0000072) | LinkedIn post by Kevin Liu, produced by Plaintiffs. | The third party's own characterization, prompted by the lawsuit: "a seemingly toxic and unethical company, LoanStreet inc. Now they are suing the former employee." | Exhibit I |
| 40 | DX-KO (LS-0000105); PX-6 | LinkedIn post by Mr. Liu sharing the Reddit post. | The third party wrote: "LinkedIn is often overflowing with performative toxic positivity. So let's enjoy a refreshing, delicious takedown of an exploitative employer: LoanStreet Inc." The post shows 6 reactions. The words "exploitative employer" are the third party's own. | ECF No. 282-44 |
| 41 | DX-UR (LS-0000106); PX-7 | Post by Blind on Twitter about the dispute. | Blind's account on Twitter (TeamBlind) posted: "LoanStreet (NYC startup) cheated employee out of equity and then fired the employee. Lately, some startups have been doing this practice and victims are sharing their stories on Blind. Make note and be aware!" The account that published it is Blind's, not Defendant's. | Exhibit I |
| 42 | DX-FO (WT_001597) | Unsolicited LinkedIn message to Defendant from Nicholas Schrider. | A stranger contacted Defendant because of the lawsuit: "I have info that may be useful for you in your lawsuit." | ECF No. 282-34 |
| 43 | DX-FP (WT_001598) | Defendant's notes of a Feb. 9, 2022 call with Mr. Schrider. | Defendant's note records that the caller "[s]ays he has phone calls proving" that a credit union "and LoanStreet engaged in fraud when syndicating loans," "[w]ants to remain anonymous in public records," and "[t]hought we could make use of this information to show that LoanStreet is a bad actor." | ECF No. 282-34 |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| 44 | DX-FQ (WT_001599) | Defendant's notes of a Jan. 19, 2025 call with Mr. Schrider. | Defendant's note records the caller saying that "LS was a broker-dealer on a program where PF did things that were wrong." | ECF No. 282-34 |
| **F. Former employees' own views. Witness: Defendant, who received the messages.** | | | | |
| 45 | DX-AK (WT_000436) | LinkedIn message from JP Wartman, a former LoanStreet employee, July 28, 2021. | The former employee wrote: "Sorry to hear about the lawsuit. Ian misled me about compensation me as well. I respect you sticking up for yourself." | ECF No. 282-59 |
| 46 | DX-AL (WT_000437 to 439) | LinkedIn messages from Mark Chackerian, a former LoanStreet engineer, Oct. 2021. | A former employee saw the lawsuit as a source of bad publicity. On Oct. 8, 2021, he wrote: "Good luck on the lawsuit! They are just digging a hole of bad publicity that may be difficult to scrub from the internet, although I suspect they will try to do that too." (WT_000437.) On Oct. 16, 2021, he wrote that "it took me a while to get over LS," that he "found a much much better job and company," and that his LoanStreet equity was "a non-liquid asset that tied me to a company that I want to see crash and burn" (WT_000438). | ECF No. 282-60 |
| **G. Defendant's performance and termination (purpose as stated in ECF No. 238 at 17-18). Witnesses: Defendant; the authors of the documents.** | | | | |
| 47 | DX-VO (WT_003236) | Recommendation letter from Ranna Bansal, Defendant's direct manager at LoanStreet. | His manager's assessment of his work: "I have the utmost confidence that Wyatt would excel in a graduate computer science program," and "I recommend him to you emphatically." | ECF No. 282-22; ECF No. 250-5 |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| 48 | DX-VN (WT_003234 to 3235) | E-mails, Feb. 12, 2020, with Matthias Jenny, a senior engineer at LoanStreet and a coworker of Defendant, who agreed to write a recommendation. | On Feb. 12, 2020, four months before the termination, Defendant thanked the engineer "for agreeing to write a letter of recommendation for me," and the engineer replied the same day: "That's super helpful, thank you! . . . I'll be sure to mention my academic background and my current position." (WT_003234 to 3235.) | ECF No. 250-6 |
| 49 | DX-ED (WT_001304 to 1313) | Defendant's notes of career discussions with LoanStreet managers. | The notes record, from a Jan. 27, 2020 review, "You made a big impact with admintools," and, under the heading "Alyssa" (Ms. Guttman), "Your professional exp, analytical skills, thinking would make you a great manager" and "They really value me. Think I have a ton of potential." (WT_001304.) | ECF No. 282-11; ECF No. 250-7 |
| 50 | DX-CN (WT_000975 to 979) | Offer letter, Feb. 28, 2019. | Section 2(b): an option to purchase 885 shares that "will vest and become exercisable as to 25% of the shares subject to the Option on the first anniversary of the vesting commencement date," with the "vesting schedule of the stock options" to be set forth in "a separate stock option grant agreement." (WT_000975.) | ECF No. 282-18 |
| 51 | DX-CO (WT_000980 to 995) | Stock Option Grant Agreement. | The vesting term: "The Option will vest and become exercisable as to 25% of the shares subject to the Option on the first anniversary of the Date of Grant above." (WT_000981.) | ECF No. 282-19 |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| **H. Plaintiffs' response to the offer to modify the posts; the use of the replacement review. Witnesses: Defendant; Mr. Lampl on cross-examination.** | | | | |
| 52 | DX-BQ (WT_000689 to 692) | E-mails between counsel, July 1 and 2, 2021. | Before suit, Defendant's counsel wrote that Defendant "is willing to sanitize or remove allegations that LoanStreet finds problematic which allege crimes or other serious allegations." Plaintiffs' counsel answered: "your client's offer to remove only those portions of his posts that are defamatory isn't going to cut it. Indeed, he'll need to remove the statements in their entirety as well as refrain from posting anything further going forward." He added that, absent agreement to those demands and to "pay for an online reputation management service," "LoanStreet will be proceeding with the filing of a complaint." (WT_000691.) The next day Defendant's counsel replied: "He modified the posts, but I think that is the best LoanStreet is going to get." (WT_000690.) | ECF No. 250-20; ECF No. 282-7 |
| 53 | DX-Y (WT_000200 to 201) | The replacement Glassdoor review, submitted June 21, 2021 and accepted by Glassdoor on June 22, 2021 (DX-DQ at WT_001206; Exhibit M). | The review that readers saw from June 22, 2021 on. It states: "To be clear: it seems LoanStreet didn't do anything illegal (unless a NY judge would give some needed muscle to the 'implied covenant of good faith and fair dealing' that exists in all contracts), but I think they treated me and other employees extremely unethically." (WT_000200.) | ECF No. 250-11 |

| No. | Exhibit | Document | What it shows | Where it appears |
|---|---|---|---|---|
| **I. Compensation data (not offered for its truth). Witnesses: Defendant, who captured each page; Ms. Guttman on cross-examination.** | | | | |
| 54 | DX-BV (WT_000744 to 748) | Levels.fyi page for LoanStreet, captured Jan. 20, 2025. | LoanStreet's posted pay: "The median Software Engineer compensation in United States package at LoanStreet totals $139K per year." | Exhibit F |
| 55 | DX-BW (WT_000749 to 756) | Levels.fyi page for software engineers in the United States. | The posted market median was higher: $182,000. | Exhibit F |
| 56 | DX-BX (WT_000757 to 765) | Levels.fyi page for software engineers in the New York City area. | The posted local median was higher: $185,000. | Exhibit F |
| 57 | DX-BY (WT_000766 to 774) | Glassdoor salary page for LoanStreet engineering. | The page lists "21 Salaries (for 5 job titles)" and, for Software Engineer, total pay of "$103K-$145K" from 16 salaries submitted (WT_000768 to 769). | Exhibit F |
| **J. Testimony** | | | | |
| 58 | Thirty-seven individuals | Testimony of the persons Plaintiffs identified as prospective employees and of current and former LoanStreet employees. | See Schedule 4, which states the testimony of each. | ECF No. 282-1, entries 1 through 37; Schedule 4 |

**SCHEDULE 4**
**Excluded Witnesses on Causation and Damages (Part III, Item 9)**

Each witness is identified by name, by entry number in Defendant's earlier offer of proof (ECF No. 282-1), and by document or role. "Resp. No. 3" and "Report" have the meanings given in Schedules 2 and 3. Where a signed statement or a message from the witness exists, the row quotes it. For the other witnesses, the row states what Defendant expects from Plaintiffs' own documents and testimony, or the subject of the testimony.

| Entry | Witness | Plaintiffs' evidence the testimony concerns | What the witness would testify to | Basis of knowledge |
|---|---|---|---|---|
| **A. Persons Plaintiffs identified as prospective employees (ECF No. 282-1, entries 1 to 14)** | | | | |
| **Each witness in this Group would also testify to whether he or she had read any of the nine statements before sending the communication on which Plaintiffs rely, and whether Mr. Adamson or anyone else acting for Plaintiffs asked the witness for his or her reasons (ECF No. 282-1, common offer for entries 1 to 14).** | | | | |
| 1 | Mindy Huynh, sender of LS-0000189 | Resp. No. 3; Report at 20 | She was never a candidate or applicant for employment with LoanStreet, did not apply or interview, and did not communicate with LoanStreet about employment. | Her own knowledge; signed declaration (DX-RL). |
| 2 | Kylie Cannon, sender of LS-0001429 | Resp. No. 3 | She withdrew "based solely on the company's decision to pursue legal action against a former employee for posting a negative review," and she did not read the review. | Her own knowledge; signed declaration (DX-RU). |
| 3 | Shan Batla, sender of LS-0000190 | Resp. No. 3; Report at 20 | His reason for declining was the one he wrote: "Sorry I do not work for companies that sue their former employees." | His own knowledge of his decision. |
| 4 | Aaron Krubiner, sender of LS-0001424 | Resp. No. 3 | His reason for withdrawing his application. His message states: "I will not be available to interview and would like to withdraw my application for the position" (LS-0001424), and gives no reason. | His own knowledge of his decision. |

| Entry | Witness | Plaintiffs' evidence the testimony concerns | What the witness would testify to | Basis of knowledge |
|---|---|---|---|---|
| 5 | Eric Svitok, sender of LS-0000191 | Resp. No. 3; PX-15; Report at 20 | That a recruiter contacted him and he declined: "[T]hank you for reaching out, but I am not interested at this time. Heard terrible things about loanstreet" (LS-0000191); whether he ever applied for a position; and where he heard what he referred to. His message names no source. | His own knowledge. |
| 6 | Gordon Ko, sender of LS-0001422 | Resp. No. 3; PX-78 | His reason was the one he wrote: "I decided to move on with other opportunities." | His own knowledge of his decision. |
| 7 | James Dinh, sender of LS-0001420 | Resp. No. 3; Report at 20 | He did not withdraw. He wrote that what he had found was "a bit worrisome" and asked: "Has this case been settled? What was the outcome?" | His own knowledge. |
| 8 | Kevin Liu, author of LS-0000105 | PX-6 | Whether he was ever a candidate for a position at LoanStreet. Plaintiffs cite his public post. | His own knowledge. |
| 9 | Melissa Hougie, sender of LS-0001439 | Resp. No. 3; Report at 20 | She did not withdraw and asked to discuss her concerns; what those concerns were; and where she read the remark about chaining employees to their desks. | Her own knowledge. |
| 10 | Olivia Wu, sender of LS-0001426 | Resp. No. 3 | Her reason was the one she wrote: "I don't think this opportunity would be a good fit for me." | Her own knowledge of her decision. |
| 11 | Oluwatobi Adebiyi, sender of LS-0001414 | Resp. No. 3; PX-76 | His reason for withdrawing his application. His message states: "I would like to withdraw my application for this position" (LS-0001414), and gives no reason. | His own knowledge of his decision. |

| Entry | Witness | Plaintiffs' evidence the testimony concerns | What the witness would testify to | Basis of knowledge |
|---|---|---|---|---|
| 12 | Vin Shahrdar, sender of LS-0001417 | Resp. No. 3; PX-77; Report at 20 | His reason was the one he wrote: he acted "after reading the story and the news articles about the former employee's story." | His own knowledge of his decision. |
| 13 | Chelsea Alleyne-Parsons, sender of LS-0001435 | Resp. No. 3 | Her reason for withdrawing her application. Her message of January 19, 2022 states: "I have decided to withdraw my application at this time" (LS-0001435), and gives no reason. | Her own knowledge of her decision. |
| 14 | Zackery Ward, sender of LS-0001431 to 1434 | Resp. No. 3 | His reason was the one he wrote: "Unrelated to my conversation with Brad, I've decided that LoanStreet is not the right fit for me at this time." | His own knowledge of his decision. |
| **B. Persons listed on Plaintiffs' employee-time spreadsheet, LS-0001451 (ECF No. 282-1, entries 24 to 28)** | | | | |
| 24 | Ruby Napora, employee listed on LS-0001451 | The spreadsheet attributes to her 40 hours per week for all of 2022. | That her work was the ordinary work of a recruiter, that she kept no record of time spent responding to any statement, and that her work was not directed to the nine statements as distinct from anything else said about LoanStreet. The basis for this expectation is stated in Part III.A, item 9. | Her own work. |
| 25 | Leslie Regenbaum, employee listed on LS-0001451, who signed the NLRB settlement for LoanStreet | The spreadsheet attributes to her 8 hours per week in 2022 and in the first half of 2023. | That she kept no record of time spent responding to Defendant's statements (Part III.A, item 9); and the notice to employees required by the settlement she signed (Schedule 3, Group D). | Her own work; she signed the settlement. |

| **Entry** | **Witness** | **Plaintiffs' evidence the testimony concerns** | **What the witness would testify to** | **Basis of knowledge** |
|---|---|---|---|---|
| 26 | Mark Rambler, LoanStreet's chief operating officer | The spreadsheet lists him with hours marked "n/m." | That he kept no record of time spent responding to Defendant's statements (Part III.A, item 9), and why his hours are marked "n/m." | His own work. |
| 27 | Paul Henson, LoanStreet's Director of Legal | The spreadsheet attributes to him 8 hours per week in 2022 and in the first half of 2023. | That he kept no record of time spent responding to Defendant's statements (Part III.A, item 9); the work he did asking Glassdoor to remove reviews (LS-0000291; LS-0000294 to 295); and the basis for his statement to Glassdoor that Defendant's conduct "included inciting and encouraging others to also 'like' and post fake reviews" (LS-0000291). | His own work. |
| 28 | Thad Pitney, former employee listed on LS-0001451 | The spreadsheet attributes to him 8 hours per week in 2021 and 2022. | That he kept no record of time spent responding to Defendant's statements (Part III.A, item 9); and what he thought of LoanStreet as an employer during his own employment, and why (ECF No. 282-1, entry 28). | His own work and employment. |

| Entry | Witness | Plaintiffs' evidence the testimony concerns | What the witness would testify to | Basis of knowledge |
|---|---|---|---|---|
| **C. Other current and former LoanStreet employees (ECF No. 282-1, entries 15 to 23 and 29 to 37)** | | | | |
| **Each witness in this Group would also testify to what he or she said or wrote to others about LoanStreet, including any review or post about LoanStreet that he or she wrote.** | | | | |

| Entry | Witness | Plaintiffs' evidence the testimony concerns | What the witness would testify to | Basis of knowledge |
|---|---|---|---|---|
| 15 | Ranna Bansal, Defendant's former direct manager | Compl. ¶ 27 | That he supervised Defendant's work; that he wrote a recommendation letter for Defendant's graduate-school application stating his "utmost confidence" in Defendant (DX-VO); that he disagreed with the decision to terminate Defendant (ECF No. 282-1, entry 15); that in January 2020, five months before the termination, he included Defendant in a group outing with his friends, which Defendant attended (DX-VK at WT_003224; DX-DJ at WT_001187), invited Defendant to his wedding (DX-VM at WT_003232), and included Defendant in his book club (DX-VL at WT_003225 to 3230) (ECF Nos. 282-63 and 282-65), offered against Plaintiffs' allegation that Defendant was terminated for his "lack of engagement with his team" and "inability to cooperate with his peers" (Compl. ¶ 27); and that in July 2020 he wrote to Defendant that "going through the history of loanstreet bullshit is pretty overwhelming" and "i just feel like a victim more than a perpetrator" (DX-DJ at WT_001189). Purpose as stated in ECF No. 238 at 17-18. | He supervised Defendant; he wrote the messages. |

| **Entry** | **Witness** | **Plaintiffs' evidence the testimony concerns** | **What the witness would testify to** | **Basis of knowledge** |
|---|---|---|---|---|
| 16 | Matthias Jenny, former LoanStreet engineer | Compl. ¶ 27 | That on February 12, 2020, four months before the termination, he agreed to write a letter of recommendation for Defendant's graduate-school application (DX-VN at WT_003234 to 3235), and his assessment of Defendant's engineering work and conduct, which he observed as a senior engineer working with him. | He worked with Defendant. |
| 17 | JP Wartman, former LoanStreet employee | Plaintiffs' claim of harm to LoanStreet's reputation as an employer | That, as he wrote to Defendant on July 28, 2021, "Ian misled me about compensation me as well" (DX-AK at WT_000436); what Mr. Lampl told him about his compensation and what he received; and with whom he discussed it. | His own experience. |

| Entry | Witness | Plaintiffs' evidence the testimony concerns | What the witness would testify to | Basis of knowledge |
|---|---|---|---|---|
| 18 | Mark Chackerian, former LoanStreet engineer | Same | That he wrote in October 2021 that "it took me a while to get over LS" and that LoanStreet was "a company that I want to see crash and burn" (DX-AL at WT_000438); and the experience that view came from, as stated in ECF No. 282-1, entry 18: his termination without a prior performance warning, problems with management and internal communication, Mr. Lampl's withholding of relevant information, the absence of an HR check where the head of HR is married to the CEO, and other employees he understood to have been terminated abruptly. | His own experience. |
| 19 | Sharmeen Malik, former LoanStreet employee | Same; the text messages on which Plaintiffs rely for malice | That on June 20, 2021 she wrote to Defendant, of LoanStreet, "They deserve this!!," "I hope they get theirs" and "I wanna watch them all burn lol" (DX-BI at WT_000477); that she held those views from her own employment there; and that Defendant's messages on which Plaintiffs rely were private messages to her, sent in the same exchange. | Her own experience; she was the other party to the messages. |

| **Entry** | **Witness** | **Plaintiffs' evidence the testimony concerns** | **What the witness would testify to** | **Basis of knowledge** |
|---|---|---|---|---|
| 20 | Warren Mitlak, former LoanStreet product manager | Compl. ¶ 27 | That on June 16, 2020 he wrote: "Wyatt, I enjoyed working with you at LoanStreet. Good luck in your future" (DX-AM at WT_000440); and his assessment of Defendant's work, which he observed as a product manager. | He worked with Defendant. |
| 21 | Jonathan Derin, former LoanStreet software engineer | Plaintiffs' claim of harm to LoanStreet's reputation as an employer | That in May through July 2019, two years before any statement at issue, he wrote of LoanStreet's vacation policy: "When I negotiated they said unlimited. Now they're saying 15, but acting like they didn't change anything," called it a "huge downgrade," and added, "Call now and get the master class 'how to destroy the company culture in 30 days' for free" (DX-DI at WT_001175 to 1176); that he wrote of the company's time-tracking tool that "the only thing anyone get from micromanaging our time is everyone being more uncomfortable" (WT_001177); and that he wrote, "There's no infrastructure for feedback" (WT_001178 to 1179). | His own experience. |

| **Entry** | **Witness** | **Plaintiffs' evidence the testimony concerns** | **What the witness would testify to** | **Basis of knowledge** |
|---|---|---|---|---|
| 22 | William Cheng, former LoanStreet software engineer | Compl. ¶ 27 | That on June 12, 2020 he wrote to Defendant that "larry asked me to remove you from discord," that the departure "came as a big surprise to me as well," and that it was "really shitty that nothing was communicated" (DX-DK at WT_001195). | His own experience. |
| 23 | Matthew Brazza, LoanStreet software engineer | Compl. ¶ 27 | That he and Defendant played on the same recreational dodgeball team in January 2020, while both worked at LoanStreet (DX-VH at WT_003211 to 3217), offered against Plaintiffs' allegation that Defendant was terminated for his "lack of engagement with his team" and "inability to cooperate with his peers" (Compl. ¶ 27). | He worked with Defendant. |
| **Entries 29 to 37. Each of the following witnesses would testify to: what the witness thought of LoanStreet as an employer during his or her own employment, and why; and whether Defendant's work showed the "poor quality of his engineering," "lack of engagement with his team" or "inability to cooperate with his peers or take direction from his superiors" that Plaintiffs allege (Compl. ¶ 27). ECF No. 282-1, entries 29 to 37.** | | | | |
| 29 | Carlos Arias, former LoanStreet employee | Plaintiffs' claim of harm to LoanStreet's reputation as an employer; Compl. ¶ 27 | The subjects stated in the note above. Also that he and Defendant worked together on the AdminTools project, and that the project had been demonstrated successfully; Defendant wrote on June 12, 2020 of "the massive amount of progress that Carlos and I have made on AdminTools - as confirmed by a successful demonstration just the day before" (DX-T at WT_000169; ECF No. 156-13). | Employment at LoanStreet. |

| **Entry** | **Witness** | **Plaintiffs' evidence the testimony concerns** | **What the witness would testify to** | **Basis of knowledge** |
|---|---|---|---|---|
| 30 | Dae Choi, LoanStreet's former Head of Engineering | Plaintiffs' claim of harm to LoanStreet's reputation as an employer; Compl. ¶ 27 | The subjects stated in the note above. Also that he met with Defendant on July 16, 2019; Defendant's notes of that meeting with "Dae and Ranna" record: "People are very happy with you," "Versatile," and "Thoughtful and thorough" (DX-ED at WT_001311). Also the time-tracking tool and the 15-day vacation figure that employees discussed in May and June 2019 (DX-DI at WT_001175 to 1177, 1181). | Employment at LoanStreet. |
| 31 | Daniel Yoder, LoanStreet product manager | Plaintiffs' claim of harm to LoanStreet's reputation as an employer; Compl. ¶ 27 | The subjects stated in the note above. | Employment at LoanStreet. |
| 32 | Erin Huang, former LoanStreet employee | Plaintiffs' claim of harm to LoanStreet's reputation as an employer; Compl. ¶ 27 | The subjects stated in the note above. Also whether she was given warning before her own employment ended; Defendant's June 12, 2020 e-mail to LoanStreet's employees names "design Erin" and "marketing Erin" among the employees "who said they were fired without warning" (DX-T at WT_000169; ECF No. 156-13), and Ms. Huang is one of the two. | Employment at LoanStreet. |

| **Entry** | **Witness** | **Plaintiffs' evidence the testimony concerns** | **What the witness would testify to** | **Basis of knowledge** |
|---|---|---|---|---|
| 33 | Erin Ollech, former LoanStreet employee | Plaintiffs' claim of harm to LoanStreet's reputation as an employer; Compl. ¶ 27 | The subjects stated in the note above. Also whether she was given warning before her own employment ended; Defendant's June 12, 2020 e-mail to LoanStreet's employees names "design Erin" and "marketing Erin" among the employees "who said they were fired without warning" (DX-T at WT_000169; ECF No. 156-13), and Ms. Ollech is one of the two. | Employment at LoanStreet. |
| 34 | Jeff Miller, LoanStreet managing director | Plaintiffs' claim of harm to LoanStreet's reputation as an employer; Compl. ¶ 27 | The subjects stated in the note above. | Employment at LoanStreet. |
| 35 | Kamil Hussain, former LoanStreet employee | Plaintiffs' claim of harm to LoanStreet's reputation as an employer; Compl. ¶ 27 | The subjects stated in the note above. Also whether he was given warning before his own employment ended; Defendant's June 12, 2020 e-mail to LoanStreet's employees names "Kamil" among the employees "who said they were fired without warning" (DX-T at WT_000169; ECF No. 156-13). | Employment at LoanStreet. |
| 36 | Ray Cha, LoanStreet product manager | Plaintiffs' claim of harm to LoanStreet's reputation as an employer; Compl. ¶ 27 | The subjects stated in the note above. | Employment at LoanStreet. |

| Entry | Witness | Plaintiffs' evidence the testimony concerns | What the witness would testify to | Basis of knowledge |
|---|---|---|---|---|
| 37 | Trevor Hock, former LoanStreet employee | Plaintiffs' claim of harm to LoanStreet's reputation as an employer; Compl. ¶ 27 | The subjects stated in the note above. Also that he worked with Defendant from Defendant's first assignment; on March 15, 2019 Mr. Choi wrote to Defendant: "Your first task will be working with Trevor (UI/UX designer)" (DX-WI at WT_003278; Exhibit M). Also that he and Defendant were both on the invitation to Mr. Bansal's January 2020 group outing (DX-VK at WT_003224). | Employment at LoanStreet. |